Deborah A. Ferguson
Craig H. Durham
**Ferguson Durham PLLC**
223 S. 6th St., Suite 325
Boise, Idaho 83702
(208) 345-5183
daf@fergusondurham.com
chd@fergusondurham.com

Hannah Brass Greer
Carrie Flaxman
**Planned Parenthood of the Great Northwest and the Hawaiian Islands**
2001 East Madison Street
Seattle, Washington 98122
(206) 427-3208
hannah.brassgreer@ppgnhi.org
carrie.flazman@ppfa.org

Richard Alan Eppink
Molly Kafka
**ACLU of Idaho Foundation**
P.O. Box 1897
Boise, Idaho 83701
(208) 344-9750
reppink@acluidaho.org
mkafka@acluidaho.org

**Attorneys for Plaintiffs**

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| PLANNED PARENTHOOD OF THE GREAT NORTHWEST AND THE HAWIIAN ISLANDS, a Washington Corporation,<br><br>     Plaintiff,<br><br>  v.<br><br>LAWRENCE G. WASDEN, in his official capacity as Attorney General of Idaho; JAN M. BENNETTS, in her official capacity as Ada County Prosecuting Attorney; GRANT P. LOEBS, in his official capacity as Twin Falls County Prosecuting Attorney; THE INDIVIDUAL MEMBERS OF THE IDAHO STATE BOARD OF MEDICINE, in their official capacities; THE INDIVIDUAL MEMBERS OF THE STATE BOARD OF NURSING, in their official capacities; RUSSELL S. BARON, in his official capacity as Director of the Idaho Department of Health and Welfare; and DANIEL BOWEN, ANDREW | Case No.    1:18-cv-319<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

DOMAN, and JILL HOLINKA, in their official
capacities as members of the IDAHO CODE
COMMISSION,

                    Defendants.

Plaintiff Planned Parenthood of the Great Northwest and the Hawaiian Islands ("Plaintiff" or
"Planned Parenthood"), on its own behalf and on behalf of its patients and providers, by and through
its attorneys of record, hereby complains and alleges as follows:

## INTRODUCTION

1.      A new law that took effect in Idaho on July 1, 2018, places an onerous burden on all
medical providers to submit detailed reports to the State about "direct or indirect" "complications"
from abortions. *See* Idaho Code §§ 39-9501 *et seq*., and amendments to Idaho Code § 54-1413 (1)
and § 54-1814 (25) (collectively, the "Reporting Act" or "the Act"). Providers now face potential
criminal and civil penalties for non-compliance with these reporting requirements. Yet the Act is so
convoluted and vague that providers must guess as to its meaning and will not reasonably know how
to comply with its provisions. It invites arbitrary enforcement by police, prosecutors, and civil
licensing authorities. Moreover, the passage of the Act is motivated by animus and arbitrarily singles
out one particular medical procedure, which has been shown to be extremely safe, to the exclusion of
all others, which is irrational. The Act's wholly insufficient confidentiality provisions create the real
danger of public disclosure of intimate and private information. This new law is unconstitutional,
and the Court must enjoin its enforcement.

## PARTIES

2.      Plaintiff is a non-profit corporation organized under the laws of the State of
Washington doing business in Idaho. Plaintiff is the largest provider of reproductive health services
in Idaho, operating three health centers in the state, located in Ada County and Twin Falls County.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

Plaintiff provides a broad range of reproductive and sexual health services to men, women, and teens including, but not limited to, well woman examinations, birth control, testing and treatment for sexually transmitted infections, cancer screening, pregnancy testing, and both medication and surgical abortions. Plaintiff sues on behalf of itself and on behalf of its patients and providers who are adversely affected by Defendants' actions.

3.    Defendant Lawrence G. Wasden ("Wasden") is the Attorney General of the State of Idaho. Wasden has authority to prosecute against any medical practitioner who violates the requirements of the Reporting Act. Idaho Code §§ 39-9506. He is sued in his official capacity.

