LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation

CYNTHIA YEE-WALLACE, ISB #6793
PETER L. WUCETICH, ISB #10557
Deputy Attorneys General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone:	(208) 334-2400
Facsimile:	(208) 854-8073
cynthia.wallace@ag.idaho.gov
peter.wucetich@ag.idaho.gov
	Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PLANNED PARENTHOOD OF THE GREAT NORTHWEST AND THE HAWAIIAN ISLANDS, a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>LAWRENCE G. WASDEN, et al.,<br><br>Defendants. | Case No. 1:18-cv-00319-DCN<br><br>**DECLARATION OF MARIETTA I.B. THOMPSON, M.D.** |

I, Marietta I.B. Thompson, M.D., hereby declare as follows:

1.	I am a physician, licensed to practice medicine by the Idaho State Board of Medicine and certified as an Obstetrician-Gynecologist by the American Board of Obstetrics and Gynecology.

DECLARATION OF MARIETTA I.B. THOMPSON, M.D. - 1

2. The facts that I provide in this declaration are based upon my own personal knowledge, and my opinions expressed in this declaration are based on my medical education, training, and nearly 30 years of practice and experience, as well as my familiarity with the relevant medical literature and standard of care for OBGYNs in Idaho.

3. I received my Doctor of Medicine degree from the University of Utah, College of Medicine, in 1985. I also received a Doctor of Pharmacy degree from the University of Utah, College of Pharmacy, in 1980. I completed my residency in Obstetrics and Gynecology at the University of Iowa Hospitals and Clinics in 1989.

4. I have practiced as an Obstetrician-Gynecologist in Boise, Idaho, continuously since 1989. I was faculty at the Family Medicine Residency of Idaho teaching Obstetrics and Gynecology from 2002-2013. I additionally have served as a Clinical Assistant Instructor at the University of Washington, Department of Family Medicine, since 2006 and as a Clinical Assistant Instructor at University of Washington, Department of Obstetrics and Gynecology, since 2014. I have been providing obstetric and gynecologic care in Kenya since 2003 in rural and poverty stricken locations, including reproductive counseling and training and have been given a temporary medical license in Kenya.

5. During my practice in Boise, I have delivered approximately 4,500 babies. Management of miscarriages and pregnancy loss also has been and remains an important component of my practice. I estimate that during my practice in Boise I have treated several hundred women with miscarriages, both surgically and medically. One treatment mode is administration of misoprostol to cause uterine contractions and expulsion of products of conception. I have therefore become familiar with, and adhere to, the standards of care that

apply in Boise and Meridian, Idaho, with respect to miscarriages generally and the use of misoprostol specifically.

6. At the current time, two large regional medical centers exist in Boise: St. Luke's Regional Medical Center (100 E. Idaho St.) and St. Alphonsus Regional Medical Center (1055 N. Curtis Road). One large medical center exists in Meridian: St. Luke's Meridian Medical Center (520 S. Eagle Road). I have had privileges at both St. Luke's Medical Centers but currently limit my practice to St. Luke's Regional Medical Center in Boise as an Obstetrical hospitalist (laborist). I am one of 6 obstetrician-gynecologists who provide 24-hour coverage for obstetrical emergencies, call coverage for the Maternal Fetal Medicine service for the high risk pregnancies, and consultation and training for the Family Medicine Residency at the St. Luke's Boise location.

7. I participate in teaching both obstetrics and gynecology to the Family Medicine residents. I also started as a faculty member at the obstetric US (ultrasound) training program at the Family Medicine Residency of Idaho and have continued to teach for the last 16 years. I currently oversee and teach the annual training conference in obstetric US for the residency program. I received additional training in obstetric and gynecologic US at Thomas Jefferson University. I receive transfer of care of patients from all locations state-wide as an obstetrical hospitalist. I am part of the peer review process at St. Luke's Regional Medical Center and am aware of the standard of care in our community.

8. I have read the Abortion Complications Reporting Act (Idaho Code §§ 35-9501 *et seq*.) (the "Act").

9. I understand what the Act requires me to do. More specifically, I understand that it requires me to report what, in my reasonable medical judgment, is a complication from

abortion.  I understand that the term complication means an abnormal or deviant process or event that stems from an abortion, and that the Act contains a list of 37 qualifying conditions.  I also understand that practitioners are supposed to use their reasonable medical judgment in determining if there is a complication that stems from an abortion when deciding whether that complication needs to be reported under the Act.

