LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation

CYNTHIA YEE-WALLACE, ISB #6793
PETER L. WUCETICH, ISB #10557
Deputy Attorneys General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone:     (208) 334-2400
Facsimile:      (208) 854-8073
cynthia.wallace@ag.idaho.gov
peter.wucetich@ag.idaho.gov
       Attorneys for Defendants

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PLANNED PARENTHOOD OF THE GREAT NORTHWEST AND THE HAWAIIAN ISLANDS, a Washington corporation, | Case No. 1:18-cv-00319-DCN |
| Plaintiff, | **DECLARATION OF ANNE LAWLER** |
| v. | |
| LAWRENCE G. WASDEN, et al., | |
| Defendants. | |

     I, Anne Lawler, hereby declare as follows:

     1.     I am the Executive Director of the Idaho State Board of Medicine (the "Board") and have held this position since August 2015.  I received my Juris Doctor Degree from the University of Iowa College of Law in 1989 and obtained a Bachelor's degree in Nursing in 2010

DECLARATION OF ANNE LAWLER - 1

from Boise State University.  In my role as the Executive Director for the Board, my duties include: enforcing the Idaho's Medical Practice Act, found at Idaho Code §§ 54-1801 *et. seq.*

2. The facts that I provide in this declaration are based upon my own personal knowledge, and my opinions expressed in this declaration are based on my education, training, and years of practice and experience, as well as my familiarity with the relevant standard of care for physicians.

3. The Idaho Board of Medicine was created to assure the public health, safety and welfare in the State of Idaho by licensing and regulating physicians.  The Board has the power to conduct investigations and discipline physicians who provide health care that falls below the standard of care as measured against other qualified physicians in the same community or similar communities.  The Board may commence an investigation either on its own initiative or on the basis of certain performance indicators outlined in IDAPA 22.01.14.023.02.a-m.

4. I have read the Abortion Complications Reporting Act (Idaho Code §§ 35-9501 *et seq.*) (the "Act") and understand what the Act requires from "medical practitioner[s]," defined under the Act.

5. Based upon my reading of the Act, I understand that Idaho Code § 39-9504(1) requires medical practitioners to report a "complication" when such practitioner has reason to believe, in his or her best medical judgment, that the complication is the direct or indirect result of an abortion.  I also understand that under Idaho Code § 39-9503 (2)(a)-(kk), there are 37 items that can qualify as a "complication" that must be reported but those items do not have to be reported unless they are "an abnormal or deviant process or event arising from the performance or completion of an abortion."

DECLARATION OF ANNE LAWLER - 2

6. I also understand that under Idaho Code § 39-9506(3)(a), if a medical practitioner willfully fails to file a report as required under the Act, such practitioner is guilty of professional misconduct and is subject to discipline with procedures governing his or her license.  Physicians, therefore, could be subject to discipline by the Board of Medicine, if they willfully fail to file a report under the Act.

7. According to the Act, original copies of all reports filed under the Act must be made available to the Idaho Board of Medicine to use in the performance of its official duties. Idaho Code § 39-9504(10).  The Board of Medicine intends to comply, and will comply, with the confidentiality provisions in Idaho Code § 39-9504(6), (7), (8) and (9) if it receives any reports filed under the Act.

8. If the Board of Medicine received information that a medical practitioner who falls within the purview of the Medical Practice Act, failed to file a report as required under the Act, the Board would investigate: (a) whether the "complication" was one of the 37 items listed in Idaho Code § 39-9503(2)(a)-(kk); (2) whether the item was "an abnormal or deviant process or event arising from the performance or completion of an abortion"; (3) whether the practitioner complied with the Act by making a determination whether in his or her best medical judgment the complication was a direct or indirect result of an abortion; (4) whether the failure to report was willful; and (5) whether the failure to report occurred outside of 90 days from the date of treatment or other care or consultation for the complication.

9. The term "indirect result of an abortion" in Idaho Code § 39-9504(1) would be enforced to include all qualifying "complications" (as defined in the Act) that result from the abortion process.

10. The lack of a deadline within which a medical practitioner must diagnose a complication does not hinder or prevent the Board of Medicine from investigating whether a practitioner has willfully failed to report because the Board of Medicine does not have a statute of limitations or other time limitation for investigating any acts of a licensee of the Board that may violate any provisions of the Medical Practice Act.

11. It is my opinion that the Act furthers the State's interest in assuring public health and safety. This is so because the reports filed under the Act can provide the Idaho Board of Medicine with information that allows it to monitor whether physicians are following the standard of care or needlessly putting patient safety at risk. If such reports contain information indicating that a physician may not be following the standard of care or is potentially putting patient safety at risk, the Board can mitigate this risk by initiating an investigation of the physician, and if warranted, disciplining any violations under Idaho's Medical Practice Act (Idaho Code §§ 54-1801 *et seq.*). This assures public health and safety by preventing possible future acts by that physician that do not conform to the appropriate standard of care and by educating the physician about how to improve his or her practice to meet the appropriate standard of care in all cases.

12. Only physicians may perform abortions in Idaho. If physicians who perform abortions fail to follow the standard of care or put patient safety at risk, this can harm the public or can lead to some of the very complications listed in Idaho Code § 39-9503(2). For example, infections seen in multiple patients who have received abortions from a particular physician may indicate that that particular physician is deviating from the standard of care expected from a physician performing an abortion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED on August 24, 2018.

By /s/ Anne Lawler
Anne Lawler

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on August 24, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| Deborah A. Ferguson<br>daf@fergusondurham.com | Richard A. Eppink<br>reppink@acluidaho.org |
| Craig H. Durham<br>chd@fergusondurham.com | Molly Kafka<br>mkafka@acluidaho.org |
| Hannah Brass Greer<br>hannah.brassgreer@ppgnhi.org | Carrie Flaxman<br>carrie.flaxman@ppfa.org |

    /s/ Cynthia Yee-Wallace
CYNTHIA YEE-WALLACE
Deputy Attorney General

DECLARATION OF ANNE LAWLER - 6