Aug 25 2008 13:19
Aug 25 2008 12:17

P. 03

APR 1 4 2008

**STATE OF FLORIDA**
**DEPARTMENT OF HEALTH**

DEPARTMENT OF HEALTH,

PETITIONER,

v.                                              CASE NOS.: 2006-05930

JAMES S. PENDERGRAFT, IV, M.D.,

RESPONDENT.

## ADMINISTRATIVE COMPLAINT

COMES NOW, Petitioner, Department of Health, by and through its undersigned counsel, and files this Administrative Complaint before the Board of Medicine against the Respondent, James S. Pendergraft, IV, M.D., and in support thereof alleges:

1. Petitioner is the state department charged with regulating the practice of medicine pursuant to Section 20.43, Florida Statutes; Chapter 456, Florida Statutes; and Chapter 458, Florida Statutes.

2. At all times material to this Complaint, Respondent was a licensed physician within the State of Florida, having been issued license number 59702.

James S. Pendergraft, IV, MD, Case 2006-05930

1

13675

Aug 25 2008  13:20
Aug 25 2008  12:17          P.04

3.      Respondent's address of record is 1103 Lucerne Terrace, Orlando, Florida 32806.

4.      Respondent is board certified in Obstetrics and Gynecology.

5.      At all times material to this case, Respondent, alone or with one or more partners, owned and operated EPOC Clinic, Inc. ("EPOC"), located in Orlando specializing in abortions. This facility is not hospital.

6.      On or about February 3, 2006, Patient S.B., a twenty-seven (27) year-old female, presented to EPOC requesting an elective abortion. Respondent was her physician.

7.      A history and physical and ultrasound were performed and documented and the gestational age of the fetus placed at about 19 weeks. Cytotec medication (administered orally or intra-vaginally that helps soften and dilate the cervix to induce labor) with instructions on when and how to take it were given to Patient S.B. and she was sent home.

8.      However, Patient S.B. did not return to EPOC until February 6th and the procedure was begun at the clinic using Cytotec.

9.      Patient S.B. also received Demerol (a controlled substance listed in Chapter 893, Florida Statutes) and Phenergan during the process. The medical records indicate that the Respondent ordered these

James S. Pendergraft, IV. MD, Case 2006-05930                                    2

_13676_

medications. During all times relevant in this case, the Respondent did not have a current, valid DEA number to allow him, as a licensed physician, to prescribe, order or administer controlled substances.

10.    The treatment plan for Patient S.B. was for Cytotec-200 ug every four hours. However, by Respondent's order, one additional dosage was administered at EPOC two hours after a prior dosage. The total amount of Cytotec administered was excessive.

11.    Following that additional dosage, at about 3 PM on February 7th, the patient started experiencing right lower quadrant pain. An ultrasound found the fetus to be outside the uterine cavity. She was transferred to a hospital, Orlando Regional Medical Center, and underwent a supracervical hysterectomy and repair of a laceration.

12.    The delivered fetus was missing a portion of the lower left limb that was subsequently located at the EPOC Clinic. Because the Respondent did not advise the hospital that part of the fetus' lower limb had been removed, there were unnecessary delays during surgery trying to find the missing extremity and taking an additional x-ray to confirm that it was not inside the abdomen.

James S. Pendergraft, IV, MD, Case 2006-05930                                                3

_13677

13.     Respondent's apparent attempted Dilation and Extraction (D&E) for Patient S.B. was performed without sufficient dilation of the cervix and caused a cervical laceration. That may have lead to the uterine rupture. The removal of the fetal limb should not have been performed under the circumstances.

14.     The medical records lack adequate documentation of the removal of a portion of the fetal limb.

15.     Respondent fell below the standard of care when, knowing that he did not possess a current, valid DEA number, he nonetheless prescribed, ordered or administered controlled substances to Patient S.B.

16.     Respondent failed to keep adequate medical records that justified the course of treatment for Patient S.B.

### COUNT I

17.     Petitioner realleges and incorporates paragraphs one (1) through sixteen (16) as if fully set forth herein.

18.     Section 458.331(1)(m), Florida Statutes (2005), sets forth grounds for disciplinary action by the Board of Medicine for failing to keep legible medical records that justify the course of treatment, including, but not limited to, patient histories; examination results; test results; records of

James S. Pendergraft, IV, MD, Case 2006-05930                                    4

drugs prescribed, dispensed, or administered; and reports of consultations and hospitalizations.

19.   Respondent failed to keep legible medical records that justify the course of Patient S.B.'s medical treatment in one or more of the following ways:

A.   By failing to keep adequate medical records that justified the course of treatment for Patient S.B.;

B.   By failing to document why he ordered or administered one additional dosage Cytotec-200 µg two hours after a prior dosage;

C.   By apparently attempting a D&E without documenting or justifying the procedure;

D.   By inadequate documentation of the removal of a portion of the fetal limb.

20.   Based on the foregoing, Respondent has violated Section 458.331(1)(m), Florida Statutes (2005), by failing to keep legible medical records that justify the course of Patient S.B.'s medical treatment.

## COUNT II

21.   Petitioner realleges and incorporates paragraphs one (1) through sixteen (16) as if fully set forth herein.

22.   Section 458.331(1)(t)1, Florida Statutes (2005), provides that committing medical malpractice constitutes grounds for disciplinary action by the Board of Medicine. Medical Malpractice is defined in Section 456.50, Florida Statutes, to mean the failure to practice medicine in accordance with the level of care, skill, and treatment recognized in general law related to health care licensure. For purposes of Section 458.331(1)(t)1, Florida Statutes, the Board shall give great weight to the provisions of Section 766.102, Florida Statutes, which provide that the prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

23.   Respondent failed to practice medicine within the prevailing professional standard of care in one or more of the following ways:

James S. Pendergraft, IV, MD. Case 2006-05930

6

13680

A.   By having prescribed, ordered or administered controlled substances to Patient S.B. when he did not possess a current, valid DEA number;

B.   By ordering or administering one additional dosage of Cytotec-200 µg two hours after a prior dosage;

C.   By ordering or administering an excessive amount of Cytotec;

D.   By apparently attempting a D&E without sufficient dilation of the cervix;

E.   By causing a cervical laceration that may have lead to a uterine rupture;

F.   By removal of a portion of the fetal limb;

G.   By not advising the hospital that part of the fetus' lower limb had been removed causing unnecessary delays during surgery trying to find the missing extremity and the taking of an additional x-ray to confirm that it was not inside the abdomen.

H.   By the lack of adequate documentation of the removal of a portion of the fetal limb.

24.   Based on the foregoing, Respondent has violated Section 458.331(1)(t)1, Florida Statutes (2005), by committing medical malpractice by failing to practice medicine in accordance with the level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

### COUNT III

25.   Petitioner realleges and incorporates paragraphs one (1) through sixteen (16) as if fully set forth herein.

26.   Section 458.331(1)(q), Florida Statutes (2005), provides that prescribing, dispensing, administering, mixing, or otherwise preparing a legend drug, including any controlled substance, other than in the course of the physician's professional practice constitute grounds for disciplinary action by the Board of Medicine. For the purposes of this section, it shall be legally presumed that prescribing, dispensing, administering, mixing, or otherwise preparing legend drugs, including all controlled substances, inappropriately or in excessive or inappropriate quantities is not in the best interest of the patient and is not in the course of the physician's professional practice, without regard to his or her intent.

James S. Pendergraft, IV, MD, Case 2006-05930                                    8

27.   Respondent prescribed, dispensed, administered, mixed, or otherwise prepared a legend drug, including any controlled substance, other than in the course of the physician's professional practice in one or more of the following ways:

> A.   By having prescribed, ordered or administered controlled substances to Patient S.B. when he did not possess a current, valid DEA number;
>
> B.   By ordering or administering one additional dosage Cytotec-200 µg two hours after a prior dosage;
>
> C.   By ordering or administering an excessive amount of Cytotec.

28.   Based on the foregoing, Respondent violated Section 458.331(1)(q), Florida Statutes (2005), by prescribing, dispensing, administering, mixing, or otherwise preparing a legend drug, including any controlled substance, other than in the course of the physician's professional practice.  For the purposes of paragraph 458.331(1)(q), it shall be legally presumed that prescribing, dispensing, administering, mixing, or otherwise preparing a legend drug, including all controlled substances, inappropriately or in excessive or inappropriate quantities is not in the best

James S. Pendergraft, IV, MD, Case 2006-05930                    9

13683

interest of the patient and not in the course of the physician's professional practice, without regard to his or her intent.

WHEREFORE, the Petitioner respectfully requests that the Board of Medicine enter an order imposing one or more of the following penalties: permanent revocation or suspension of Respondent's license, restriction of practice, imposition of an administrative fine, issuance of a reprimand, placement of the Respondent on probation, corrective action, refund of fees billed or collected, remedial education and/or any other relief that the Board deems appropriate.

SIGNED this _11ᵈ_ day of _April_, 2008.

Ana M. Viamonte Ros, M.D., M.P.H.
State Surgeon General

By: Irving Levine
Assistant General Counsel
DOH-Prosecution Services Unit
4052 Bald Cypress Way-Bin C-65
Tallahassee, Florida 32399-3265
Florida Bar # 0822957
(850) 245-4640, ext 8128
(850) 245-4681 fax

**FILED**
DEPARTMENT OF HEALTH
DEPUTY CLERK
CLERK Rachel Rob
DATE 4·14·08

PCP: April 11, 2008

PCP Members: Ashkar, Lage and Beebe

James S. Pendergraft, IV, MD, Case 2006-05930

10

13684

## NOTICE OF RIGHTS

Respondent has the right to request a hearing to be conducted in accordance with Section 120.569 and 120.57, Florida Statutes, to be represented by counsel or other qualified representative, to present evidence and argument, to call and cross-examine witnesses and to have subpoena and subpoena duces tecum issued on his or her behalf if a hearing is requested.

## NOTICE REGARDING ASSESSMENT OF COSTS

Respondent is placed on notice that Petitioner has incurred costs related to the investigation and prosecution of this matter. Pursuant to Section 456.072(4), Florida Statutes, the Board shall assess costs related to the investigation and prosecution of a disciplinary matter, which may include attorney hours and costs, on the Respondent in addition any other discipline imposed.

James S. Pendergraft, IV, MD, Case 2006-05930

11

13685

STATE OF FLORIDA
DIVISION OF ADMINISTRATIVE HEARINGS

DEPARTMENT OF HEALTH, BOARD OF )
MEDICINE,                      )
                               )
        Petitioner,            )
                               )
vs.                            )    Case No. 08-4197PL
                               )
JAMES S. PENDERGRAFT, IV, M.D., )
                               )
        Respondent.            )
_____)

RECOMMENDED ORDER

A formal administrative hearing in this case was held on
May 20 and 21, 2009, in Orlando, Florida, and on July 10, 2009,
by video teleconference between Tallahassee and Orlando,
Florida, before William F. Quattlebaum, Administrative Law
Judge, Division of Administrative Hearings.

APPEARANCES

For Petitioner:   Greg S. Marr, Esquire
                  Department of Health
                  4052 Bald Cypress Way, Bin C-65
                  Tallahassee, Florida  32399-3265

For Respondent:   Kenneth J. Metzger, Esquire
                  Metzger, Grossman, Furlow & Bayo, LLC
                  1408 North Piedmont Way
                  Tallahassee, Florida  32308

13792

STATEMENT OF THE ISSUES

The issues in this case are whether the allegations of the Administrative Complaint are correct, and, if so, what penalty should be imposed.

PRELIMINARY STATEMENT

By Administrative Complaint dated April 11, 2008, the Department of Health (Petitioner) alleged that James S. Pendergraft, IV, M.D. (Respondent), violated Subsections 458.331(1)(m), 458.331(1)(t)1., and 458.331(1)(q), Florida Statutes (2005).

The Respondent disputed the allegations and requested a formal administrative hearing. By letter dated August 25, 2008, the Petitioner forwarded the matter to the Division of Administrative Hearings. The hearing was initially scheduled to commence on December 16, 2008; was twice continued at the request of the parties; and, thereafter, was scheduled for May 20 through 22, 2009. Inclement weather prevented the travel to Orlando of an out-of-state witness planned for May 22, 2009, and the hearing recessed and was completed by video teleconference on July 10, 2009.

At the hearing, the Petitioner presented the testimony of five witnesses and had Exhibits numbered 1 and 3 admitted into evidence. The Respondent testified on his own behalf, presented the testimony of two additional witnesses, and had Exhibits

2

numbered 1 through 3 admitted into evidence.  Joint Exhibits 1 through 5 were admitted into evidence.

On May 18, 2009, the Respondent filed a Motion to Dismiss related to certain allegations contained in the Administrative Complaint.  No response to the motion has been filed.  The motion has been granted as specifically addressed herein.

The Transcript of the proceedings held on May 20 and 21 was filed on June 26, 2009.  The Transcript of the July 10, 2009, proceedings was filed on August 17, 2009.  Both parties filed Proposed Recommended Orders that have been considered in the preparation of this Recommended Order.

## FINDINGS OF FACT

1.  The Petitioner is the state department charged with regulating the practice of medicine pursuant to Section 20.43 and Chapters 456 and 458, Florida Statutes (2005).

2.  At all times material to this case, the Respondent was a physician licensed by the State of Florida, holding license number 59702 and was board-certified in obstetrics and gynecology.  The Respondent owned, and practiced medicine at, EPOC Clinic, 609 Virginia Drive, Orlando, Florida.

3.  On December 19, 2005, Patient S.B. presented to the EPOC Clinic to inquire about terminating a pregnancy, but elected not to proceed with the termination at that time.

3

13794

4.   On February 3, 2006, S.B. returned to the EPOC Clinic,
having decided to terminate the pregnancy.  A sonogram was
performed, and S.B. was determined to be approximately 18 to 19
weeks gestation.  At that time, she executed consent forms for
pregnancy termination by medication, and dilation and extraction
(D&E).

5.   Patient S.B. had been pregnant three times previously
and had birthed three children, each delivered live by cesarean
section.

6.   The patient's pregnancy termination was scheduled to
commence on February 4, 2006, but S.B. was late in arriving at
the clinic, and the procedure was rescheduled for February 6,
2006.  The patient returned to the EPOC Clinic as rescheduled.

7.   While at the EPOC Clinic on February 6 and 7, 2006,
S.B. received medical care and treatment primarily from the
Respondent and from Carmita Etienne, a medical assistant working
at the clinic.

8.   The termination was initiated with the use of
"Cytotec," a drug that causes cervical dilation and uterine
contractions, and which generally results in passage of the
fetus into the vaginal vault.

9.   Cytotec is commonly used in medication-based pregnancy
termination.  It is known to increase the potential for uterine

4

13795

rupture during labor and delivery, the risk for which is noted within the relevant consent documents executed by the patient.

10.   Cytotec tablets, in 200 microgram dosages, were administered orally to the patient by the Respondent's medical assistant.

11.   S.B. received 200 micrograms of Cytotec at 10:00 a.m. on February 6, 2006, and received the same dosage at four-hour intervals through 10:00 a.m. on February 7, 2006, at which time the patient's cervix remained undilated.

12.   The Respondent thereafter escalated the frequency of the Cytotec to every two hours, and the drug was administered two additional times on February 7, 2006, at noon and 2:00 p.m.

13.   According to progress notes contained in the medical records, S.B. complained of discomfort on February 6, 2006, at 7:45 p.m. and on February 7, 2006, at 3:00 a.m.

14.   Discomfort or pain is a typical element of labor, and S.B.'s discomfort was not unexpected.

15.   Demerol, a controlled substance, is routinely used to relieve pain during medical procedures, including pregnancy terminations.

16.   The medical assistant relayed S.B.'s reports of discomfort to the Respondent.

17.   The Respondent ordered Demerol on both occasions to relieve S.B.'s pain.

5

13796

18. A physician must be properly registered with the U.S. Drug Enforcement Administration (DEA) to order the administration of Demerol to a patient.

19. The Respondent was not properly registered with the DEA on February 6 or 7, 2006.

20. At the hearing, the Respondent denied that he ordered the Demerol. He testified that he was serving as a conduit between his medical assistant and another physician, Dr. Harry Perper, who also worked at the clinic and who was apparently properly registered with the DEA. The Respondent's testimony on this issue was not persuasive and has been rejected.

21. The evidence failed to establish that Dr. Perper ordered the administration of Demerol to the patient or that the Respondent merely relayed such orders from Dr. Perper to the medical assistant.

22. The Respondent asserted that he had not been registered with the DEA since 2002 and that everyone at the clinic knew he could not order controlled substances.

23. The patient's progress notes, created contemporaneously with the patient's treatment at the clinic, explicitly state that the orders for Demerol came from the Respondent.

24. The medical assistant who created the progress notes testified that she preferred talking to the Respondent rather

6

13797

than Dr. Perper and that the directions she received for the patient's Demerol came from the Respondent.

25.   The Respondent's assertion that he did not order the Demerol was not credible and has been rejected.

26.   The Demerol was administered by the medical assistant through injection of the medication into S.B.'s buttocks, and the patient's pain was reduced.

27.   The medical assistant denied that she personally administered the Demerol to the patient.  Her denial was not credible and has been rejected.

28.   The progress notes also state that the patient complained of "right side" pain at 3:00 p.m. on February 7, 2006.

29.   At approximately 3:45 p.m. on February 7, 2006, the patient was apparently examined by Dr. Perper, who wrote "SROM" in the progress notes, signifying that a "spontaneous rupture of membranes" had occurred and indicating that the patient's "water had broken."  He also documented his observation that a fetal part was protruding from the cervix into the vagina.

30.   By that evening, the patient's termination was not completed.  At approximately 7:00 p.m. on February 7, 2006, the medical assistant moved the patient into a procedure room at the Respondent's direction.

7

31.  The instruments to perform a D&E were present in the procedure room.  The Respondent began to perform an examination of S.B. to assess the situation and determine whether the termination procedure should be completed by D&E.

32.  The Respondent utilized a speculum to open the patient's vagina and performed a sonogram on the patient's abdomen to identify the location of the fetus.  The fetus was observed to be within S.B.'s uterus.

33.  The Respondent observed a fetal part protruding through the cervical os into the vagina.  In order to examine the extent of cervical dilation, he detached the part from the fetus by grasping the part with a "Hearn" instrument and twisting the instrument.  After he detached the part, he withdrew the instrument and the part from the patient.

34.  The Petitioner alleged that the Respondent "apparently" attempted a D&E.  The evidence failed to support the allegation.  The evidence failed to establish that the Respondent pulled on the exposed fetal part in an attempt to extract the fetus from the uterus.

35.  The evidence failed to establish that the Respondent inserted the Hearn or any other instrument into the patient's cervix or uterus.

36.  After removing the fetal part from the vagina, the Respondent placed the part on a tray.  Almost immediately

8

13799

thereafter, the Respondent's reviewed the ultrasound image and observed that the image indicated the fetus was no longer fully contained within the uterus.

37.  The Respondent understood that the ultrasound image indicated a potential uterine perforation or rupture and, appropriately, concluded that the situation could be life-threatening for the patient.

38.  He quickly contacted the Arnold Palmer Hospital to arrange for emergency transfer of S.B. to the hospital.  The Respondent also spoke to two practitioners at the hospital.

39.  Initially, he spoke by telephone to Dr. Pamela Cates, a resident physician at the hospital.  Dr. Cates did not have the authority to admit the patient to the hospital and directed the Respondent to talk to Dr. Norman Lamberty, the "Ob/Gyn" physician on call and present at the hospital.

40.  The Respondent spoke by telephone to Dr. Lamberty, who agreed to accept the transfer of the patient from the clinic to the hospital.

41.  The Respondent failed to inform either Dr. Cates or Dr. Lamberty that he had removed a portion of the fetus from the patient at the clinic.

42.  While waiting for an ambulance to arrive to transport the patient, the Respondent wrote a note to be transported to the hospital with the patient.  Although in the note he

9

13800

documented the treatment provided to the patient at the clinic, he failed to include the removal of the fetal part in the note.

43.   The Respondent testified that he did not document his removal of the fetal part because he did not believe it was significant to the medical care the patient would receive at the hospital.

44.   S.B. was transported to the hospital along with some of her medical records from the clinic and the Respondent's handwritten note.   None of the documentation indicated that a part of the fetus had been removed at the clinic.