4.    Jan Bennetts ("Bennetts") is the County Prosecutor for Ada County, where Plaintiff's Boise and Meridian health centers are located. Bennetts has authority to seek criminal or civil charges against any medical practitioner who violates the requirements of the Reporting Act. Idaho Code §§ 39-9506. She is sued in her official capacity.

5.    Grant P. Loebs ("Loebs") is the County Prosecutor for Twin Falls County, where Plaintiff's Twin Falls health center is located. Loebs has authority to seek criminal or civil charges against any medical practitioner who violates the requirements of the Reporting Act. Idaho Code §§ 39-9506. He is sued in his official capacity.

6.    Russell S. Barron ("Barron") is the Director of the Idaho Department of Health and Welfare.  Barron has the responsibility to oversee the production and response to public record requests directed to the Idaho Department of Health and Welfare. He is sued in his official capacity.

7.    The individual members of the Idaho State Board of Medicine ("Board of Medicine") are also sued in their official capacity. The Board of Medicine is a state agency as defined in the Idaho Administrative Procedures Act. Idaho Code § 67-5201(2). Pursuant to Idaho Code § 54-1814, the Board of Medicine has authority to suspend, revoke or restrict all medical

licenses it issues and impose fines for a failure to comply with the requirements of the Reporting

Act, Idaho Code § 39-9506. The individual memebrs are sued in their official capacities

and are designated by their official title pursuant to Fed. R. Civ. P. 17(d).

8.      The individual members of the Idaho State Board of Nursing ("Board of Nursing")

are also sued in their official capacity. The Board of Nursing is a state agency as defined in the

Idaho Administrative Procedures Act. Idaho Code § 67-5201(2). Pursuant to Idaho Code § 54-

1413, the Board of Nursing has authority to suspend, revoke or restrict all nursing licenses it

issues and impose fines for a failure to comply with the requirements of the Reporting Act, Idaho

Code § 39-9506. The individual memebrs are sued in their official capacities and are

designated by their official title pursuant to Fed. R. Civ. P. 17(d).

9.      The individual members of the Idaho Code Commission (Daniel Bowen, Andrew

Doman, and Jill Holinka) are also sued in their official capacity. The Idaho Code Commission is an

office of the Secretary of State established by statute. Idaho Code §§ 73-201–73-221. The

Commission's purpose is to keep the Idaho Code up to date by indicating changes to laws, including

constitutional changes, and providing annotations, and the Commission has all power and authority

necessary to accomplish that purpose. It has the specific power to keep the Idaho Code up to date, to

provide annotations to the Code, and to provide references in the Code to decisions of the federal

courts. Idaho Code § 73-205.

## JURISDICTION AND VENUE

10.     Plaintiff brings this action seeking declaratory relief pursuant to 42 U.S.C. § 1983,

and 28 U.S.C. §§ 2201 and 2202, to redress the deprivation under color of state law of rights secured

by the United Stated Constitution.

11.     This Court has jurisdiction of the subject matter of this action pursuant to 28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 4

U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States. This Court has personal jurisdiction over Plaintiff and Defendants.

12.     This Court has authority to enter a permanent injunction prohibiting enforcement of the Reporting Act and providing clear notice of its unenforceability pursuant to Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 (b) (1)-(2) because all Defendants reside and work in this District, and because all of the acts and events giving rise to this Complaint occurred in this District.

**STATEMENT OF FACTS**

<u>The Abortion Complications Reporting Act</u>

14.     The Abortion Complications Reporting Act creates a new statutory chapter in the Idaho Code. *See* I.C. ch. 95. It defines a "complication" to mean "an abnormal or a deviant process or event arising from the performance or completion of an abortion," but then deems the following processes and events to be "complications" as a matter of definition, leaving practitioners to guess whether and when they must report any of these occurrences:

> (a) Uterine perforation or injury to the uterus;
> (b) Injury or damage to any organ inside the body;
> (c) Cervical perforation or injury to the cervix;
> (d) Infection;
> (e) Heavy or excessive bleeding;
> (f) Hemorrhage;
> (g) Blood clots;
> (h) Blood transfusion;
> (i) Failure to actually terminate the pregnancy;
> (j) Incomplete abortion or retained tissue;
> (k) The need for follow-up care, surgery or an aspiration procedure for incomplete abortion or retained tissue;
> (l) Weakness, nausea, vomiting or diarrhea that lasts more than twenty four (24) hours;
> (m) Pain or cramps that do not improve with medication;
> (n) A fever of one hundred and four-tenths (100.4) degrees or higher for

more than twenty-four (24) hours;
(o) Hemolytic reaction due to the administration of ABO-incompatible
blood or blood products;
(p) Hypoglycemia where onset occurs while the patient is being cared
for in the abortion facility;
(q) Physical injury associated with care received in the abortion facility;
(r) Pelvic inflammatory disease;
(s) Endometritis;
(t) Missed ectopic pregnancy;
(u) Cardiac arrest;
(v) Respiratory arrest;
(w) Renal failure;
(x) Metabolic disorder;
(y) Shock;
(z) Embolism;
(aa) Coma;
(bb) Placenta previa or preterm delivery in subsequent pregnancies;
(cc) Free fluid in the abdomen;
(dd) Adverse or allergic reaction to anesthesia or other drugs;
(ee) Subsequent development of breast cancer;
(ff) Inability, refusal or unwillingness to have follow-up care, surgery or an aspiration
procedure following an incomplete abortion or retained tissue;
(gg) Inability, refusal or unwillingness to have a follow-up visit;
(hh) Referral to or care provided by a hospital, emergency department or urgent care clinic or
department;
(ii) Death;
(jj) Any psychological or emotional condition reported by the patient, such as depression,
suicidal ideation, anxiety or a sleeping disorder; or
(kk) Any other adverse event as defined by the federal food and drug administration criteria
provided in the medwatch reporting system. I.C. § 39-9503(2) (eff. July 1,2017).

15.     Further, the chapter broadly defines a "Facility" and a "Medical Practitioner":

"Facility" means any public or private hospital, clinic, center, medical school, medical training

institution, health care facility, physician's office, infirmary, dispensary, ambulatory surgical center

or other institution or location where medical care is provided to any person. I.C. § 39-9503(4).

"Medical practitioner" means a licensed medical care provider capable of making a diagnosis within

the scope of such provider's license. I.C. § 39-9503(6).

16.     Compounding the uncertainty of the list of "complications" itself, as of July 1, 2018,

every facility and medical practitioner must create and submit to the government a written report

regarding each woman who comes under their care who "reports any complication, requires medical treatment or suffers death that the medical practitioner has reason to believe in the practitioner's reasonable medical judgment, is a direct or indirect result of an abortion." I.C. § 39-9504 (1). Facilities and practitioners are left to guess what results qualify as "indirect" results of an abortion.

17.     Further, the Act requires that: [e]very hospital, licensed health care facility or individual medical practitioner required to submit a complication report shall attempt to ascertain and shall report on the following:

> (a) The age and race of the woman;
> (b) The woman's state and county of residence;
> (c) The number of previous pregnancies, number of live births and number of previous abortions of the woman;
> (d) The date the abortion was performed and the date that the abortion was completed, as well as the gestational age of the fetus, as defined in section 18-604, Idaho Code, and the methods used;
> (e) Identification of the physician who performed the abortion, the facility where the abortion was performed and the referring medical practitioner, agency or service, if any; and
> (f) The specific complication, as that term is defined in section 39-9503(2), Idaho Code including, where applicable, the location of the complication in the woman's body, the date on which the complication occurred and whether there were any preexisting medical conditions that would potentially complicate pregnancy or the abortion.
> Idaho Code § 39-9504 (1).

18.     Though Idaho Code § 39-9505 provides that reporting on forms published by the Idaho Department of Health and Welfare need not begin until 10 days after the forms are created, no provision of the statute requires "reporting on forms" and, apparently, reporting of complications under Idaho Code § 39-9504(1) was required as of July 1, 2018.