10. I am not confused by the phrase "direct or an indirect result of an abortion" in Idaho Code § 39-9504(1).  I interpret that to just mean that I am supposed to report any of the listed complications that I believe in my reasonable medical judgment are abnormal or deviant and stem from an abortion.

11. I could use my reasonable medical judgment to comply with the reporting requirements set forth in the Act.  I am not concerned that I will be subject to penalties for inadvertently violating the Act because the penalties set forth in Idaho Code § 39-9506 all require willful misconduct.  I understand that "willful" conduct means intentional or deliberate conduct.

12. It is my opinion that the lack of a time limitation for diagnosing a complication is not an issue because the vast majority of complications stemming from an abortion are likely to manifest themselves in a close temporal proximity to the abortion procedure or process.  For example, excessive bleeding or hemorrhaging resulting from an abortion will likely occur in close temporal proximity to the performance of the procedure.  Also, it is unlikely that a patient will seek treatment for or die from an abortion that took place long ago.

13. It is my opinion that the mandatory reporting requirements in the Act will produce data that can be used to protect women's health and allow for more fully informed consent by providing additional insight into the frequency and nature of abortion complications.  Also, the

mandatory reporting of abortion complications could help the medical community identify methods of performing abortions that pose excessive risks to women, so that the medical community can work to avoid such risks. For example, I have read reports about Planned Parenthood Federation of America health centers changing their recommended regimen for medical abortions in 2006 and 2007 to administering buccal rather than vaginal misoprostol and adding routine prophylactic antibiotics in response to rare reports of serious infection after medical abortion. *See* Mary Fjerstad, N.P., M.H.S., et al., *Rates of Serious Infection after Changes in Regimens for Medical Abortion*, New Engl. J. Med., 361:145-151 (2009) available at https://www.nejm.org/doi/10.1056/NEJMoa0809146. If more information about complications is available to the medical community, that can facilitate steps like this to eliminate risks to women's health.

14. A failure to follow the standard of care can lead to abortion complications. For example, a failure to properly screen a patient seeking a medication abortion for anemia, bleeding disorder, heart disease, diabetes mellitus, hypertension, kidney failure, and liver disease can lead to increased risk of complications such as death, life threatening anemia, heart failure, infection and other end organ damage.

15. It is my opinion that it is important that abortion complications be reported to the Idaho Board of Medicine because that will assist it in maintaining the standard of care and further the interests of public health.

16. It is my opinion that requiring medical practitioners to report abortion complications and comply with the reporting requirements in the Act will promote the health and safety of women by creating more oversight by the Idaho Board of Medicine to ensure that physicians are following the standard of care for abortions. This information is particularly

helpful because the risk of abortion complications increase with the gestational age of the fetus. Allowing the Idaho Board of Medicine access to complication reports allows them to monitor how often complications are occurring, with which physicians, at what facilities, through what procedures, and at what stage of pregnancy they are occurring.  This is important because, for example, there could be conditions present at certain facilities that lead to re-occurring complications or there could be increased complications for certain procedures.

17. It is my opinion that requiring medical practitioners to report abortion complications and comply with the reporting requirements in the Act will promote the health and safety of women so that more data can be gathered to assist women in making an informed decision.  The information obtained under the Act will also give Idaho more information about which abnormal or deviant events or processes are happening with respect to abortions performed in Idaho.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on August 24, 2018.

By  */s/ Marietta I.B. Thompson*
Marietta I.B. Thompson

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on August 24, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Deborah A. Ferguson<br>daf@fergusondurham.com | Richard A. Eppink<br>reppink@acluidaho.org |
| Craig H. Durham<br>chd@fergusondurham.com | Molly Kafka<br>mkafka@acluidaho.org |
| Hannah Brass Greer<br>hannah.brassgreer@ppgnhi.org | Carrie Flaxman<br>carrie.flaxman@ppfa.org |

                                              */s/Cynthia Yee-Wallace*
                                              CYNTHIA YEE-WALLACE
                                              Deputy Attorney General