45.   After S.B. arrived at the hospital, Dr. Lamberty removed the fetus and completed the abortion procedure.

46.   Dr. Lamberty also repaired a cervical laceration and performed a hysterectomy.   He noted that the uterine rupture occurred on the patient's right side and that the fetus was located not "floating" in the abdomen but "between two layers of tissue on the right side of the pelvis."

47.   The evidence failed to establish that the cervical laceration occurred while the patient was at the clinic or that it was caused by treatment the patient received at the clinic.

48.   Upon removing the fetus, Dr. Lamberty observed that the fetus was incomplete and that a portion of the fetal leg was missing.   Dr. Lamberty began efforts to locate the missing part, which he reasonably presumed remained in the patient.

10

13801

49.  Dr. Lamberty's concern regarding the missing part was that potential exposure of the part to the patient's vagina would have contaminated the part with bacteria and that a risk of infection would be presented by leaving the part within the patient's pelvis or abdomen.

50.  Dr. Lamberty was unable to locate the missing part, and, thereafter, radiological studies, including X-rays and a CT scan, were performed in an unsuccessful attempt to locate the part.

51.  The patient remained hospitalized and on February 10, 2006, a second surgical procedure was performed on the patient, this time to remove a "Jackson-Pratt" drain that had been improperly sutured into the patient's abdomen at the time of the hysterectomy.  The second surgery was unrelated to the search for the missing part.

52.  Also on February 10, 2006, the hospital contacted the clinic to inquire as to the missing part and was advised that the part had been removed by the Respondent at the clinic.

<u>CONCLUSIONS OF LAW</u>

53.  The Division of Administrative Hearings has jurisdiction over the parties to and the subject matter of this proceeding.  §§ 120.569 and 120.57, Fla. Stat. (2009).

11

**13802**

54.   The Respondent is the state agency charged with regulating the practice of medicine.   § 20.43 and Chapters 456 and 458, Fla. Stat. (2005).

55.   The Administrative Complaint charged the Respondent with violations of Subsection 458.331(1), Florida Statutes (2005), which provides in relevant part as follows:

> (1)   The following acts constitute grounds for denial of a license or disciplinary action, as specified in s. 456.072(2):
>
> *     *     *
>
> (m)   Failing to keep legible, as defined by department rule in consultation with the board, medical records that identify the licensed physician or the physician extender and supervising physician by name and professional title who is or are responsible for rendering, ordering, supervising, or billing for each diagnostic or treatment procedure and that justify the course of treatment of the patient, including, but not limited to, patient histories; examination results; test results; records of drugs prescribed, dispensed, or administered; and reports of consultations and hospitalizations.
>
> *     *     *
>
> (q)   Prescribing, dispensing, administering, mixing, or otherwise preparing a legend drug, including any controlled substance, other than in the course of the physician's professional practice.   For the purposes of this paragraph, it shall be legally presumed that prescribing, dispensing, administering, mixing, or otherwise preparing legend drugs, including all controlled substances, inappropriately or in excessive or inappropriate quantities is not in the best

12

13803

interest of the patient and is not in the
course of the physician's professional
practice, without regard to his or her
intent.

\*      \*      \*

(t)  Notwithstanding s. 456.072(2) but as
specified in s. 456.50(2):

1.  Committing medical malpractice as
defined in s. 456.50.  The board shall give
great weight to the provisions of s. 766.102
when enforcing this paragraph.  Medical
malpractice shall not be construed to
require more than one instance, event, or
act.

\*      \*      \*

Nothing in this paragraph shall be construed
to require that a physician be incompetent
to practice medicine in order to be
disciplined pursuant to this paragraph.  A
recommended order by an administrative law
judge or a final order of the board finding
a violation under this paragraph shall
specify whether the licensee was found to
have committed "gross medical malpractice,"
"repeated medical malpractice," or "medical
malpractice," or any combination thereof,
and· any publication by the board must so
specify.

56.  Subsection 456.50(1)(g), Florida Statutes (2005),

defines medical malpractice as follows:

"Medical malpractice" means the failure to
practice medicine in accordance with the
level of care, skill, and treatment
recognized in general law related to health
care licensure.  Only for the purpose of
finding repeated medical malpractice
pursuant to this section, any similar
wrongful act, neglect, or default committed
in another state or country which, if

13

> committed in this state, would have been
> considered medical malpractice as defined in
> this paragraph, shall be considered medical
> malpractice if the standard of care and
> burden of proof applied in the other state
> or country equaled or exceeded that used in
> this state.

57.  Subsection 458.305(3), Florida Statutes (2005),
defines the "practice of medicine" as "the diagnosis, treatment,
operation, or prescription for any human disease, pain, injury,
deformity, or other physical or mental condition."

58.  The Petitioner has the burden of proving by clear and
convincing evidence the allegations set forth in the
Administrative Complaint against the Respondent.  Department of
Banking and Finance v. Osborne Stern and Company, 670 So. 2d
932, 935 (Fla. 1996); Ferris v. Turlington, 510 So. 2d 292 (Fla.
1987).

59.  Clear and convincing evidence is that which is
credible, precise, explicit, and lacking confusion as to the
facts at issue.  The evidence must be of such weight that it
produces in the mind of the trier of fact the firm belief of
conviction, without hesitancy, as to the truth of the
allegations.  Slomowitz v. Walker, 429 So. 2d 797, 800 (Fla. 4th
DCA 1983).

60.  Count I of the Administrative Complaint alleged
various violations of Subsection 458.331(1)(m), Florida Statutes

14

13805

(2005), which essentially requires a physician to keep medical records documenting and justifying the course of treatment.

61.  The evidence established that, by failing to document the removal of a portion of a fetal limb, the Respondent clearly failed to keep legible medical records justifying the course of treatment in violation of Subsection 458.331(1)(m), Florida Statutes (2005).

62.  The Administrative Complaint alleged that the Respondent's failure to document a D&E constitutes a violation of Subsection 458.331(1)(m), Florida Statutes (2005). The evidence failed to establish that the Respondent attempted to perform a D&E; accordingly, the Respondent had no obligation to document such a procedure.

63.  The Administrative Complaint alleged that the medical records were insufficient to set forth a rationale and justification for the increased frequency of Cytotec administration thereby violating Subsection 458.331(1)(m), Florida Statutes (2005). The evidence establishes that the patient's medical records sufficiently indicated that the increased frequency of administration was based on a lack of cervical dilation 24 hours after initial commencement of drug therapy.

64.  Count II of the Administrative Complaint alleged that the Respondent committed medical malpractice in violation of

15

13806

Subsection 458.331(1)(t)1., Florida Statutes (2005), by failing
to practice medicine in accordance with the level of care,
skill, and treatment that, in light of all relevant surrounding
circumstances, is recognized as acceptable and appropriate by
reasonably prudent similar health care providers.  Specifically,
the Petitioner alleged that the Respondent committed medical
malpractice in violation of Subsection 458.331(1)(t)1., Florida
Statutes (2005), as follows:

> A.  By having prescribed, ordered or
> administered controlled substances to
> patient S.B. when he did not possess a
> current, valid DEA number;
>
> B.  By ordering or administering one
> additional dosage of Cytotec two hours after
> a prior dosage;
>
> C.  By ordering or administering an
> excessive amount of Cytotec;
>
> D.  By apparently attempting a D&E without
> sufficient dilation of the cervix;
>
> E.  By causing a cervical laceration that
> may have lead to a uterine rupture;
>
> F.  By removal of a portion of the fetal
> limb;
>
> G.  By not advising the hospital that part
> of the fetus' lower limb had been removed
> causing unnecessary delays during surgery
> trying to find the missing extremity and the
> taking of an additional x-ray to confirm
> that it was not inside the abdomen;
>
> H.  By the lack of adequate documentation of
> the removal of a portion of the fetal limb.

13807

65.   The federal Controlled Substances Act obligates practitioners engaged in prescribing, ordering, administering or dispensing controlled substances to be registered with the DEA. The Respondent was not registered with the DEA on February 6 or 7, 2006.

66.   The Respondent offered the testimony of Pharmacist Jose Rey, who asserted that there was no proper order issued for Demerol in this case.  The evidence established that the Respondent ordered the Demerol that was administered to the patient and that the Respondent was not properly registered with the DEA to order the medication.  Mr. Rey's testimony has been rejected.

67.   The Petitioner presented the expert testimony of Dr. Jorge Gomez, who opined that a physician who was not properly registered with the DEA would breach the standard of care and commit medical malpractice by ordering the administration of a controlled substance in violation of Subsection 458.331(1)(t)1., Florida Statutes (2005).

68.   The Respondent asserted that such a practice would not constitute medical malpractice and offered the expert testimony of Dr. Steven Warsof, who opined that a physician who failed to provide pain-relieving medication to a patient in need would have breached the standard of care.

17

69.  As referenced in the Preliminary Statement to this Recommended Order, the Respondent filed a Motion to Dismiss immediately prior to commencement of the hearing, wherein the Respondent asserted that the charge of medical malpractice under Subsection 458.331(1)(t)1., Florida Statutes (2005), was improper.  The Respondent observed that the Petitioner did not charge the Respondent with a violation of Subsection 458.331(1)(g), Florida Statutes (2005), which provides that a failure "to perform any statutory or legal obligation placed upon a licensed physician" is grounds for discipline.  The argument was further addressed in the Respondent's Proposed Recommended Order.

70.  As noted by the Respondent, in Barr v. Dep't of Health, Bd. of Dentistry, 954 So. 2d 668 (Fla. Dist. Ct. App. 1st Dist. 2007), the court rejected the Department of Health position that a "particularly egregious" recordkeeping violation could also constitute a breach of a standard of care for purposes of disciplinary proceedings, stating that to do so would render the statutory recordkeeping requirement "useless" as grounds for discipline.  The same reasoning would suggest that an allegation that a licensee's failure to comply with a legal obligation (in this case, the Respondent's lack of DEA registration) could constitute medical malpractice.

18

71. The Petitioner has filed no response to the Motion to Dismiss and did not directly address the matter in its Proposed Recommended Order.

72. The Motion to Dismiss is hereby granted, as to the allegation that the Respondent's ordering Demerol for the patient without proper DEA registration constituted a violation of Subsection 458.331(1)(t), Florida Statutes (2005).

73. The Petitioner alleged that the Respondent's use of Cytotec was a breach of the applicable standard of care. Dr. Gomez opined that the administration of Cytotec every two hours, as occurred twice in this case, was excessive and a breach of the standard of care for this patient. Dr. Gomez also uses Cytotec but prescribes a dosage of 400 micrograms at six-hour intervals administered vaginally. Dr. Warsof testified that the progress of labor was very slow in this case and that it was not inappropriate to increase the frequency of Cytotec to induce labor. Dr. Warsof's testimony has been credited.

74. The evidence failed to establish that the Respondent's use of Cytotec in this case, either by dosage or frequency, was inappropriate or was a breach of the standard of care.

75. The evidence failed to establish that the Respondent attempted to terminate the pregnancy through a D&E.

76. The evidence failed to establish that the Respondent caused a cervical laceration.

19

13810

77. The evidence failed to establish that the Respondent's removal of the portion of the fetal limb constituted medical malpractice.

78. As charged in the Administrative Complaint, the Respondent's failure to advise the hospital's physicians during the telephone conversations that a portion of the patient's fetus had been removed at the Respondent's clinic breached the standard of care and constituted medical malpractice.

79. The Respondent asserted that the missing part did not pose a serious risk to the patient. Dr. Warsof opined that the risk of infection would have been addressed through the use of antibiotics that would have been administered to the patient. He testified that the hospital's inability to locate the missing part was of little consequence and should not have impacted the management of the patient in the hospital. Dr. Gomez opined that the Respondent's failure to inform the receiving hospital to which the patient was transferred that a fetal part had been removed at the clinic was a breach of the standard of care as set forth herein. Dr. Gomez's testimony was persuasive and has been credited. Dr. Warsof's testimony was not persuasive and has been rejected.

80. The evidence established that the medical care provided to the patient at the hospital was directly affected by the Respondent's failure to advise the hospital that the missing

20

13811

part had been removed at the clinic.  Had the hospital been advised that a fetal part had been removed at the clinic, the radiological tests performed during the attempt to locate the part would have been unnecessary, although other tests directly related to the sutured drain and second surgery would have been required.

81.  The hospital eventually discovered that the Respondent had removed the fetal part at the clinic when the hospital contacted the clinic on February 10, 2006.  The Respondent asserted that, had the hospital inquired of the clinic at an earlier time, the hospital would have learned that the missing part had been removed from the patient's vagina while she was at the clinic.

82.  It was the Respondent's obligation to advise the hospital of the events occurring at the clinic, and the implication that the hospital should have contacted the clinic to track down the missing part has been rejected.  There is no credible evidence that the hospital personnel erred in their attempt to locate the missing fetal part.

83.  In the Motion to Dismiss, the Respondent asserted that the alleged failure to adequately document the removal of the portion of the fetal limb, charged as a recordkeeping violation under Subsection 458.331(1)(m), Florida Statutes (2005), was inappropriately charged as medical malpractice under Subsection

21

458.331(1)(t), Florida Statutes (2005).  The assertion was re-
addressed in the Respondent's Proposed Recommended Order.

84.  As stated previously, in the Barr decision, the court
rejected the position that the "particularly egregious"
recordkeeping violation could also constitute a breach of a
standard of care in a disciplinary proceeding.  This was
specifically what was charged in the Administrative Complaint in
this case.  The Petitioner filed no response to the Motion to
Dismiss and did not directly address the matter in its Proposed
Recommended Order.  The Motion to Dismiss is hereby granted as
to the allegation that the Respondent's recordkeeping
constituted a violation of Subsection 458.331(1)(t), Florida
Statutes (2005).

85.  Count III of the Administrative Complaint alleged that
the Respondent committed medical malpractice in violation of
Subsection 458.331(1)(q), Florida Statutes (2005), by
"prescribing, dispensing, administering, mixing, or otherwise
preparing a legend drug, including any controlled substance,
other than in the course of the physician's professional
practice."  Specifically, the Petitioner alleged that the
Respondent violated Subsection 458.331(1)(q), Florida Statutes
(2005), by ordering Demerol without proper DEA registration and
through the administration of "excessive" Cytotec.

22

13813

86. The evidence failed to establish that the Respondent's use of Cytotec and Demerol occurred "other than in the course of" the Respondent's professional practice, or that such use otherwise constituted medical malpractice under Subsection 458.331(1)(q), Florida Statutes (2005).

87. Florida Administrative Code Rule 64B8-8.001 sets forth the disciplinary guidelines applicable to the statutory violations relevant to this proceeding.

88. Florida Administrative Code Rule 64B8-8.001(2) provides that the penalty for a first offense of Subsection 458.331(1)(m), Florida Statutes, ranges from a reprimand to denial or two years' suspension followed by probation, and an administrative fine from $1,000.00 to $10,000.00.

89. Florida Administrative Code Rule 64B8-8.001(2) provides that the penalty for a first offense of Subsection 458.331(1)(t), Florida Statutes, ranges from a two-year probation to revocation or denial and an administrative fine from $1,000.00 to $10,000.00.

90. Florida Administrative Code Rule 64B8-8.001(3) provides as follows:

> Aggravating and Mitigating Circumstances.
>
> Based upon consideration of aggravating and mitigating factors present in an individual case, the Board may deviate from the penalties recommended above. The Board

23

shall consider as aggravating or mitigating factors the following:

(a)  <u>Exposure of patient or public to injury or potential injury, physical or otherwise: none, slight, severe, or death;</u>

(b)  Legal status at the time of the offense: no restraints, or legal constraints;

(c)  The number of counts or separate offenses established;

(d)  The number of times the same offense or offenses have previously been committed by the licensee or applicant;

(e)  The disciplinary history of the applicant or licensee in any jurisdiction and the length of practice;

(f)  Pecuniary benefit or self-gain inuring to the applicant or licensee;

(g)  The involvement in any violation of Section 458.331, F.S., of the provision of controlled substances for trade, barter or sale, by a licensee.  In such cases, the Board will deviate from the penalties recommended above and impose suspension or revocation of licensure.

(h)  Where a licensee has been charged with violating the standard of care pursuant to Section 458.331(1)(t), F.S., but the licensee, who is also the records owner pursuant to Section 456.057(1), F.S., fails to keep and/or produce the medical records.

(i)  Any other relevant mitigating factors. (Emphasis supplied)

91.  The failure to notify hospital personnel that a fetal part was removed while the patient was at the clinic adversely

13815

impacted the medical care the patient received at the hospital
and has been considered as an aggravating factor.

92.   The Respondent was the subject of a prior disciplinary
proceeding which resulted in an imposition of discipline against
the Respondent's license; however, the Final Order entered in
that case has been appealed and is not yet final.   The prior
disciplinary case has not been considered in rendering the
recommended penalty set forth herein.

<u>RECOMMENDATION</u>

Based on the foregoing Findings of Fact and Conclusions of
Law, it is RECOMMENDED that the Department of Health enter a
final order finding James S. Pendergraft IV, M.D., in violation
of Subsections 458.331(1)(m) and 458.331(1)(t), Florida Statutes
(2005), and imposing a penalty as follows:   a two-year period of
suspension followed by a three-year period of probation and an
administrative fine of $20,000.00.

25

**13816**

DONE AND ENTERED this 21st day of September, 2009, in Tallahassee, Leon County, Florida.

William F. Quattlebaum
_____
WILLIAM F. QUATTLEBAUM
Administrative Law Judge
Division of Administrative Hearings
The DeSoto Building
1230 Apalachee Parkway
Tallahassee, Florida  32399-3060
(850) 488-9675
Fax Filing (850) 921-6847
www.doah.state.fl.us

Filed with the Clerk of the
Division of Administrative Hearings
this 21st day of September, 2009.

COPIES FURNISHED:

Greg S. Marr, Esquire
Department of Health
4052 Bald Cypress Way, Bin C-65
Tallahassee, Florida  32399-3265

Kenneth J. Metzger, Esquire
Metzger, Grossman, Furlow & Bayo, LLC
1408 North Piedmont Way
Tallahassee, Florida  32308

Kathryn L. Kasprzak, Esquire
Fowler White Boggs Banker, P.A.
200 South Orange Avenue, Suite 1950
Orlando, Florida  32801

Josefina M. Tamayo, General Counsel
Department of Health
4052 Bald Cypress Way, Bin A-02
Tallahassee, Florida  32399-1701

26

13817

Larry McPherson, Executive Director
Board of Medicine
Department of Health
4052 Bald Cypress Way
Tallahassee, Florida  32399-1701

## NOTICE OF RIGHT TO SUBMIT EXCEPTIONS

All parties have the right to submit written exceptions within
15 days from the date of this Recommended Order.  Any exceptions
to this Recommended Order should be filed with the agency that
will issue the Final Order in this case.

13818

**STATE OF FLORIDA**
**DEPARTMENT OF HEALTH**

FILED
DEPARTMENT OF HEALTH
DEPUTY CLERK
CLERK: Angela Barton
DATE____10|16|09____

**DEPARTMENT OF HEALTH,**

    **PETITIONER,**

**v.**                **CASE NO.: 2006-05930**

**JAMES S. PENDERGRAFT, IV, M.D.,**

    **RESPONDENT.**
_____/

## PETITIONER'S EXCEPTIONS TO THE RECOMMENDED ORDER

Petitioner, Department of Health (Department), pursuant to section 120.57(1), Florida Statutes, and Florida Administrative Code Rule 28-106.217, files the following Exceptions to the Recommended Order issued by Administrative Law Judge (ALJ) William F. Quattlebaum on September 21, 2009, and in support thereof, states as follows:

### STANDARD OF REVIEW

Section 120.57(1)(l), Florida Statutes (2009), outlines the reviewing authority of a professional licensing board when reviewing an ALJ's recommended order:

> The agency may adopt the recommended order as the final order of the

13762

agency. The agency in its final order may reject or modify the conclusions of law over which it has substantive jurisdiction and interpretation of administrative rules over which it has substantive jurisdiction. <u>When rejecting or modifying such conclusion of law</u> or interpretation of administrative rule, <u>the agency must state with particularity its reasons for rejecting or modifying such conclusion of law</u> or interpretation of administrative rule <u>and must make a finding that its substituted conclusion of law or interpretation of agency rule is as or more reasonable than that which was rejected or modified</u>. Rejection or modification of conclusions of law may not form the basis for rejection or modification of findings of fact. The agency may not reject or modify the findings of fact unless the agency first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law. The agency may accept the recommended penalty in a recommended order, but may not reduce or increase it without a review of the complete record and without stating with particularity its reasons therefor in the order, by citing to the record in justifying the action.