Abortion "Complications" Are Defined Vaguely and Many Have No Medical Basis

19.     Although the statute requires that Plaintiff report all "abortion complications," the definition of that term, "an abnormal or a deviant process or event arising from the performance or completion of an abortion," Idaho Code § 39-9503(2), is so broad as to be meaningless and provides no meaningful guidance to Planned Parenthood and its providers about how to comply or to the

Defendants about how to enforce. The term is excessively vague and uncertain.

20.     The vagueness is compounded by the fact that some of the purported complications on the list are not complications of an abortion at all, and some are not even medical conditions. For example, the Act identifies an "inability, refusal or unwillingness to have a follow-up visit" as a potential medical complication of an abortion which must be reported under penalty of law by any medical provider. I.C. § 39-9503(gg).

21.     Even the referral to or care provided by a hospital, emergency department or urgent care clinic or department is deemed a "complication" by the Act, regardless of the reason for the referral. I.C, § 39-9503(hh).

22.     Likewise, the Reporting Act deems "*Any* psychological or emotional condition reported by the patient, such as depression, suicidal ideation, anxiety or a sleeping disorder" a "complication" and must be reported if it is possibly a direct or indirect result of a past abortion. I.C. § 39-9503(jj) (emphasis added). But studies show that the rates of mental health problems for women with an unwanted pregnancy are the same whether they have an abortion or give birth.

23.     By further example, although no scientific link has been found between the termination of a pregnancy and a subsequent development of breast cancer, if it were diagnosed, even decades later, that too is listed as a "complication." I.C. § 39-9503(ee).

24.     The vagueness of the Reporting Act is only compounded by the fact that the law has no restriction on time. It leaves the patient open to invasive and probing interrogation, even decades later. Furthermore, the Reporting Act requires all medical practitioners—physicians, physician assistants, externs, interns, medical residents, and nurses—to report to the state any direct or "indirect" complications of an abortion, for any woman who requires their medical treatment, under threat of civil and criminal penalties and professional discipline. I.C. § 39-9504(1). There is no

guidance as to what constitutes an "indirect" complication, or parameters as to how indirect the complication could be to trigger reporting.

25.     This requirement to report "indirect" results exacerbates the Reporting Act's excessive vagueness even further. I.C. § 39-9504(1). The requirement places facilities' and practitioners' licenses and livelihoods at risk based on elusive theories of causation, leaving them to guess at how distant a nexus the State and its Board of Medicine or Board of Nursing will consider "indirect," mandating a report.

26.     Moreover, the listing of examples of complications cite many medical conditions which are both extremely rare for abortions and are more likely to occur after other medical procedures, such as "shock" and "coma". I.C. § 39-9503(y), (aa).

27.     And several of the "abortion complications," e.g. "blood clots," or 'heavy bleeding" are typical, transient and potential side effects of abortions as the state acknowledges in its informed consent brochure. *See, e.g.*, Idaho Department of Health and Welfare's, Abortion Informed Consent Brochure, "*What You Should Know About Abortion*"[1] (noting that "[i]t is normal for you to have some cramping and bleeding after having any type of abortion," that "[t]he cramping is caused by your uterus contracting back to its normal size." [at 14], and that in a medication abortion, "[c]ramping and bleeding may be severe and will usually begin within 1 to 2 hours…. Bleeding may continue for 13 to 17 days." [at 8]).

28.     Because some of the listed "complications" are not abortion complications at all, but rather normal, expected effects, Idaho Code § 39-9504 forces Idaho practitioners to make misleading reports, such as reporting that "heavy bleeding" or "blood clots" after an abortion is "an abnormal or a deviant process." I.C. § 39-9503(2), (2)(e).

---

[1] https://healthandwelfare.idaho.gov/Portals/0/Health/MoreInformation/AboutAbortion_WebVersion_May2017.pdf  (last visited July 16, 2018).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 9

29.     A likely outcome of mandatory reporting of normal and expected side effects of abortion, along with non-medical events and outcomes that do not actually result from abortion under the guise of "complications" will be a lopsided and false surge in the reporting of these events as "complications," which will skew and deceive researchers and the public. The danger is heightened because practitioners and facilities will fear being second-guessed by the State and face criminal, civil, and professional sanctions if they guess wrong and fail to report such complications that the State deems were mandated by the Act's vague requirements.