<u>Id.</u> (emphasis added).

The Department takes exception to four conclusions of law.

Therefore, in reviewing the ALJ's conclusion of law the Board of

2

Medicine (Board) may reject or modify the conclusion of law over

which it has substantive jurisdiction. The Board's substituted

conclusion of law must be as or more reasonable than the ALJ's

conclusion of law. See § 120.57(1)(l), Fla. Stat. (2009); Miles v.

Florida A and M University, 813 So. 2d 242, 245 (Fla. 1st DCA 2002);

Barfield v. Dep't of Health, 805 So. 2d 1008, 1010-11 (Fla. 1st DCA

2001).

## FIRST EXCEPTION TO CONCLUSION OF LAW

1. The Department takes exception to the Conclusion of Law

in paragraph 70 on page 18 of the Recommended Order. Paragraph

70 reads as follows:

> 70. As noted by the Respondent, in Barr v. Dep't of Health, Bd. of Dentistry, 954 So. 2d 668 (Fla. Dist. Ct. App. 1st Dist. 2007), the court rejected the Department of Health['s] position that a "particularly egregious" recordkeeping violation could also constitute a breach of a standard of care for purposes of disciplinary proceedings, stating that to do so would render the statutory recordkeeping requirement "useless" as grounds for discipline. The same reasoning would suggest that an allegation that a licensee's failure to comply with a legal obligation (in this case, the Respondent's lack of a DEA registration) could constitute medical malpractice.

3

(Recommended Order.18)

2.    The following language should be substituted for paragraph 70 of the Recommended Order in its entirety:

> 70.   In Barr v. Dep't of Health, Bd. of Dentistry, 954 So. 2d 668 (Fla. 1st DCA 2007), the court rejected the Department of Health's position that a "particularly egregious" recordkeeping violation could also constitute a breach of a standard of care for purposes of disciplinary proceedings, stating that to do so would render the statutory recordkeeping requirement "useless" as grounds for discipline. Respondent argues that the same reasoning would suggest that an allegation that a licensee's failure to comply with a legal obligation (in this case, the Respondent's lack of a DEA registration) could constitute medical malpractice. The Board rejects this interpretation as a matter of law. Ordering a controlled substance without proper DEA registration is not similar to a recordkeeping violation.

## SECOND EXCEPTION TO CONCLUSION OF LAW

3.    The Department takes exception to the Conclusion of Law in paragraph 72 on page 19 of the Recommended Order. Paragraph 72 reads as follows:

> 72. The Motion to Dismiss is hereby granted, as to the allegation that the Respondent's ordering Demerol for the patient

4

without proper DEA registration constituted a violation of subsection 458.331(1)(t), Florida Statutes (2005).

(Recommended Order.19)

4.    The following language should be substituted for paragraph 72 of the Recommended Order in its entirety:

72.    The Motion to Dismiss is hereby denied, as to the allegation that the Respondent's ordering Demerol for the patient without proper DEA registration constituted a violation of subsection 458.331(1)(t), Florida Statutes (2005). As a matter of law, the Board finds that ordering Demerol without a valid DEA registration is a violation of section 458.331(1)(t)(1.), Florida Statutes. As a matter of law, a physician can never order a controlled substance in his or her professional practice without the proper DEA registration. The reasoning in Barr is not applicable here. Including this violation in subsection 458.331(1)(t), Florida Statutes, does not render subsection 458.331(1)(g) useless.

Facts and law supporting first and second exceptions [1]

5.    The ALJ made the following findings of fact regarding Respondent ordering Demerol for the patient:

15.    Demerol, a controlled substance, is routinely used to relieve pain during

---

[1] These exceptions are addressed together because they address the same substantive issue and the same facts and law support the change for both paragraphs.

5

13766

medical procedures, including pregnancy terminations.

16. The medical assistant relayed S.B.'s reports of discomfort to the Respondent.

17. The Respondent ordered Demerol on both occasions to relieve S.B.'s pain.

18. A physician must be properly registered with the U.S. Drug Enforcement Administration (DEA) to order the administration of Demerol to a patient.

19. The Respondent was not properly registered with the DEA on February 6 or 7, 2006.

20. At the hearing, the Respondent denied that he ordered the Demerol. He testified that he was serving as a conduit between his medical assistant and another physician, Dr. Harry Perper, who also worked at the clinic and who was apparently properly registered with the DEA. The Respondent's testimony on this issue is not persuasive and has been rejected.

21. The evidence failed to establish that Dr. Perper ordered the administration of Demerol to the patient or that the Respondent merely relayed such orders from Dr. Perper to the medical assistant.

22. The Respondent asserted that he had not been registered with the DEA since

6

2002 and that everyone at the clinic knew he could not order controlled substances.

23. The patient's progress notes, created contemporaneously with the patient's treatment at the clinic, explicitly state that the orders for Demerol came from the Respondent.

24. The medical assistant who created the progress notes testified that she preferred talking to the Respondent rather than Dr. Perper and that the directions she received for the patient's Demerol came from the Respondent.

25. The Respondent's assertion that he did not order the Demerol was not credible and has been rejected.

26. The Demerol was administered by the medical assistant through injection of the medication into S.B.'s buttocks, and the patient's pain was reduced.

27. The medical assistant denied that she personally administered the Demerol to the patient. Her denial was not credible and has been rejected.

(Recommended Order.5-7)

6. The ALJ made the following conclusions of law regarding the Respondent ordering Demerol:

65. The federal Controlled Substances Act obligates practitioners engaged in

7

13768

prescribing, ordering, administering or dispensing controlled substances to be registered with the DEA. The Respondent was not registered with the DEA on February 6 or 7, 2006.

66. The Respondent offered the testimony of Pharmacist Jose Rey, who asserted that there was no proper order issued for Demerol in this case. The evidence established that the Respondent ordered the Demerol that was administered to the patient and that the Respondent was not properly registered with the DEA to order the medication. Mr. Rey's testimony has been rejected.

67. The Petitioner presented the expert testimony of Dr. Jorge Gomez, who opined that a physician who was not properly registered with the DEA would breach the standard of care and commit medical malpractice by ordering the administration of a controlled substance in violation of Subsection 458.331(1)(t)(1.), Florida Statutes (2005).

68. The Respondent asserted that such a practice would not constitute medical malpractice and offered the expert testimony of Dr. Steven Warsof, who opined that a physician who failed to provide pain-relieving medication to a patient in need would have breached the standard of care.

69. As referenced in the Preliminary Statement to this Recommended Order, the Respondent filed a Motion to Dismiss

8

13769

immediately prior to the commencement of the hearing, wherein the Respondent asserted that the charge of medical malpractice under subsection 458.331(1)(t)(1.), Florida Statutes (2005), was improper. The Respondent observed that the Petitioner did not charge the Respondent with a violation of Subsection 458.331(1)(g), Florida Statutes (2005), which provides that a failure "to perform any statutory or legal obligation placed upon a licensed physician" is grounds for discipline. The argument was further addressed in the Respondent's Proposed Recommended Order.

70.   As noted by the Respondent, in Barr v. Dep't of Health, Bd. of Dentistry, 954 So. 2d 668 (Fla. Dist. Ct. App. 1st Dist. 2007), the court rejected the Department of Health['s] position that a "particularly egregious" recordkeeping violation could also constitute a breach of a standard of care for purposes of disciplinary proceedings, stating that to do so would render the statutory recordkeeping requirement "useless" as grounds for discipline. The same reasoning would suggest that an allegation that a licensee's failure to comply with a legal obligation (in this case, the Respondent's lack of a DEA registration) could constitute medical malpractice.

71.   The Petitioner has filed no response to the Motion to Dismiss and did not directly address the matter in its Proposed Recommended Order.

72.   The Motion to Dismiss is hereby granted, as to the allegation that the

9

> Respondent's ordering Demerol for the patient without proper DEA registration constituted a violation of subsection 458.331(1)(t), Florida Statutes (2005).

(Recommended Order.17-19)

7.    The relevant statute at issue here is section 458.331(1)(t)(1.), Florida Statutes, which provides the following ground for discipline:

> Notwithstanding s. 456.072(2) but as specified in s. 456.50(2):
>
> 1. Committing medical malpractice as defined in s. 456.50. The board shall give great weight to the provisions of s. 766.102 when enforcing this paragraph. Medical malpractice shall not be construed to require more than one instance, event, or act.

8.    Section 456.50(1), Florida Statutes (2005), defines "level of care, skill and treatment recognized in general law related to health care licensure" and "medical malpractice":

> (e) "Level of care, skill, and treatment recognized in general law related to health care licensure" means the standard of care specified in s. 766.102.
>
> . . . .
>
> (g) "Medical malpractice" means the failure to practice medicine in accordance with the level of care, skill,

10

> and treatment recognized in general law
> related to health care licensure. . .

9.      Section 766.102(1), Florida Statutes (2005), defines the

level of level of care, skill and treatment recognized in general law

related to health care licensure as follows:

> The prevailing professional standard of care
> for a given health care provider shall be that
> level of care, skill, and treatment which, in
> light    of    all    relevant    surrounding
> circumstances, is recognized as acceptable
> and appropriate by reasonably prudent similar
> health care providers.

10.     The Administrative Complaint alleged that Respondent

violated section 458.331(1)(t), Florida Statutes, by, inter alia, the

following:

> A.      By having prescribed, ordered or
> administered controlled substances to Patient
> S.B. when he did not possess a current, valid
> DEA number;

(Administrative Complaint.7)

11.     The ALJ found that a physician must be properly

registered with the DEA to order the administration of Demerol to a

patient, the Respondent did not have a valid DEA registration, the

Respondent ordered Demerol be administered to the patient, and the

11

13772

Demerol was administered to the patient. (Recommended Order.5-7)
Despite these findings, the ALJ found that these actions did not
constitute medical malpractice in violation of section 458.331(1)(t),
Florida Statutes, relying on the ruling in Barr v. Department of
Health, Board of Dentistry, 954 So. 2d 668 (Fla. 1st DCA 2007).

  12. In Barr, however, the issue was significantly different. In
Barr, a dentist had been charged with violating the relevant standard
of care provision by falling below the standard of care in his
treatment of a root canal and in his documentation of the care he
provided. Id. at 668. The ALJ found that the dentist met or exceeded
the standard of care in the treatment of his root canal; however, he
violated the applicable standard of care statute by failing to maintain
adequate records associated with the treatment. See id. In reversing
a final order accepting this finding, the court pointed out that
although the agency's construction of a statute it is charged with
administering is entitled to great weight and will not be overturned
unless clearly erroneous, the principles of statutory construction also
require reconciliation among seemingly disparate provisions of law in

12

13773

order to give effect to all parts of the law. See id. at 669. The court

held as follows:

> The Board argues that particularly egregious recordkeeping violations could rise to the level of a "standard of care" violation. Because this interpretation renders subsection (m) useless, it is clearly erroneous. We believe there is a significant difference between improperly diagnosing a patient, which constitutes a subsection (x) violation, and properly diagnosing a patient, yet failing to properly document the actions taken on the patient's chart, which constitutes a subsection (m) violation. We hold that the ALJ erred in finding Appellant guilty of violating section 466.028(1)(x), Florida Statutes (2005). Accordingly, we reverse the final order.

Id. at 669. The court also emphasized that the statute allowed

discipline for "'failing to meet the minimum standards of performance

in diagnosis and treatment.'" Id. at 668 (emphasis in original)

(quoting section 466.028(1)(x), Fla. Stat. (2005)).

13. Here, unlike in Barr, interpreting section 458.331(1)(t) to

include the situation where a doctor orders the administration of a

controlled substances when he does not have a valid DEA registration

does not render subsection 458.331(1)(q) (or subsection

458.331(1)(g)) useless. Subsection 458.331(1)(q) encompasses

13

13774

many different instances when a physician prescribes, administers or dispenses any legend drug, including controlled substances. For example, there may be a violation when a doctor prescribes medication to a non-patient for money or when a physician prescribes excessive quantities in a negligent manner. See Waters v. Dep't of Health, Bd. of Med., 962 So. 2d 1011, 1012-13 (Fla. 3d DCA 2007) (holding "that the Department's rejection of the law judge's interpretation of the requirements of subsection (q) is within the agency's delegated range of discretion" when the Board found that a doctor prescribed drugs in violation of subsection (q) when his actions did not involve illicit activity). Interpreting subsection 458.331(1)(t) to include the acts at issue here does not render subsection 458.331(1)(q) useless.

14.   This same argument holds true for subsection 458.331(1)(g), Florida Statutes (2005), which provides as a ground for discipline, "[f]ailing to perform any statutory or legal obligation placed upon a licensed physician." Although that statute was not charged here, the ALJ appears to have believed that the Respondent's conduct fell under this statute as opposed to section

14

13775

458.331(1)(t). <u>See</u> Recommended Order, p. 18 ("The same reasoning would suggest that an allegation that a licensee's failure to comply with a legal obligation (in this case, the Respondent's lack of DEA registration) could constitute medical malpractice."). Again, many "legal obligations" exist that a physician must follow; therefore, section 458.331(1)(g), is not rendered useless if the conduct described here is included as a violation under subsection (t).

15.    In addition, a licensee's conduct may violate more than one subsection of the Medical Practice Act. The fact that Appellant's conduct may have been a failure to perform a legal obligation does not mean that it may not also fall below the standard or care.

16.    This case is also distinguishable from <u>Barr</u>, because in that case, a recordkeeping violation was not part of the licensee's actual treatment or diagnosis of the patient. Here, however, ordering the administration of Demerol is part of a physician's treatment of a patient. This is not a simple failure to document adequate care; the Respondent was not permitted to order the administration of Demerol to any patient. The Respondent ordered the administration of a medication when he had no authority to do so. No physician may

13776

order the administration of Demerol without a valid DEA registration.
This action falls below the standard of care as a matter of law.

17.    Section 458.331(1)(t), Florida Statutes (2005), is a
statute over which the Board has substantive jurisdiction. The
interpretation that the Respondent violated section 458.331(1)(t), by
ordering Demerol without a valid DEA registration is as or more
reasonable than the ALJ's conclusion that it was not a violation of
section 458.331(1)(t), Florida Statutes, because this case is
distinguishable from <u>Barr</u> in that it deals with the Respondent's
conduct in his practice of treating a patient and this interpretation
does not render any other statute useless.

## THIRD EXCEPTION TO CONCLUSION OF LAW

18.    The Department takes exception to the Conclusion of Law
in paragraph 85 on page 22 of the Recommended Order, which reads
as follows:

> 85.    Count III of the Administrative
> Complaint alleged that the Respondent
> committed medical malpractice in violation of
> Subsection 458.331 (1) (q), Florida Statutes
> (2005), by "prescribing, dispensing,
> administering, mixing, or otherwise preparing
> a legend drug, including any controlled
> substance, other than in the course of the

16

13777

physician's professional practice."  Specifically,
the Petitioner alleged that the Respondent
violated Subsection 458.331 (1) (q), Florida
Statutes (2005), by ordering Demerol without
proper DEA registration and through the
administration of "excessive" Cytotec.

19.    The following language should be substituted for

paragraph 85 of the Recommended Order in its entirety:

85.    Count III of the Administrative
Complaint alleged that the Respondent
violated Subsection 458.331 (1) (q), Florida
Statutes (2005), by "prescribing, dispensing,
administering, mixing, or otherwise preparing
a legend drug, including any controlled
substance, other than in the course of the
physician's professional practice."  Specifically,
the Petitioner alleged that the Respondent
violated Subsection 458.331 (1) (q), Florida
Statutes (2005), by ordering Demerol without
proper DEA registration and through the
administration of "excessive" Cytotec.

20.    The Administrative Complaint in Count III alleged as

follows:

27.    Respondent prescribed, dispensed,
administered, mixed, or otherwise prepared a
legend   drug,   including   any   controlled
substance, other than in the course of the
physician's professional practice in one or
more of the following ways:

A.    By having prescribed, ordered or
administered controlled substances to Patient

17

**13778**

S.B. when he did not possess a current, valid DEA number;

      B.     By ordering or administering one additional dosage Cytotec-200 ug two hours after a prior dosage;

      C.     By ordering or administering an excessive amount of Cytotec.

      28.   Based on the foregoing, Respondent violated Section 458.331(1)(q), Florida Statutes (2005), by prescribing, dispensing, administering, mixing, or otherwise preparing a legend drug, including any controlled substance, other than in the course of the physician's professional practice. For the purposes of paragraph 458.331(1)(q), it shall be legally presumed that prescribing, dispensing, administering, mixing, or otherwise preparing a legend drug, including all controlled substances, inappropriately or in excessive or inappropriate quantities is not in the best interest of the patient and not in the course of the physician's professional practice, without regard to his or her intent.

21.   The ALJ stated in Paragraph 85 that the Administrative Complaint alleges that Respondent committed medical malpractice in violation of section 458.331(1)(q). However, the Administrative Complaint does not allege "medical malpractice" in relation to section 458.331(1)(q). (Medical malpractice relates to Count II in the Administrative Complaint, not Count III.) Accordingly, this error is remedied with the substitute language.

18

## FORTH EXCEPTION TO CONCLUSION OF LAW

22.   The Department takes exception to the Conclusion of Law

in paragraph 86 on page 23 of the Recommended Order, which reads

as follows:

> 86.   The evidence failed to establish that the Respondent's use of Cytotec and Demerol occurred "other than in the course of" Respondent's professional practice, or that such use otherwise constituted medical malpractice under Subsection 458.331(1)(q), Florida Statutes (2005).

(Recommended Order.23)

23.   The Department requests that this conclusion of law be

modified to read as follows:

> 86.   The evidence established that Respondent's use of Demerol without proper DEA registration constitutes a violation of section 458.331(1)(q). The evidence failed to establish that the Respondent's use of Cytotec constituted a violation of subsection 458.331(1)(q), Florida Statutes (2005).

24.   The Department does not take exception to the

conclusions of law regarding the Respondent's use of Cytotec in light

of the ALJ's findings of fact on that issue, but does take exception to

the conclusion of law regarding Demerol.

19

13780

25.    This interpretation of section 458.331(1)(q), Florida

Statutes—a statute over which the Board has substantive jurisdiction-

-is as or more reasonable than that of the ALJ because the definition

of prescribe includes ordering, and the Waters case controls the

Board's interpretation of section 458.331(1)(q), and it does not

include a requirement of illicit conduct.

26.    The facts relating to the Respondent's ordering of

Demerol are delineated in paragraph 5 above.

27.    Section 458.331(1)(q), Florida Statutes (2005), provides

as a ground for discipline the following:

> Prescribing, dispensing, administering,
> mixing or otherwise preparing a legend drug,
> including any controlled substance, other than
> in the course of the physician's professional
> practice. For the purposes of this paragraph,
> it shall be legally presumed that prescribing,
> dispensing administering mixing, or otherwise
> preparing legend drugs, including all
> controlled substances, inappropriately or in
> excessive or inappropriate quantities is not in
> the best interest of the patient and is not in
> the course of the physician's professional
> practice, without regard to his or her intent.

20

13781

28.    In the administrative complaint, the Department alleged

that Respondent violated section 458.331(1)(q), Fla. Stat., by the

following actions:

> A.    By having prescribed, ordered or administered controlled substances to Patient S.B. when he did not possess a current, valid DEA number;
>
> B.    By ordering or administering one additional dosage of Cytotec-200 mg two hours after a prior dosage;
>
> C.    By ordering or administering an excessive amount of Cytotec.

29.    The Department first objects to the reference in

paragraph 86 to "medical malpractice." Medical malpractice is a term

used in section 458.331(1)(t), not section 458.331(1)(q).

30.    The Department also points out that paragraph 86 is

extremely vague and does not explain the ALJ's reasons for

concluding that ordering Demerol to be administered without a valid

DEA registration was not a violation of section 458.331(1)(q), in light

of his factual findings on the issue.

31.    As explained above, the ALJ found that a physician must

be properly registered with the DEA to order the administration of

21

Demerol to a patient, the Respondent did not have a valid DEA registration, the Respondent ordered Demerol be administered to the patient, and the Demerol was administered to the patient. (Recommended Order.5-7) Despite these facts, the ALJ concluded that the Department failed to establish that the Respondent's use of Demerol occurred other than in the course of his professional practice.