30.     No other Idaho laws or regulations impose comparable reporting requirements on medical practitioners and health care facilities as the Reporting Act, even though there is a much greater chance that many of the potential complications listed will occur with procedures other than abortions, such as colonoscopies, wisdom teeth extraction, and tonsillectomies. This is especially ironic because the abundant medical research conducted over decades and published in peer-reviewed medical journals has repeatedly demonstrated that abortions are safe with minimal adverse side effects. A Committee of the National Academies of Sciences, Engineering, and Medicine very recently issued a Consensus Study Report entitled *The Safety and Quality of Abortion Care in the United States* after reviewing all available evidence. It concluded that abortion in the United States is safe; serious complications of abortion are rare; and abortion does not increase the risk of long term physical or mental health disorders.

31.     The legislature was motivated by animus against providers of abortion services and their patients as reflected in the legislative history of the debate of House Bill 638 on the senate floor when Senator Thayn (R) stated: "Now we're creating more misdemeanors, subject to civil fine of $500, first violation subject to fine of $1,000. *This sounds more like a totalitarian state to me. If this was any other subject, we wouldn't put up with this. Any other subject*." (March 14,

2017 at 2:39 p.m.)  (italics added).

<u>Penalties and Professional Sanctions for Violating the Reporting Act</u>

32.     Physicians, physician assistants, and nurses who fail to file a report that the Defendants decide was required under Idaho Code § 39-9504 can lose their professional licenses and livelihoods. They can be not only fined civilly, but also prosecuted criminally and incarcerated.

33.     Any person required "to file a report, keep such records or supply any information" who willfully fails to do so is (a) guilty of unprofessional conduct, and his or her professional license is subject to discipline in accordance with procedures governing his or her license; and (b) subject to a civil fine of five hundred dollars ($500) for each instance of failure to report, if such person is a medical practitioner responsible for filing an adverse reaction report with the department.  I.C. §39-9506(3). Physicians and physician assistants are exposed to discipline by the Board of Medicine under Idaho Code § 54-1814(25) if they fail to comply with the vague reporting requirements. Nurses are likewise exposed to discipline by the State Board of Nursing under Idaho Code § 54-1413(1)(l).

34.     Any facility that violates any of the vague reporting requirements can be fined $1,000 for every report that the Defendants decide that the violation was willful, and have its facility license suspended for months and even years if the Defendants determine that they missed just two or three reports. I.C. §39-9506(4).

35.     Any person who submits a report that the Defendants decide is "false," such as where a practitioner omits reporting a listed "complication" that the practitioner does not believe is actually a complication, risks being convicted of a misdemeanor and locked in jail.

<u>Purported Purpose of Reporting Act</u>

36.     The Reporting Act tasks the Department with creating a comprehensive annual

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 11

statistical report for the legislature based on the data gathered from the reports.  I.C. § 39-9504(4).

37.     A stated finding of the legislature in creating the Act is to compile data for "future scientific studies and public health research." I.C. § 39-9502 (1)(l)(ii).

38.     A stated purpose of the Act is to "promote the health and safety of women by adding to the sum of medical and public health knowledge through the compilation or relevant data on all abortions performed in the state, as well as on all medical complications and maternal deaths resulting from these abortions." I.C. § 39-9502(2). Yet the Act requires facilities and practitioners to report both normal and abnormal results of abortions regardless of whether they were performed in Idaho, and even decades later.

39.     However, reports have already been filed with the Department for the past 40 years for each abortion performed in Idaho that include data on each complication, and this data is then compiled annually by the Department into a statistical report for the legislature and public that is publicly available on the Department's website. According to the Idaho Bureau of Vital Records and Health Statistics, Division of Public Health, in 2017 there were 1,285 abortions performed in Idaho and 8 complications (data compiled in July, 2018). Attached as Appendix A is the Idaho Bureau of Vital Records and Health Statistics, Division of Public Health's compilation of the total number of complications from abortions performed in Idaho since 1978 to 2017, reflecting that complications from abortions in Idaho are very rare indeed.