32.    The ALJ may have based this finding on one of three arguments raised in the Respondent's Proposed Recommended Order: a) it is possible that the ALJ thought that the conduct should have been charged under section 458.331(1)(g) as the failure to perform a legal obligation (this is evidenced by the ALJ's comments in paragraph 70); b) the ALJ may have believed Respondent's actions did not qualify as "other than in the course of the professional practice" because Respondent was not engaged in an illicit activity (this may be evidenced by his quotation of such language in paragraph 86; or, c) the ALJ may have believed that ordering the administration of Demerol was not included as a violation under section 458.331(1)(q) because the term "ordering" is not specifically

22

13783

in the statute (which was argued in the Proposed Recommended Order).

33.   Regarding the argument listed in subsection "a" above, the fact that these facts may constitute a violation of another statute, i.e., section 458.331(1)(g), does not preclude the facts from also being a violation of section 458.331(1)(q).

34.   Regarding the argument in issue "b" above, the Board has previously found, and the Board's interpretation was upheld on appeal as within the agency's delegated range of discretion, that in order to find a violation of section 458.331(1)(q), a doctor is not required to be engaged in illicit activity when prescribing drugs; it is a violation of the statute if the doctor prescribed drugs inappropriately or in excessive or inappropriate quantities. See Waters, 962 So. 2d at 1012-13.

35.   The Respondent argued in the Proposed Recommended Order that an older interpretation of section 458.331(1)(q) should apply. In 2001, an ALJ issued a Recommended Order in Department of Health, Board of Medicine v. Heller, DOAH Case # 00-474PL, 2001 WL 666972, (2001), which included an interpretation of section

23

**_13784**

458.331(1)(q), that found that to establish guilt under this section, the Department must prove that the accused doctor was not practicing medicine, but instead was engaged in an illicit (and probably criminal) activity. The ALJ found that it was not a violation when there was mere negligence by prescribing inappropriately or excessively. See id. at 10-11. The Final Order was adopted by the Board and not appealed.

36.   In 2003, in the Department of Health, Board of Medicine v. Rogers, DOAH Case # 02-0080PL, 2003 WL 548861, (2003), an ALJ entered a Recommended Order recommending dismissal of a charge of violating section 458.331(1)(q), for the same reasons enunciated in Heller and because there was not clear and convincing evidence to support the Department's claims that the Respondent in that case failed to document patient history and the Department did not prove that the Respondent failed to conduct a physical examination before prescribing narcotics. See id. at 10. This time, however, the Board rejected the ALJ's interpretation of section 458.331(1)(q), Florida Statutes. The case was reversed on appeal. See Rogers v. Dep't of Health, 920 So. 2d 27, 31-32 (Fla. 1st DCA

24

2005). However, the case was not reversed because of the agency's

interpretation of section 458.331(1)(q), as the Respondent in the

present case claims. Instead, the case was reversed because the

court found that the Board reweighed the evidence presented to the

ALJ and came to a different result, which was reversible error. See id.

at 31. The court specifically stated as follows:

> The Department argues on appeal that the
> prescriptions were inappropriate because they
> were not preceded by focused medical
> examinations. Without affirming the
> Department's view of subsection (q) that
> inappropriate dispensing occurs when a
> prescription is given without a physical
> examination, we find the Department's
> argument to be without evidentiary support.
> As noted previously, the ALJ did not find that
> Dr. Rogers failed to undertake an appropriate
> examination before prescribing medication.
> Such a finding was supplied by the Board
> when it rejected the ALJ's findings and
> conclusions regarding count I, and we have
> already found the Board's action in reweighing
> the evidence relating to count I to be
> reversible error. Accordingly, the Board may
> not premise a violation of count III on its
> erroneous ruling as to count I.

Id. (emphasis added). Thus, the reversal in Rogers was because of a

lack of evidence, not because of the interpretation of the Board.

25

37.   The issue was raised again in <u>Department of Health,</u>

<u>Board of Medicine v. Waters</u>, DOAH Case # 04-0401PL 2005, WL

2100670 (2005). In <u>Waters</u>, again in a Recommended Order, an ALJ

interpreted 458.331(1)(q), Florida Statutes, as was done in <u>Heller</u>.

The ALJ in <u>Waters</u> acknowledged the Board's interpretation in

<u>Rogers</u>, but at that time, <u>Rogers</u> was on appeal, so the ALJ decided

to follow the interpretation in <u>Heller</u>. Again, the Board disagreed with

that interpretation. In the Final Order in <u>Waters</u>, the Board rejected

the ALJ's conclusion of law on that issue.

> 2.   The conclusions of law set forth in
> the Recommended Order are approved and
> adopted and incorporated herein by reference
> with the following amendment: Paragraph 190
> of the Recommended Order shall be rejected
> and the following language shall be
> substituted:

> 190. The Board is of the opinion that
> the ALJ erred in his interpretation of Section
> 458.331(1)(q), Florida Statutes. The Board
> holds that the interpretation that is adopted in
> the <u>Rogers</u> final order is correct and
> specifically recedes from the holding in the
> <u>Heller</u> case. Instead the Board relies on the
> rulings in <u>Scheininger v. Department of</u>
> <u>Professional Regulation, Board of Medical</u>
> <u>Examiners</u>, 443 So. 2d 387 (Fla. 1st DCA
> 1983) and <u>Department of Health v. Jeri-Lin</u>
> <u>Furlow Burton, M.D.</u>, DOAH Case No. 98-

26

> 1221. Since the ALJ found, factually, that Petitioner proved, clearly and convincingly, that Respondent inappropriately prescribed drugs . . . Respondent is found to have violated Section 458.331(1)(q), Florida Statutes, for each of the patients. . . .

(Waters Final Order. 2-3)

38.    In upholding the Board's final order, the Third District Court of Appeal held as follows: "Further, we hold that the Department's rejection of the law judge's interpretation of the requirements of subsection (q) is within the agency's delegated range of discretion." Waters, 962 So. 2d at 1013. Thus, the court specifically held that this interpretation was within the discretion of the Board.

39.    The Board's ruling Waters is controlling. A physician violates section 458.331(1)(q), Florida Statutes, if the physician prescribes inappropriately or excessively, and the conduct does not have to include illicit activity. In the present case, the Respondent prescribed inappropriately because he did not have a valid DEA registration which allowed him to prescribe or order controlled substances. He had no authority, whatsoever, to prescribe Demerol to this (or any) patient. There was no situation in which he could

27

13788

have appropriately prescribed Demerol to this patient without a DEA registration.

40. In regards to the third argument, argument "c," the Respondent argues in his Proposed Recommended Order that "ordering" a controlled substance is not a violation under section 458.331(1)(q), Florida Statutes, because that particular term is not listed in the statute, which provides as a ground for discipline, "Prescribing, dispensing, administering, mixing or otherwise preparing a legend drug, including any controlled substance, other than in the course of the physician's professional practice." § 458.331(1)(q), Fla. Stat. (2005). However, a physician "prescribes" medication when he "orders" the medication be given to a patient. According to the Merriam-Webster dictionary online, prescribe is defined as follows: "to designate or <u>order</u> the use of as a remedy <*prescribed* a painkiller>" or "to write or give medical prescriptions." <u>http://www.merriam-webster.com/dictionary/prescribe</u> (emphasis added).

41. By the plain definition of "prescribe," to prescribe includes "to order." Thus, section 458.331(1)(q), Florida Statutes (2005),

28

13789

should be interpreted to include ordering a controlled substance without a DEA registration.

42.    This interpretation of section 458.331(1)(q), Florida Statutes—a statute over which the Board has substantive jurisdiction--is as or more reasonable than that of the ALJ because the definition of prescribe includes ordering, and the Waters case controls the Board's interpretation of section 458.331(1)(q), and it does not include a requirement of illicit conduct.

Respectfully submitted this 6th day of October, 2008.

Greg S. Marr
Florida Bar Number 131369
Florida Department of Health
Prosecution Services Unit
4052 Bald Cypress Way, Bin C-65
Tallahassee, FL 32399-3265
(850) 245-4640 Ext. 8144
(850) 245-4681 Fax
Counsel for the Department

29

13790

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing has been furnished as a PDF document by electronic mail (k.metzger@mgfblaw.com), and by U.S. Mail to Kenneth J. Metzger, Metzger, Grossman, Furlow & Bayó, LLC, 1408 North Piedmont Way, Tallahassee, FL  32308, Counsel for Respondent, this 6th day of October, 2009.

GREG S. MARR

30

__13791

STATE OF FLORIDA
DEPARTMENT OF HEALTH
BOARD OF MEDICINE

DEPARTMENT OF HEALTH,

    Petitioner,

v.

                                 DOAH CASE NO. 08-4197PL
                                 DOH CASE NO. 2006-05930

JAMES S. PENDERGRAFT, IV, M.D.,

    Respondent.
_____/

## RESPONDENT'S EXCEPTIONS TO THE RECOMMENDED ORDER

Respondent, James S. Pendergraft, IV, M.D. ("Respondent" or "Dr. Pendergraft"), by and through his undersigned counsel, and pursuant to Section 120.57(1)(k), Florida Statutes, and Rule 28-106.217(1), Florida Administrative Code, files his written Exceptions to the Recommended Order of the Administrative Law Judge issued on September 21, 2009, as follows:

### The Board's Review Requirements Under Chapter 120, Florida Statutes

In considering the Recommended Order and penalty recommendations of the Administrative Law Judge herein, the Board of Medicine is confined solely to the review of the record as established at the formal hearing. *Ong v. Department of Professional Regulation*, 565 So. 2d 1384, 1387 (Fla. 5th DCA 1990). Thus, the Board is not authorized to receive additional evidence other than that already presented and considered by the Administrative Law Judge. *Id.* Nor can the Board discipline a licensee for matters not charged in the Administrative Complaint. See *Trevisani v. Dep't of Health*, 936 So. 2d 790, 795 (Fla. 1st DCA 2006); *Ghani v. Dep't of Health*, 714 So. 2d 1113, 1114 (Fla. 1st DCA 1998).

1

### Standard of Review of a Recommended Order

In reviewing a Recommended Order of an Administrative Law Judge, the Board of Medicine ("the Board") must evaluate the individual findings of fact and conclusions of law under a "competent, substantial evidence" standard. §120.57(1)(l), Florida Statutes. Competent substantial evidence is defined as that evidence supporting an ultimate finding which is sufficiently relevant and material such that a reasonable mind would accept as adequate to support the conclusions reached. *DeGroot v. Sheffield*, 95 So. 2d 912, 916 (Fla. 1959).

In keeping with the requirement of a "competent substantial evidence" review, the Legislature has authorized the Board to reject any finding of fact set forth in a Recommended Order, when upon its review of the entire record before the Administrative Law Judge, the Board determines that there is a lack of competent, substantial evidence upon which to base the particular finding of fact. *Id.*; see also *Heifetz v. Department of Business Regulation*, 475 So. 2d 1277, 1281-1282 (Fla. 1st DCA 1985); *Gross v. Department of Health*, 819 So. 2d 997, 1000-1001 (Fla. 1st DCA 2002). In so doing, however, the Board may not reweigh the evidence presented, may not judge the credibility of the witnesses, and may not otherwise interpret the evidence to fit its desired ultimate conclusion. *Heifetz, supra; Gross, supra.*

In addition, the Board is authorized to reject or modify the conclusions of law over which it has substantive jurisdiction and to reject or modify interpretation of administrative rules over which it has substantive jurisdiction. §120.57(1)(l), Florida Statutes.

> When rejecting or modifying such conclusion of law or interpretation of administrative rule, the agency must state with particularity its reasons for rejecting or modifying such conclusions of law or interpretation of administrative rule and must make a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified. Rejection or modification of

2

conclusions of law may not form the basis for rejection or modification of findings of fact.

*Id.* (Emphasis added).

## Respondent's Exceptions To Findings Of Fact

Respondent takes exception to the following findings of fact, and for the reasons stated in each Exception, requests that they be either stricken from the Recommended Order or modified to reflect the competent substantial evidence in the record.

**Finding of Fact Exception 1:  Respondent takes exception to Finding of Fact 41 at page 9 of the Recommended Order because that finding is not supported by competent, substantial evidence.**

Respondent takes exception to paragraph 41 of the Recommended Order in which the Administrative Law Judge states:  "The Respondent failed to inform either Dr. Cates or Dr. Lamberty that he had removed a portion of the fetus from the patient at the clinic."  The finding of fact at paragraph 41 is not supported by clear and convincing evidence in the record.  There is no documentary evidence on this issue.  The only witnesses to testify on this issue were the Respondent, Dr. Lamberty, and Dr. Cates-Smith.  The essence of the Respondent's testimony on this issue is that when he spoke by telephone to Dr. Cates-Smith and then to Dr. Lamberty he "believes" he told each of them about the removal of the fetal foot. (Hearing transcript pp. 353-355).  It is the Petitioner's burden to prove by clear and convincing evidence that the Respondent did not tell them, which is a burden the Petitioner did not meet in this case.  While it is true that in response to leading questions both Dr. Cates-Smith and Dr. Lamberty answered in the affirmative when asked a question to the effect of "if the Respondent had mentioned removing the foot we would have remembered him saying that" such answers are more in the nature of conjecture and speculation than in the nature of reliable fact because they were being asked to express an opinion about the reliability of their own memory in a hypothetical circumstance.

3

The conjectural, speculative, and unreliable nature of their answers is especially evident when note is taken of how many times each of these doctors answered "I don't remember," or "I don't recall" whenever they were asked what was said in their respective conversations with the Respondent. (The litany of all the things Dr. Cates-Smith does not remember about the telephone conversation can be found at pages 121-123 of the hearing transcript. The litany of what Dr. Lamberty does not remember is at pages 146-147, 159-160, and 167 of the hearing transcript). If neither of them can remember what was said, it seems most unlikely that either of them would have any reliable recollection of what was not said. Because of their inability to recall any of the details of their respective conversations with the Respondent their memory of those conversations is simply unreliable. It is contrary to logic and human experience for a person to have no memory at all about what was said in a telephone conversation, but to at the same time purport to remember what was not said in the conversation.

The testimony of the two hospital doctors about the two telephone calls is too full of their admissions of their own memory failures to qualify as clear and convincing evidence. In this regard attention is directed to *Fox v. Department of Health*, 994 So. 2d 416, 418 (Fla. 1st DCA 2008), which holds that testimony to the effect that a witness does not remember having a discussion about a specific detail does not constitute competent, substantial evidence that the discussion of that specific detail did not take place. And it follows naturally that if it does not constitute competent, substantial evidence, it surely does not meet the "clear and convincing evidence" burden of proof. Such testimony may fairly be described as the opposite of clear and convincing evidence. Because of lack of clear and convincing evidence, the facts stated at paragraph 41 of the Recommended Order should be stricken.

13739

**Finding of Fact Exception 2:  Respondent takes exception to the second sentence of Finding of Fact 48 at page 10 because it contains both a fact and an opinion about that fact, neither of which is warranted by the evidence.**

Respondent takes exception to a portion of the second sentence of paragraph 48 of the Recommended Order.   The exception is addressed to the underscored portion of the Administrative law Judge's statement reading as follows:  "Dr. Lamberty began efforts to locate the missing part, which he reasonably presumed remained in the patient."  The basis for this exception is twofold:   (1) there is no evidence in the record that Dr. Lamberty had any presumption about the whereabouts of the missing fetal part, and (2) if Dr. Lamberty did have such a presumption, the presumption would not have been reasonable.  Among the reasons for which such a presumption would be unreasonable is that the presumption would overlook the most obvious probable location for the missing fetal part – Dr. Pendergraft's clinic. Dr. Lamberty knew the numbers of the clinic telephone and of the Respondent's cell phone and also knew that the Respondent had asked to be called when the surgery on Patient SB was finished; a call that Dr. Lamberty never made.  Under these circumstances common sense and logic leads to the conclusion that there was a high probability that the missing part was removed in the termination of pregnancy clinic, and the first effort to locate the missing fetal part would have been to call the clinic or call the Respondent and inquire. In was not until February 10 (the third day following surgery) that one of the hospital doctors finally made the telephone call that they should have made on the night of February 7.  Because the underscored portion of the Administrative Law Judge's statement in the last sentence of paragraph 48 is not supported by competent, substantial evidence and is not consistent with reason, it should be stricken.

5

**13740**

### Respondent's Exceptions To Conclusions Of Law

Respondent takes exception to the following conclusions of law in the Recommended Order, and for the reasons stated in each Exception, requests that they be rejected and be replaced or modified to reflect the correct legal conclusions as articulated in each Exception.

**Conclusion of Law Exception 1:  Respondent takes exception to Conclusion of Law 61 on page 15 of the Recommended Order, because the incidental documentation omission in this case is not the type of conduct for which the Legislature sought to impose disciplinary action when it enacted Section 458.331(1)(m), Florida Statutes.**

Respondent takes exception to paragraph 61 of the Recommended Order in which the Administrative Law Judge states the following conclusion:  "The evidence established that, by failing to document the removal of a portion of a fetal limb, the Respondent clearly failed to keep legible medical records justifying the course of treatment in violation of Subsection 458.331(1)(m), Florida Statutes (2005), because such a conclusion, which technically correct within the very letter of the law as written, does not appear to be within the spirit of what the Legislature intended when it enacted Subsection 458.331(1)(m).  It is a well established that rule of statutory construction that when numerous statutory provisions address the same subject matter the statutes are to be read together in pari materia, and each statutory provision is to be read in context with other statutes on the same subject matter.  In Subsection 766.102(1), Florida Statutes, the Legislature has defined the term "prevailing standard of professional care" as follows:

> The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.  (Emphasis added.)

As is clear from the underscored portion of the foregoing definition, the Legislature has not sought to require physicians to be perfect, or even to be "exceptionally" or "especially"

__13741

prudent. It is quite enough for physicians to be "reasonably" prudent. Similarly, the statutory language quoted above does not require that the care and treatment provided be perfect, or even to be "exceptional" or "above average." It is quite enough for the care and treatment to be "acceptable and appropriate."

Reading Section 458.331(1)(m), Florida Statutes, with the foregoing in mind, it is reasonable to conclude that when 458.331(1)(m) was enacted the legislature had that same concept of the standards it expected of a physician and while, no doubt, hoping that all physicians would maintain excellent medical records, they were requiring no more of physicians than that they make a reasonable effort to maintain reasonable medical records. When Section 458.331(1)(m) is interpreted in this manner, while the facts established in this case are encompassed by the letter of the statutory language, the facts in this case do not appear to be an event of the type the statute was intended to apply to, especially in view of the following factual circumstances, none of which are disputed by the Petitioner: (a) the removal of the fetal part occurred just seconds before the Respondent discovered that the patient was suffering from a life-threatening condition that required urgent emergency treatment in a hospital, (b) upon discovery of the life-threatening condition, all of the Respondent's thoughts and activities were focused on arranging for the transfer and emergency hospital treatment needed by the patient, (c) the presence or absence of the removed fetal part was of little, if any, significance to planning for and implementing the emergency treatment needed by the patient, (d) the Respondent was working quickly to gather and copy the patient's clinic records and to write additional notes about events leading up to the emergency to send to the hospital with the patient, (e) the Respondent told the hospital doctors his telephone numbers and asked them to call him when they finished the surgery, (f) the patient suffered no consequential injury as a result of the

7

omission of information about the removal of the fetal part, and (g) any concerns Dr. Lamberty had about the whereabouts of the missing fetal part could have been promptly resolved had he but called the Respondent or the clinic. This was no careless or indifferent approach to medical record-keeping. Rather, this was the accidental omission from the records in the heat of an emergency – the type of accidental omission that many a reasonably prudent physician might make. This is not a case of bad record-keeping; it is a case of a single minor inadvertent oversight – a *de minimus* mistake that is not likely to ever occur again, one not within the type of conduct Section 458.331(1)(m) is intended to regulate.

**Conclusion of Law Exception 2: Respondent takes exception to Conclusion of Law 78 on page 20 of the Recommended Order because the conclusion is predicated on a fact that was not proved by clear and convincing evidence.**

Respondent takes exception to paragraph 78 of the Recommended Order in which the Administrative Law states: "As charged in the Administrative Complaint, the Respondent's failure to advise the hospital's physicians during the telephone conversations that a portion of the patient's fetus had been removed at the Respondent's clinic breached the standard of care and constituted malpractice." The quoted statement is excepted to because it is predicated on a fact which was not proved by clear and convincing evidence. This Conclusion of Law is based on an assumption that when the Respondent spoke by telephone with the hospital's physicians on February 7 the Respondent failed to tell them that he had removed a fetal part. For the reasons stated in the Respondent's Finding of Fact Exception 3 regarding the finding of fact at paragraph 41 of the Recommended Order, there is no clear and convincing evidence that the Respondent failed to advise the hospital doctors that he had removed a fetal part, and thus, this Conclusion of Law is not supported by competent, substantial evidence in the record.