40.     These reports and compilation support the research and conclusions of medical experts that indicate that abortions are overwhelmingly safe.

<u>The Reporting Act Violates the Privacy of Practitioners and Patients</u>

41.     The Reporting Act attempts to assure both practitioners and patients that "[t]he statistical report shall not lead to the disclosure of the identity of any medical practitioner or person

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 12

filing a report under this section nor of a woman about whom a report is made." I.C. § 39-9504(4). It states further that reports filed pursuant to this section shall not be deemed public records and shall remain confidential. I.C. § 39-9504(6).

42.     However, this promise of confidentiality is null, void and has no force or effect under Idaho law, and the confidential reports required by the Reporting Act will result in public disclosure. The Legislature amended the Idaho Public Records Act in 2015 to explicitly provide that after January 1, 2016, "[a]ny statute which is added to the Idaho Code and provides for the confidentiality or closure of any public record or class of public records shall be placed in the Public Records Act. Any statute which was added to the Idaho Code on and after January 1, 2016, and which provides for confidentiality or closure of a public record or class of public records and is located at a place other than this chapter"—as is the case here—"is null, void and of no force and effect regarding the confidentiality or closure of the public record and such public record shall be open and available to the public for inspection as provided in this chapter". I.C. § 74-122. The Reporting Act was created after January 1, 2016, and its provision of confidentiality is null and void.  I.C. § 39-9504(6).

43.     Reports under the new Act directly identify abortion providers and even referring providers. I.C. § 39-9504(2)(e). Physicians who provide abortions seek to maintain their anonymity, and public disclosures of their identities could result in significant harm to them. Anti-abortion activists make active efforts to identify and inflict reputational and physical harm on abortion providers.

44.     Reports under the new Act also identify the age, race, county of residence, number of live births, and—in some cases—specific medical conditions defined as "complications" under the Act for women who have obtained abortions. In many small, rural and frontier communities in Idaho, that information could easily be used to identify a specific patient from a report.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 13

45.      Accordingly, the likelihood of disclosure under the Public Records Act of reports under the new Act is a virtual guarantee, violating the privacy of providers and patients that the reports concern and subjecting them to irreparable harm and potential physical violence.

## CLAIMS FOR RELIEF

### COUNT I- VIOLATION OF RIGHT TO DUE PROCESS OF LAW – VAGUENESS

46.      Plaintiff reaffirms and realleges each and every allegation made in paragraphs 1 through 45 above as if set forth fully here.

47.      Idaho Code § 39-9504 requiring the identification and reporting of "abortion complications" establishes vague and uncertain standards and is otherwise irrational and arbitrary in violation of rights guaranteed by the due process clause of the Fourteenth Amendment to the U.S. Constitution.

48.      Under 42 U.S.C. § 1983, the Plaintiff is entitled to injunctive relief prohibiting the Defendants from violating their rights, privileges, and immunities under federal law. The Plaintiff is also entitled under 28 U.S.C. §§ 2201–2202 to a declaratory judgment declaring that Idaho Code §§ 39-9501–9509, 54-1413(1)(l), and 54-1814(25) are unconstitutional.

### COUNT II- VIOLATION OF RIGHT TO EQUAL PROTECTION AND DUE PROCESS

49.      Plaintiff reaffirms and realleges each and every allegation made in paragraphs 1 through 45 above as if set forth fully here.

50.      Idaho Code § 39-9504 requiring the identification and reporting of "abortion complications" establishes unique and burdensome obligations concerning abortions while ignoring all other medical procedures that are far more likely to cause complications, is based on animus toward the Plaintiff and its providers, is irrational and discriminatory and is in violation of the due process and equal protection clauses of the Fourteenth Amendment to the U.S. Constitution.

51.    Under 42 U.S.C. § 1983, the Plaintiff is entitled to injunctive relief prohibiting the Defendants from violating their rights, privileges, and immunities under federal law. The Plaintiff is also entitled under 28 U.S.C. §§ 2201–2202 to a declaratory judgment declaring that Idaho Code §§ 39-9501–9509, 54-1413(1)(l), and 54-1814(25) are unconstitutional.