8

13743

**Conclusion of Law Exception 3: Respondent takes further exception to Conclusion of Law 78 on page 20 of the Recommended Order on the additional grounds that in this case the Petitioner did not allege and did not prove all of the elements that are necessary to prove malpractice in the manner required by Subsection 766.102, Florida Statutes.**

Respondent takes further exception to paragraph 78 of the Recommended Order in which the Administrative Law Judge concludes that the Respondent is guilty of malpractice, for the additional reason that the allegations and proof in this case do not establish all of the elements which are necessary to prove malpractice in an administrative license discipline proceeding since the amendments to Subsection 458.331(1)(t), Florida Statutes which went into effect shortly before the events that are alleged in the Administrative Complaint in this case. Since the effective date of the amendments to Subsection 458.331(1)(t), Florida Statutes, which took effect shortly before the events in this case, in order for the Petitioner in an administrative license discipline case to prevail when it charges a physician with malpractice under Subsection 458.331(1)(t)1, Florida Statutes, the Petitioner must allege and prove all of the same elements of malpractice that Subsection 766.102, Florida Statutes, requires be alleged and proved in a civil action seeking damages for malpractice. The Administrative Law Judge did not discuss any of the Respondent's arguments on this issue set forth in the Respondent's Proposed Recommended Order at paragraphs 74 through 91 of that document. To facilitate the Board's consideration of this issue, the relevant portions of those arguments are set forth immediately below and incorporated into this exception.

> 74. In Count II of the Administrative Complaint, at paragraphs 22, 23, and 24, it is alleged that the Respondent has violated Section 458.331(1)(t)1, Florida Statutes, by failing to practice medicine within the prevailing professional standard of care in eight different ways set forth in eight separate subparagraphs identified by the letters A through H. Before addressing the individual allegations of malpractice in each of the eight subparagraphs of Count II, the Respondent wishes to argue that all of the alleged violations in Count II should be dismissed because of certain legal insufficiencies in both the allegations and in the evidence regarding the

9

13744

malpractice allegations in this case. Simply stated, it is the Respondent's position that the Petitioner neither alleged enough nor proved enough to establish that the Respondent committed any malpractice within the meaning of the definitions in Section 766.102, Florida Statutes. Section 458.331(1)(t) 1, Florida Statutes, authorizes disciplinary action for committing medical malpractice in the following words:

(t) Notwithstanding s.456.072(2) but as specified in s. 456.50(2):

1. Committing medical malpractice as defined in s.456.50. The board shall give great weight to the provisions of s. 766.102 when enforcing this paragraph. Medical malpractice shall not be construed to require more than one instance, event, or act.

75. Section 456.50(1), Florida Statues, provides us with some helpful definitions, including the following language: -

(e) "Level of care, skill, and treatment recognized in general law related to health care licensure" means the standard of care specified in s. 766.102.

(g) "Medical malpractice" means the failure to practice medicine in accordance with the level of care, skill, and treatment recognized in general law related to health care licensure.

76. And Section 766.102, Florida Statues, contains the following pertinent language:

(1) In any action for recovery of damages based on the death or personal injury of any person in which it is alleged that such death or injury resulted from the negligence of a health care provider as defined in s.766.202 (4), the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers. (Emphasis added.)

(2)(a) If the injury is claimed to have resulted from the negligent affirmative medical intervention of the health care provider, the claimant must, in order to prove a breach of the prevailing professional standard of care, show that the injury was not within the necessary or reasonably foreseeable results of the surgical,

10

medicinal, or diagnostic procedure constituting the medical intervention, if the intervention from which the injury is alleged to have resulted was carried out in accordance with the prevailing professional standard of care by a reasonably prudent similar health care provider.

(b) The provisions of this subsection shall apply only when the medical intervention was undertaken with the informed consent of the patient in compliance with the provisions of s. 766.103.

(3) The existence of a medical injury shall not create any inference or presumption of negligence against a health care provider, and the claimant must maintain the burden of proving that an injury was proximately caused by a breach of the prevailing professional standard of care by the health care provider.

77. Reading all of the foregoing together, Section 458.331(1)(t)1, Florida Statutes, provides for disciplinary action against those who commit malpractice as defined in Section 456.50; Section 456.50 defines "malpractice" as "the failure to practice medicine in accordance with the level of care, skill, and treatment recognized in general law related to health care licensure," and another part of Section 456.50 tells us the level of care referred to in Section 456.50 is " the standard of care specified in s.766.102." And Section 766.102 is, of course, the same provision the Board of Medicine is directed to "give great weight to." From all of the foregoing it seems quite clear that Section 766.102, Florida Statutes, and the cases interpreting it, are where we should look to determine what the term "medical malpractice" means in the context of a disciplinary action under 458.331(1)(t)1.

78. Prior to discussing the meaning of the language in Section 766.102, it is helpful to consider the constructions that some of the Florida courts have placed on that language, as well as on earlier language to the same effect. Haas v. Zaccaria, 659 So.2d 1130 (Fla. 4th DCA 1130) states at pages 1132-1133:

Section 766.102(1), Florida Statutes (1993), places on the claimant in a medical malpractice action the burden of "proving by the greater weight of the evidence that the alleged actions of the [physician] represented a breach of the prevailing professional standard of care for that [physician]." In addition, subsection (3) of the statute provides that, in order to prove a breach of the applicable standard of care, the claimant must show "that the injury was not within the necessary or reasonably foreseeable results of the surgical * * * procedure" in question. Finally, subsection (4) of the statute declares that "[t]he existence of a medical injury shall

11

not create any inference or presumption of negligence against a
health care provider, and the claimant must maintain the burden of
proving" an injury resulting from a breach of the standard of care.
With these statutory requirements in mind, we turn to the matters
at hand.

\*\*\*

As we have just seen, subsection (3) of section 766.102 explicitly
provides that the claimant must show that the injury resulted from
a departure from the applicable standard of care and that it was not
within the expected or foreseeable results of the procedure. [The
subsections of Section 766.102 were numbered differently at the
time of the Haas opinion.]

79. Similarly, Torres v. Sullivan, Jr., M.D., 903 So.2d 1064 (Fla. 2nd
DCA 2005), states:

To prevail in a medical malpractice action, a plaintiff must
identify the standard of care owed by the physician, produce
evidence that the physician breached the duty to render medical
care in accordance with the requisite standard of care, and establish
that the breach proximately caused the injury alleged. Moisan v.
Frank K. Kriz, Jr., M.D., P.A., 531 So. 2d 398, 399 (Fla. 2d DCA
1988). The prevailing professional standard of care is that level of
care, skill, and treatment which, in light of all relevant surrounding
circumstances, is recognized as acceptable and appropriate by
reasonably prudent similar health care providers. See § 766.102(1),
Fla. Stat. (1997).

80. More recently, in Hancock v. Schorr, 941 So.2d 409 (Fla.4th DCA
2006), the court reiterated:

To prevail in a medical malpractice case, a plaintiff must
establish the following: the standard of care owed by the
defendant, the defendant's breach of the standard of care, and that
said breach proximately caused the damages claimed. See Gooding
v. Univ. Hosp. Bldg. Inc., 445 So.2d 1015, 1018 (Fla.1984). With
respect to causation, the Court held that in negligence actions
Florida courts follow the "more likely than not" standard of
causation and require proof that the negligence probably caused
the plaintiff's injury.

81. Some older cases reaching some of the same conclusions regarding
what is necessary to prevail in a civil action for malpractice include Zobac.
v. Southeastern Hospital District, 382 So.2d 829 (Fla. 4th DCA 1980),
Purvis v. Dept. of Professional Regulation v. Bd. of Veterinary Medicine,

12

461 So.2d 134 (Fla. 1st DCA 1984), and Gooding v. University Hospital Building, Inc., 445 So.2d 1015 (Fla. 1984). In Gooding the court stated:

> To prevail in a medical malpractice case a plaintiff must establish the following: the standard of care owed by the defendant, the defendant's breach of the standard of care, and that said breach proximately caused the damages claimed. Wale v. Barnes, 278 So.2d 601, 603 (Fla. 1973). (Emphasis added.)

82. Reviewing the allegations in Count II of the Administrative Complaint in this case in light of the statutory language in Section 766.102 and the court decisions referenced above, the first insufficiency is that there is no allegation that describes what conduct would be "recognized as acceptable and appropriate by reasonably prudent similar health care providers" in each of the eight scenarios in which the Respondent is alleged to have committed malpractice. Stated otherwise, there is no statement in Count II that states what a reasonably prudent similar health care provider would have done, or would have avoided, in each of the eight alleged scenarios. Yet it is clear from the case law that the claimant (in this case the Department which "claims" the Respondent committed malpractice) must allege and establish what the standard is. See especially, Torres, Hancock, and Gooding, above.

83. In addition to the absence of allegation, the evidence to prove the nature of the applicable standard of care in each of the eight subparagraphs ranges from thin to nonexistent, with nothing even close to "clear and convincing evidence." (As discussed elsewhere in this document, in much of his criticism of the Respondent's conduct it appears that Dr. Gomez is more often testifying on the basis of his personal preferences, rather than on the basis of what might be found acceptable by a reasonably prudent physician.)

84. The next insufficiency in both the allegation and the evidence is the absence of any allegation and the absence of any evidence that Patient SB suffered any medical injury as a result of any act or failure to act on the part of the Respondent. In a medical malpractice case, Section 766.102 requires that in every medical malpractice case an injury to the patient caused by the negligence of the physician must be alleged and proved. See subsections (1) and (3) of Section 766.102, Florida Statutes, both quoted above. The need for such allegation and proof is also confirmed in the case law. See especially Torres and Hancock, above.

85. In Count II of the Administrative Complaint there is no allegation that anything the Respondent did or failed to do caused any relevant injury to Patient SB.

13748

***   ***   ***

88. In sum: Because the Department failed to allege or prove any relevant injury to the patient, Count II and all of its subparagraphs should be dismissed. This dismissal is required not only by the language of Section 766.102, but also by the case law. See: Torres, Hancock, and Gooding, above.

89. The last issue regarding the insufficiencies of Count II to allege and prove an act of medical malpractice arises from the language of Section 766.201(2)(a), Florida Statutes, which reads as follows:

(2)(a) If the injury is claimed to have resulted from the negligent affirmative medical intervention of the health care provider, the claimant must, in order to prove a breach of the prevailing professional standard of care, show that the injury was not within the necessary or reasonably foreseeable results of the surgical, medicinal, or diagnostic procedure constituting the medical intervention, if the intervention from which the injury is alleged to have resulted was carried out in accordance with the prevailing professional standard of care by a reasonably prudent similar health care provider.

90. Reduced to its most simple terms, Section 766.102(2)(a) provides that, even if a physician is negligent and his negligence causes injury to the patient, in order to prove a breach of the prevailing professional care standard, the claimant must show that the injury suffered was not "within the necessary or reasonably foreseeable results of the" medical intervention. Stated otherwise, if the injury suffered by the patient is an injury of the type that is a known necessary or reasonably foreseeable consequence of the medical services being provided even in the absence of negligence, the physician cannot be found to have committed malpractice regardless of whether he was negligent. In even more simple terms, if a certain type of injury is a known risk of the medical treatment being sought, under the terms of the statute a patient who suffers an injury in the "known risk" category may not prove a case of medical malpractice regardless of whether the physician was negligent. Viewed another way, Section 766.102(2)(a) seems to create a non-rebuttable presumption in favor of the physicians to the effect that when medical injuries occur which are injuries that are known risks of a specific treatment even in the absence of negligence, it will be presumed that those injuries did in fact occur in the absence of negligence.

91. And it is also a basic fundamental principle of American law that, unless otherwise expressly stated by the Legislature, a law should be applied equally to all who are affected by it. With this in mind, it is

14

significant to note that the only statutory provision changing the manner in which Section 766.102 shall be construed and applied in administrative disciplinary cases is the language in Section 458.331(3), Florida Statutes, which requires proof by "clear and convincing evidence" in all disciplinary cases seeking revocation or suspension of a license.

For all of the foregoing reasons paragraph 78 of the Conclusions of Law should be rejected and the Board should conclude that the allegation and evidence in this case are insufficient to prove a violation of Section 458.331(1)(t)1., Florida Statutes.

**Conclusion of Law Exception 4:  Respondent takes exception to Conclusion of Law 80 on pages 20 and 21 of the Recommended Order because it is not a conclusion of law, it is irrelevant to any legal issue remaining in the case, and it is not supported by clear and convincing evidence.**

Respondent takes exception to paragraph 80 of the Recommended Order because it is not a Conclusion of Law, because it consists only of Findings of Fact which belong, if anywhere, in the Findings of Fact, and because all of the facts in paragraph are irrelevant to any issue to be decided in this case.

Further, the statement in paragraph 80 is excepted to because it is predicated on a fact which was not proved by clear and convincing evidence, and thus, not supported by competent, substantial evidence.  This Conclusion of Law is dependent upon a finding that when the Respondent spoke by telephone with the hospital's physicians on February 7 the Respondent failed to tell them that he had removed a fetal part.  However, for the reasons stated in the Respondent's Finding of Fact Exception 1 regarding the finding of fact at paragraph 41 of the Recommended Order, there is no clear and convincing evidence that the Respondent failed to advise the hospital doctors that he had removed a fetal part, and thus this Conclusion of Law is not supported by competent, substantial evidence in the record.

**Conclusion of Law Exception 5:  Respondent takes exception to Conclusion of Law 82 on page 21 of the Recommended Order because it contains assumptions, inferences, and conclusions that are not warranted by or supported by the evidence.**

15

**13750**

Respondent takes exception to paragraph 82 of the Recommended Order in which the Administrative Law Judge states: "It was the Respondent's obligation to advise the hospital of the events occurring at the clinic, and the implication that the hospital should have contacted the clinic to track down the missing part has been rejected. There is no credible evidence that the hospital personnel erred in their attempt to locate the missing fetal part." Assuming that the Respondent was obligated to advise the hospital doctors "of the events occurring at the clinic," it is first noted that, as stated in Respondent's Finding of Fact Exception 1 regarding paragraph 41 of the Recommended Order, there is no clear and convincing evidence that the Respondent failed to fulfill that obligation. While it might be argued that there is no persuasive affirmative evidence that the Respondent told the hospital doctors about the removal of the fetal part, it must be remembered that the Respondent does not bear the burden of coming forward with such proof. Rather, the Department must prove the alleged failure to communicate with clear and convincing evidence. For the reasons state previously, the Department did not do so in this case.

With regard to the Administrative Law Judge's rejection of "the implication that the hospital should have contacted the clinic to track down the missing part," the Administrative Law Judge appears to have overlooked the fact that, regardless of whether the Respondent told the hospital doctors about the removal of the fetal foot, once they discovered that a fetal part was missing and they did not know the whereabouts of that part, the hospital doctors, like every doctor in Florida, were required to act with "that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." And under such circumstances the efforts of a reasonably prudent doctor to locate the missing fetal part would have included a telephone call to

16

13751

the Respondent or to the clinic, which was eventually done some three days later than it should have been done.

**Conclusion of Law Exception 6:  Respondent takes exception to Conclusion of Law 91 on pages 24 and 25 of the Recommended Order because part of this conclusion is a Finding of Fact, part of that Finding of Fact is not supported by clear and convincing evidence, and part of this conclusion is an incorrect legal conclusion regarding an aggravating factor.**

Respondent takes exception to paragraph 91 of the Recommended Order in which the Administrative Law Judge states:  "The failure to notify hospital personnel that a fetal part was removed while the patient was at the clinic adversely impacted the medical care the patient received at the hospital and has been considered as an aggravating factor."  (Emphasis added.) The underscored portion of paragraph 91 is excepted to because it is a Finding of Fact and not a Conclusion of Law, as well as because that finding is based on an inference that is inconsistent with credible evidence in the record.  The remaining part of paragraph 91 is excepted to because it purports to treat as an aggravating factor a factor that is not mentioned in Florida Administrative Code Rule 64B8-8.001(3).

First, an act or failure to act that "adversely impacted the care the patient received at the hospital" cannot be an aggravating factor within the meaning of Florida Administrative Rule 64B8-8.001(3), because such an adverse impact is not mentioned in subparagraph (a) of that rule or in any other subparagraph of that rule.  Such being the case, there is no basis for applying any aggravating factor when determining the appropriate penalty in this case.  Further, as argued below in the exceptions to the excessive penalty recommended by the Administrative Law Judge, there are a number of mitigating factors that should be considered by the Board during its deliberations regarding the appropriate penalty.

Second, while it may be argued that a failure to advise the hospital doctors that a fetal part had been removed created the possibility of an adverse impact on the patient's hospital care,

17

the primary cause of any such adverse impact in this case was the failure of the hospital doctors to promptly make a telephone call to the clinic or to the Respondent to inquire about the missing part. Such a telephone call was the most logical and obvious first step, especially when the patient was transferred from a termination of pregnancy clinic. In the record of this case there is no logical explanation for why it took three days for one of the hospital doctors to realize that a telephone call should have been made.

Third, as the Respondent has stated above in Respondent's Finding of Fact Exception 3 regarding paragraph 41 of the Recommended Order, as well as in other places in these exceptions, there is no clear and convincing evidence that the Respondent failed to advise the hospital doctors of the removal of a fetal part during his telephone conversations with Dr. Cates-Smith and Dr. Lamberty during the evening of February 7, 2006.

<u>**Exceptions To The Proposed Penalty<br>And Request For Downward Departure**</u>

In light of the foregoing Exceptions and the resultant modifications to the Findings of Fact and Conclusions of Law of the Administrative Law Judge, this Board should reject the recommended penalty and dismiss this case. In the alternative, this Board should decline to follow the Administrative Law Judge's recommendation as to penalty and impose a penalty modified and reduced for the reasons that are set forth below.

**Penalty Exception 1. Respondent takes exception to the recommended penalty because it is excessive and violates principles of equal protection and administrative *stare decisis*, in that it exceeds the penalties imposed by the Board of Medicine on other licensees who were found to have violated sections 458.331(1)(t) and (m), Florida Statutes, together.**

The Administrative Law Judge found that Respondent violated sections 458.331(1)(t) and (m), Florida Statutes. On the basis of his findings, the Administrative Law Judge recommended that the Board impose a penalty of a two-year period of suspension followed by a three-year

18

period of probation and an administrative fine of $20,000. This recommendation exceeded the penalty proposed by the Department in its Proposed Recommended Order, which called for a reprimand, a two-year suspension followed by two years of probation, a fine of $15,000 and community service and continuing education requirements as the Board determines necessary. It is noteworthy that the Department recommended this penalty based on the assumption that Respondent would be found in violation of <u>three violations</u> – subsections (t), (m), and (q) of 458.331(1), Florida Statutes. In fact, only the (t) and (m) violations were found by the Administrative Law Judge, and thus, even the Department's recommended penalty, had it been imposed, would have been excessive and would have warranted reduction.

The recommended penalty violates Dr. Pendergraft's constitutional right to equal protection under the law and the doctrine of *stare decisis*. *Stare decisis* is a core principle of our system of justice that requires that like cases be treated alike and that decisions rendered previously involving similar circumstances be followed. *See Gessler v. Dep't of Bus. and Prof'l Regulation*, 627 So. 2d 501 (Fla. 4th DCA 1993), *superseded on other grounds, Caserta v. Dep't of Bus. and Prof'l Regulation*, 686 So. 2d 651 (Fla. 5th DCA 1996). The principle of *stare decisis* applies in administrative proceedings such as the one before the Board. *Gessler*, at 504. Two cases that have relied on the *Gessler* decision to reverse orders of administrative bodies such as the Board both involved the agency's clear refusal to consider agency precedent in reaching a decision. *See Plante v Dep't of Bus. and Prof'l Regulation*, 716 So. 2d 790, 791-92 (Fla. 4th DCA 1998) (agency refused to follow its own precedents at penalty hearing); *Nordheim v. Dep't of Env. Protection*, 719 So. 2d 1212, 1214 (Fla. 3d DCA 1998)(failure to consider own precedent not explained by agency).