<u>COUNT III- VIOLATION OF RIGHT TO INFORMATIONAL PRIVACY</u>

52.    Plaintiff reaffirms and realleges each and every allegation made in paragraphs 1 through 45 above as if set forth fully here.

53.    Idaho Code § 39-9504 requiring the identification and reporting of "abortion complications" through individual reports identifying the reporting medical practitioners and abortion providers, and providing information that can be used to identify patients, which must be released to the public under Idaho Code § 74-122, the Idaho Public Records Act, is in violation of the First, Ninth, and Fourteenth Amendments to the U.S. Constitution.

54.    Under 42 U.S.C. § 1983, the Plaintiff is entitled to injunctive relief prohibiting the Defendants from violating their rights, privileges, and immunities under federal law. The Plaintiff is also entitled under 28 U.S.C. §§ 2201–2202 to a declaratory judgment declaring that Idaho Code §§ 39-9501–9509, 54-1413(1)(l), and 54-1814(25) are unconstitutional.

<u>COUNT IV- VIOLATION OF RIGHT TO DUE PROCESS – FAIR NOTICE</u>

55.    Plaintiff reaffirms and realleges each and every allegation made in paragraphs 1 through 45 above as if set forth fully here.

56.    Because the Reporting Act is unconstitutional, the Idaho Code misleads and deceives facilities, practitioners, and the public about the requirements of the law. The publication of the Reporting Act's provisions in the official Idaho Code without clear notice stating that the Act is unconstitutional and unenforceably coerces compliance with the law despite its unconstitutionality,

chills medical providers from practicing and providing abortions in Idaho, and chills patients from seeking health care because of the risk of public disclosure of information that can be used to identify them and their medical conditions.

57.      The lack of fair notice of the unconstitutionality and unenforceability of the Reporting Act in the Idaho Code violates the due process clause of the Fourteenth Amendment to the U.S. Constitution.

58.      Under 42 U.S.C. § 1983, the Plaintiff is entitled to injunctive relief requiring Defendants to publish clear notice in the official Idaho Code of the Act's unconstitutionality and unenforceability. The Plaintiff is also entitled under 28 U.S.C. §§ 2201–2202 to a declaratory judgment declaring that official publication of Idaho Code §§ 39-9501–9509, 54-1413(1)(l), and 54-1814(25) without clear notice of those provisions' unconstitutionality and unenforceability is unconstitutional.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Defendants as follows:

1.      For declaratory judgment that Idaho Code §§ 39-9501–9509, 54-1413(1)(l), and 54-1814(25) are unconstitutional, unenforceable, null and void;

2.      For temporary, preliminary, and permanent injunctive relief enjoining Defendants Wadsen, Bennetts, Loebs and the individual members of the Idaho Board of Medicine and the Board of Nursing and their employees, agents, appointees or successors from enforcing, threatening to enforce, or otherwise applying Idaho Code §§ 39-9501–9509, 54-1413(1)(l), and 54-1814(25);

3.      For temporary, preliminary, and permanent injunctive relief enjoining Defendant Baron, his employees, agents, appointees or successors from enforcing, threatening to enforce, or

otherwise releasing reports created under Idaho Code §§39-9501 et seq. under the Idaho Public Records Act;

4.      For temporary, preliminary, and permanent injunctive relief enjoining the individual members of the Idaho Code Commission, their employees, agents, appointees and successors to publish clear notice that Idaho Code §§ 39-9501–9509, 54-1413(1)(l), and 54-1814(25) are unconstitutional, unenforceable, null, and void;

5.      For declaratory judgment declaring that official publication of Idaho Code §§ 39-9501–9509, 54-1413(1)(l), and 54-1814(25) without clear notice of those provisions' unconstitutionality and unenforceability is unconstitutional;

6.      For an order waving the requirement for the posting of a bond as security for entry of temporary or preliminary injunctive relief;

7.      For an Order granting Plaintiff's attorneys' fees, reasonable costs and expenses pursuant to 42 U.S.C. § 1988 and as otherwise allowed by law; and

8.      Such further relief as this Court deems just and proper.


DATED this 17th day of July, 2018.