19

In this case, the ALJ found two violations:  a medical records violation under section 458.331(1)(m), and a violation of the standard of care under section 458.331(1)(t), Florida Statutes.  A review of the Board's prior final orders shows many examples of the imposition of disciplinary penalties for a sole (m) count and a sole (t) count.  Diligent search of the Board's final orders failed to uncover a case in which the Board imposed a penalty as excessive as the one recommended herein on the relatively minor factual violations found by the ALJ.  A representative sampling of five of this Board's orders follows, and demonstrates that the ALJ's recommended penalty must be reduced to comport with the constitutional right to equal protection and the principle of *stare decisis*.

In *Department of Health v. Gerard Romain, M.D.*, (Bd. of Med. December 19, 2008) (DOH Case No. 2006-39858; DOAH Case No. 08-1074PL), the Board considered violations arising from internet prescription of controlled substances to a patient the physician had never spoken to or seen.  The ALJ and the Board found all three violations that were originally charged in the current case:  sections 458.331(1)(t), (m), and (q), Florida Statutes.  The ALJ found aggravating factors as the number of times the licensee committed the infraction (two) and the exposure of the patient and public to potential injury.  Yet even with three violations found, this Board imposed a penalty of only a reprimand, three years of probation with conditions, a restriction on prescribing and a fine of $20,000.00.  There was no suspension imposed.   In Dr. Pendergraft's case, there were only two violations found by the ALJ -- one (t) violation and one (m) violation, and both were essentially the same infraction:  failing to communicate one aspect of the patient's course to the subsequent treating hospital.

Similarly, in *Department of Health v. James C. Dozier, M.D.* (Bd. of Med. December 19, 2007) (DOH Case No. 2005-61833, DOAH Case No. 07-1962PL), the ALJ found violations of

20

13755

sections 458.331(1)(t) and (m), Florida Statutes, based on the physician's failure to consider and "work up" a differential diagnosis of pulmonary embolism and failure to document an adequate history, in a case in which the patient died of pulmonary embolism two days after the physician treated the patient. The ALJ found two aggravating factors: the exposure of the patient to and his surviving family members to "great physical, emotional and financial injury or potential injury" and prior disciplinary action. The ALJ recommended and the Board imposed a penalty of a reprimand, a fine of $10,000.00, the FMA record-keeping course, and five hours of CME in diagnosis and treatment of pulmonary embolus. Despite the death of the patient and the existence of prior disciplinary action against this physician, the Board imposed no suspension, no probation, and no community service.

In *Department of Health v. Samuel Cox, M.D.* (Bd. of Med. August 29, 2007) (DOH Case No. 2005-6716, DOAH Case No. 07-0503PL), the ALJ found two violations of section 458.331(1)(t) for failing to recognize signs and symptoms of a post-operative leak in the bowel in his care and treatment of two patients. A sole (m) violation was also found for the physician's failure to document why surgical repair for one of the patients was delayed for two days. The ALJ found two aggravating factors, but did not specify them in his Recommended Order. The ALJ recommended, and the Board imposed a penalty of a reprimand, two years probation with terms, and a fine of $15,000.00. Thus, despite finding two (t) violations and one (m) violation in Dr. Cox's case, with two aggravating factors and the life-threatening circumstances of both, the Board imposed a significantly lower penalty than that which is recommended for Dr. Pendergraft in the pending case.

In *Department of Health v. Bill Byrd, M.D.* (Bd. of Med. August 26(?), 2006) (DOH Case No. 2002-27864, DOAH Case No. 05-4124PL), the ALJ found one (t) violation and one (m)

21

13756

violation where the physician failed to refer a patient to a surgeon when it was warranted by clinical evidence and failed to include sufficient information in the medical record to assess the patient's clinical course. The ALJ recommended, and the Board imposed a penalty of a reprimand, a fine of $12,000.00, a two-year probationary period with conditions, and a medical records course. Thus, in a case in which a sole (t) and a sole (m) violation were found, the Board imposed no suspension. By contrast, the ALJ's recommendation of two years of suspension for a sole (t) and (m) in Dr. Pendergraft's case is clearly excessive.

Even where the Board has imposed suspension for a (t) and (m) combination of violations, the suspension imposed has been relatively brief. In *Department of Health v. Richard B. Edison, M.D.* (Bd. of Med. April 29, 2008) (DOH Case No. 2005-57892, DOAH Case No. 2006-3707PL), the ALJ found the physician violated section 458.331(1)(t), (m), and (q), Florida Statutes, in the erroneous administration of Lidocaine to a patient during breast augmentation surgery. The ALJ found several aggravating factors: the physician's miscalculation exposed the patient to potential danger despite the fact that there was insufficient evidence to connect the patient's seizure with the Lidocaine; there were three violations; and the physician had practiced plastic surgery in Florida for 22 years and had two prior disciplinary actions filed against him (including one, *Department of Health v. Richard B. Edison, M.D.* (Bd. of Med. Jan. 5, 2007) (DOH Case No. 2004-0494, DOAH Case No. 2006-0598PL), in which the Board imposed a stayed 30-day suspension). Yet even with the egregious facts of the case, the additional violation found, the aggravating factors, and the physician's prior disciplinary history, the ALJ recommended and the Board imposed only a 180-day suspension, a four-year probationary period, a fine of $20,000.00. In light of this combination of facts in Dr. Edison's cases, the

13757

penalty recommended by the ALJ in Dr. Pendergraft's case is excessive and must be reduced to bring it in line with prior Board precedent.

**Penalty Exception 2.   Respondent takes exception to the proposed penalty of the Administrative Law Judge as he used an "aggravating factor" that is not one of those listed in Rule 64B8-8.001(3), F.A.C.**

In paragraph 91, the Administrative Law Judge found that Dr. Pendergraft's omission in the medical records "adversely impacted the medical care the patient received at the hospital and has been considered as an aggravating factor." The ALJ cited no provision of rule 64B8-8.001(3), F.A.C. that includes this "aggravating factor". An act or failure to act that "adversely impacted" the care given to the patient at the hospital cannot be an aggravating factor within the meaning of Rule 64B8-8.001(3), because such an adverse impact is not mentioned in subparagraph (a) of the Rule or in any other subparagraph. Even assuming that the omission created the possibility of an adverse impact in this case, the primary cause of any adverse impact on the patient's hospital care in the case was the failure of the hospital physicians to promptly make a telephone call to the Respondent regarding the missing fetal part. Such a telephone call would be the most logical and obvious first step, especially when the patient was emergently transferred from his clinic. There is no logical explanation in the record before this Board as to why it took three days for one of the hospital physicians to realize that a telephone call to Dr. Pendergraft was warranted. Furthermore, as previously argued there is no competent substantial evidence, that Dr. Pendergraft failed to advise the Drs. Cates-Smith and Lamberty of the removal during their telephone conversation the evening of February 7. None of the three physicians specifically recall whether this aspect of the case was discussed in their telephone conversation. This is not clear and convincing evidence that Dr. Pendergraft did not inform these physicians. For this

23

reason, the ALJ's specified aggravation on this point must be stricken and disregarded in reassessing the appropriate penalty herein.

**Penalty Exception 3. Respondent takes exception to the proposed penalty of the Administrative Law Judge as he failed to acknowledge and consider the mitigating factors in the record before him.**

This Board's Rule on disciplinary guidelines states, in pertinent part:

> Based upon consideration of ... mitigating factors present in an individual case, the Board may deviate from the penalties recommended [in the disciplinary ranges].

64B8-8.001(3), F.A.C. Respondent takes Exception to the proposed penalty because the Administrative Law Judge did not acknowledge, consider or address the mitigating factors in the record before him in formulating his proposed penalty. The Board should consider the following mitigating factors: Dr. Pendergraft has been continuously licensed since 1982, in other states and Florida, and he has never been before this Board, or any other licensing board for the same factual offenses that were alleged in this case. 64B8-8.001(3)(d) and (e), F.A.C. Thus his status "at the time of the offense" was that he had no disciplinary action against his license "at the time of the offense." 64B8-8.001(3)(b), F.A.C. In addition, in a three-count Administrative Complaint, in which the Department alleged four separate medical record ("m") infractions, eight separate standard of care infractions ("t") and three separate prescribing ("q") infractions, the Department only established two violations – one (t) and one (m). Both flow from one single act of omission, the failure to note in the patient's chart that a fetal part was removed prior to the patient being sent to the hospital. Thus, this was an isolated incident with unique facts unlikely to be repeated. 64B8-8.001(3)(d), F.A.C. Significantly, the event that Dr. Pendergraft failed to include in the patient's medical record occurred just seconds before the Respondent discovered that the patient's situation was life-threatening and required immediate emergency transport and

24

attention.   With his attention appropriately focused on patient care first, the Respondent's omission in the medical record is placed in its proper context – that of dealing with an emergent patient.

For the foregoing reasons, should there be any penalty, the Board should decrease the penalty recommended by the Administrative Law Judge to a reprimand, a Board-approved medical records course, and a fine of $10,000.00.

WHEREFORE, Respondent respectfully requests that the foregoing Exceptions to the Recommended Order be granted and that modifications to the Findings of Fact, Conclusions of Law, and Recommended Penalty of the Administrative Law Judge be made in accordance with the arguments herein.

Respectfully submitted this 6th day of October, 2009.

Kenneth J. Metzger (FL B# 0342215)
Metzger, Grossman, Furlow & Bayó, LLC
1408 North Piedmont Way
Tallahassee, Florida  32308
Phone: 850.385.1314
Fax: 850.385.3953
k.metzger@mgfblaw.com

ATTORNEYS FOR RESPONDENT

13760

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing Exceptions to Recommended Order was forwarded by hand delivery for filing to R. Sam Power, Clerk, Department of Health, 4052 Bald Cypress Way, Bin C-01, Tallahassee, Florida 32399-3201 and was served by electronic transmission to Claudia Llado, Clerk, Division of Administrative Hearings, The DeSoto Building, 1230 Apalachee Parkway, Tallahassee, Fl 32399-3060 and to Greg Marr, Esquire, Assistant General Counsel, Department of Health, Prosecution Services Unit, 4052 Bald Cypress Way, Bin C-65, Tallahassee, Florida 32399-3265, with a hard copy to follow by United States mail delivery, this 6th day of October, 2009.

Kenneth J. Metzger

26

__13761

**FILED**
DEPARTMENT OF HEALTH
DEPUTY CLERK
CLERK: Angela Bertaw
DATE 10/27/09

**STATE OF FLORIDA**
**DEPARTMENT OF HEALTH**

**DEPARTMENT OF HEALTH,**

       **Petitioner,**

**v.**                         **CASE NO. 2006-05930**

**JAMES S. PENDERGRAFT, IV, M.D.,**

       **Respondent.**
_____/

**AMENDED MOTION TO ASSESS COSTS**
**IN ACCORDANCE WITH SECTION 456.072(4)**

COMES NOW the Department of Health, by and through undersigned counsel, and moves the Board of Medicine for the entry of a Final Order assessing costs against the Respondent for the investigation and prosecution of this case in accordance with Section 456.072(4), Florida Statutes (2003). As grounds therefore, the Petitioner states the following:

1.     At its next regularly scheduled meeting, the Board of Medicine will take up for consideration the above-styled disciplinary action and will enter a Final Order therein.

2.     Section 456.072(4), Florida Statutes (2003),[1] states as follows:

> In addition to any other discipline imposed through final order, or citation, entered on or after July 1, 2001, pursuant to this section or discipline imposed through final order, or citation, entered on or after July 1, 2001, for a violation of any practice act, the board, or the department when there is not board, shall assess costs related to the investigation and prosecution of the case. <u>Such costs related to the investigation and prosecution include, but are not</u>

_____

[1] Ch. 2003-416, § 19, Laws of Fla., effective September 15, 2003, amended Section 456.072(4), Florida Statutes (2003), to include the underlined language.

<u>limited to, salaries and benefits of personnel, costs related to the time spent by the attorney and other personnel working on the case, and any other expenses incurred by the department for the case. The board, or the department when there is no board, shall determine the amount of costs to be assessed after its consideration of an affidavit of itemized costs and any written objections thereto.</u> . . . (emphasis added)

3.    The investigation and prosecution of this case has resulted in costs in the total amount of $102,303.21, based on the following itemized statement of costs:

a.    Total costs for Complaints $169.65
b.    Total costs for Investigations $7,688.30
c.    Total costs for Legal $66,455.99
d.    Total costs for Expenses $27,989.27

Therefore, the Petitioner seeks an assessment of costs against the Respondent in the amount of $102,303.21, as evidenced in the attached affidavit.  (Exhibit A).

4.    Should the Respondent file written objections to the assessment of costs, within ten (10) days of the date of this motion, specifying the grounds for the objections and the specific elements of the costs to which the objections are made, the Petitioner requests that the Board determine the amount of costs to be assessed based upon its consideration of the affidavit attached as Exhibit A and any timely-filed written objections.

5.    Petitioner requests that the Board grant this motion and assess costs in the amount of $102,303.21 as supported by competent, substantial evidence. This assessment of costs is in addition to any other discipline imposed by the Board and is in accordance with Section 456.072(4), Florida Statutes (2003).

2

WHEREFORE, the Department of Health requests that the Board of Medicine enter a Final Order assessing costs against the Respondent in the amount of $102,303.21.

DATED this _27th_ day of _OCTOBER_, 2009.

Respectfully submitted,

Greg S. Marr
Assistant General Counsel
DOH Prosecution Services Unit
4052 Bald Cypress Way, Bin C-65
Tallahassee, FL 32399-3265
Florida Bar 131369
(850) 245-4640 Ext. 8136
(850) 245-4681 FAX

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Amended Motion to Assess Costs has been provided by U.S. Mail and email (k.metzger@mgfblaw.com) this _27th_ day of _OCTOBER_, 2009, to: Kenneth J. Metzger, Esq., Metzger, Grossman, Furlow & Bayo, LLC, 1408 N. Piedmont Way, Tallahassee, FL 32308.

Greg S. Marr
Assistant General Counsel

3

## AFFIDAVIT OF FEES AND COSTS EXPENDED

STATE OF FLORIDA
COUNTY OF LEON:

**BEFORE ME**, the undersigned authority, personally appeared **JULIE M. WEEKS** who was sworn and states as follows:

1) My name is Julie M. Weeks.

2) I am over the age of 18, competent to testify, and make this affidavit upon my own personal knowledge and after review of the records at the Florida Department of Health (DOH).

3) I am the Operations and Management Consultant Manager (OMCM) for the Consumer Services and Compliance Management Unit for DOH. The Consumer Services Unit is where all complaints against Florida health care licensees (e.g., medical doctors, dentists, nurses, respiratory therapists) are officially filed. I have been in my current job position for more than one year. My business address is 4052 Bald Cypress Way, Bin C-75 Tallahassee, Florida 32399-3275.

4) As OMCM of the Consumer Services and Compliance Management Unit, my job duties include reviewing data in the Time Tracking System and verifying that the amounts correspond. The Time Tracking System is a computer program which records and tracks DOH's costs regarding the investigation and prosecution of cases against Florida health care licensees.

5) As of today, DOH's total costs for investigating and prosecuting DOH case number **2006-05930** (Department of Health v. **James Scott Pendergraft, M.D., IV**) are ONE HUNDRED- TWO THOUSAND THREE HUNDRED-THREE DOLLARS AND TWENTY-THREE CENTS (**$102,303.21**).

6) The costs for DOH case number **2006-05930** (Department of Health v. **James Scott Pendergraft, M.D., IV**) are summarized in Exhibit 1 (Cost Summary Report), which is attached to this document.

7) The itemized costs and expenses for DOH case numbers **2006-05930** (Department of Health v **James Scott Pendergraft, M.D., IV**) are detailed in Exhibit 2 (Itemized Cost Report and Itemized Expense Report and receipts), which is attached to this document.

8) The itemized costs as reflected in Exhibit 2 are determined by the following method: DOH employees who work on cases daily are to

13579

keep track of their time in six-minute increments (e.g., investigators and lawyers).   A designated DOH employee in the Consumer Services Unit, Legal Department, and in each area office, inputs the time worked and expenses spent into the Time Tracking System.  Time and expenses are charged against a state health care Board (e.g., Florida Board of Medicine, Florida Board of Dentistry, Florida Board of Osteopathic Medicine), and/or a case.  If no Board or case can be charged, then the time and expenses are charged as administrative time.  The hourly rate of each employee is calculated by formulas established by the Department. (See the Itemized Cost Report)

9)  Julie M. Weeks, first being duly sworn, states that she has read the foregoing Affidavit and its attachments and the statements contained therein are true and correct to the best of her knowledge and belief.

FURTHER AFFIANT SAYETH NOT.

_Julie M. Weeks_
Julie M. Weeks, Affiant

State of Florida
County of Leon

Sworn to and subscribed before me this 27th day of October, 2009, by Julie M. Weeks, who is personally known to me.

Notary Signature

> SHERRY D. WILSON
> Commission # DD 908459
> Expires August 19, 2013
> Bonded Thru Troy Fain Insurance 800-385-7019

Name of Notary Printed

Stamp Commissioned Name of Notary Public:

_13580

# Complaint Cost Summary
### Complaint Number: 200605930

**Complainant's Name:** DOH (S.B.) 0004393

**Subject's Name:** PENDERGRAFT, JAMES SCOTT IV

| | ***** Cost to Date ***** | |
|---|---|---|
| | **Hours** | **Costs** |
| Complaint: | 3.30 | $169.65 |
| Investigation: | 120.20 | $7,688.30 |
| Legal: | 588.90 | $66,455.99 |
| Compliance: | 0.00 | $0.00 |
| | ********** | ********** |
| Sub Total: | 712.40 | $74,313.94 |
| Expenses to Date: | | $27,989.27 |
| Prior Amount: | | $0.00 |
| Total Costs to Date: | | $102,303.21 |

13581

**13582**

Division of
Medical Quality Assurance

# MQA

Report Date  10/27/2009

*** C O N F I D E N T I A L ***

Time Tracking System
Itemized Cost by Complaint

Complaint   200605930

Page 1 of 13

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| **CONSUMER SERVICES UNIT** | | | | | | |
| HA78 | 0.40 | $53.87 | $21.55 | 03/31/2006 | 82 | MQA REPORT ENTRY |
| HA78 | 0.30 | $51.07 | $15.32 | 06/05/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| HA78 | 0.20 | $51.07 | $10.21 | 06/09/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| HA78 | 0.60 | $51.07 | $30.64 | 07/17/2006 | 25 | REVIEW CASE FILE |
| HA78 | 0.60 | $51.07 | $30.64 | 10/11/2006 | 25 | REVIEW CASE FILE |
| HA78 | 0.60 | $51.07 | $30.64 | 11/03/2006 | 25 | REVIEW CASE FILE |
| HA78 | 0.40 | $51.07 | $20.43 | 11/08/2006 | 25 | REVIEW CASE FILE |
| HA78 | 0.70 | $51.07 | $35.75 | 01/10/2007 | 78 | INITIAL REVIEW AND ANALYSIS OF COMPLAINT |
| Sub Total | 3.80 | | $195.18 | | | |
| **INVESTIGATIVE SERVICES UNIT** | | | | | | |
| OI100 | 1.00 | $64.58 | $64.58 | 01/17/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 1.00 | $64.58 | $64.58 | 01/25/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.50 | $64.58 | $32.29 | 01/30/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.50 | $64.58 | $32.29 | 02/12/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 1.00 | $64.58 | $64.58 | 02/14/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 1.00 | $64.58 | $64.58 | 02/26/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.50 | $64.58 | $32.29 | 03/05/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 1.00 | $64.58 | $64.58 | 03/06/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.50 | $64.58 | $32.29 | 03/07/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.50 | $64.58 | $32.29 | 03/07/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 1.50 | $64.58 | $96.87 | 03/20/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 1.00 | $64.58 | $64.58 | 03/20/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.50 | $64.58 | $32.29 | 04/03/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.50 | $64.58 | $32.29 | 04/05/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 1.00 | $64.58 | $64.58 | 04/05/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.50 | $64.58 | $32.29 | 04/06/2007 | 58 | TRAVEL TIME |
| OI100 | 3.50 | $64.58 | $226.03 | 04/06/2007 | 4 | ROUTINE INVESTIGATIVE WORK |