By:     /s/Deborah A. Ferguson
        Deborah A. Ferguson
        Craig H. Durham
        **Ferguson Durham PLLC**

        Hannah Brass Greer
        **Planned Parenthood of the Great Northwest and the Hawaiian Islands**

        Ritchie Alan Eppink
        Molly Kafka
        **American Civil Liberties of Idaho Foundation**

        **Attorneys for Plaintiff**


COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 17

# Appendix A

ABORTIONS OCCURRING IN IDAHO, 1978-2017
Complication Of Procedure*

| Year | Total Abortions in Idaho | Complication | | | | | |
|------|------|------|------|------|------|------|------|
| | | Hemorrhage | Infection | Uterine Perforation | Cervical Laceration | Retained Products | Other |
| 1978 | 2,107 | 3 | 1 | 2 | 5 | 1 | 10 |
| 1979 | 2,446 | 25 | 2 | 1 | - | 1 | 9 |
| 1980 | 2,553 | 5 | 1 | - | - | 4 | 3 |
| 1981 | 2,706 | 14 | 2 | 1 | - | - | 1 |
| 1982 | 2,431 | 5 | - | - | - | 2 | 2 |
| 1983 | 2,456 | 6 | 1 | 1 | - | 1 | 1 |
| 1984 | 2,384 | 4 | - | 1 | - | 2 | 1 |
| 1985 | 2,252 | - | 2 | - | - | 4 | 5 |
| 1986 | 2,068 | 2 | - | 2 | - | - | 1 |
| 1987 | 1,822 | 1 | 3 | - | - | 1 | 4 |
| 1988 | 1,652 | 1 | 1 | 1 | - | 1 | 4 |
| 1989 | 1,559 | - | 1 | 2 | - | 1 | 3 |
| 1990 | 1,390 | - | - | - | - | 1 | 4 |
| 1991 | 1,649 | - | 1 | - | - | - | - |
| 1992 | 1,378 | 1 | 1 | - | 5 | - | 2 |
| 1993 | 1,352 | - | 1 | 1 | - | 1 | - |
| 1994 | 1,047 | - | - | - | - | - | - |
| 1995 | 970 | - | - | - | - | 1 | - |
| 1996 | 1,022 | - | 2 | 1 | - | 1 | 2 |
| 1997 | 878 | 1 | - | - | - | 3 | - |
| 1998 | 888 | 2 | - | 1 | - | - | 1 |
| 1999 | 867 | 1 | - | - | - | - | - |
| 2000 | 801 | - | - | - | - | - | - |
| 2001 | 738 | 1 | - | - | - | - | - |
| 2002 | 829 | - | - | - | - | - | - |
| 2003 | 911 | 3 | - | - | - | - | 1 |
| 2004 | 963 | 3 | - | - | - | 1 | 1 |
| 2005 | 1,099 | 1 | - | - | - | 1 | 1 |
| 2006 | 1,249 | 1 | - | - | - | - | 1 |
| 2007 | 1,442 | - | - | - | 4 | 1 | - |
| 2008 | 1,481 | 1 | - | - | - | 1 | 2 |
| 2009 | 1,650 | 1 | 1 | 1 | 3 | 2 | 2 |
| 2010 | 1,510 | - | - | - | 6 | - | - |
| 2011 | 1,440 | - | - | - | - | 1 | - |
| 2012 | 1,458 | - | - | - | - | - | 2 |
| 2013 | 1,375 | - | - | - | - | 2 | - |
| 2014 | 1,353 | - | - | - | - | 1 | - |
| 2015 | 1,272 | 1 | - | - | 1 | 2 | 1 |
| 2016 | 1,289 | - | - | 1 | - | 5 | 3 |
| 2017 | 1,285 | - | - | - | - | 6 | 2 |

*There may be none, one, or more than one complication per procedure.
Source: Bureau of Vital Records and Health Statistics; Division of Public Health (compiled July 2018).
Data may differ from previously published data.