13583

Division of
Medical Quality Assurance

# MQA

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint    200605930

Report Date  10/27/2009

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| OI100 | 0.50 | $64.58 | $32.29 | 04/11/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.50 | $64.58 | $32.29 | 04/11/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 3.00 | $64.58 | $193.74 | 04/11/2007 | 76 | REPORT PREPARATION |
| OI100 | 2.50 | $64.58 | $161.45 | 04/12/2007 | 76 | REPORT PREPARATION |
| OI100 | 0.50 | $64.58 | $32.29 | 04/12/2007 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.80 | $64.58 | $51.66 | 05/23/2007 | 76 | REPORT PREPARATION |
| OI100 | 1.00 | $64.58 | $64.58 | 09/18/2008 | 43 | PREPARE FOR DEPOSITION |
| OI100 | 1.50 | $64.58 | $96.87 | 09/18/2008 | 43 | PREPARE FOR DEPOSITION |
| OI100 | 1.00 | $64.58 | $64.58 | 09/19/2008 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $64.58 | $64.58 | 09/22/2008 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI98 | 0.50 | $48.16 | $24.08 | 09/25/2008 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.50 | $64.58 | $32.29 | 09/26/2008 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $64.58 | $64.58 | 09/29/2008 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $64.58 | $64.58 | 10/01/2008 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $64.58 | $64.58 | 10/01/2008 | 58 | TRAVEL TIME |
| OI100 | 1.50 | $64.58 | $96.87 | 10/01/2008 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.50 | $64.58 | $32.29 | 10/21/2008 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $64.58 | $64.58 | 10/23/2008 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.50 | $64.58 | $32.29 | 10/23/2008 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.50 | $64.58 | $32.29 | 11/19/2008 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $64.58 | $64.58 | 11/24/2008 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.50 | $64.58 | $32.29 | 12/01/2008 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.30 | $64.58 | $19.37 | 12/04/2008 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.50 | $64.58 | $32.29 | 12/08/2008 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 1.00 | $64.58 | $64.58 | 12/17/2008 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.50 | $64.58 | $32.29 | 12/17/2008 | 76 | REPORT PREPARATION |
| OI100 | 1.00 | $64.58 | $64.58 | 01/06/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.50 | $64.58 | $32.29 | 01/07/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $64.58 | $64.58 | 01/08/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI98 | 0.50 | $48.16 | $24.08 | 01/08/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 2.00 | $64.58 | $129.16 | 01/13/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.50 | $64.58 | $96.87 | 01/14/2009 | 58 | TRAVEL TIME |
| OI100 | 1.50 | $64.58 | $96.87 | 01/14/2009 | 6 | SUPPLEMENTAL INVESTIGATION |

**13584**

Division of
Medical Quality Assurance

# MQA

Report Date  10/27/2009

*** CONFIDENTIAL ***

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint  200605930

Page 3 of 13

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| OI100 | 1.00 | $64.58 | $64.58 | 01/15/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| LI77 | 0.50 | $73.99 | $37.00 | 01/26/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $64.58 | $64.58 | 01/27/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.50 | $64.58 | $96.87 | 01/29/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $64.58 | $64.58 | 01/29/2009 | 58 | TRAVEL TIME |
| OI100 | 0.50 | $64.58 | $32.29 | 01/29/2009 | 100 | SERVICE OF ADMINISTRATIVE COMPLAINTS, SUBPOENAS, NOTICE TO CEASE |
| OI100 | 2.00 | $64.58 | $129.16 | 01/30/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| LI77 | 1.00 | $73.99 | $73.99 | 02/02/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 2.50 | $64.58 | $161.45 | 02/02/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $64.58 | $64.58 | 02/03/2009 | 43 | PREPARE FOR DEPOSITION |
| OI100 | 1.50 | $64.58 | $96.87 | 02/03/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.50 | $64.58 | $32.29 | 02/04/2009 | 15 | PROFESSIONAL CONTACTS |
| OI100 | 0.80 | $64.58 | $51.66 | 02/11/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.50 | $64.58 | $32.29 | 02/12/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $64.58 | $64.58 | 02/13/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $64.58 | $64.58 | 02/13/2009 | 100 | SERVICE OF ADMINISTRATIVE COMPLAINTS, SUBPOENAS, NOTICE TO CEASE |
| OI100 | 0.50 | $64.58 | $32.29 | 02/17/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $64.58 | $64.58 | 02/17/2009 | 58 | TRAVEL TIME |
| OI100 | 0.50 | $64.58 | $32.29 | 02/17/2009 | 100 | SERVICE OF ADMINISTRATIVE COMPLAINTS, SUBPOENAS, NOTICE TO CEASE |
| OI100 | 0.50 | $64.58 | $32.29 | 02/18/2009 | 100 | SERVICE OF ADMINISTRATIVE COMPLAINTS, SUBPOENAS, NOTICE TO CEASE |
| OI100 | 0.80 | $64.58 | $51.66 | 02/18/2009 | 8 | PROBATION INVESTIGATION |
| OI100 | 0.20 | $64.58 | $12.92 | 02/18/2009 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.50 | $64.58 | $32.29 | 02/20/2009 | 48 | FORMAL HEARING |
| OI100 | 2.00 | $64.58 | $129.16 | 02/24/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $64.58 | $64.58 | 02/25/2009 | 58 | TRAVEL TIME |
| OI100 | 5.00 | $64.58 | $322.90 | 02/25/2009 | 44 | DEPOSITIONS |
| OI100 | 0.50 | $63.04 | $31.52 | 03/18/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 4.50 | $63.04 | $283.68 | 03/20/2009 | 44 | DEPOSITIONS |
| OI100 | 0.50 | $63.04 | $31.52 | 03/24/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.50 | $63.04 | $31.52 | 03/30/2009 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 1.00 | $63.04 | $63.04 | 03/30/2009 | 58 | TRAVEL TIME |
| OI100 | 0.20 | $63.04 | $12.61 | 03/30/2009 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.50 | $63.04 | $31.52 | 04/06/2009 | 6 | SUPPLEMENTAL INVESTIGATION |

13585

Division of
Medical Quality Assurance

# MQA

**\*\*\* C O N F I D E N T I A L \*\*\***

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint  200605930

Report Date 10/27/2009

Page 4 of 13

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| OI100 | 0.70 | $63.04 | $44.13 | 04/08/2009 | 43 | PREPARE FOR DEPOSITION |
| OI100 | 1.70 | $63.04 | $107.17 | 04/08/2009 | 44 | DEPOSITIONS |
| OI100 | 0.50 | $63.04 | $31.52 | 04/15/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $63.04 | $63.04 | 04/20/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 2.00 | $63.04 | $126.08 | 04/20/2009 | 76 | REPORT PREPARATION |
| OI100 | 1.50 | $63.04 | $94.56 | 04/21/2009 | 58 | TRAVEL TIME |
| OI100 | 0.50 | $63.04 | $31.52 | 04/21/2009 | 100 | SERVICE OF ADMINISTRATIVE COMPLAINTS, SUBPOENAS, NOTICE TO CEASE |
| OI100 | 0.50 | $63.04 | $31.52 | 04/22/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.50 | $63.04 | $31.52 | 04/23/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.30 | $63.04 | $18.91 | 04/24/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.00 | $63.04 | $63.04 | 04/27/2009 | 58 | TRAVEL TIME |
| OI100 | 0.40 | $63.04 | $25.22 | 04/27/2009 | 100 | SERVICE OF ADMINISTRATIVE COMPLAINTS, SUBPOENAS, NOTICE TO CEASE |
| OI100 | 0.60 | $63.04 | $37.82 | 04/27/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.50 | $63.04 | $31.52 | 04/28/2009 | 100 | SERVICE OF ADMINISTRATIVE COMPLAINTS, SUBPOENAS, NOTICE TO CEASE |
| OI100 | 0.50 | $63.04 | $31.52 | 04/28/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.50 | $63.04 | $31.52 | 05/04/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 0.60 | $63.04 | $37.82 | 05/06/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 1.50 | $63.04 | $94.56 | 05/08/2009 | 58 | TRAVEL TIME |
| OI100 | 0.80 | $63.04 | $50.43 | 05/08/2009 | 100 | SERVICE OF ADMINISTRATIVE COMPLAINTS, SUBPOENAS, NOTICE TO CEASE |
| OI100 | 0.50 | $63.04 | $31.52 | 05/08/2009 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.50 | $63.04 | $31.52 | 05/12/2009 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI100 | 0.50 | $63.04 | $31.52 | 05/19/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 5.00 | $63.04 | $315.20 | 05/20/2009 | 48 | FORMAL HEARING |
| OI100 | 0.50 | $63.04 | $31.52 | 05/21/2009 | 43 | PREPARE FOR DEPOSITION |
| OI100 | 5.00 | $63.04 | $315.20 | 07/10/2009 | 48 | FORMAL HEARING |
| OI100 | 1.00 | $63.04 | $63.04 | 07/22/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 3.00 | $63.04 | $189.12 | 07/22/2009 | 76 | REPORT PREPARATION |
| OI100 | 1.00 | $63.04 | $63.04 | 07/23/2009 | 6 | SUPPLEMENTAL INVESTIGATION |
| OI100 | 2.00 | $63.04 | $126.08 | 07/23/2009 | 76 | REPORT PREPARATION |
| **Sub Total** | **119.70** | | **$7,662.77** | | | |

13586

**Division of**
**Medical Quality Assurance**

# MQA

*** C O N F I D E N T I A L ***

Time Tracking System
Itemized Cost by Complaint

Complaint   200605930

Report Date  10/27/2009

Page 5 of 13

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| **PROSECUTION SERVICES UNIT** | | | | | | |
| HLL40B | 0.20 | $122.84 | $24.57 | 08/25/2006 | 38 | REVIEW DISCOVERY REQUESTS/RESPONSES |
| HLL10A | 0.50 | $136.37 | $68.19 | 06/04/2007 | 25 | REVIEW CASE FILE |
| HLL10A | 2.80 | $111.56 | $312.37 | 02/28/2008 | 28 | PREPARE OR REVISE ADMINISTRATIVE COMPLAINT |
| HLL10A | 0.50 | $111.56 | $55.78 | 02/28/2008 | 89 | PROBABLE CAUSE PREPARATION |
| HLL10A | 0.20 | $111.56 | $22.31 | 04/10/2008 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.20 | $111.56 | $22.31 | 04/10/2008 | 37 | REVIEW LETTER |
| HLL10A | 0.60 | $111.56 | $66.94 | 04/22/2008 | 90 | POST PROBABLE CAUSE PROCESSING |
| HLL10A | 0.30 | $111.56 | $33.47 | 05/08/2008 | 37 | REVIEW LETTER |
| HLL10A | 0.30 | $111.56 | $33.47 | 05/08/2008 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.30 | $111.56 | $33.47 | 06/12/2008 | 35 | TELEPHONE CALLS |
| HLL57A | 0.50 | $111.56 | $55.78 | 06/24/2008 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 1.20 | $111.56 | $133.87 | 06/25/2008 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL57A | 1.00 | $111.56 | $111.56 | 06/25/2008 | 70 | CONFERENCES WITH LAWYERS |
| HLL57A | 0.50 | $111.56 | $55.78 | 06/25/2008 | 26 | PREPARE OR REVISE MEMORANDUM |
| HLL57A | 3.00 | $111.56 | $334.68 | 07/14/2008 | 25 | REVIEW CASE FILE |
| HLL57A | 1.50 | $111.56 | $167.34 | 07/17/2008 | 25 | REVIEW CASE FILE |
| HLL57A | 5.50 | $111.56 | $613.58 | 08/21/2008 | 25 | REVIEW CASE FILE |
| HLL57A | 0.20 | $111.56 | $22.31 | 09/02/2008 | 26 | PREPARE OR REVISE MEMORANDUM |
| HLL57A | 3.50 | $111.56 | $390.46 | 09/17/2008 | 47 | TRIAL PREPARATION |
| HLL57A | 1.50 | $111.56 | $167.34 | 09/18/2008 | 39 | PREPARE/RESPOND TO DISCOVERY |
| HLL57A | 3.50 | $111.56 | $390.46 | 09/18/2008 | 47 | TRIAL PREPARATION |
| HLL57A | 1.00 | $111.56 | $111.56 | 09/18/2008 | 115 | CONTACT WITH INVESTIGATORS |
| HL58B | 0.30 | $111.56 | $33.47 | 09/19/2008 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL57A | 2.00 | $111.56 | $223.12 | 09/19/2008 | 47 | TRIAL PREPARATION |
| HLL57A | 1.00 | $111.56 | $111.56 | 09/22/2008 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 3.00 | $111.56 | $334.68 | 09/22/2008 | 47 | TRIAL PREPARATION |
| HLL57A | 1.00 | $111.56 | $111.56 | 09/23/2008 | 47 | TRIAL PREPARATION |
| HLL57A | 5.10 | $111.56 | $568.96 | 09/29/2008 | 47 | TRIAL PREPARATION |
| HLL57A | 4.50 | $111.56 | $502.02 | 10/01/2008 | 58 | TRAVEL TIME |
| HLL57A | 3.00 | $111.56 | $334.68 | 10/01/2008 | 113 | CONTACT WITH WITNESSES |

13587

Division of
Medical Quality Assurance

# MQA

*** CONFIDENTIAL ***

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint   200605930

Report Date  10/27/2009

Page 6 of 13

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL57A | 0.50 | $111.56 | $55.78 | 10/24/2008 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 2.00 | $111.56 | $223.12 | 10/29/2008 | 47 | TRIAL PREPARATION |
| HLL57A | 0.50 | $111.56 | $55.78 | 11/03/2008 | 45 | PREHEARING MOTION/CONFERENCE CALL |
| HLL57A | 2.00 | $111.56 | $223.12 | 12/02/2008 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 0.50 | $111.56 | $55.78 | 12/02/2008 | 113 | CONTACT WITH WITNESSES |
| HLL57A | 3.00 | $111.56 | $334.68 | 12/05/2008 | 113 | CONTACT WITH WITNESSES |
| HLL57A | 1.00 | $111.56 | $111.56 | 01/06/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 0.50 | $111.56 | $55.78 | 01/06/2009 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL57A | 2.00 | $111.56 | $223.12 | 01/06/2009 | 39 | PREPARE/RESPOND TO DISCOVERY |
| HLL57A | 2.00 | $111.56 | $223.12 | 01/09/2009 | 44 | DEPOSITIONS |
| HLL57A | 1.00 | $111.56 | $111.56 | 01/09/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 5.00 | $111.56 | $557.80 | 01/09/2009 | 39 | PREPARE/RESPOND TO DISCOVERY |
| HLL57A | 1.00 | $111.56 | $111.56 | 01/12/2009 | 114 | CONTACT WITH EXPERTS |
| HLL57A | 3.00 | $111.56 | $334.68 | 01/12/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 1.00 | $111.56 | $111.56 | 01/12/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 1.00 | $111.56 | $111.56 | 01/13/2009 | 115 | CONTACT WITH INVESTIGATORS |
| HLL57A | 1.50 | $111.56 | $167.34 | 01/13/2009 | 38 | REVIEW DISCOVERY REQUESTS/RESPONSES |
| HLL57A | 2.00 | $111.56 | $223.12 | 01/13/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 1.00 | $111.56 | $111.56 | 01/14/2009 | 43 | PREPARE FOR DEPOSITION |
| HL58B | 1.20 | $111.56 | $133.87 | 01/16/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL57A | 4.00 | $111.56 | $446.24 | 01/20/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 2.00 | $111.56 | $223.12 | 01/20/2009 | 47 | TRIAL PREPARATION |
| HL58B | 1.00 | $111.56 | $111.56 | 01/21/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HL12A | 1.10 | $100.00 | $110.00 | 01/21/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL57A | 1.50 | $111.56 | $167.34 | 01/21/2009 | 46 | LEGAL RESEARCH |
| HLL57A | 1.50 | $111.56 | $167.34 | 01/21/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL57A | 2.00 | $111.56 | $223.12 | 01/21/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL57A | 2.00 | $111.56 | $223.12 | 01/21/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 1.50 | $111.56 | $167.34 | 01/21/2009 | 47 | TRIAL PREPARATION |
| HL58B | 0.50 | $111.56 | $55.78 | 01/22/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL57A | 2.00 | $111.56 | $223.12 | 01/22/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 2.50 | $111.56 | $278.90 | 01/22/2009 | 44 | DEPOSITIONS |
| HLL57A | 5.00 | $111.56 | $557.80 | 01/22/2009 | 47 | TRIAL PREPARATION |

13588



Division of
Medical Quality Assurance

# MQA

Report Date 10/27/2009

\*\*\* C O N F I D E N T I A L \*\*\*

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint   200605930

Page 7 of 13

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL57A | 2.00 | $111.56 | $223.12 | 01/23/2009 | 46 | LEGAL RESEARCH |
| HLL57A | 1.00 | $111.56 | $111.56 | 01/23/2009 | 41 | REVIEW PLEADING |
| HLL57A | 1.50 | $111.56 | $167.34 | 01/23/2009 | 39 | PREPARE/RESPOND TO DISCOVERY |
| HL58B | 0.30 | $111.56 | $33.47 | 01/23/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HL58B | 0.20 | $111.56 | $22.31 | 01/26/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL57A | 4.00 | $111.56 | $446.24 | 01/26/2009 | 39 | PREPARE/RESPOND TO DISCOVERY |
| HLL57A | 2.00 | $111.56 | $223.12 | 01/26/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL57A | 0.50 | $111.56 | $55.78 | 01/26/2009 | 46 | LEGAL RESEARCH |
| HLL57A | 1.00 | $111.56 | $111.56 | 01/26/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 3.50 | $111.56 | $390.46 | 01/27/2009 | 25 | REVIEW CASE FILE |
| HLL57A | 3.00 | $111.56 | $334.68 | 01/27/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 0.50 | $111.56 | $55.78 | 01/27/2009 | 29 | REVIEW ADMINISTRATIVE COMPLAINT |
| HLL57A | 3.00 | $111.56 | $334.68 | 01/28/2009 | 25 | REVIEW CASE FILE |
| HLL57A | 3.00 | $111.56 | $334.68 | 01/28/2009 | 113 | CONTACT WITH WITNESSES |
| HLL57A | 1.00 | $111.56 | $111.56 | 01/28/2009 | 43 | PREPARE FOR DEPOSITION |
| HL58B | 0.70 | $111.56 | $78.09 | 01/29/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL57A | 3.00 | $111.56 | $334.68 | 01/30/2009 | 25 | REVIEW CASE FILE |
| HLL57A | 2.00 | $111.56 | $223.12 | 02/02/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 2.00 | $111.56 | $223.12 | 02/02/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 3.00 | $111.56 | $334.68 | 02/03/2009 | 25 | REVIEW CASE FILE |
| HLL57A | 2.00 | $111.56 | $223.12 | 02/03/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 1.00 | $111.56 | $111.56 | 02/03/2009 | 44 | DEPOSITIONS |
| HLL57A | 2.00 | $111.56 | $223.12 | 02/03/2009 | 25 | REVIEW CASE FILE |
| HLL57A | 2.00 | $111.56 | $223.12 | 02/03/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 1.50 | $111.56 | $167.34 | 02/04/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 0.50 | $111.56 | $55.78 | 02/04/2009 | 70 | CONFERENCES WITH LAWYERS |
| HLL57A | 1.20 | $111.56 | $133.87 | 02/09/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 0.50 | $111.56 | $55.78 | 02/10/2009 | 70 | CONFERENCES WITH LAWYERS |
| HLL57A | 2.00 | $111.56 | $223.12 | 02/10/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 1.00 | $111.56 | $111.56 | 02/10/2009 | 25 | REVIEW CASE FILE |
| HLL57A | 1.00 | $111.56 | $111.56 | 02/10/2009 | 113 | CONTACT WITH WITNESSES |
| HLL57A | 2.00 | $111.56 | $223.12 | 02/10/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 3.00 | $111.56 | $334.68 | 02/11/2009 | 47 | TRIAL PREPARATION |

13589

# MQA

*** C O N F I D E N T I A L ***

**Time Tracking System**

**Itemized Cost by Complaint**

Complaint   200605930

Report Date   10/27/2009

Page 8 of 13

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL57A | 0.50 | $111.56 | $55.78 | 02/12/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 3.00 | $111.56 | $334.68 | 02/12/2009 | 25 | REVIEW CASE FILE |
| HL58B | 0.60 | $111.56 | $66.94 | 02/13/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL57A | 4.00 | $111.56 | $446.24 | 02/13/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 3.00 | $111.56 | $334.68 | 02/13/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 2.00 | $111.56 | $223.12 | 02/16/2009 | 38 | REVIEW DISCOVERY REQUESTS/RESPONSES |
| HLL57A | 1.20 | $111.56 | $133.87 | 02/16/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 0.50 | $111.56 | $55.78 | 02/16/2009 | 46 | LEGAL RESEARCH |
| HLL57A | 2.00 | $111.56 | $223.12 | 02/17/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 4.50 | $111.56 | $502.02 | 02/17/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 1.00 | $111.56 | $111.56 | 02/19/2009 | 41 | REVIEW PLEADING |
| HLL57A | 1.00 | $111.56 | $111.56 | 02/19/2009 | 113 | CONTACT WITH WITNESSES |
| HLL57A | 2.00 | $111.56 | $223.12 | 02/19/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 1.50 | $111.56 | $167.34 | 02/19/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 2.00 | $111.56 | $223.12 | 02/19/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL57A | 4.00 | $111.56 | $446.24 | 02/23/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 1.50 | $111.56 | $167.34 | 02/23/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 4.50 | $111.56 | $502.02 | 02/24/2009 | 58 | TRAVEL TIME |
| HLL57A | 1.00 | $111.56 | $111.56 | 02/24/2009 | 113 | CONTACT WITH WITNESSES |
| HLL57A | 4.00 | $111.56 | $446.24 | 02/24/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 4.50 | $111.56 | $502.02 | 02/25/2009 | 58 | TRAVEL TIME |
| HLL57A | 5.00 | $111.56 | $557.80 | 02/25/2009 | 44 | DEPOSITIONS |
| HLL57A | 1.00 | $111.56 | $111.56 | 02/25/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 3.00 | $111.56 | $334.68 | 02/26/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 4.00 | $111.56 | $446.24 | 02/27/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 4.00 | $111.56 | $446.24 | 02/27/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 2.00 | $111.56 | $223.12 | 03/02/2009 | 39 | PREPARE/RESPOND TO DISCOVERY |
| HLL57A | 1.00 | $111.56 | $111.56 | 03/02/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 3.00 | $111.56 | $334.68 | 03/03/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 2.00 | $111.56 | $223.12 | 03/03/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 1.00 | $111.56 | $111.56 | 03/03/2009 | 25 | REVIEW CASE FILE |
| HLL57A | 1.00 | $111.56 | $111.56 | 03/11/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 2.00 | $111.56 | $223.12 | 03/11/2009 | 46 | LEGAL RESEARCH |

13590

Division of
Medical Quality Assurance

# MQA

*** C O N F I D E N T I A L ***

Time Tracking System
Itemized Cost by Complaint

Complaint  200605930

Report Date 10/27/2009

Page 9 of 13

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL57A | 0.50 | $111.56 | $55.78 | 03/11/2009 | 41 | REVIEW PLEADING |
| HLL57A | 1.50 | $111.56 | $167.34 | 03/12/2009 | 25 | REVIEW CASE FILE |
| HLL57A | 3.50 | $111.56 | $390.46 | 03/16/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL57A | 0.50 | $111.56 | $55.78 | 03/17/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 1.00 | $111.56 | $111.56 | 03/17/2009 | 44 | DEPOSITIONS |
| HLL57A | 2.00 | $111.56 | $223.12 | 03/17/2009 | 46 | LEGAL RESEARCH |
| HLL57A | 1.00 | $111.56 | $111.56 | 03/17/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HL58B | 0.40 | $111.56 | $44.62 | 03/17/2009 | 46 | LEGAL RESEARCH |
| HLL57A | 0.50 | $111.56 | $55.78 | 03/18/2009 | 70 | CONFERENCES WITH LAWYERS |
| HLL57A | 5.00 | $111.56 | $557.80 | 03/18/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 5.50 | $111.56 | $613.58 | 03/19/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 4.50 | $111.56 | $502.02 | 03/19/2009 | 58 | TRAVEL TIME |
| HLL57A | 4.50 | $111.56 | $502.02 | 03/20/2009 | 58 | TRAVEL TIME |
| HLL57A | 4.00 | $111.56 | $446.24 | 03/20/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 4.50 | $111.56 | $502.02 | 03/20/2009 | 44 | DEPOSITIONS |
| HLL57A | 6.00 | $114.59 | $687.54 | 03/21/2009 | 46 | LEGAL RESEARCH |
| HLL57A | 4.00 | $114.59 | $458.36 | 03/21/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 2.60 | $114.59 | $297.93 | 03/24/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 1.00 | $114.59 | $114.59 | 03/24/2009 | 38 | REVIEW DISCOVERY REQUESTS/RESPONSES |
| HLL57A | 2.00 | $114.59 | $229.18 | 03/25/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 1.00 | $114.59 | $114.59 | 03/31/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 1.00 | $114.59 | $114.59 | 04/08/2009 | 44 | DEPOSITIONS |
| HL58B | 0.50 | $114.59 | $57.30 | 04/08/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL57A | 3.00 | $114.59 | $343.77 | 04/10/2009 | 47 | TRIAL PREPARATION |
| HLL55A | 2.00 | $114.59 | $229.18 | 04/13/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 2.50 | $114.59 | $286.48 | 04/27/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 1.50 | $114.59 | $171.89 | 04/27/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL57A | 4.00 | $114.59 | $458.36 | 04/27/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 1.50 | $114.59 | $171.89 | 04/28/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 1.50 | $114.59 | $171.89 | 04/28/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL57A | 2.00 | $114.59 | $229.18 | 04/28/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 1.50 | $114.59 | $171.89 | 04/28/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 2.50 | $114.59 | $286.48 | 04/28/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |

13591



Division of
Medical Quality Assurance

# MQA

\*\*\* CONFIDENTIAL \*\*\*

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint   200605930

Report Date  10/27/2009

Page 10 of 13

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL57A | 4.50 | $114.59 | $515.66 | 04/28/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 1.50 | $114.59 | $171.89 | 04/29/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 1.50 | $114.59 | $171.89 | 04/29/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL57A | 2.00 | $114.59 | $229.18 | 04/29/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 2.50 | $114.59 | $286.48 | 04/30/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 0.50 | $114.59 | $57.30 | 04/30/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL57A | 2.50 | $114.59 | $286.48 | 04/30/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 4.00 | $114.59 | $458.36 | 04/30/2009 | 58 | TRAVEL TIME |
| HLL57A | 6.00 | $114.59 | $687.54 | 05/01/2009 | 44 | DEPOSITIONS |
| HLL57A | 0.50 | $114.59 | $57.30 | 05/01/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 4.00 | $114.59 | $458.36 | 05/01/2009 | 58 | TRAVEL TIME |
| HLL57A | 3.00 | $114.59 | $343.77 | 05/03/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 5.00 | $114.59 | $572.95 | 05/04/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 3.00 | $114.59 | $343.77 | 05/04/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HL58B | 1.50 | $114.59 | $171.89 | 05/05/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL57A | 2.00 | $114.59 | $229.18 | 05/05/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL57A | 3.50 | $114.59 | $401.07 | 05/06/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 0.50 | $114.59 | $57.30 | 05/07/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 5.00 | $114.59 | $572.95 | 05/08/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 4.00 | $114.59 | $458.36 | 05/08/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL57A | 2.00 | $114.59 | $229.18 | 05/10/2009 | 47 | TRIAL PREPARATION |
| HL58B | 1.80 | $114.59 | $206.26 | 05/11/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL57A | 6.70 | $114.59 | $767.75 | 05/11/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 2.00 | $114.59 | $229.18 | 05/11/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL57A | 5.00 | $114.59 | $572.95 | 05/12/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 0.50 | $114.59 | $57.30 | 05/12/2009 | 45 | PREHEARING MOTION/CONFERENCE CALL |
| HL58B | 0.40 | $114.59 | $45.84 | 05/13/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL57A | 8.00 | $114.59 | $916.72 | 05/13/2009 | 47 | TRIAL PREPARATION |
| HL58B | 0.30 | $114.59 | $34.38 | 05/14/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL57A | 3.80 | $114.59 | $435.44 | 05/14/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 3.00 | $114.59 | $343.77 | 05/14/2009 | 43 | PREPARE FOR DEPOSITION |
| HLL57A | 2.50 | $114.59 | $286.48 | 05/14/2009 | 44 | DEPOSITIONS |
| HLL57A | 9.00 | $114.59 | $1,031.31 | 05/15/2009 | 47 | TRIAL PREPARATION |

13592

**Division of Medical Quality Assurance**

# MQA

Report Date  10/27/2009

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HL58B | 0.40 | $114.59 | $45.84 | 05/15/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL57A | 4.50 | $114.59 | $515.66 | 05/18/2009 | 58 | TRAVEL TIME |
| HLL57A | 5.00 | $114.59 | $572.95 | 05/18/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 11.50 | $114.59 | $1,317.79 | 05/19/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 8.80 | $114.59 | $1,008.39 | 05/20/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 4.00 | $114.59 | $458.36 | 05/20/2009 | 48 | FORMAL HEARING |
| HLL57A | 2.50 | $114.59 | $286.48 | 05/21/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 6.00 | $114.59 | $687.54 | 05/21/2009 | 48 | FORMAL HEARING |
| HLL57A | 3.50 | $114.59 | $401.07 | 05/22/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 4.50 | $114.59 | $515.66 | 05/22/2009 | 58 | TRAVEL TIME |
| HLL57A | 2.20 | $114.59 | $252.10 | 05/26/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 2.20 | $114.59 | $252.10 | 05/27/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 4.00 | $114.59 | $458.36 | 05/28/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 3.50 | $114.59 | $401.07 | 07/07/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 4.50 | $114.59 | $515.66 | 07/08/2009 | 58 | TRAVEL TIME |
| HLL57A | 7.50 | $114.59 | $859.43 | 07/08/2009 | 47 | TRIAL PREPARATION |
| HLL57A | 1.50 | $114.59 | $171.89 | 07/16/2009 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL57A | 4.50 | $114.59 | $515.66 | 08/18/2009 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL57A | 3.00 | $114.59 | $343.77 | 08/19/2009 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL56A | 0.10 | $112.43 | $11.24 | 08/20/2009 | 60 | MISCELLANEOUS |
| HLL56A | 0.20 | $112.43 | $22.49 | 08/20/2009 | 35 | TELEPHONE CALLS |
| HLL56A | 0.30 | $112.43 | $33.73 | 08/20/2009 | 25 | REVIEW CASE FILE |
| HLL56A | 0.70 | $112.43 | $78.70 | 08/20/2009 | 46 | LEGAL RESEARCH |
| HLL56A | 0.30 | $112.43 | $33.73 | 08/20/2009 | 60 | MISCELLANEOUS |
| HLL57A | 4.00 | $112.43 | $449.72 | 08/20/2009 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL56A | 0.20 | $112.43 | $22.49 | 08/21/2009 | 60 | MISCELLANEOUS |
| HLL56A | 0.10 | $112.43 | $11.24 | 08/21/2009 | 60 | MISCELLANEOUS |
| HLL57A | 4.00 | $112.43 | $449.72 | 08/21/2009 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL57A | 7.50 | $112.43 | $843.23 | 08/22/2009 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL57A | 8.00 | $112.43 | $899.44 | 08/23/2009 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL57A | 4.00 | $112.43 | $449.72 | 08/25/2009 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HL58B | 2.00 | $112.43 | $224.86 | 08/26/2009 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HL58B | 0.30 | $112.43 | $33.73 | 08/27/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |

13593

Division of
Medical Quality Assurance

# MQA

*** C O N F I D E N T I A L ***

Time Tracking System
Itemized Cost by Complaint

Complaint  200605930

Report Date 10/27/2009

Page 12 of 13

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HL58B | 1.00 | $112.43 | $112.43 | 09/21/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL56A | 1.90 | $112.43 | $213.62 | 09/24/2009 | 25 | REVIEW CASE FILE |
| HLL56A | 0.10 | $112.43 | $11.24 | 09/25/2009 | 60 | MISCELLANEOUS |
| HLL56A | 1.40 | $112.43 | $157.40 | 09/28/2009 | 46 | LEGAL RESEARCH |
| HLL56A | 0.50 | $112.43 | $56.22 | 09/28/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL56A | 3.30 | $112.43 | $371.02 | 09/28/2009 | 46 | LEGAL RESEARCH |
| HLL56A | 0.40 | $112.43 | $44.97 | 09/30/2009 | 35 | TELEPHONE CALLS |
| HLL56A | 0.40 | $112.43 | $44.97 | 10/01/2009 | 25 | REVIEW CASE FILE |
| HLL56A | 5.10 | $112.43 | $573.39 | 10/02/2009 | 25 | REVIEW CASE FILE |
| HLL56A | 0.50 | $112.43 | $56.22 | 10/05/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL56A | 0.50 | $112.43 | $56.22 | 10/05/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL56A | 0.30 | $112.43 | $33.73 | 10/05/2009 | 35 | TELEPHONE CALLS |
| HLL56A | 0.10 | $112.43 | $11.24 | 10/05/2009 | 60 | MISCELLANEOUS |
| HLL56A | 0.20 | $112.43 | $22.49 | 10/05/2009 | 60 | MISCELLANEOUS |
| HLL56B | 0.60 | $112.43 | $67.46 | 10/05/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL56A | 1.30 | $112.43 | $146.16 | 10/06/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL56A | 0.30 | $112.43 | $33.73 | 10/06/2009 | 35 | TELEPHONE CALLS |
| HLL56A | 0.80 | $112.43 | $89.94 | 10/06/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL56A | 0.30 | $112.43 | $33.73 | 10/06/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL56A | 0.60 | $112.43 | $67.46 | 10/06/2009 | 46 | LEGAL RESEARCH |
| HLL56A | 0.20 | $112.43 | $22.49 | 10/06/2009 | 35 | TELEPHONE CALLS |
| HLL56A | 0.10 | $112.43 | $11.24 | 10/06/2009 | 60 | MISCELLANEOUS |
| HLL57A | 5.00 | $112.43 | $562.15 | 10/06/2009 | 41 | REVIEW PLEADING |
| HLL56B | 0.90 | $112.43 | $101.19 | 10/06/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL56A | 0.50 | $112.43 | $56.22 | 10/06/2009 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL56A | 1.20 | $112.43 | $134.92 | 10/07/2009 | 41 | REVIEW PLEADING |
| HLL56A | 0.10 | $112.43 | $11.24 | 10/07/2009 | 60 | MISCELLANEOUS |
| HL58B | 1.30 | $112.43 | $146.16 | 10/07/2009 | 41 | REVIEW PLEADING |
| HLL56A | 0.40 | $112.43 | $44.97 | 10/08/2009 | 60 | MISCELLANEOUS |
| HLL56A | 0.30 | $112.43 | $33.73 | 10/08/2009 | 41 | REVIEW PLEADING |
| HLL56A | 0.20 | $112.43 | $22.49 | 10/09/2009 | 60 | MISCELLANEOUS |
| HLL56A | 0.10 | $112.43 | $11.24 | 10/09/2009 | 35 | TELEPHONE CALLS |
| HLL56A | 0.10 | $112.43 | $11.24 | 10/09/2009 | 60 | MISCELLANEOUS |

13594

Division of
Medical Quality Assurance

# MQA

*** C O N F I D E N T I A L ***

## Time Tracking System
### Itemized Cost by Complaint

Complaint   200605930

Report Date  10/27/2009

Page 13 of 13

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL57A | 1.50 | $112.43 | $168.65 | 10/12/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL56A | 0.80 | $112.43 | $89.94 | 10/12/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL56A | 1.50 | $112.43 | $168.65 | 10/13/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL56A | 1.80 | $112.43 | $202.37 | 10/13/2009 | 46 | LEGAL RESEARCH |
| HLL56A | 0.20 | $112.43 | $22.49 | 10/13/2009 | 60 | MISCELLANEOUS |
| HLL57A | 1.00 | $112.43 | $112.43 | 10/13/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL57A | 3.00 | $112.43 | $337.29 | 10/14/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL56A | 5.00 | $112.43 | $562.15 | 10/14/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL56A | 0.40 | $112.43 | $44.97 | 10/14/2009 | 35 | TELEPHONE CALLS |
| HLL56A | 0.20 | $112.43 | $22.49 | 10/14/2009 | 60 | MISCELLANEOUS |
| HLL57A | 6.00 | $112.43 | $674.58 | 10/15/2009 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| **Sub Total** | **588.90** | | **$66,455.99** | | | |

| Total Cost | $74,313.94 |
|---|---|

13595

**Division of**
**Medical Quality Assurance**

# MQA

*** C O N F I D E N T I A L ***

Time Tracking System
Itemized Expense by Complaint
Complaint  200605930

Report Date:  10/27/2009

Page 1 of 1

| Staff Code | Expense Date | Expense Amount | Expense Code | Expense Code Description |
|---|---|---|---|---|
| **PROSECUTION SERVICES UNIT** | | | | |
| HLL57A | 03/03/2009 | $148.84 | 131400 | COURT REPORTING |
| HLL57A | 02/10/2009 | $550.85 | 131400 | COURT REPORTING |
| HLL57A | 03/11/2009 | $220.00 | 131400 | COURT REPORTING |
| HLL57A | 04/07/2009 | $247.40 | 131400 | COURT REPORTING |
| HLL57A | 04/20/2009 | $121.55 | 131400 | COURT REPORTING |
| HLL57A | 04/08/2009 | $76.25 | 131400 | COURT REPORTING |
| HLL57A | 04/17/2009 | $722.85 | 131400 | COURT REPORTING |
| HLL57A | 06/05/2009 | $1,866.40 | 131400 | COURT REPORTING |
| HLL57A | 05/08/2009 | $219.20 | 131400 | COURT REPORTING |
| HLL57A | 08/14/2009 | $758.15 | 131400 | COURT REPORTING |
| HLL57A | 06/26/2009 | $1,474.40 | 131400 | COURT REPORTING |
| HL34B | 05/21/2007 | $800.00 | 131630 | EXPERT WITNESS |
| HLL57A | 05/22/2009 | $12,200.00 | 131800 | EXPERT WITNESS FEES |
| HL34B | 07/10/2009 | $4,800.00 | 131800 | EXPERT WITNESS FEES |
| HLL57A | 05/14/2009 | $1,250.00 | 131800 | EXPERT WITNESS FEES |
| HLL57A | 05/12/2009 | $8.75 | 230000 | PRINTING & REPRODUCTION |
| HLL57A | 05/20/2009 | $10.40 | 230000 | PRINTING & REPRODUCTION |
| HLL57A | 10/03/2008 | $537.55 | 261010 | TRAVEL - EMOLOYEE - IN FLA |
| HLL57A | 02/25/2009 | $326.05 | 261010 | TRAVEL - EMOLOYEE - IN FLA |
| HLL57A | 03/20/2009 | $328.59 | 261010 | TRAVEL - EMOLOYEE - IN FLA |
| HLL57A | 05/01/2009 | $329.76 | 261010 | TRAVEL - EMOLOYEE - IN FLA |
| HL34B | 05/21/2009 | $490.39 | 261010 | TRAVEL - EMOLOYEE - IN FLA |
| HL34B | 07/10/2009 | $421.39 | 261010 | TRAVEL - EMOLOYEE - IN FLA |
| HLL57A | 05/01/2009 | $80.50 | 497000 | PAYMENT FOR INFORMATION AND EVIDENCE |
| | **SubTotal** | **$27,989.27** | | |
| | **Total Expenses** | **$27,989.27** | | |

American Court Reporting
425 Old Magnolia Road
Crawfordville, FL 32327
850-421-0058
EIN# 03-0480854



2009 MAR -9 AM 8:32

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/6/2009 | 09-54 |

| Bill To |
|---------|
| Department of Health<br>Phyllis Eidson<br>4052 Bald Cypress Way<br>Bin - C65<br>Tallahassee, FL 32399 |

| Description | Amount |
|-------------|--------|
| Department of Health,<br>Florida Board of Medicine<br>v.<br>James Pendergraft, IV, M.D.,<br><br>Case No.: 08-4197PL, 2006-05930<br>Date: 2/3/09<br>Matter: Telephone Deposition of P.F.<br>Location: Orange County<br>Attorney: Greg Marr, Esq.<br><br>Appearance Fee: 9:00 a.m. - 9:33 a.m. Telephonic Deposition<br>Transcript: 26 pages Certified Copy<br>Exhibits: 27<br>Priority Mail: affidavit attached<br><br>eg-09-26 | 65.00<br>68.90<br>9.99<br>4.95 |
| Contract 050901. Visa not accepted | |

| | Total | $148.84 |

| **Balance Due** | $148.84 |

PSU

3/9/09

3/8/09

13196