Sep 28 2007  11:22
Sep 28 2007  11:19          P.01

## STATE OF FLORIDA
## DEPARTMENT OF HEALTH

**DEPARTMENT OF HEALTH,**

**PETITIONER,**                     *06-4288 PL*

**v.**                     **CASE NOS.: 2005-67224**
**and 2004-39923**

**JAMES S. PENDERGRAFT, IV, M.D.,**

**RESPONDENT.**

_____/

## AMENDED ADMINISTRATIVE COMPLAINT

COMES NOW, Petitioner, Department of Health, by and through its undersigned counsel, and files this Administrative Complaint before the Board of Medicine against the Respondent, James S. Pendergraft, IV, M.D., and in support thereof alleges:

1.     Petitioner is the state department charged with regulating the practice of medicine pursuant to Section 20.43, Florida Statutes; Chapter 456, Florida Statutes; and Chapter 458, Florida Statutes.

2.     At all times material to this Complaint, Respondent was a licensed physician within the State of Florida, having been issued license number 59702.

1984

3.    Respondent's address of record is 1103 Lucerne Terrace, Orlando, Florida 32806.

4.    Respondent is board certified in Obstetrics and Gynecology.

5.    At all times material to this case, Respondent, alone or with one or more partners, owned and operated Orlando Women's Center, Inc., ("OWC") and EPOC Clinic, Inc., ("EPOC"), clinics located in Orlando specializing in abortions. These facilities are not hospitals.

<u>Facts Relating to Case 2005-67224</u>

6.    The Respondent's medical records and the hospital medical records (both clear and undisputed) demonstrate that on or about July 5, 2005, when Patient R.W. presented to OWC, her pregnancy, at about 28 weeks, was in the third trimester.

7.    ORIGINAL PARAGRAPH DELETED BY DOAH JUDGE AT FORMAL HEARING ON JUNE 20, 2007.

8.    Nonetheless, on or about July 5, 2005, Respondent performed a third trimester abortion procedure on Patient R.W. at the OWC facility.

9.    Respondent did not certify in writing that to a reasonable degree of medical probability, the termination of Patient R.W.'s pregnancy was necessary to save the life or preserve the health of the pregnant woman, or obtain a concurring certification from a second physician. This

**1985**

was not an emergent situation that would justify proceeding without the concurring opinion of a second physician. Moreover, Respondent did not certify in writing that any such emergency existed.

10.   Respondent charged Patient R.W. $12,000 for the procedure.

11.   Respondent did not transfer Patient R.W. to a hospital before performing the third trimester abortion. It is a violation of criminal statute, Section 797.03(3), Florida Statutes to perform a third trimester abortion outside of a hospital. Respondent's practitioner profile with the Department of Health indicates that he does not have hospital privileges in Florida.

12.   In the course of the abortion procedure for Patient R.W., Respondent prescribed one or more drugs, including a controlled substance, by prescribing, ordering or administering Demerol and Phenergan.

13.   Demerol, which contains meperidine hydrochloride, is a Schedule II controlled substance listed in Chapter 893, Florida Statutes, which is indicated for the treatment of moderate to severe pain. Demerol has a high potential for abuse and has a currently accepted, but severely restricted, medical use in treatment in the United States. Abuse of Demerol may lead to severe physical and psychological dependence.

**1986**

Sep 28 2007  11:22
Sep 28 2007  11:20       P.04

14.    Phenergan is the brand name for promethazine.  Promethazine is a legend drug used in the treatment of motion sickness, prevention and control of nausea and vomiting associated with certain types of anesthesia and surgery, and as an adjunct to analgesics for the control of postoperative pain, preoperative, postoperative, and obstetric sedation.

15.    At all times relevant in this matter, Respondent did not have a current, valid DEA number to allow him, as a licensed physician, to prescribe, order or administer controlled substances.

16.    At the time of prescribing and administering these drugs, there was no other physician with a valid DEA number present and participating in the care and treatment of Patient R.W.

### Facts Relating to Case 2004-39923

17.    On or about November 19, 2004, Patient T.R., a twenty-two year-old female, presented to Respondent at EPOC.

18.    The EPOC records indicate that the gestational period of the fetus was about 22 weeks, allegedly determined by pelvic exam, sonogram, and/or ultrasound.

19.    Patient T.R. was given Cytotec for vaginal use to initiate the spontaneous abortion.

**1987**

20.    Cytotec contains misoprostol. Misoprostol is a legend drug, available only by prescription. Misoprostol is chemically similar to prostaglandin, one of a number of hormone-like substances that participate in a wide range of body functions such as the contraction and relaxation of smooth muscle, the dilation and constriction of blood vessels, control of blood pressure, and modulation of inflammation. Misoprostol is most commonly used to reduce the risk of ulcers in patients taking certain medications. Misoprostol can also induce or augment uterine contractions.

21.    Patient T.R. was sent home and used three of the ten pills provided. She called EPOC in the early morning of November 20, 2005, and reported severe cramping with the intention to go to an emergency room. The staff person told her to come to the office.

22.    Shortly thereafter and before leaving for the hospital, Patient T.R. delivered the fetus on the floor in her living room.

23.    On or about November 20, 2004, at 8:15 A.M., Patient T.R. presented to the emergency room at Health Central, a hospital, bringing with her a fetus, advising of the induced abortion, complaining of abdominal pain and that she was bleeding. An IV was started.

1988

24.   The Health Central physician noted that the fetus was larger than a 22 week gestation and appeared to be 24 to 26 weeks gestational age.

25.   The fetus and placenta were sent to pathology and the lab report from AmeriPath dated November 22, 2004, confirmed the physician's assessment and stated, "The weight and diameter of this placenta would correspond to a gestation period in the vicinity of 25 to 27 weeks."

26.   This abortion for Patient T.R. was performed on a third trimester pregnancy.

### Standard of Care

27.   As a long term, Board-certified, Obstetrics and Gynecology practitioner with many years of experience in pregnancy termination, Respondent's actions demonstrated a flagrant disregard for the laws of the State of Florida and a willingness to endanger the lives and health of pregnant patients by performing third trimester abortions outside of a hospital and without obtaining concurring physician opinions.

28.   Respondent fell below the standard of care when he performed a third trimester abortion outside of a hospital for Patient R.W. and when he performed that third trimester abortion without a concurring opinion

James S. Pendergraft, IV, MD, Cases 2005-67224 and 2004-39923                                           6

**1989**

from another physician or without a written certification that a legitimate emergency existed.

29.    Respondent fell below the standard of care when, knowing that he did not possess a current, valid DEA number, he nonetheless prescribed, ordered or administered controlled substances to Patient R.W.

30.    Respondent failed to keep adequate medical records that justified the course of treatment for Patient R.W.

31.    Respondent fell below the standard of care when he failed to accurately determine the fetus size and gestational age, and then performed a third trimester abortion for Patient T.R.

### Relevant Statutory Provisions

32.    Section 797.03, Florida Statutes (2004-2005), provides in pertinent part that:

> (3) It is unlawful for any person to perform or assist in performing an abortion on a person in the third trimester other than in a hospital.

33.    Section 390.0111, Florida Statutes (2004-2005), provides in pertinent part:

> (1) TERMINATION IN THIRD TRIMESTER: WHEN ALLOWED –
> No termination of pregnancy shall be performed on any human being in the third trimester of pregnancy unless:
>
> i. Two physicians certify in writing to the fact that, to a reasonable degree of medical probability, the termination of

**1990**

pregnancy is necessary to save the life or preserve the health of the pregnant woman; or

ii. The physician certifies in writing to the medical necessity for legitimate emergency medical procedures for termination of pregnancy in the third trimester, and another physician is not available for consultation.

34.   Section 456.072, Florida Statutes (2004-2005), provides in pertinent part:

456.072 Grounds for discipline; penalties; enforcement.-

(1) The following acts shall constitute grounds for which the disciplinary actions specified in subsection (2): may be taken:

*      *      *

(k) Failing to perform any statutory or legal obligation placed upon a licensee....

*      *      *

(o) Practicing or offering to practice beyond the scope permitted by law....

*      *      *

(2) When the board... finds any person guilty of the grounds set forth in subsection (1) or of any grounds set forth in the applicable practice act... it may enter an order imposing one or more of the following penalties:

*      *      *

(b) Suspension or permanent revocation of a license.

(c) Restriction of practice or license....

1991

Sep 28 2007  11:23
Sep 28 2007  11:21        P. 09

35.   Section 458.331, Florida Statutes (2005), provides in pertinent part:

458.331 Grounds for disciplinary action; action by the board and department.-

(1) The following acts constitute grounds for denial of a license or disciplinary action, as specified in s. 456.072(2):

*        *        *

(g)  Failing to perform any statutory or legal obligation placed upon a licensed physician.

*        *        *

(m) Failing to keep legible... medical records that... justify the course of treatment of the patient, including, but not limited to, patient histories; examination results; test results; records of drugs prescribed, dispensed, or administered; and reports of consultations and hospitalizations.

*        *        *

(t)    Notwithstanding s. 456.072(2) but as specified in s. 456.50(2):

1. Committing medical malpractice as defined in s. 456.50. The Board shall give great weight to the provisions of s. 766.102 when enforcing this paragraph.

36.   The term, "medical malpractice" as used in Section 458.331(1)(t), is defined in Section 456.50, Florida Statutes, to mean the failure to practice medicine in accordance with the level of care, skill, and treatment recognized in general law related to health care licensure. Section 766.102, Florida Statutes, provides that the prevailing professional standard of care for a given health care provider shall be that level of care, skill,  and  treatment  which,  in  light  of  all  relevant  surrounding

**1992**

circumstances, is recognized as acceptable and appropriate by reasonably

prudent similar health care providers.

    37.   Section 458.331, Florida Statutes (2004), provides in pertinent

part:

> 458.331 Grounds for disciplinary action; action by
> the board and department.-
> (1) The following acts constitute grounds for denial of a license
> or disciplinary action, as specified in s. 456.072(2):
>
>       \*      \*      \*
>
> (g)   Failing to perform any statutory or legal obligation placed
> upon a licensed physician.
>
>       \*      \*      \*
>
> (m) Failing to keep legible... medical records that... justify the
> course of treatment of the patient, including, but not limited to,
> patient histories; examination results; test results; records of
> drugs prescribed, dispensed, or administered; and reports of
> consultations and hospitalizations.
>
>       \*      \*      \*
>
> (t) Gross or repeat malpractice or the failure to
> practice medicine with that level of care, skill, and
> treatment, which is recognized by a reasonably
> prudent similar physician as being acceptable under
> similar conditions and circumstances. The Board
> shall give great weight to the provisions of s.
> 766.102 when enforcing this paragraph.

**1993**

Sep 28 2007  11:24
Sep 28 2007  11:21      P.11

## COUNTS for Case 2005-67224: Patient R.W.

### COUNT I

38.   Petitioner realleges and incorporates paragraphs one (1) through sixteen (16) and twenty-seven (27) through thirty-one (31) as if fully set forth herein.

39.   Sections 456.072(1)(k) and Section 458.331(1)(g), Florida Statutes (2005), provides that failing to perform any statutory or legal obligation placed upon a licensee constitutes grounds for disciplinary action by the Board of Medicine.

40.   Section 390.0111, Florida Statutes (2005), provides that no termination of pregnancy shall be performed on any human being in the third trimester of pregnancy unless two physicians certify in writing to the fact that, to a reasonable degree of medical probability, the termination of pregnancy is necessary to save the life or preserve the health of the pregnant woman or the physician certifies in writing to the medical necessity for legitimate emergency medical procedures for termination of pregnancy in the third trimester, and another physician is not available for consultation.

**1994**

Sep 28 2007 11:24
Sep 28 2007 11:21    P. 12

41.    Section 797.03(3), Florida Statutes (2005), provides that it is unlawful for any person to perform or assist in performing an abortion on a person in the third trimester other than in a hospital.

42.    Respondent failed to perform a statutory or legal obligation placed upon a licensee by performing a third trimester abortion procedure on Patient R.W. at the OWC facility.

43.    Respondent failed to perform a statutory or legal obligation placed upon a licensee by performing a third trimester abortion procedure on Patient R.W. without having two physicians certify in writing to the fact that, to a reasonable degree of medical probability, the termination of pregnancy was necessary to save the life or preserve the health of the pregnant woman or certifying that it was an emergency and another physician was not available for consultation.

44.    Based on the foregoing, Respondent has violated Sections 456.072(1)(k) and Section 458.331(1)(g), Florida Statutes (2005), by failing to perform any statutory or legal obligation placed upon a licensee.

## COUNT II

45.    Petitioner realleges and incorporates paragraphs one (1) through sixteen (16) and twenty-seven (27) through thirty-one (31) as if fully set forth herein.

**1995**

46.    Section 458.331(1)(m), Florida Statutes (2005), sets forth grounds for disciplinary action by the Board of Medicine for failing to keep legible medical records that justify the course of treatment, including, but not limited to, patient histories; examination results; test results; records of drugs prescribed, dispensed, or administered; and reports of consultations and hospitalizations.

47.    Respondent did not certify in writing that to a reasonable degree of medical probability, the termination of Patient R.W.'s pregnancy was necessary to save the life or preserve the health of the pregnant woman, or obtain a concurring certification from a second physician or did certify in writing that any emergency existed.

48.    Based on the foregoing, Respondent has violated Section 458.331(1)(m), Florida Statutes (2005), by failing to keep legible medical records that justify the course of Patient R.W.'s medical treatment.

## COUNT III

49.    Petitioner realleges and incorporates paragraphs one (1) through sixteen (16) and twenty-seven (27) through thirty-one (31) as if fully set forth herein.

50.    Section 458.331(1)(t)1, Florida Statutes (2005), provides that committing medical malpractice constitutes grounds for disciplinary action

1996

by the Board of Medicine. Medical Malpractice is defined in Section 456.50, Florida Statutes, to mean the failure to practice medicine in accordance with the level of care, skill, and treatment recognized in general law related to health care licensure. For purposes of Section 458.331(1)(t)1, Florida Statutes, the Board shall give great weight to the provisions of Section 766.102, Florida Statutes, which provide that the prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

51.    Respondent failed to practice medicine within the prevailing professional standard of care in one or more of the following ways:

a. By performing a third trimester abortion procedure on Patient R.W. at the OWC facility.

b. By not certifying in writing that to a reasonable degree of medical probability, the termination of Patient R.W.'s pregnancy was necessary to save the life or preserve the health of the pregnant woman, or obtain a concurring certification from a second physician.

c. By not certifying in writing that an emergency existed.

James S. Pendergraft, IV, MD, Cases 2005-67224 and 2004-39923                                    14

**1997**

d. By not transferring Patient R.W. to a hospital before performing the third trimester abortion.

e. By prescribing, ordering or administering Demerol to Patient R.W. when Respondent did not have a current, valid DEA number to allow him, as a licensed physician, to prescribe, order or administer controlled substances.

52.   Based on the foregoing, Respondent has violated Section 458.331(1)(t)1, Florida Statutes (2005), by committing medical malpractice by failing to practice medicine in accordance with the level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

### COUNTS for Case 2004-39923: Patient T.R.

### COUNT IV

53.   Petitioner realleges and incorporates paragraphs one (1) through five (5) and seventeen (17) through thirty-one (31) as if fully set forth herein.

54.   Sections 456.072(1)(k) and Section 458.331(1)(g), Florida Statutes (2004), provides that failing to perform any statutory or legal

**1998**

Sep 28 2007  11:25
Sep 28 2007  11:22      P.16

obligation placed upon a licensee constitutes grounds for disciplinary action by the Board of Medicine.

55.   Section 390.0111, Florida Statutes (2004), provides that no termination of pregnancy shall be performed on any human being in the third trimester of pregnancy unless two physicians certify in writing to the fact that, to a reasonable degree of medical probability, the termination of pregnancy is necessary to save the life or preserve the health of the pregnant woman or the physician certifies in writing to the medical necessity for legitimate emergency medical procedures for termination of pregnancy in the third trimester, and another physician is not available for consultation.

56.   Section 797.03(3), Florida Statutes (2004), provides that it is unlawful for any person to perform or assist in performing an abortion on a person in the third trimester other than in a hospital.

57.   Respondent failed to perform a statutory or legal obligation placed upon a licensee by performing a third trimester abortion procedure on Patient T.R. at the EPOC facility.

58.   Respondent failed to perform a statutory or legal obligation placed upon a licensee by performing a third trimester abortion procedure on Patient T. R. without having two physicians certify in writing to the fact

**1999**

Sep 28 2007  11:25
Sep 28 2007  11:23      P. 17

that, to a reasonable degree of medical probability, the termination of pregnancy is necessary to save the life or preserve the health of the pregnant woman.

59.   Based on the foregoing, Respondent has violated Sections 456.072(1)(k) and Section 458.331(1)(g), Florida Statutes (2004), by failing to perform any statutory or legal obligation placed upon a licensee.

### COUNT V

60.   Petitioner realleges and incorporates paragraphs one (1) through five (5) and seventeen (17) through thirty-one (31) as if fully set forth herein.

61.   Section 458.331(1)(m), Florida Statutes (2004), sets forth grounds for disciplinary action by the Board of Medicine for failing to keep legible medical records that justify the course of treatment, including, but not limited to, patient histories; examination results; test results; records of drugs prescribed, dispensed, or administered; and reports of consultations and hospitalizations.

62.   Respondent failed to keep legible medical records that justify the course of treatment in one or more of the following ways:

   a. By failing to accurately determine and record Patient T.R.'s

      fetus size and gestational age;

2000

Sep 28 2007  11:26
Sep 28 2007  11:23        P.18

b. By not certifying in writing that to a reasonable degree of medical probability, the termination of Patient T.R.'s pregnancy was necessary to save the life or preserve the health of the pregnant woman, or obtain a concurring certification from a second physician or did certify in writing that any emergency existed.

63.    Based on the foregoing, Respondent has violated Section 458.331(1)(m), Florida Statutes (2004), by failing to keep legible medical records that justify the course of Patient T.R.'s medical treatment.

## **COUNT VI**

64.    Petitioner realleges and incorporates paragraphs one (1) through five (5) and seventeen (17) through thirty-one (31) as if fully set forth herein.

65. - Section 458.331(1)(t), Florida Statutes (2004), provides that gross or repeated malpractice or the failure to practice medicine with that level of care, skill, and treatment which is recognized by a reasonably prudent similar physician as being acceptable under similar conditions and circumstances constitutes grounds for disciplinary action by the Board of Medicine.

**2001**

66.     Respondent committed gross or repeated malpractice or failed to practice medicine with that level of care, skill, and treatment which is recognized by a reasonably prudent similar physician as being acceptable under similar conditions and circumstances by one or more of the following:

      a.     By failing to accurately determine Patient T.R.'s fetus size and gestational age;

      b.     By performing a third trimester abortion outside of a hospital for Patient T.R.;

      c.     By performing a third trimester abortion without a concurring opinion from another physician or by not certifying in writing that an emergency existed.

67.     Based on the foregoing, Respondent has violated Section 458.331(1)(t), Florida Statutes (2004), by gross or repeat malpractice or failing to practice medicine with that level of care, skill, and treatment which is recognized by a reasonably prudent similar physician as being acceptable under similar conditions and circumstances.

WHEREFORE, the Petitioner respectfully requests that the Board of Medicine enter an order imposing one or more of the following penalties: permanent revocation or suspension of Respondent's license, restriction of

James S. Pendergraft, IV, MD. Cases 2005-67224 and 2004-39923                                                    19

**2002**

practice, imposition of an administrative fine, issuance of a reprimand,

placement of the Respondent on probation, corrective action, refund of

fees billed or collected, remedial education and/or any other relief that the

Board deems appropriate.

SIGNED this __17th____ day of _____September_____, 2006.

Ana M. Viamonte Ros, M.D., M.P.H.
State Surgeon General

By: Irving Levine
Assistant General Counsel
DOH-Prosecution Services Unit
4052 Bald Cypress Way-Bin C-65
Tallahassee, Florida 32399-3265
Florida Bar # 0822957
(850) 245-4640, ext 8128
(850) 245-4681 fax

PCP: August 25, 2006

PCP Members: El-Bhari, Vijayanagar and Dyches

**2003**

## NOTICE OF RIGHTS

Respondent has the right to request a hearing to be conducted in accordance with Section 120.569 and 120.57, Florida Statutes, to be represented by counsel or other qualified representative, to present evidence and argument, to call and cross-examine witnesses and to have subpoena and subpoena duces tecum issued on his or her behalf if a hearing is requested.

## NOTICE REGARDING ASSESSMENT OF COSTS

Respondent is placed on notice that Petitioner has incurred costs related to the investigation and prosecution of this matter. Pursuant to Section 456.072(4), Florida Statutes, the Board shall assess costs related to the investigation and prosecution of a disciplinary matter, which may include attorney hours and costs, on the Respondent in addition any other discipline imposed.

2004



FILED
DEPARTMENT OF HEALTH
DEPUTY CLERK
CLERK: Pacendra
DATE   11·13·07

## STATE OF FLORIDA
## DEPARTMENT OF HEALTH
## BOARD OF MEDICINE

DEPARTMENT OF HEALTH,
BOARD OF MEDICINE,

      Petitioner,

vs.　　　　　　　　　　　　　　　　DOAH  Case No. 06-4288PL

JAMES S. PENDERGRAFT, IV, M.D.,

      Respondent.

_____/

### RESPONDENT'S EXCEPTIONS TO THE RECOMMENDED ORDER

Respondent, James S. Pendergraft, IV, M.D. ("Respondent" or "Dr. Pendergraft"), by and through his undersigned counsel, and pursuant to section 120.57(1)(k), Florida Statutes, and Rule 28-106.217(1), Florida Administrative Code, files his written Exceptions to the Recommended Order of the Administrative Law Judge issued on October 25, 2007, as follows:

### The Board's Review Requirements Under Chapter 120, Florida Statutes

In considering the Recommended Order and penalty recommendations of the Administrative Law Judge herein, the Board of Medicine is confined solely to a review of the record as established at the formal hearing. *Ong v. Department of Professional Regulation*, 565 So. 2d 1384, 1387 (Fla. 5th DCA 1990). Thus, the Board is not authorized to receive additional evidence other than that already presented and considered by the Administrative Law Judge. *Id.* Nor can the Board discipline a licensee for matters not charged in the Administrative Complaint, see *Trevisani v. Department of Health*, 936 So. 2d 790, 795 (Fla. 1st DCA 2006). *Ghani v. Department of Health*, 714 So. 2d 1113, 1114 (Fla. 1st DCA 1998).

1

## Standard of Review of a Recommended Order

In reviewing a Recommended Order of an Administrative Law Judge, the Board of Medicine ("the Board") must evaluate the individual findings of fact and conclusions of law under a "competent, substantial evidence" standard. §120.57(1)(l), Fla. Stat. Competent substantial evidence is defined as that evidence supporting an ultimate finding which is sufficiently relevant and material such that a reasonable mind would accept as adequate to support the conclusions reached. *DeGroot v. Sheffield*, 95 So. 2d 912, 916 (Fla. 1959).

In keeping with the requirement of a "competent substantial evidence" review, the Legislature has authorized the Board to reject any finding of fact set forth in a Recommended Order, when upon its review of the entire record before the Administrative Law Judge, the Board determines that there is a lack of competent, substantial evidence upon which to base the particular finding of fact. *Id.*; *see also Heifetz v. Department of Business Regulation*, 475 So. 2d 1277, 1281-1282 (Fla. 1st DCA 1985); *Gross v. Department of Health*, 819 So. 2d 997, 1000-1001 (Fla. 1st DCA 2002). In so doing, however, the Board may not reweigh the evidence presented, judge the credibility of the witnesses, or otherwise interpret the evidence to fit its desired ultimate conclusion. *Heifetz, supra; Gross, supra.*

In addition, the Board is authorized to reject or modify the conclusions of law over which it has substantive jurisdiction and to reject or modify interpretation of administrative rules over which it has substantive jurisdiction. §120.57(1)(l), Fla. Stat.

> When rejecting or modifying such conclusion of law or interpretation of administrative rule, the agency must state with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and must make a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified. Rejection or modification of conclusions of

2

law may not form the basis for rejection or modification of findings of fact.

*Id.* (Emphasis added).

## RESPONDENT'S EXCEPTIONS TO FINDINGS OF FACT

Respondent takes exception to the following findings of fact, and for the reasons stated in each Exception, requests that they be either stricken from the Recommended Order or modified to reflect the competent substantial evidence in the record.

**Finding of Fact Exception 1:  Respondent takes exception to Finding of Fact 14 because the Administrative Law Judge makes impermissible and unsupported assumptions about what Dr. Pendergraft "stated" and "indicated."**

Respondent takes exception to paragraph 14 of the Recommended Order in which the Administrative Law Judge states:  "Dr. Pendergraft's notes *stated* that the sonogram showed growth restriction of the fetus.  He *further* *indicated* that there was a possibility of severe pulmonary hypoplasia...".  (Emphasis added).  This finding is not supported by competent substantial evidence in the record as this reflects an unsupported and incorrect assumption made by the Administrative Law Judge that these notations were Dr. Pendergraft's <u>conclusions</u> instead of recordings of statements of patient history he took from the referring physician "PC".  There is no competent substantial evidence to support this assumption made by the Administrative Law Judge.

**Finding of Fact Exception 2:  Respondent takes exception to Finding of Fact 15 because the Administrative Law Judge again make an unsupported assumption that the notations in the patient chart are the conclusions of Respondent rather than mere reportage of raw data.**

Respondent takes exception to paragraph 15 of the Recommended Order where the Administrative Law Judge finds:  "On the form it is noted that the patient was evaluated on July 7, 2005 and found to be 27 to 28 weeks pregnant, which is 25 to 26 weeks from conception.

3

Both Dr. Perper and Dr. Pendergraft signed the form." This finding is not supported by competent substantial evidence in the record. Instead, the clear and uncontroverted evidence is that these notations were based upon a median sonogram biparietal diameter (BPD) of 6.7cm taken by Dr. Perper (Hrg. Trans. p.207-208, lines 10-2) and, even assuming this estimated measurement to be accurate, there is a error range of plus or minus two weeks (Gomez: Trans. p. 91, lines 18-21; Resp. Exh. 4(PC): pp. 14-15, lines 25-5, p. 39, line 20) which, when figured in includes 23 to 24 weeks from conception, a second trimester pregnancy. (Hrg. Trans. pp. 200-201, lines 23-9)

Additionally, there is no record evidence to support the inference that by Respondent signing this chart page containing the Dr. Perper's sonogram notations Respondent concurs in or agreed with their accuracy or reliability. Nor is there record evidence to infer that this sole median measurement established in his mind the preoperative gestational age of this fetus without consideration of all of the other factors in the patient's medical history and clinical presentation.

**Finding of Fact Exception 3: Respondent takes exception to Finding of Fact 19 because the Administrative Law Judge again make an unsupported assumption that the notations in the patient chart are the conclusions of Respondent rather than mere reportage of raw data.**

Respondent takes exception to paragraph 19 of the Recommended Order in which the Administrative Law Judge states that "the form listed the preoperative estimate of gestational age to be 28 weeks, which would be 26 weeks from conception. Dr. Pendergraft was one of the signatories on the form." This finding is not supported by competent substantial evidence in the record because the clear and uncontroverted evidence is that this biparietal median measurement of 28 weeks was simply transposed from sonogram BPD measurement of Dr. Perper's and that

4

there is an error range of plus or minus of two weeks with this sonogram measurement, as well as a variance within that two weeks because it is an average. (Resp. Exh. 4(PC) p. 15, lines 1-4).

That Dr. Pendergraft was one of the signatories of this form page in the chart can not be interpreted as his agreement with the accuracy or reliability of the results as recorded. Nor can his signature form the basis of the impermissible inference of the Administrative Law Judge that this sole measurement, without consideration of all other clinical factors, established in his mind the preoperative gestational age of this fetus.

**Finding of Fact Exception 4: Respondent takes exception to Finding of Fact 21 because the Administrative Law Judge again make an impermissible and unsupported assumption about what Respondent and Dr. Perper "felt."**

Respondent takes exception to paragraph 21 of the Recommended Order in which the Administrative Law Judge states: "... both Dr. Pendergraft and his associate Dr. Perper, felt that, preoperatively, the gestational age of the fetus was between 27 and 28 weeks...". This finding is not supported by any competent substantial evidence in the record as there is no testimony in this record as to what either Dr. Perper or Dr. Pendergraft "felt" preoperatively was the gestational age of the fetus. Rather, there is clear and uncontroverted evidence in the record that reflects this to be the result of "when the doctor did the sonogram, he wrote in the number of weeks." (Jt. Exh. 8, p. 18, lines 16-20.)

Additionally, there is no testimony in the record or other evidence to support that Respondent's signing of the chart which contains Dr. Perper's sonogram notations can be interpreted as agreeing with their accuracy or inferring what he "felt" preoperatively was the gestational age of the fetus from this estimated median measurement. There is no competent substantial evidence of what Respondent "felt" and the Administrative Law Judge drew an

impermissible conclusion regarding Respondent's thoughts or feelings based upon notations by another physician, and without regard for all other information contained in the medical record.

**Finding of Fact Exception 5: Respondent takes exception to Finding of Fact 23 in which the Administrative Law Judge incorrectly states that Dr. Plotkin's opinion was based on the combined fetal and placental weight without regard for the other record evidence he relied upon.**

Respondent takes exception to paragraph 23 of the Recommended Order in that the Administrative Law Judge asserts that Respondent's expert, Dr. Plotkin formed his opinion that Patient R.W.'s was a second trimester pregnancy was based solely on "the combined fetal and placental weight at the time of delivery." There is not competent substantial evidence in the record that his opinion was based solely on this figure. Rather, there is clear evidence in the record that Dr. Plotkin additionally based his opinion upon the biparietal diameter measurement of 6.7 cm in the OWC records, which placed R.W.'s fetus at "between the 25th and 26th weeks of gestation" and subtracting "at least two weeks from that to give you an approximate time that this patient became pregnant, would be 23 to 24 weeks. (Hrg.Trans. pp. 207-208, lines 6 -2).

**Finding of Fact Exception 6: Respondent takes exception to Finding of Fact 24 in which the Administrative Law Judge minimizes Dr. Warsof's clinical credentials and ignores the opinion of Dr. Warsof, the only accepted expert on IUGR, regarding whether there was growth restriction in Patient R.W.'s fetus.**

Respondent takes exception to paragraph 24 of the Recommended Order in that the Administrative Law Judge characterized Respondent's expert, Dr. Warsof as but "an obstetrician/gynecologist with a subspecialty in maternal-fetal medicine." The evidence is clear and uncontroverted that Dr. Warsof is Board Certified in both obstetrics and gynecology and in maternal/fetal medicine. (Hrg.Trans. 248-249, lines 23-4) Further, the Administrative Law Judge's dismissively describes Dr. Warsof as "spending most of his professional career pursuing academic issues in obstetrical ultrasonography." In fact, it is unrebutted on this record that Dr.

6

Warsof also actively teaches physician residents to perform ultrasound and he oversees eleven (11) ultrasonography technicians while holding active staff privileges as a practicing clinician, being "an attending physician at Sentara Norfolk General Hospital, a consulting physician at Sentara Virginia Beach General Hospital, as well as at the Children's Hospital of the King's Daughters and Riverside Regional Medical Center." (Hrg.Trans. p. 253, lines 10-15). Thus, Dr. Warsof is no mere academic as the Administrative Law Judge's finding implies. Rather, the record evidence is uncontroverted that Dr. Warsof has 30 years of clinical experience "dealing with fetal growth and growth problems, things that accelerate as well as interfere with fetal growth" and "dealing with congenital anomalies." (Hrg.Trans. p. 258, lines 15-20). Dr. Warsof was tendered and accepted as an expert in obstetrics and gynecology, maternal-fetal medicine, and was the only expert tendered and accepted as an expert in OB/GYN ultrasound and sonography, intrauterine growth retardation and gestational analysis. (Hrg.Trans. p. 259, lines 20-24).

Further, there is no competent substantial evidence in the record that Dr. Warsof's opinion of R.W.'s as being a second trimester termination was based only on "the weight of the products of conception after delivery." Rather, there is competent substantial evidence in the record that Dr. Warsof's opinion that R.W.'s was a second trimester pregnancy was also based on his assessment of conflicting ultrasound measures which made it impossible to determine an accurate gestational age by ultrasound of R.W.'s fetus. It was his expert opinion that an intrauterine growth restriction diagnosis, i.e. that the fetus was underweight for its age, was not possible to establish without accurate measures both of fetal age and of fetal weight. Neither of those measures were accurate enough on this record to diagnose IUGR. (Hrg.Trans. p. 264, lines 19-25).

7

**Finding of Fact Exception 7:  Respondent takes exception to Finding of Fact 25 in which the Administrative Law Judge mischaracterizes the opinions of Respondent's experts, Drs. Plotkin and Warsof, that this was a second trimester pregnancy as being based on the fetal/placental weight alone, and further errs in assuming that she knows what Respondent's "impression" was at the time of the termination.**

Respondent takes exception to paragraph 25 of the Recommended Order. The findings within this paragraph are not supported by competent substantial evidence in the record. Two medical experts as well as the patient's referring Board Certified Obstetrician Gynecologist "PC" concluded in their testimony, admitted at hearing, that Patient RW's pregnancy was in the second trimester. Dr. "PC" based her conclusion upon discovery of an erroneous recorded ultrasound measurement which altered her estimated gestational range to 24 to 26 weeks, subtracting two weeks to get "weeks of pregnancy" and then plus or minus two weeks that equated to as early as 20 to 22 weeks of conception on June 22 (15 days prior to termination).  (Resp.Exh. 4(PC) p.12-13, lines 8-8; p. 14-15, lines 22-5).

Further, two OB/GYN experts, Jay Plotkin, M.D. and Steven Warsof, M.D., concluded that the fetus was in the second trimester of pregnancy. Dr. Warsof was the only expert accepted in the areas of "OB/GYN ultrasound and sonography, intrauterine growth retardation (IUGR), and gestational analysis." (Hrg. Trans. p. 259, lines 19-24 (Judge Harrell: "[H]e'll be deemed an expert in OB/GYN, [maternal] fetal medicine and OB/GYN ultrasound and sonography and intrauterine growth retardation and gestational analysis.")

Contrary to the Administrative Law Judge's findings, Dr. Plotkin's opinion was not only based on "the fetal and placental weigh that was delivered at the time of the completion of the procedure" (Hrg.Trans. p. 194, lines 17-19) but, also the OWC BPD measurement of 6.7 centimeters being "between the 25[th] and 26[th] weeks of gestation" and subtracting "at least two

8

weeks from that to give you an approximate time that this patient became pregnant, would be 23 to 24 weeks. Which, to me, according to the statute, is in the second trimester of pregnancy." (Hrg.Trans. pp. 207-208, lines 6-2).

Dr . Warsof's opinion, as well, was not based solely upon "the weight of the fetus and placenta at the time of delivery" but also his opinion that it was impossible to determine by conflicting ultrasound measurements "an accurate gestational age to the level of assurances that are being asked in this legal setting." (Hrg. Trans. p.268-269, lines 25-4)

Further, the finding that "because of the complications of R.W."s pregnancy, it is clear that the fetus had not developed normally and was underweight for its age" is not supported by competent substantial evidence in the record. There is no evidence in the record that reliably proves that the fetus in this case was "underweight for its age." The Department's expert's hypothesis of such is not competent, substantial evidence especially in light of the testimony of the only expert tendered and accepted as an expert in Intrauterine Growth Restriction (IUGR), Dr Warsof, who testified that this diagnosis was impossible to make in this case by the lack of reliable measures of the two essential components of IUGR, "an accurate gestational age and an accurate fetal weight." (Hrg.Trans. p. 264-265, lines 15-11).

Additionally, the Administrative Law Judge's finding that "because of his office records, it is also clear and convincing that Dr. Pendergraft was under the impression that R.W. was in her third trimester of pregnancy when he performed the abortion", is not supported by competent substantial evidence in the record. There is no testimony in the record and no record entry to cite to for the Administrative Law Judge's unsupported assumptions of any "impression" by Dr. Pendergraft that this was a third trimester pregnancy when the termination was performed.

9

Instead, as reinforced by medical expert Dr. Plotkin, the BPD measure of 6.7 cm on the OWC Second Trimester Medical Procedure form equates to a second trimester pregnancy, which supports the contrary impression, as does the Second Trimester Screening Form also utilized. (Jt.Exh. 1, pp. 37 and 36).

**Finding of Fact Exception 8: Respondent takes exception to Finding of Fact 26 in which the Administrative Law Judge does not rely on competent substantial evidence in the record for her finding that there was no certification that the termination was necessary to preserve the health of Patient R.W. nor that emergency medical procedures were medically necessary.**

Respondent takes exception to paragraph 26 of the Recommended Order in which the Administrative Law Judge states that the medical records of Respondent do not evidence "certification" from two physicians that the termination performed was necessary to preserve the health of R.W. The record evidence is clear and uncontroverted that there is no specified format for this certification and no requirement that it be contained in both consulting physicians' records. In fact, Respondent's office records clearly reflect that he, as Patient R.W.'s attending physician, appropriately consulted with the Patient's referring physician, Dr. PC by stating: "Her PMD OB/GYN physician concurs with increased maternal health reasons to undergo termination of pregnancy at this time." (Jt. Exh.1, p. 54; Hrg.Trans. p.203, lines 5-21). Furthermore, as there is no specified requirement for the language of the certification, the Administrative Law Judge's finding that Respondent's record does not contain a written certification as to the medical necessity for emergency medical procedures is also not dispositive on this issue. Instead, his records and Dr. PC's records are clear that there were sufficient concerns for Patient R.W.'s mental and physical health to perform this procedure as soon as was practicable. (Hrg.Trans. p. 225-226, lines 1-16). By contrast, the Administrative Law Judge relied upon the opinion of Dr. Gomez who never read the depositions of either Patient R.W. or her referring OB/GYN Dr. PC,

10

and therefore, that opinion is not competent, substantial evidence upon which to base this finding.

## Respondent's Exceptions To Conclusions Of Law

Respondent takes exception to the following conclusions of law in the Recommended Order, and for the reasons stated in each Exception, requests that they be rejected and be replaced or modified to reflect the correct legal conclusions as articulated in each Exception.

**Conclusion of Law Exception 1.** Respondent takes exception to Conclusions of Law 33-37, 38-40, and 42, because, based on the foregoing Exceptions to the Findings of Fact herein, the termination of R.W.'s fetus did not occur in the third trimester, and therefore, there was no competent substantial evidence for the Administrative Law Judge to find violations of sections 456.072(1)(k) and 458.331(1)(g), (m), and (t), Florida Statutes.

Respondent reasserts and incorporates by reference his Exceptions to the Findings of Fact herein as support that the Administrative Law Judge erred as a matter of law in finding that the procedure performed in this case was a third trimester termination. The complexity of the clinical presentation, the inaccuracy of the measures, and in some cases, the lack of a reliable measure, demonstrate on this record that there is no competent substantial evidence that R.W.'s was a third trimester pregnancy.

**Conclusion of Law Exception 2.** Respondent takes exception to Conclusions of Law 33-37 and 42, because, based on the foregoing Exceptions to the Findings of Fact herein, even assuming the termination of R.W.'s fetus occurred in the third trimester, the performance of this termination was on a nonviable fetus and was an emergency due to maternal health concerns, therefore, the Administrative Law Judge improperly found violations of sections 456.072(1)(k) and 458.331(1)(g), (m), and (t), Florida Statutes.

The Administrative Law Judge acknowledged in her Findings of Fact that R.W.'s Obstetrician had concluded that her fetus was nonviable. See Rec. Order, p. 8, para.12. The United States Supreme Court has stated: "The time when viability is achieved may vary with each pregnancy, and the determination of whether a particular fetus is viable is, and must be, a matter for the judgment of the responsible attending physician." *Planned Parenthood of Central*

11

*Missouri v. Danforth*, 428 U.S. 52 (1976). Fixed gestational limits, such as those found in section 390.0111 and 797.03, Florida Statutes, were rejected as unconstitutional by the Court in *Danforth*, which noted, "it is not the proper function of the legislature or the courts to place viability, which is essentially a medical concept, at a specific point in the gestation period." Clearly the Court was deeming unconstitutional any incursion into the medical judgment and expertise of the physicians who are attending the individual seeking termination of her pregnancy.

Subsequently, the Court further reaffirmed and articulated these principles by upholding a Pennsylvania lover court ruling saying that it is the professional responsibility of the physician to determine whether the fetus has the possibility for "meaningful life, not merely temporary survival. *Colautti v. Franklin*, 439 U.S. 379 (1979):

> Because this point [viability] may differ with each pregnancy, neither the legislature nor the courts may proclaim one of the elements entering into the ascertainment of viability – be it weeks of gestation or fetal weight or any other single factor – as the determinant of when the State has a compelling interest in the life or health of the fetus.
>
> [A] physician determines whether or not a fetus is viable after considering a number of variables: the gestational age of the fetus, derived from the reported menstrual history of the woman; fetal weight, based on an inexact estimate of the size and condition of the uterus; the woman's general health and nutrition; the quality of the available medical facilities; and other factors. ...

*Id. at 394-96.* Because the decisions regarding constitutionality of abortion regulations are based on the concept of "viability" rather than trimester placement, and because on this record, R.W.'s fetus was not viable, the State's regulatory requirements are unconstitutionally burdensome.

Furthermore, on this record, not only was Patient R.W.'s fetus nonviable, but the continuance of R.W.'s pregnancy was a danger to her health, both mental and physical, such that

the termination of her pregnancy constituted an emergency. As an "emergency" Patient R.W.'s

termination came under the "emergency" exceptions under section 390.0111(1) and 797.03(1),

Florida Statutes.

**Conclusion of Law Exception 3.   Respondent takes exception to Conclusions of Law 33, 34, 35, 36 and 37, because the Administrative Law Judge found both a violation of section 456.072(1)(k) and a violation of section 458.331(1)(g), both of which articulate violations for failing to perform a legal obligation placed upon a licensed physician, and are thus improperly duplicative.**

Respondent takes exception to the Administrative Law Judge finding violations of both

section 456.072(1)(k) and section 458.331(1)(g), which articulate essentially the same violation.

The Administrative Law Judge erred in not determining that one or the other applied herein, and

not both. This "piling on" is impermissible and approaches the constitutionally challengeable

practice of "multiplicity" which raises concerns of double jeopardy. *Bautista v. State*, 863 So. 2d

1180 (Fla. 2003). The Board should grant this Exception and determine which of the two

provisions is applicable herein.

**Conclusion of Law Exception 4.   Respondent takes exception to Conclusions of Law 33, 34, 35, 36 and 37, because the Department and the Board have no prosecutorial or final agency action authority over the cited provisions of Chapter 390, Florida Statutes.**

The Administrative Law Judge found that Respondent violated sections 456.072(1)(k)

and 458.331(1)(g), by failing to perform a legal obligation placed on a licensee, or a licensed

physician, respectively, by performing an alleged third trimester pregnancy termination on

Patient R.W. outside of a hospital, in violation of section 797.03(3), and without the certification

of two physicians, as required in section 390.0111, Florida Statutes.

Further, Count I alleged that Respondent failed to perform a statutory duty placed on a

licensed physician, when this third trimester abortion procedure was performed "without having

two physicians certify in …that, to a reasonable degree of medical probability, the termination of

13

the pregnancy was necessary to save the life or preserved the health of the pregnant woman or [by] certifying that it was an emergency and another physician was not available for consultation," as required by section 390.0111, Florida Statutes.

An administrative agency has only such authority as conferred by statute. *Gulfstream Park v. Dep't of Bus. Regulation*, 443 So. 2d 113 (Fla. 3d DCA 1983). Authority for enforcing the provisions of Chapter 390 is vested largely in the Agency for Health Care Administration. The Department's express authority in Chapter 390 is confined to two provisions: authorization to prosecute violations of the informed consent provisions is found in section 390.0111(3)(c), Florida Statutes, and authorization to prosecute physicians for violations of the parental notice requirements is set forth in section 390.01114(3)(c), Florida Statutes. Those are the "statutory or legal obligations placed upon a licensed physician" in chapter 390 that the Department is authorized to prosecute. All other provisions and legal requirements in Chapter 390 are enforced by the Agency for Health Care Administration against the licensee abortion clinic.

"It…is a general principle of statutory construction that the mention of one thing implies the exclusion of another, *expressio unius est exclusio alterius*." *Thayer v. State*, 335 So. 2d 815, 817 (Fla. 1976); *Dep't of Prof'l Regulation v. Pariser*, 483 So. 2d 28, 29 (Fla. 1st DCA 1986). Where, as in Chapter 390, the statute enumerates the things on which it is to operate, it is ordinarily construed so as to exclude from its operation all those not expressly mentioned. *Thayer*, 335 So. 2d at 817.

Thus, the Department's authority for enforcement of the provisions of Chapter 390 is found only in subsections 390.0111(3)(c) and 390.01114(3)(c), and neither of these provisions is applicable herein. Therefore, the Department does not have the authority to enforce other

14

provisions of Chapter 390 under its power to discipline for "failure to perform any statutory or legal obligation placed on a licensed physician."

**Conclusion of Law Exception 5.** Respondent takes exception to Conclusions of Law 33, 34, 35, 36 and 37, because the Department and the Board have no prosecutorial or final action authority over criminal provisions of Chapter 797, Florida Statutes, and their exercise of same fails to provide Respondent with the constitutional protections guaranteed in criminal prosecutions.

In like manner, the Department has no authority to prosecute violations of provisions of Chapter 797, a criminal statute, and the Board has no authority to impose final agency action on criminal charges in the absence of a conviction. The Department alleged in Count I of the Administrative Complaint that Dr. Pendergraft violated sections 456.072(1)(k) and 458.331(1)(g), Florida Statutes, "failing to perform any statutory or legal duty placed upon a licensee" or "licensed physician," by violating section 797.03(3), Florida Statutes, in that Respondent performed "a third trimester abortion procedure on Patient R.W. at the OWC facility."

To charge this combination of statutory provisions as the Department has attempted in this case is a bold attempt to usurp the authority of the criminal justice system, and circumvent the constitutional protections and elevated burden of proof required in criminal prosecutions. For all the reasons stated in Conclusion of Law Exception 1, the Department's statutory authority, as set forth in Chapters 456 and 458, does not contemplate or permit the Department to take on the prosecution of a case under Chapter 797, nor does it contemplate that this Board will act in lieu of the criminal justice system.

In addition, section 458.331(1)(c), Florida Statutes, authorizes the Board of Medicine to take action against a physician who has been "convicted or found guilty of, or enter[ed] a plea of nolo contendere to, regardless of adjudication, a crime in any jurisdiction which directly relates

15

to the practice of medicine or to the ability to practice medicine." This provision clearly anticipates that the Department may use a <u>conviction</u> by criminal authorities regarding behavior relating to the practice of medicine as a basis for license disciplinary action. However, <u>no</u> such conviction exists in this case.

Where a statutory provision places an affirmative obligation on a <u>licensee physician</u>, and the licensed physician fails to perform that obligation, then the Department can prosecute that violation under its authority for "failing to perform any statutory or legal obligation placed upon a licensee" or "licensed physician." Sections 456.072(1)(k) and 458.331(1)(g), Fla. Stat. However, for the reasons that follow, by their plain language, these provisions do not authorize the Department to prosecute a criminal statute, such as Chapter 797, Florida Statutes.

By its express language, section 797.03(3), Florida Statutes and the other provisions therein, are applicable to "any person", that is, to <u>all</u> citizens, not just to licensed physicians, or not just to licensees of the Department. An essential element of the (k) and (g) violations is that the obligation which was not performed must be one that is "placed on the licensee" or "the licensed physician." Implicit in this language is that the obligation must be placed on the licensee by virtue of the licensure itself. Statutes providing for the revocation or suspension of a license to practice, such as sections 456.072 and 458.331, Florida Statutes, are "penal in nature and must be strictly construed, with any ambiguity interpreted in favor of the licensee. *Elmariah v. Dep't of Prof'l Regulation, Board of Medicine*, 574 So. 2d 164, 165 (Fla. 1st DCA 1990) (and cases cited therein).

As a criminal statute of <u>general</u> applicability, the provisions of Chapter 797 cannot be construed to be an obligation placed upon a licensed physician by virtue of his licensure. While the statute deals with the performance of certain abortions, the general language utilized therein

16

makes it clear that that the Legislature meant to reach any person. As the Department is not authorized to prosecute "any person" and the Board does not have authority over "any person", it is not authorized to enforce the provisions of Chapter 797, Florida Statutes, in the manner that has been attempted in this case.

If the legislature had intended the Department and the Boards to be able to prosecute any criminal behavior in the absence of action by the State Attorney and the criminal justice system, then sections 456.072(1)(k) and 458.331(1)(g) would state that the Board could take action for failure to perform any legal obligation placed on a citizen, or any person. Or they would state that the Board could take action for failure to perform any legal obligation regardless of whether there was a criminal conviction or not. This the Legislature did not do. Instead, the language of these violations is tied to those legal obligations "placed on a licensee" or on the "licensed physician."

As Chapter 797 is applicable to all citizens, enforcement of these provisions is appropriately placed in the hands of the State Attorney, and not those of regulatory agencies such as the Department and this Board. As a matter of law, the Department may not prosecute, and the Board may not find, a violation of section 797.03(3), Florida Statutes, through the "legal obligation" language of section 458.331(1)(g), Florida Statutes.

**Conclusion of Law Exception 6.** **Respondent takes exception to Conclusions of Law 33, 34, 35, 36 and 37, because there is no competent, substantial evidence in the record regarding "intent", an essential element of the charged violation of section 797.03, Florida Statutes.**

Further, in attempting to enforce the provisions of Chapter 797, the Department has "cherry-picked" one provision in that statute, subsection (3), which makes it a crime to perform a third trimester termination outside of a hospital, while ignoring another provision, subsection (4), that adds an element of specific intent to the crime.

17

(4)    Any person who <u>willfully</u> violates any provision of this section is guilty of a misdemeanor of the second degree, punishable as provided in s.775.082 or s. 775.083. (emphasis added)

"Willfulness" is defined as "[t]he fact or quality of acting purposely or by design; deliberateness; intention." <u>Black's Law Dictionary,</u> 1630 (8th ed. 2004) Thus, the act must have been done knowingly, with the purpose and intent of violating the law.    The Department presented no evidence on this element of the crime. There was no competent, substantial evidence in the record to establish this "willful" intent element of the alleged crime which formed the basis of the Department's allegation of a violation of sections 456.072(1)(k) and 458.331(1)(g), Florida Statutes. Respondent takes exception to Conclusions of Law 33,34,35,36 and 37 because there was no competent evidence of specific intent on the part of Respondent to willfully violate Chapter 797, by performing a third trimester termination outside of a hospital.

**Conclusion of Law Exception 7. Respondent excepts to Conclusions of Law 37, 38 and 39, relating to the medical records violation of section 458.331(1)(m), Florida Statutes, because the Department and the Board do not have authority to enforce the "certification" provision of Chapter 390.**

The Administrative Law Judge found the Respondent guilty of Count II of the Administrative Complaint which charges Respondent with a violation of section 458.331(1)(m), Florida Statutes, by failing to keep legible medical records that justify the course of Patient R.W.'s medical treatment, in that "Respondent did not certify in writing that to a reasonable degree of medical probability, the termination of Patient R.W.'s pregnancy was necessary to save the life or preserve the health of the pregnant woman, or obtain a concurring certification from a second physician or did certify (sic) that any emergency existed."

As articulated above and incorporated in this Exception, Respondent asserts that while Section 390.0111(1) imposes the certification obligation on the <u>licensee abortion clinic,</u> it does not give the Department the authority to impose discipline on licensees working in the abortion

clinic for failing to meet the certification requirement. *Dep't of Health, Bd. of Nursing v. Logan T. Lanham, R.N.*, 2005 WL 584901, 6 (Fla.Div.Admin.Hrgs); *Dep't of Health, Bd. of Nursing v. Patti Jo Rossi, L.P.N.*, 2005 WL 584900, 5 (Fla. Div. Admin. Hrgs.)

**Conclusion of Law Exception 8. Respondent excepts to Conclusions of Law 37, 38 and 39, relating to the medical records violation of section 458.331(1)(m), Florida Statutes, because the Administrative Law Judge erred in finding that Patient R.W.'s termination was in the third trimester and the "certification" requirements are imposed only on third trimester terminations.**

37.     Respondent objects to these Conclusions of Law for all the reasons set forth in the foregoing paragraphs, especially that the Department and the Board do not have the authority to prosecute the provisions of Chapter 390, except for those expressly reserved for the Department and Board to act upon. In addition to the above referenced exception, Respondent also takes exception to Conclusions of Law 37, 38 and 39, because as set forth in the Exceptions above, section 390.0111(1), Florida Statutes, by its express language, only applies to terminations of pregnancy in the third trimester. As R.W.'s pregnancy termination was performed in the second trimester **[finish this]** No certification under section 390.0111(1), Florida Statutes, was necessary. The Department failed to prove a violation of section 458.331(1)(m), Florida Statutes.

**Conclusion of Law Exception 9. Respondent takes exception to Conclusions of Law 37, 38 and 39, relating to the section 458.331(1)(m) violation, because the AHCA Surveyor found the "certification" requirements had been met, and the Administrative Law Judge interpreted the requirement differently from the interpretation of AHCA, the agency charged with interpreting and enforcing the certification provisions of Chapter 390.**

Respondent takes exception to Conclusions of Law 37, 38 and 39, because, even assuming that the certification requirement applied herein, Respondent met the requirements of section 390.0111(1), Florida Statutes, in that the medical record contains sufficient notation to

19

show that both Respondent and R.W.'s obstetrician, Dr. P.C., thought that the pregnancy termination was necessary to preserve the health of the mother, Patient R.W.

Neither the statute nor the Agency's rule requires a specific form of "certification" nor do they give any guidance either by rule of the Agency for Health Care Administration or the Department of Health as to what does or does not constitute sufficient "certification."

Significantly, however, the AHCA Surveyor, as the Agency's agent for determining compliance with the provisions of Chapter 390, Florida Statute and whose survey of Respondent's clinic initiated this case, expressly found that Patient R.W.'s chart "contain(s) the following supporting information that: Two different physicians certified in writing that to a reasonable degree of medical probability (sic), the termination of pregnancy is necessary to save the life or preserve the health of the pregnant women (sic)." (Resp. Exh. 5: 23; Resp. 4 (AHCA): 5 ("without deficient practice. The facility was found to be incompliance with 59A-9, F.A.C. and CH390 as of that date.").

Thus, this Board should grant Respondent's Exception to Conclusions of Law 37, 38 and 39, and concur in the AHCA interpretation that Respondent met this "certification" requirement because the Agency has been given enforcement authority over this provision of Chapter 390 determined that his record was sufficient during the survey that initiated this case. Specifically, Respondent's note in R.W.'s medical record states: "her OB/GYN physician concurs [with] increase[d] maternal health reason[s] to undergo termination of pregnancy at this time." (Jt. Exh. 1: 54) Dr. P.C., Patient R.W.'s obstetrician, confirms that this notation is accurate. (Jt. Exh. 4: 76)

**Conclusion of Law Exception 10. Respondent takes exception to Conclusions of Law 37, 38 and 39, relating to the of section 458.331(1)(m) records violation, because the United States Supreme Court has found substantially similar "certification" provision to be unconstitutional.**

20

Respondent take exception to Conclusions of Law 37, 38, and 39 because "certification" requirements such as the one in 390.0111, Florida Statutes, have been struck down by the United States Supreme Court as unconstitutional. In *Doe v. Bolton*, 410 U.S. 179 (1973), the Court struck down the portion of a Georgia statute that required two independent physicians to confirm the attending doctor's determination that continuation of a pregnancy would endanger the woman's life or health. *Id.* at 199. Significantly, the Court stated: "The attending physician's 'best clinical judgment that an abortion is necessary'...should be sufficient. ...Required acquiescence by co-practitioners has no rational connection with a patient's needs and unduly infringes on the physician's right to practice." *Id.* (emphasis added). The Board should grant this Exception as the certification requirement is unconstitutional and impermissibly infringes Respondent's right to practice.

**Conclusion of Law Exception 11. Respondent takes exception to Conclusions of Law 40, and 42 because the Administrative Law Judge departed from the essential requirements of law by finding that the termination of Patient R.W.'s fetus was a third trimester termination.**

The Administrative Law Judge erred by finding Respondent guilty of Count III of the Administrative Complaint charging Respondent with a violation of section 458.331(1)(t), Florida Statutes, by failing to practice medicine with the prevailing professional standard of care in the following four ways:

> a. By performing a third trimester abortion procedure on Patient R.W. at the OWC facility.
>
> b. By not certifying in writing that to a reasonable degree of medical probability, the termination of Patient R.W.'s pregnancy was necessary to save the life or preserve the health of the pregnant woman, or obtain a concurring certification from a second physician.
>
> c. By not certifying in writing that an emergency existed.

21

d.    By not transferring Patient R.W. to a hospital before performing the third trimester abortion.

Based upon the foregoing Exceptions and the arguments therein, there was not competent, substantial evidence in the record to support that Respondent performed a third-trimester pregnancy termination in Patient R.W.'s case, and therefore. Respondent did not practice below the applicable standard of care as to items (a) through (d) above.

**Conclusion of Law Exception 12.    Respondent takes exception to Conclusions of Law 40, and 42 because the enumerated items alleged as violations of the standard of care under section 458.331(1)t) are all legal obligations instead and are not within the statutory definition of the "practice of medicine."**

The details described in Paragraph 40(a) through (d) above are legal obligations imposed by various administrative and criminal statutory provisions and are not aspects of the standard of care, which relates to the actual practice of medicine. The practice of medicine is defined as "the diagnosis, treatment, operation, or prescription for any human disease, pain, injury, deformity, or other physical or mental condition." § 458.305(3), Florida Statutes. Thus, the standard of care violation permits disciplinary action for failing to meet the minimum standards of performance in "diagnosis, treatment, operation or prescription."

Whether or not the patient chart shows an adequate "certification" is not and cannot be charged as a violation of the standard of care. Placing a written certification into the patient chart is neither diagnosis, treatment, operation nor prescription. Neither is it a violation of the standard of care for the other "legal obligations" set forth in paragraph 51(a) through (d) in the Administrative Complaint. Any such interpretation would render the (k) and (g) "legal obligation" violations useless. There is a significant difference between improperly treating or diagnosing a patient, i.e. "malpractice" or "practice below the standard of care" which constitutes

22

a '(t) violation, and not performing legal obligations that are not the actual medical treatment rendered to the patient. *Barr v. Dep't of Health*, 954 So. 2d 668 (Fla. 1st DCA 2007).

## Exceptions to the Denial of Attorney's Fees
## Under Section 120.595, Florida Statutes

**Attorney's Fees Exception 1.   Respondent takes exception to the Administrative Law Judge's denial of attorney's fees and costs because she erred as a matter of law in interpreting the definition of "nonprevailing adverse party" under section 120.595(1)(e)3., Florida Statutes.**

Respondent takes Exception to Conclusions of Law 45 and 46, denying Respondent's Motion for Attorney's Fees and Costs relating to Counts IV, V, and VI of the Amended Administrative Complaint pursuant to section 120.595. The Administrative Law Judge erred as a matter of law in her interpretation of and determination that the Department is not a "nonprevailing adverse party" as to Counts IV, V, and VI under section 120.595(e)3., Florida Statutes. The Administrative Law Judge provided no support for this conclusion. However, she apparently based her conclusion on the fact that the dismissal was as the three Counts (IV, V, and VI) of the Administrative Complaint, rather than the dismissal of an entire DOH case, DOH Case No. 2004-39923 relating to Patient T.R. For this reason, and the reasons set forth in Respondent's Motion for Attorney's Fees and Costs, incorporated herein by reference, Respondent is entitled to attorney's fees and costs expended in defense of Counts IV, V, and VI.

**Attorney's Fees Exception 2.   The Administrative Law Judge erred as a matter of law by not setting a hearing for the purposes of taking evidence to determine whether Respondent was entitled to attorney's fees and costs under section 120.595(1)(e)3., Florida Statutes.**

In the alternative, Respondent takes exception with the conclusion of the Administrative Law Judge denying the Motion for attorney's fees under section 120.595(1) in that she departed from the essential requirements of law by failing to set a hearing for the purpose of taking

evidence upon which to make a determination of attorney's fees and costs pursuant to section 120.595, Florida Statutes.

## Exceptions to the Proposed Penalty
### And Request for Downward Departure

In light of the foregoing Exceptions and the resultant modifications to the Findings of Fact and Conclusions of Law of the Administrative Law Judge, this Board should reject the recommended penalty and dismiss this case. In the alternative, this Board should decline to follow the Administrative Law Judge's recommendation as to penalty and impose a penalty modified and reduced for the reasons that are set forth below.

**Penalty Exception 1. Respondent take exception to the proposed Penalty because the Board has no guidelines set forth in its rules for violations of Chapters 390 and 797, Florida Statutes, as required by section 456.079, Florida Statutes and precedent set forth in *Arias v. Dep't of Business and Prof'l Regulation.***

The Administrative Law Judge found that Respondent violated sections 456.072(1)(k) and 458.331(1)(g) (charged together as one Count), 458.331(1)(m), and 458.331(1)(t)1., Florida Statutes. On the basis of her findings, the Administrative Law Judge recommended that Respondent's license be suspended for a period of "one year followed by three years of probation with indirect monitoring; imposing an administrative fine of $10,000.00...".

In section 456.079, Florida Statutes, the Florida Legislature directed this Board to provide disciplinary guidelines which shall be imposed upon licensees whom it regulated under Chapter 458, Florida Statutes. The Board's penalty guideline for violations of sections 456.072(1)(k) and 458.331(1)(g) is articulated in Rule 64B8-8.001(g), "Failure to perform legal obligation." Under this "(g)" subsection, numerous "legal obligations" are set forth and the penalty guideline as to each is articulated in the Board's rule. There is no specified penalty

24

guidelines for those "legal obligations" set forth in Chapters 390 and 797, that the Department

alleged and the Administrative Law Judge found in error. Instead, the Rule merely states, under

"First Offense":

> For any offense not specifically listed herein, based upon the
> severity of the offense and the potential for patient harm, from a
> letter of concern to revocation or denial, and an administrative fine
> from $1,000.00 to $10,000.00, unless otherwise provided by law.

64B8-8.001(g), F.A.C.

As the Board's rule states: "The purpose of this rule is to notify applicants and licensees

of the ranges of penalties which will routinely be imposed unless the Board finds it necessary to

deviate from the guidelines...". 64B8-8.001(1), F.A.C.

Because the Department and the Board have no authority to prosecute violations of

Chapters 390 and 797, there is no "legal obligation" penalty range corresponding same in the

Board's disciplinary guideline. Even assuming the Department and the Board have such

authority, they have "failed to comply with the legislative requirement that there be penalty

guidelines in place, so as to alert licensees of proscribed actions and so as to ensure consistency

in penalties imposed." *Arias v. State, Department of Business and Professional Regulation*, 710

So. 2d 655, 658 (Fla. 3d DCA), *cause dismissed*, 718 So. 2d 167 (Fla. 1998).

Respondent here has had no meaningful notice of potential penalties herein because the

alleged acts constituting the failure to perform a legal obligation are not specifically set out in the

rule such that Respondent and others similarly situated are aware that such acts under Chapters

390 and 797, Florida Statutes, are applicable to them and they are subject to the specified

penalties set forth. This lack of notice as to the existence of the legal obligations, the lack of

legal authority of the Department and the Board to prosecute and find such obligations, and the

total lack of guidelines for enforcement of this purported violations, creates a predicament ripe

25

for arbitrary and erratic enforcement where there are no standards sufficiently articulated to constitute a judicially reviewable discretion. *Id.* at 659 (distinguishing the result in *Morey's Lounge, Inc. v. Department of Business and Professional Regulation*, 673 So. 2d 538 (Fla. 4th DCA 1996).

Respondent takes exception to the penalty, insofar as it is imposed for the violations of sections 456.072(1)(k) and 458.331(1)(g), Florida Statutes, because it gives the Board *carte blanche* to impose penalties on a physician's license for the violation of any legal duty not enumerated in the rule, without meaningful notice of likely penalties and without a mechanism in place to ensure that such penalties would be consistently applied by the Board. *Arias*, 710 So. 2d at 659. For this reason, the Board should reconsider the Administrative Law Judge's recommended penalty and reduce it proportionately downward.

**Penalty Exception 2. Respondent takes exception to the proposed penalty of the Administrative Law Judge as she failed to acknowledge and consider the mitigating factors in the record before her.**

This Board's Rule on disciplinary guidelines further states:

> Based upon consideration of … mitigating factors present in an individual case, the Board may deviate from the penalties recommended [in the disciplinary ranges].

64B8-8.001(3), F.A.C. Respondent takes Exception to the proposed penalty because the Administrative Law Judge did not acknowledge and consider the mitigating factors in the record before her in formulating her proposed penalty. Those mitigating factors should have included the following:

1. Respondent has been continuously licensed since 1982, in other states and then in Florida (Hearing Transcript, p. 18, lines 4-18);
2. He has never been before this Board, or any other licensing board for the same offenses that were alleged in this case (Hearing Transcript, p. 20, lines 6-19). ;

3. Further, his license was "clear/active" at the time that the Department Secretary issued its Order of Emergency Suspension of the License on August 10, 2006. on the same allegations that make up the Administrative Complaint in this case;

4. There was no patient harm herein; in fact, the record evidence is that Patient R.W. suffered no post-procedure *sequelae*, and was grateful for the compassionate care provided by Respondent (Joint Exh. 4, p. 70: "R. underwent a late second trimester termination of a non-viable infant ...the termination went uneventfully..." and "On exam there is no evidence of cervical trauma." See also Joint. Exh. 7, Deposition of Patient R.W., p. 39, lines 5-6 ("Q Were you satisfied with the outcome? A Yes."), see also, p. 97-98, lines 24 -3.

5. The medical facts surrounding Patient R.W.'s termination and the uncertainty in the data used to determine fetal age was an isolated instance, and there was no evidence presented at hearing of any other similar circumstances.

In addition to the mitigation as set forth above which tracks many of those set forth in the Board's rule, another mitigating factor is the unusual combination of medical facts in Patient R.W.'s case. The lack of early prenatal data upon which to base gestation determinations due to the patient's history of rigorous athletic training, the lack of amniotic fluid making accurate sonographic assessment impossible; the widely variable sonographic measurements recorded in this record; the multiplicity of the fetal anomalies; and the non-viability of the fetus all frame a situation that defies the exactitude that should be required when the Department makes allegations that place a physicians' license in jeopardy. That this was a compassionate termination to protect the health of the mother is not in dispute on this record. A physician should not be excessively punished for acting in his patient's best interests based upon data that cannot be more exact due to the medical presentation and circumstances of the patient.

For the foregoing mitigating factors and due to the unusual combination of medical factors in this case, the Board should decrease the penalty recommended by the Administrative Law Judge downward.

27

**Penalty Exception 3.** Respondent takes exception to the recommended penalty of the Administrative Law Judge because it does not give him credit for the fifteen months (15) that Respondent has been suspended under the Department's Order of Emergency Suspension of August 10, 2006 on these cases.

The Secretary of the Department of Health issued her Order of Emergency Suspension of the License (ESO) on August 10, 2006. That ESO alleged substantially the same facts and law that are set forth in the Administrative Complaint in Department of Health Case Nos. 2004-39923 (relating to Patient T.D.) and 2005-67224.

This Board's has established a practice of giving credit for "time served" under an emergency suspension order to physicians. An agency abuses its discretion by failing to consider its own prior case law because to do so is "[i]consistent with officially stated agency policy or a prior agency practice" unless it is explained by the agency. *See Nordheim v. Department of Environmental Protection,* 719 So. 2d 1212 (Fla. 3d DCA 1998)(and cases cited therein). See, e.g. *Department of Health v. Rolando R. Sanchez, M.D.,* Final Order No. DOH-99-0343-FOF-MQA (March 31, 1999)(attached).

Should the Board not grant this Exception, Respondent will actually serve a penalty of suspension of at least two (2) years and three (3) months. Such a result is a *de facto* increase in the penalty imposed by the Administrative Law Judge and is not warranted on the facts of this case – which demonstrate an extremely "close" call on a late-second trimester pregnancy – and the record before the Administrative Law Judge.

The failure to give credit for "time served" in this case would place the period of suspension high in the penalty ranges for the violations found by the Administrative Law Judge, and essentially would be an increase in the penalty provided by the Administrative Law Judge, for which the Board would have to cite to the record in justification.. For this reason, and the

28

foregoing, the Board should grant this exception, and should the Board imposes a period of suspension, such suspension should provide Respondent with credit for time he has already served under the Department's Emergency Order of August 10, 2006.

**Penalty Exception 4. Respondent takes exception to any assessment of the Department's "costs" under section 456.072(4), Florida Statutes, in this case.**

Finally, as to penalty, Respondent asserts and incorporates by reference all arguments regarding penalty that are set forth in his Response and Objections to the Department's Motion to Assess Costs In Accordance With Section 456.072(4), filed this date.

WHEREFORE, Respondent respectfully requests that the foregoing Exceptions to the Recommended Order be granted and modifications to the Findings of Fact, Conclusions of Law and Recommended Penalty of the Administrative Law Judge be made in accordance with the argument herein.

Respectfully submitted,

Kathryn L. Kasprzak
Florida Bar No. 0937819
Fowler White Boggs Banker P.A.
200 South Orange Ave., Suite 1950
Orlando, Florida 32801
(407) 406-5515
(407) 406-5555 (fax)
and
Kenneth J. Metzger
Florida Bar No. 0341215
Fowler White Boggs Banker, P.A.
101 North Monroe St., Suite 1090
Tallahassee, Florida 32301
(850) 681-4245
(850) 681-6036 (fax)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Exceptions to Recommended Order with attached Final Order in *Department of Health v. Rolando R. Sanchez, M.D.*, Final Order No. DOH-99-0343-FOF-MQA (March 31, 1999) was forwarded by electronic transmission for filing to R. Sam Power, Clerk, Department of Health. 4052 Bald Cypress Way, Bin C-01, Tallahassee, Florida 32399-3201 and to Irving Levine, Assistant General Counsel, Department of Health, Prosecution Services Unit, 4052 Bald Cypress Way, Bin C-65, Tallahassee, Florida 32399-3265, with a hard copy to follow by overnight mail delivery, this 12th day of November, 2007.

Kathryn L. Kasprzak, Esquire



FILED
DEPARTMENT OF HEALTH
DEPUTY CLERK
CLERK: _Amy L. Cammany_
DATE _11-26-07_

## STATE OF FLORIDA
## DEPARTMENT OF HEALTH
## BOARD OF MEDICINE

**DEPARTMENT OF HEALTH,**

        **Petitioner,**

v.                          **DOAH CASE NO.: 06-4288PL**
                                    **DOH CASE NOS.: 2004-39923**
                                      **and 2005-67224**

**JAMES S. PENDERGRAFT, IV, M.D.,**

        **Respondent.**

_____/

### PETITIONER'S RESPONSE TO
### RESPONDENT'S EXCEPTIONS TO THE
### RECOMMENDED ORDER

COMES NOW Petitioner, Department of Health, and submits its
Response to Respondent's Exceptions to the Recommended Order issued in
the above referenced case by the Administrative Law Judge (ALJ), and in
support thereof, states as follows:

### PRELIMINARY STATEMENT

Section 120.57(1), Florida Statutes, as amended, and recent case law
have clarified the authority of a reviewing Board under the Administrative

Procedures Act. The Board may reject or modify conclusions of law over which it has substantive jurisdiction and interpretations of administrative rules over which it has substantive jurisdiction. The Board of Medicine is vested by the laws of Florida with the authority to interpret and apply such laws, regulations and policies as are applicable to programs within the Board's regulatory sphere. Thus, the Board is not bound by conclusions of law set forth in the Recommended Order to the extent that those conclusions do not represent a reasonable interpretation of the laws, regulations and policies within the Board's realm of expertise. See Barfield v. Department of Health, 805 So.2d 1008 (Fla. 1st DCA 2001); Humana, Inc. v. DHRS, 492 So.2d 388, 392 (Fla. 4th DCA 1986); Bayonet Point Regional Medical Center v. DHRS, 516 So.2d 995 (Fla. 1st DCA 1987); and Pan Am World Airways v. Florida Public Service Commission, 427 So.2d 716 (Fla. 1983). To the extent that the conclusions of law in the Recommended Order are incorrect interpretations of law, regulations and policies within the exclusive purview of the Board of Medicine, they can be rejected and the Board can adopt conclusions of law that accurately reflect the proper interpretation of the applicable law and rules. However, the Board must:

a.) State with particularity its reasons for rejecting or modifying such conclusions of law or interpretation of administrative rule, <u>and</u>

b.) Make a finding that the substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified.

<u>RESPONSE TO EXCEPTIONS</u>

Respondent sets out eight exceptions to the findings of fact, twelve exceptions to the conclusions of law, two exceptions to the denial of attorney's fees and four exceptions to the proposed penalties in the Recommended Order. The following is Petitioner's response to the correspondingly numbered Respondent's exceptions:

<u>Findings of Fact</u>

1.    Respondent takes exception to paragraph 14 of the Recommended Order in which the Administrative Law Judge (ALJ) finds that Dr. Pendergraft's notes stated that the sonogram showed growth restriction of the fetus. Respondent asserts that this finding is not supported by competent substantial evidence in the record as this reflects an unsupported and incorrect assumption made by the ALJ.

The medical records for Patient R.W. from all of the physicians and hospitals that were involved in her care from June to July of 2005 were

admitted into evidence without objection. These records speak for themselves and constitute "competent substantial evidence in the record." The Respondent chose not to testify at the hearing, as did Dr. Perper, and these medical records are unrefuted. The ALJ's reading of them is reasonable and the interpretation or limitation to their meaning as offered by Respondent is not more compelling. This exception should be rejected by the Board.

2.      Respondent takes exception to paragraph 15 where the ALJ finds that on one of the Orlando Women's Clinic (OWC) forms it is noted that the patient was evaluated on July 7, 2005 and found to be 27 to 28 weeks pregnant, which is 25 to 26 weeks from conception and that finding is not supported by competent substantial evidence in the record. Petitioner restates and incorporates into this response the response made in paragraph 1 above.

Further, that finding of fact is supported by the Petitioner's expert testimony as well as all six sets of medical records, not just the OWC documents. Dr. Gomez provided a clear and cogent explanation that this fetus was suffering from placental insufficiency, and as evidenced by head versus body size, that it was significantly underweight. (Tr. pg. 45-54, 59-

64, 261-272) Based upon all the information available, Dr. Gomez observed that the head size indicated a 30+ week fetus but opined on the record that, conservatively, the age of this fetus from conception was 27 to 29 weeks. (See, R.O. finding of fact 22 and Joint Ex. 1, pg. 51; Tr. pg. 43-54, 61-64, 85-87, 88-95, 145-149)

It is a reasonable inference, and without contradictory testimony in the record, for the ALJ to conclude that when Dr. Pendergraft signed the OWC document, he concurred with what was written. This exception should be rejected by the Board.

3. Respondent takes exception to paragraph 19 of the Recommended Order in which the ALJ states that the form listed the pre-operative estimate of gestational age to be 28 weeks, which would be 26 weeks from conception, that Dr. Pendergraft was one of the signatories on the form, but contends that this finding is not supported by competent substantial evidence in the record. Again, Petitioner restates and incorporates into this response the responses made in paragraphs 1 and 2 above. This exception should be rejected by the Board.

4. Respondent takes exception to paragraph 21 of the Recommended Order in which the ALJ states that both Dr. Pendergraft and

his associate, Dr. Perper <u>felt</u> that, preoperatively, the gestational age of the fetus was between 27 and 28 weeks and contends that this finding is not supported by competent substantial evidence in the record as there is no testimony in this record as to what either Dr. Perper or Dr. Pendergraft "felt." Petitioner restates and incorporates into this response the response made in paragraph 1 above and in particular that the ALJ's interpretations of the medical records in evidence were reasonable and that the Respondent chose not to testify to clarify his medical records for Patient R.W.

Also, in this exception, Respondent left out the remainder of the ALJ's sentence in the R.O. paragraph 21 that notwithstanding that Respondent and Dr. Perper had recorded a gestational age or 27-28 weeks, he did not transfer the patient to a hospital. That is the crux of this finding of fact, not how they felt. This exception should be rejected by the Board.

5. Respondent takes exception to paragraph 23 of the Recommended Order in that the ALJ asserts that Respondent's expert, Dr. Plotkin formed his opinion that Patient R. W. was a second trimester pregnancy was based <u>solely</u> on the combined fetal and placental weight at

the time of delivery and contends that there is not competent substantial evidence in the record that his opinion was based solely on this fact.

First, the ALJ did not state that Dr. Plotkin's opinion was "based solely" on the combined fetal and placental weight. Nonetheless, Dr. Plotkin repeatedly contended that due to the lack of amniotic fluid, all four sets of sonograms were useless and the weight of the product of conception was the only reliable basis for determining fetal age. (Tr. pg. 193-197, 206, 261-272) The other evidence referenced by Respondent in the exception is the OWC recorded BPD measurement of 6.7. But that measurement had been interpreted by the Respondent and Dr. Perper, as recorded on the OWC form, as 27-28 weeks gestational age, and Dr. Plotkin had already discounted the reliability of all the sonogram readings, including presumably, this one.

The ALJ's assessment of Dr. Plotkin's opinion testimony is reasonable and this doctor's assessment of the fetal age is rebutted by the medical records and the expert testimony of Dr. Gomez which are "competent substantial evidence in the record." This exception should be rejected by the Board.

6. Respondent takes exception to paragraph 24 of the Recommended Order due to the manner in which the ALJ characterized the credentials and experience of Respondent's expert, Dr. Warsof. It is the ALJ's responsibility to assess the credibility of conflicting expert opinions. Clearly, the ALJ found the Petitioner's expert testimony to be more credible. However, the ALJ did not specifically conclude that this fetus was IUGR (i.e., growth restricted or retarded) but found in R.O. finding of fact 25 that it had not developed normally and was underweight for its age. This exception should be rejected by the Board.

7. Respondent takes exception to Finding of Fact 25 stating that the ALJ mischaracterized the opinions of Respondent's experts that this was a second trimester pregnancy based on the fetal/placental weight alone and further in assuming that the ALJ knows what Respondent's "impression" was at the time of the termination. Petitioner restates and incorporates into this response the responses made in paragraphs 1, 2, 5 and 6 above. This exception should be rejected by the Board.

8. Respondent takes exception to paragraph 26 in which the ALJ finds that the medical records of Respondent do not evidence certification from two physicians that the termination performed was necessary to

preserve the health of R.W. The record is clear and uncontroverted that there is no specified format for this certification and no requirement that it be contained in both consulting physicians records.

The AJL agreed that there is no specific certification format required but did find that the medical records did not contain two physician signatures on (either one or two) certifications of the medical necessity or emergency justifying the performance of this third trimester abortion. This exception should be rejected by the Board.

Exceptions to Conclusions of Law

1.   Respondent takes exception to Conclusions of Law 33-40, and 42, because, based on the foregoing Exceptions to the Findings of Fact, the termination of R.W.'s fetus did not occur in the third trimester, and therefore, there was no competent substantial evidence for the ALJ to find violations of sections 456.072(1)(k) and 458.331(1)(g), (m), and **(t)**, Florida Statutes. This exception is dependant upon the Board's acceptance of the exceptions to the findings of fact. Based upon the Petitioner's above responses, the Board should reject those eight findings of fact exceptions and then reject this exception to the nine conclusions of law paragraphs referenced above.

2.    Respondent takes exception to Conclusions of Law 33-37 and 42, because, based on the foregoing Exceptions to the Findings of Fact herein, that even assuming the termination of R.W.'s fetus occurred in the third trimester, the performance of this termination was on a nonviable fetus and was an emergency due to maternal health concerns and, therefore, the ALJ improperly found violations of sections 456.072(1)(k) and 458.331(1)(g), (m), and (t), Florida Statutes.

The Florida Statutes do not include fetal viability as one of the criteria for a third trimester abortion. This exception is a constitutional challenge to the statute which neither DOAH nor the Board has jurisdiction or authority to entertain.

Furthermore, the unproven conclusion by Respondent that this was a non-viable fetus is not established by the record. To the contrary, Petitioner's expert stated that the abdominal anomaly of this fetus was usually reparable and placing Patient R.W. in the hospital and monitoring her and the fetus should have been the appropriate process to protect them both. (Tr. pg. 120-123, 155-161)

The patient's Ob/Gyn, Dr. P.C., testified that the lack of amniotic fluid could cause fetal demise, and if that should occur and were left untreated,

could pose a health risk to the mother. However, that condition had not materialized even two weeks later at the time of the abortion. Despite concerns about the risk of pre-natal demise, the records reveal that no measures were taken by the Ob/Gyn to monitor the mother/fetus between June 22 and July 7, the abortion date. (Joint Ex. 4, pg. 101-103; Resp. Ex. 4B, pg. 19-20, 25, 50-53)  There was no signed certification by a second doctor in either the OWC or the Ob/Gyn records that Dr. P.C.'s concern caused the abortion to be necessary to safeguard the mother's life or health. This exception should be rejected by the Board.

     3.     Respondent takes exception to Conclusions of Law 33 to 37, because the ALJ found both a violation of section 456.072(1)(k) and of section 458.331(1)(g), each of which articulate violations for failing to perform a legal obligation placed upon a licensed physician, and alleging they are improperly duplicative.

     A single inappropriate act by a physician can be a violation of more than one provision of law; *Department of Health v. Jerome Waters, M.D.*, DOAH Cases 04-0400PL and 2 others, Final Order #DOH-05-1747-FOF-MQA, affirmed on appeal in *Jerome Waters, M.D. v. Department of Health*, 962 So.2d 1011 (Fla. 3rd DCA 2007), see the Board's approval of the

Petitioner's exception to paragraph 190 of the Recommended Order; and *Agency For Health Care Administration, Board Of Medicine, v. Jeffrey L. Katzell, M.D.*, 1995 WL 1052667 (Fla.Div.Admin.Hrgs.), see page 23, Rulings On Respondent's Exceptions To The Conclusions Of Law, exception number 3.

Here the Respondent's failure to perform a legal obligation violated each of the cited provisions. However, in the Amended Administrative Complaint there is only a single count encompassing the alleged violation of those two provisions. There is no substantive duplication of charges. This exception should be rejected by the Board.

4.      Respondent takes exception to Conclusions of Law 33 to 37, contending that the Department and the Board have no prosecutorial or final agency action authority over the cited provisions of Chapter 390, Florida Statutes. The ALJ found that Respondent violated sections 456.072(1)(k) and 458.331(1)(g), by failing to perform a legal obligation placed on a licensee, or a licensed physician, respectively, by performing an alleged third trimester pregnancy termination on Patient R.W. outside of a hospital, in violation of section 797.03(3), and without the certification of two physicians, as required in section 390.0111, Florida Statutes.

Petitioner asserts that Sections 456.072(1)(k) and 458.331(1)(g), Florida Statutes, are clear and unequivocal. A failure to perform <u>any</u> statutory or legal obligation placed on a licensed Florida physician is a violation of these sections, and Chapters 456 and 458, Florida Statutes, provide the Board of Medicine with disciplinary authority over the medical licensee. As a Florida physician regularly performing abortions, Dr. Pendergraft is obligated to comply with the "Termination of Pregnancy" statute (i.e., Chapter 390) and not doing so is a failure to perform a statutory or legal obligation.

AHCA's authority to enforce the provisions of chapter 390 does not encompass disciplining a licensed medical practitioner for violating a 390 subsection. It is the provisions of Chapter 456 and 458 that give exclusive disciplinary authority to the Board of Medicine, Department of Health. The Board is not dependent upon a delegation of enforcement authority by or through Chapter 390. This exception should be rejected by the Board.

5.     Respondent takes exception to Conclusions of Law 33 to 37, contending that the Department and the Board have no prosecutorial or final action authority over criminal provisions of Chapter 797, Florida Statutes, and the exercise of same fails to provide Respondent with the

constitutional protections guaranteed in criminal prosecutions. Petitioner restates and incorporates into this response the response made to the exception to conclusions of law in paragraph 4, above.

In addition, in Florida, all licensed physicians are required to perform any appropriate third trimester abortion in a hospital. Not doing so is a failure to perform a statutory or legal obligation. Section 797.03(3), Florida Statues, makes it a crime to not do so. However, the Department is not enforcing the criminal statute; it is advocating licensure discipline by the Board under its specific statutory authority to discipline a physician for failure to perform that statutory obligation. The criminal enforcement authority for this section is with the State Attorney, not the Board or Department. Furthermore, the "clear and convincing evidence" burden of proof in this <u>disciplinary case</u> (not a criminal prosecution) as has been applied by the ALJ is the proper standard and not "beyond a reasonable doubt." Nor, for the same reasons, would there be a requirement to prove intent.

That section 737.03(3) applies to all persons, not just physicians, is not relevant. While it is a crime for anyone to perform a third trimester abortion outside of a hospital, it is unquestionably a failure to perform a

statutory obligation for a physician to do so. In addition to any criminal action, the physician's license would also be subject to discipline. This exception should be rejected by the Board.

6.    Respondent takes exception to Conclusions of Law 33 to 37, contending that there is no competent, substantial evidence in the record regarding "intent", an essential element of the charged violation of section 797.03, Florida Statutes. This is not a criminal prosecution and Petitioner restates and incorporates into this response the responses made to the exceptions to conclusions of law in paragraphs 4 and 5, above. This exception should be rejected by the Board.

7.    Respondent takes exception to Conclusions of Law 37 to 39 relating to the medical records violation of section 458.331(1)(m), Florida Statutes, contending that the Department and the Board do not have authority to enforce the "certification provision of Chapter 390." The issue is not enforcing a Chapter 390 provision. Without the required written certifying documentation executed pre-procedure, the ensuing course of medical treatment; i.e., the abortion, was not justified by the medical records. That is a violation of 458.331(1)(m). This exception should be rejected by the Board.

8.     Respondent takes exception to Conclusions of Law 37 to 39, relating to the medical records violation of section 458.331(1)(m), Florida Statutes, contending that the ALJ erred in finding that Patient R.W.'s termination was in the third trimester and the "certification" requirements are imposed only on third trimester terminations. Petitioner restates and incorporates into this response the responses made to the exceptions to findings of fact in paragraphs 1-4 and 7, and conclusions of law in paragraph 7, above. This exception should be rejected by the Board.

9.     Respondent takes exception to Conclusions of Law 37 to 39, relating to the section 458.331(1)(m) violation, contending that the AHCA Surveyor found the "certification" requirements had been met, and the ALJ interpreted the requirement differently from the interpretation of AHCA, the agency charged with interpreting and enforcing the certification provisions of Chapter 390.

AHCA is not the agency responsible for disciplining physicians who have violated Chapter 456 or 458; that is in the jurisdiction of the Department of Health and the Board of Medicine. Within the OWC and Dr. P.C. medical records for Patient R.W., there is either no or insufficient documentation of two physicians having made or signed the required

written certification. The AHCA Surveyor report is not documentary evidence that would satisfy this requirement. In fact, the Surveyor report is hearsay and Respondent could have called the surveyor to testify so that she would be subject to cross examination as to which were the document(s) in the medical records upon which she relied.

In actuality, the Petitioner contends that the Surveyor misread or misconstrued the July 7, 2005, Progress Note (Joint Exhibit 1, page 54) since it neither contains two signatures nor has a legible written statement that the termination of this pregnancy was necessary to save the life or preserve the health of the pregnant women or was a medical emergency. This exception should be rejected by the Board.

10.    Respondent takes exception to Conclusions of Law 37 to 39 relating to section 458.331(1)(m) records violation, contending that the United States Supreme Court has found a substantially similar "certification" provision to be unconstitutional. The *Bolton* case cited by Respondent can be distinguished factually in that it did not specifically deal with a third trimester abortion. But more important at this juncture is that neither DOAH nor this Board has authority or jurisdiction to rule on the

constitutionality of a Florida Statute. This exception should be rejected by the Board.

11.     Respondent takes exception to Conclusions of Law 40 and 42 contending that the ALJ departed from the essential requirements of law by finding that the termination of Patient R.W.'s fetus was a third trimester termination. Respondent's exception exclusively relies upon the arguments previously made in the earlier exceptions and Petitioner also relies on its prior responses thereto. This exception should be rejected by the Board.

12.     Respondent takes exception to Conclusions of Law 40 and 42 contending that the enumerated items alleged as violations of the standard of care under section 458.331(1)(t) are all legal obligations and are not within the statutory definition of the "practice of medicine."

The ALJ found four bases for concluding that Respondent violated the standard of care. Any one of those reasons should be sufficient to sustain that conclusion. Not putting the patient into a hospital before performing a third trimester abortion and performing said abortion at the OWC facility are both directly related to proper medical treatment and are not merely documentation.

The ALJ concluded that the standard of care for performing a third trimester abortion is set forth in Sections 390.0111 and 797.03, Florida Statutes. Further, the Department medical expert stated that complying with Florida law in performing medical services is within the standard of care. Petitioner contends that maintaining records that justify the course of treatment are an integral part of the ongoing treatment of a patient as they provide a history of symptoms and prior treatment so that inappropriate treatment (such as contraindicated medications or procedures that may require pre-operative preparation) is not undertaken.

The *Barr* case cited by Respondent is distinguishable. In reaching its decision in *Barr*, the court stated, "We believe there is a significant difference between improperly diagnosing a patient... and properly diagnosing a patient, yet failing to properly document the actions taken on the patient's chart...." In this case, the Respondent's action required compliance with a *condition precedent*, i.e., the preparation of a pre-procedure, written certification signed by two physicians attesting to the medical necessity of the procedure to protect the mother's health. Proceeding with the abortion without satisfying that pre-condition was

found by the ALJ to be a below the standard of care. This exception should be rejected by the Board.

### Exceptions to Denial of Attorney's Fees

1.    Respondent takes exception to the ALJ's denial of attorney's fees and costs claiming error as a matter of law in interpreting the definition of "nonprevailng adverse party" under section 120.595(1)(e)3, Florida Statutes. Respondent relies upon and incorporates by reference his Motion before DOAH as the basis for this exception.

First, the ALJ held that the Motion for Attorney's Fees was fatally flawed by the fact that the Petitioner (the Department) is not a "nonprevailing adverse party" as required by Section 120.595(1)(e)3. Petitioner recommends that the Board accept the ALJ's decision. Secondly, for our responses on the merits, the Department also incorporates by reference its two DOAH documents filed on October 3 and 9, 2007. This exception should be rejected by the Board.

2.    Respondent takes exception to the denial of attorney's fees and costs claiming error as a matter of law by the ALJ not setting a hearing for the purposes of taking evidence to determine whether Respondent was entitled to attorney's fees and costs under section 120.595(1)(e)3, Florida

Statutes. Petitioner restates and incorporates into this response the response made in paragraph 1 of the exceptions to denial of attorney's fees, above. This exception should be rejected by the Board.

Exceptions to the Proposed Penalty

1.      Respondent take exception to the proposed Penalty contending that the Board has no penalty guidelines set forth in its rules for violations of Chapters 390 and 797, Florida Statutes, as required by section 456.079, Florida Statutes, and precedent set forth in *Arias v. Dep't of Business and Prof'l Regulation,* 710 So.2d 655, 658 (Fla. 3d DCA), cause dismissed, 718 So.2d 167 (Fla. 1998). For the same reason set forth in the Respondent's exception, specifically, the referral to Rule 64B8-8001(g), F.A.C., a guideline for an offense not specifically listed is contained therein, and this exception should be denied. Further, the ALJ sustained three counts finding that the Respondent violated four statutory provisions, yet recommended only a $10,000 fine, an amount that could have been assessed for any one of the violations. This exception should be rejected by the Board.

2.      Respondent takes exception to the proposed penalty for the assumed failure by the ALJ to consider the mitigating factors in the record. The ALJ is not obligated to delineate the factors taken into consideration in

recommending a penalty; nonetheless, the ALJ obviously did so in recommending only a $10,000 fine when $10,000 per count (for a total of $30,000) could have been recommended. Each of the other recommended penalty items is modest in severity considering that license revocation or a longer suspension and probation were within the guidelines. This exception should be rejected by the Board.

3. Respondent takes exception to the recommended penalty because it does not give him credit for the fifteen months (15) that Respondent has been suspended under the Department's Order of Emergency Suspension of August 10, 2006. Respondent then claims there is an established practice by the Board of giving credit for "time served."

The Department often recommends and the Board often agrees when considering a settlement to credit time served. However, in a Recommended Order from a DOAH formal hearing, the Board's usual practice is to initiate the recommended penalty on or after it files a Final Order. Consistent with that practice, the Board should initiate the one year suspension from the filing date of the Final Order. This exception should be rejected by the Board.

4.    Respondent takes exception to any assessment of the Department's costs under section 456.072(4), Florida Statutes. By separate pleading, the Respondent sets forth six objections to the Department's Motion to Assess Costs. The Petitioner's response to those objections is set forth in a separate responsive pleading that is incorporated herein by reference. Those Objections should be addressed and then a ruling made to this exception. This exception should be rejected by the Board.

WHEREFORE, Petitioner respectfully requests that this Honorable Board deny each of the Respondent's exceptions in this case.

Respectfully Submitted,

Irving Levine
Assistant General Counsel
DOH Prosecution Services Unit
4052 Bald Cypress Way, Bin C-65
Tallahassee, FL 32399-3265
Florida Bar # 0822957
(850) 245-4640 X8128
(850) 245-4681 FAX

## **CERTIFICATE OF SERVICE** |

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via: ☐ postage-paid U.S. Mail, ☐ Hand-Delivery, ☐ E-mail and/or ☐ Facsimile Transmission to Kenneth J. Metzger, Esq., Fowler, White, Boggs, Banker, P.A., P.O. Box 11240, Tallahassee, Florida 32302, and Kathryn Kasprzak, Esq. Fowler White Boggs Banker, P.A. 200 S. Orange Avenue, Suite 1950, Orlando, Florida 32801, this ___26 $\frac{th}{}$___ day of November, 2007.

Irving Levine
Assistant General Counsel

**STATE OF FLORIDA**
**DEPARTMENT OF HEALTH**
**BOARD OF MEDICINE**



DEPARTMENT OF HEALTH,

        Petitioner,

    v.                          DOH CASE NO. 2005-67224
                                         DOAH CASE NO. 06-4288PL

JAMES S. PENDERGRAFT, IV, M.D.

        Respondent.
_____/

## MOTION TO ASSESS COSTS
## IN ACCORDANCE WITH SECTION 456.072(4)

COMES NOW the Department of Health, by and through undersigned counsel, and moves the Board of Medicine for the entry of a Final Order assessing costs against the Respondent for the investigation and prosecution of this case in accordance with Section 456.072(4), Florida Statutes (2005). As grounds therefore, the Petitioner states the following:

1.    At its next regularly scheduled meeting, the Board of Medicine will take up for consideration the above-styled disciplinary action and will enter a Final Order therein.

2.    Section 456.072(4), Florida Statutes (2005), states as follows:

> In addition to any other discipline imposed through final order, or citation, entered on or after July 1, 2001, pursuant to this section or discipline imposed through

P.01        17:91   L00Z 6 ^oN

final order, or citation, entered on or after July 1, 2001, for a violation of any practice act, the board, or the department when there is not board, shall assess costs related to the investigation and prosecution of the case. Such costs related to the investigation and prosecution include, but are not limited to, salaries and benefits of personnel, costs related to the time spent by the attorney and other personnel working on the case, and any other expenses incurred by the department for the case. The board, or the department when there is no board, shall determine the amount of costs to be assessed after its consideration of an affidavit of itemized costs and any written objections thereto. . . .

3.    The investigation and prosecution of this case has resulted in costs in the total amount of $81,123.41, based on the following itemized statement of costs:

      a.  Total costs for Complaints $29.91
      b.  Total costs for Investigations $3,372.39
      c.  Total costs for Legal $64,455.15
      d.  Total expenses $13,265.96

The Petitioner seeks an assessment of costs against the Respondent in the amount of $81,123.41, as evidenced in the attached affidavit. (Exhibit A).

4.    Should the Respondent file written objections to the assessment of costs, within ten (10) days of the date of this motion, specifying the grounds for the objections and the specific elements of the costs to which the objections are made, the Petitioner requests that the Board determine the amount of costs to be assessed based upon its

2

Nov  6 2007 16:17

consideration of the affidavit attached as Exhibit A and any timely-filed written objections.

    5.    Petitioner requests that the Board grant this motion and assess costs in the amount of $81,123.41 as supported by competent, substantial evidence. This assessment of costs is in addition to any other discipline imposed by the Board and is in accordance with Section 456.072(4), Florida Statutes (2005).

    WHEREFORE, the Department of Health requests that the Board of Osteopathic Medicine enter a Final Order assessing costs against the Respondent in the amount of $81,123.41.

    DATED this ___1st___ day of ___November___, 2007.

              Respectfully submitted,

              Irving Levine
              Assistant General Counsel
              DOH Prosecution Services Unit
              4052 Bald Cypress Way, Bin C-65
              Tallahassee, FL 32399-3265
              Florida Bar # 0233285
              (850) 245-4640  Business
              (850) 245-4680  Facsimile

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via: ☒ postage-paid U.S. Mail, ☐ Hand-Delivery, ☐ E-mail and/or ☐ Facsimile Transmission to Kenneth J. Metzger, Esq. at Fowler, White, Boggs, Banker, P.A., P.O. Box 11240, Tallahassee, Florida 32302, and Kathryn Kasprzak, Esq. at Fowler, White, Boggs, Banker, P.A., 200 S. Orange Avenue, Suite 1950, Orlando, Florida 32801, this _1ˢᵗ_ day of November, 2007.

Irving Levine
Assistant General Counsel

4

2029

## AFFIDAVIT OF FEES AND COSTS EXPENDED

STATE OF FLORIDA
COUNTY OF LEON:

**BEFORE ME**, the undersigned authority, personally appeared **JAMES R. COOKSEY**, who was sworn and states as follows:

1) My name is James R. Cooksey.

2) I am over the age of 18, competent to testify, and make this affidavit upon my own personal knowledge and after review of the records at the Florida Department of Health (DOH).

3) I am an Operations Management Consultant for the Consumer Services Unit for DOH. The Consumer Services Unit is where all complaints against Florida health care licensees (e.g., medical doctors, dentists, nurses, respiratory therapists) are officially filed. I have been in my current job position for more than one year. My business address is 4052 Bald Cypress Way, Bin C-75, Tallahassee, Florida 32399-3275.

4) As an Operations Management Consultant, my job duties include reviewing data in the Time Tracking System and verifying that the amounts correspond. The Time Tracking System is a computer program which records and tracks DOH's costs regarding the investigation and prosecution of cases against Florida health care licensees.

5) As of today, DOH's total costs for investigating and prosecuting DOH case number 2005-67224 (Department of Health v. James Scott Pendergraft, IV, M.D.) are eighty-one thousand one hundred and twenty-three dollars and forty-one cents ($81,123.41).

6) The costs for DOH case number 2005-67224 (Department of Health v. James Scott Pendergraft, IV, M.D.) are summarized in Exhibit 1 (Cost Summary Report), which is attached to this document.

7) The itemized costs and expenses for DOH case number 2005-67224 (Department of Health v. James Scott Pendergraft, IV, M.D.) are detailed in Exhibit 2 (Itemized Cost Report and Itemized Expense Report and receipts), which is attached to this document.

8) The itemized costs as reflected in Exhibit 2 are determined by the following method: DOH employees who work on cases daily are to keep track of their time in six-minute increments (e.g., investigators

1 of 2



EXHIBIT
A

and lawyers). A designated DOH employee in the Consumer Services Unit, Legal Department, and in each area office, inputs the time worked and expenses spent into the Time Tracking System. Time and expenses are charged against a state health care Board (e.g., Florida Board of Medicine, Florida Board of Dentistry, Florida Board of Osteopathic Medicine), and/or a case. If no Board or case can be charged, then the time and expenses are charged as administrative time. The hourly rate of each employee is calculated by formulas established by the Department. (See the Itemized Cost Report)

9) James R. Cooksey, first being duly sworn, states that he has read the foregoing Affidavit and its attachments and the statements contained therein are true and correct to the best of his knowledge and belief.

FURTHER AFFIANT SAYETH NOT.

James R. Cooksey, Affiant

State of Florida
County of Leon

Sworn to and subscribed before me this 31ˢᵗ day of October, 2007, by James R. Cooksey, who is personally known to me.

Notary Signature

Denise Ritzel
Name of Notary Printed

Stamp Commissioned Name of Notary Public:



DENISE RITZEL
MY COMMISSION # DD 461131
EXPIRES: August 11, 2009
Bonded Thru Notary Public Underwriters

**2031** p.0

Nov 6 2007 16:18

Page 1 of

# Complaint Cost Summary
## Complaint Number: 200567224

**Complainant's Name:** DOH/AREA 7

**Subject's Name:** PENDERGRAFT, JAMES SCOTT IV

|  | ***** Cost to Date ***** | |
|---|---|---|
|  | Hours | Costs |
| Complaint: | 0.60 | $29.91 |
| Investigation: | 52.90 | $3,372.39 |
| Legal: | 486.55 | $64,455.15 |
| Compliance: | 0.00 | $0.00 |
|  | ********* | ********* |
| Sub Total: | 540.05 | $67,857.45 |
| Expenses to Date: |  | $13,265.96 |
| Prior Amount: |  | $0.00 |
| Total Costs to Date: |  | $81,123.41 |

**2033** P.4 8:16:1 2007 9 Nov



the road to quality health care
**MQA**
begins here

Report Date: 10/31/2007

*** **C O N F I D E N T I A L** ***

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint 200567224

Page 1 of 18

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| **CONSUMER SERVICES UNIT** | | | | | | |
| HA31 | 0.50 | $50.13 | $25.07 | 10/24/2005 | 78 | INITIAL REVIEW AND ANALYSIS OF COMPLAINT |
| HA38 | 0.10 | $48.39 | $4.84 | 01/24/2007 | 35 | TELEPHONE CALLS |
| Sub Total | 0.60 | | $29.91 | | | |
| **INVESTIGATIVE SERVICES UNIT** | | | | | | |
| OI69 | 1.00 | $61.06 | $61.06 | 12/02/2005 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.50 | $61.06 | $30.53 | 12/06/2005 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 1.00 | $61.06 | $61.06 | 12/20/2005 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.20 | $61.06 | $12.21 | 01/04/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.20 | $61.06 | $12.21 | 01/05/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.70 | $61.06 | $42.74 | 01/06/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.50 | $61.06 | $30.53 | 01/09/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.20 | $61.06 | $12.21 | 01/10/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.50 | $61.06 | $30.53 | 01/17/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.50 | $61.06 | $30.53 | 02/16/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.20 | $61.06 | $12.21 | 02/17/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.30 | $61.06 | $18.32 | 02/28/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.30 | $61.06 | $18.32 | 03/02/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.50 | $61.06 | $30.53 | 03/03/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.20 | $61.06 | $12.21 | 03/10/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.30 | $61.06 | $18.32 | 03/23/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.70 | $61.06 | $42.74 | 03/23/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 1.00 | $61.06 | $61.06 | 04/03/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.20 | $61.06 | $12.21 | 04/07/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.60 | $61.06 | $36.64 | 04/21/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.20 | $61.06 | $12.21 | 04/21/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.30 | $61.06 | $18.32 | 04/24/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| OI69 | 0.30 | $61.06 | $18.32 | 04/25/2006 | 4 | ROUTINE INVESTIGATIVE WORK |

2034

MQA

*begins here*

the road to quality health care.

*** CONFIDENTIAL ***

Time Tracking System
Itemized Cost by Complaint

Complaint 200567224

Report Date: 10/31/2007

Page 2 of 18

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| O169 | 0.50 | $61.06 | $30.53 | 04/27/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| O169 | 1.00 | $61.06 | $61.06 | 06/22/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| O169 | 1.00 | $61.06 | $61.06 | 06/22/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| O169 | 1.50 | $61.06 | $91.59 | 06/22/2006 | 76 | REPORT PREPARATION |
| O169 | 1.00 | $61.06 | $61.06 | 07/25/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| O169 | 0.20 | $61.06 | $12.21 | 07/27/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| O169 | 0.50 | $61.06 | $30.53 | 07/28/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| O198 | 1.50 | $53.05 | $79.58 | 08/11/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| O1101 | 3.00 | $57.65 | $172.95 | 08/11/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| L177 | 1.00 | $70.83 | $70.83 | 08/14/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| G125 | 1.00 | $62.14 | $62.14 | 08/15/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| G125 | 0.50 | $62.14 | $31.07 | 08/15/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| L177 | 1.00 | $70.83 | $70.83 | 08/15/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| G125 | 2.00 | $62.14 | $124.28 | 08/16/2006 | 58 | TRAVEL TIME |
| G125 | 7.00 | $62.14 | $434.98 | 08/16/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| L177 | 5.50 | $70.83 | $389.57 | 08/16/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| L177 | 0.50 | $70.83 | $35.42 | 08/16/2006 | 58 | TRAVEL TIME |
| O169 | 0.50 | $61.06 | $30.53 | 08/17/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| O169 | 0.50 | $61.06 | $30.53 | 08/22/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| L177 | 3.50 | $70.83 | $247.91 | 08/22/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| L177 | 0.50 | $70.83 | $35.42 | 08/22/2006 | 58 | TRAVEL TIME |
| L161 | 1.00 | $67.46 | $67.46 | 08/23/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| L161 | 0.50 | $67.46 | $33.73 | 08/24/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| O169 | 1.00 | $61.06 | $61.06 | 08/24/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| L161 | 2.00 | $67.46 | $134.92 | 08/25/2006 | 4 | ROUTINE INVESTIGATIVE WORK |
| O169 | 1.50 | $61.06 | $91.59 | 08/25/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| O169 | 0.50 | $61.06 | $30.53 | 08/25/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| O169 | 0.80 | $61.06 | $48.85 | 12/11/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| O169 | 1.50 | $70.10 | $105.15 | 05/29/2007 | 44 | DEPOSITIONS |
| Sub Total | 52.90 | | $3,372.39 | | | |

**2035** P.



MQA
the road to quality health care
by plus here

Report Date: 10/31/2007

*** C O N F I D E N T I A L ***

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint  200567224

Page 3 of 18

09  16:19  2007  6  Nov

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| **PROSECUTION SERVICES UNIT** | | | | | | |
| HL96A | 1.00 | $145.56 | $145.56 | 01/01/1900 | 46 | LEGAL RESEARCH |
| HLL24B | 1.50 | $127.93 | $191.90 | 06/30/2006 | 25 | REVIEW CASE FILE |
| HLL24B | 0.50 | $127.93 | $63.97 | 06/30/2006 | 46 | LEGAL RESEARCH |
| HLL24B | 0.30 | $127.93 | $38.38 | 07/05/2006 | 25 | REVIEW CASE FILE |
| HLL24B | 0.30 | $127.93 | $38.38 | 07/05/2006 | 26 | PREPARE OR REVISE MEMORANDUM |
| HLL24B | 0.10 | $127.93 | $12.79 | 07/05/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 0.20 | $136.37 | $27.27 | 07/10/2006 | 35 | TELEPHONE CALLS |
| HLL10A | 0.40 | $136.37 | $54.55 | 07/10/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL24B | 0.70 | $127.93 | $89.55 | 07/10/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 0.20 | $136.37 | $27.27 | 07/11/2006 | 35 | TELEPHONE CALLS |
| HLL10A | 0.20 | $136.37 | $27.27 | 07/11/2006 | 37 | REVIEW LETTER |
| HLL10A | 0.40 | $136.37 | $54.55 | 07/13/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL24B | 0.20 | $127.93 | $25.59 | 07/19/2006 | 37 | REVIEW LETTER |
| HLL24B | 0.30 | $127.93 | $38.38 | 07/19/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 0.50 | $136.37 | $68.19 | 07/24/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL24B | 1.00 | $127.93 | $127.93 | 07/24/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 0.20 | $136.37 | $27.27 | 07/25/2006 | 35 | TELEPHONE CALLS |
| HLL10A | 0.20 | $136.37 | $27.27 | 07/25/2006 | 6 | SUPPLEMENTAL INVESTIGATION |
| HLL24B | 0.30 | $127.93 | $38.38 | 07/31/2006 | 25 | REVIEW CASE FILE |
| HLL24B | 0.50 | $127.93 | $63.97 | 07/31/2006 | 115 | CONTACT WITH INVESTIGATORS |
| HLL24B | 0.20 | $127.93 | $25.59 | 07/31/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL24B | 0.10 | $127.93 | $12.79 | 07/31/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL24B | 0.40 | $127.93 | $51.17 | 07/31/2006 | 81 | ESO/ERO |
| HLL24B | 0.20 | $127.93 | $25.59 | 07/31/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL24B | 0.50 | $127.93 | $63.97 | 07/31/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 2.10 | $136.37 | $286.38 | 08/01/2006 | 81 | ESO/ERO |
| HLL10A | 0.60 | $136.37 | $81.82 | 08/01/2006 | 46 | LEGAL RESEARCH |
| HLL10A | 0.50 | $136.37 | $68.19 | 08/02/2006 | 81 | ESO/ERO |
| HLL10A | 0.20 | $136.37 | $27.27 | 08/02/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.20 | $136.37 | $27.27 | 08/02/2006 | 35 | TELEPHONE CALLS |
| HLL24B | 0.20 | $127.93 | $25.59 | 08/02/2006 | 25 | REVIEW CASE FILE |



**2036**

**P. 19 16:19 2007 6 Nov**

Report Date: 10/31/2007

\*\*\* C O N F I D E N T I A L \*\*\*

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint 200567224

Page 4 of 18

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL24B | 0.30 | $127.93 | $38.38 | 08/02/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL24B | 0.60 | $127.93 | $76.76 | 08/02/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 0.90 | $136.37 | $122.73 | 08/03/2006 | 81 | ESO/ERO |
| HLL24B | 0.70 | $127.93 | $89.55 | 08/03/2006 | 81 | ESO/ERO |
| HLL24B | 0.70 | $127.93 | $89.55 | 08/03/2006 | 81 | ESO/ERO |
| HLL20B | 0.30 | $128.63 | $38.59 | 08/04/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 0.70 | $136.37 | $95.46 | 08/04/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 1.30 | $136.37 | $177.28 | 08/04/2006 | 81 | ESO/ERO |
| HLL24B | 1.20 | $127.93 | $153.52 | 08/04/2006 | 81 | ESO/ERO |
| HLL20B | 1.25 | $128.63 | $160.79 | 08/04/2006 | 46 | LEGAL RESEARCH |
| HLL20B | 0.30 | $128.63 | $38.59 | 08/04/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 0.50 | $136.37 | $68.19 | 08/10/2006 | 81 | ESO/ERO |
| HLL10A | 0.30 | $136.37 | $40.91 | 08/10/2006 | 35 | TELEPHONE CALLS |
| HLL10A | 0.20 | $136.37 | $27.27 | 08/14/2006 | 35 | TELEPHONE CALLS |
| HLL10A | 0.20 | $136.37 | $27.27 | 08/14/2006 | 28 | PREPARE OR REVISE ADMINISTRATIVE COMPLAINT |
| HLL10A | 1.20 | $136.37 | $163.64 | 08/15/2006 | 28 | PREPARE OR REVISE ADMINISTRATIVE COMPLAINT |
| HLL10A | 0.20 | $136.37 | $27.27 | 08/15/2006 | 37 | REVIEW LETTER |
| HLL10A | 0.80 | $136.37 | $109.10 | 08/17/2006 | 28 | PREPARE OR REVISE ADMINISTRATIVE COMPLAINT |
| HLL10A | 0.60 | $136.37 | $81.82 | 08/18/2006 | 28 | PREPARE OR REVISE ADMINISTRATIVE COMPLAINT |
| HLL24B | 0.50 | $127.93 | $63.97 | 08/22/2006 | 46 | LEGAL RESEARCH |
| HLL24B | 1.00 | $127.93 | $127.93 | 08/22/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL24B | 1.00 | $127.93 | $127.93 | 08/23/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL24B | 0.50 | $127.93 | $63.97 | 08/23/2006 | 35 | TELEPHONE CALLS |
| HLL24B | 0.30 | $127.93 | $38.38 | 08/23/2006 | 46 | LEGAL RESEARCH |
| HLL24B | 0.30 | $127.93 | $38.38 | 08/23/2006 | 25 | REVIEW CASE FILE |
| HLL20B | 0.60 | $128.63 | $77.18 | 08/23/2006 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL20B | 0.75 | $128.63 | $96.47 | 08/23/2006 | 46 | LEGAL RESEARCH |
| HLL20B | 0.90 | $128.63 | $115.77 | 08/23/2006 | 67 | STAFF MEETINGS |
| HLL24B | 1.00 | $127.93 | $127.93 | 08/24/2006 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL24B | 0.70 | $127.93 | $89.55 | 08/24/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL20B | 0.50 | $128.63 | $64.32 | 08/24/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL20B | 0.50 | $128.63 | $64.32 | 08/24/2006 | 35 | TELEPHONE CALLS |
| HLL20B | 0.15 | $128.63 | $19.29 | 08/24/2006 | 70 | CONFERENCES WITH LAWYERS |

**2037**
P. 1
19:19 2007 6 Nov

MQA
the road to quality health care
begins here

Report Date: 10/31/2007

\*\*\* C O N F I D E N T I A L \*\*\*

Time Tracking System
Itemized Cost by Complaint

Complaint · 200567224

Page 5 of 18

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL20B | 0.15 | $128.63 | $19.29 | 08/24/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL20B | 0.10 | $128.63 | $12.86 | 08/24/2006 | 35 | TELEPHONE CALLS |
| HLL20B | 3.20 | $128.63 | $411.62 | 08/24/2006 | 46 | LEGAL RESEARCH |
| HLL33B | 2.50 | $123.94 | $309.85 | 08/24/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL33B | 2.20 | $123.94 | $272.67 | 08/24/2006 | 54 | PREPARE OR REVISE BRIEF |
| HLL10A | 0.20 | $136.37 | $27.27 | 08/24/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 2.40 | $136.37 | $327.29 | 08/25/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL24B | 0.60 | $127.93 | $76.76 | 08/25/2006 | 115 | CONTACT WITH INVESTIGATORS |
| HLL24B | 0.50 | $127.93 | $63.97 | 08/25/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL20B | 4.50 | $128.63 | $578.84 | 08/25/2006 | 54 | PREPARE OR REVISE BRIEF |
| HLL33B | 1.70 | $123.94 | $210.70 | 08/25/2006 | 54 | PREPARE OR REVISE BRIEF |
| HLL33B | 1.15 | $123.94 | $142.53 | 08/25/2006 | 54 | PREPARE OR REVISE BRIEF |
| HLL20B | 4.50 | $128.63 | $578.84 | 08/26/2006 | 54 | PREPARE OR REVISE BRIEF |
| HLL20B | 5.00 | $128.63 | $643.15 | 08/27/2006 | 54 | PREPARE OR REVISE BRIEF |
| HLL10A | 0.50 | $136.37 | $68.19 | 08/28/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL24B | 0.40 | $127.93 | $51.17 | 08/28/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL24B | 0.50 | $127.93 | $63.97 | 08/28/2006 | 41 | REVIEW PLEADING |
| HLL20B | 5.00 | $128.63 | $643.15 | 08/28/2006 | 54 | PREPARE OR REVISE BRIEF |
| HLL33B | 1.45 | $123.94 | $179.71 | 08/28/2006 | 55 | REVIEW OF BRIEF |
| HLL33B | 0.50 | $123.94 | $61.97 | 08/28/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL33B | 2.10 | $123.94 | $260.27 | 08/28/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL33B | 0.20 | $123.94 | $24.79 | 08/29/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL24B | 0.40 | $127.93 | $51.17 | 08/29/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL24B | 0.40 | $127.93 | $51.17 | 08/29/2006 | 41 | REVIEW PLEADING |
| HLL20B | 0.25 | $128.63 | $32.16 | 08/29/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL20B | 1.50 | $128.63 | $192.95 | 08/29/2006 | 54 | PREPARE OR REVISE BRIEF |
| HLL20B | 0.25 | $128.63 | $32.16 | 08/29/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL20B | 0.50 | $128.63 | $64.32 | 08/29/2006 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL20B | 0.10 | $128.63 | $12.86 | 08/29/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL24B | 0.20 | $127.93 | $25.59 | 08/31/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 0.20 | $136.37 | $27.27 | 08/31/2006 | 90 | POST PROBABLE CAUSE PROCESSING |
| HLL24B | 0.30 | $127.93 | $38.38 | 09/07/2006 | 37 | REVIEW LETTER |
| HLL10A | 0.40 | $136.37 | $54.55 | 09/19/2006 | 35 | TELEPHONE CALLS |

**2038**

P. 1-

6 19 2007 6 Nov

the road to quality health care

**MQA**

begins here

Report Date: 10/31/2007

*** **C O N F I D E N T I A L** ***

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint 200567224

Page 6 of 18

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL33B | 0.25 | $123.94 | $30.99 | 09/20/2006 | 41 | REVIEW PLEADING |
| HLL20B | 0.50 | $128.63 | $64.32 | 09/20/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 0.50 | $136.37 | $68.19 | 09/25/2006 | 41 | REVIEW PLEADING |
| HLL10A | 0.40 | $136.37 | $54.55 | 09/25/2006 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.40 | $136.37 | $54.55 | 09/25/2006 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL20B | 0.50 | $128.63 | $64.32 | 09/25/2006 | 25 | REVIEW CASE FILE |
| HLL10A | 0.20 | $136.37 | $27.27 | 09/26/2006 | 47 | TRIAL PREPARATION |
| HLL10A | 1.10 | $136.37 | $150.01 | 09/26/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HL72B | 2.00 | $67.71 | $135.42 | 09/26/2006 | 25 | REVIEW CASE FILE |
| HL72B | 1.40 | $67.71 | $94.79 | 09/26/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.30 | $136.37 | $40.91 | 09/27/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.40 | $136.37 | $54.55 | 09/28/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.30 | $136.37 | $40.91 | 10/10/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.30 | $136.37 | $40.91 | 10/11/2006 | 35 | TELEPHONE CALLS |
| HLL10A | 0.40 | $136.37 | $54.55 | 10/13/2006 | 99 | PREPARATION AND FOLLOW THROUGH OF CASES FOR EXPERT REVIEW |
| HLL10A | 0.20 | $136.37 | $27.27 | 10/13/2006 | 35 | TELEPHONE CALLS |
| HLL10A | 0.30 | $136.37 | $40.91 | 10/16/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.20 | $136.37 | $27.27 | 11/01/2006 | 35 | TELEPHONE CALLS |
| HLL10A | 0.30 | $136.37 | $40.91 | 11/01/2006 | 47 | TRIAL PREPARATION |
| HLL10A | 0.40 | $136.37 | $54.55 | 11/02/2006 | 47 | TRIAL PREPARATION |
| HLL10A | 0.50 | $136.37 | $68.19 | 11/03/2006 | 47 | TRIAL PREPARATION |
| HLL10A | 0.20 | $136.37 | $27.27 | 11/03/2006 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.20 | $136.37 | $27.27 | 11/06/2006 | 47 | TRIAL PREPARATION |
| HLL10A | 0.20 | $136.37 | $27.27 | 11/07/2006 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 1.60 | $136.37 | $218.19 | 11/13/2006 | 47 | TRIAL PREPARATION |
| HLL10A | 0.20 | $136.37 | $27.27 | 11/14/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.20 | $136.37 | $27.27 | 11/14/2006 | 35 | TELEPHONE CALLS |
| HLL10A | 0.20 | $136.37 | $27.27 | 11/15/2006 | 35 | TELEPHONE CALLS |
| HLL10A | 1.80 | $136.37 | $245.47 | 11/16/2006 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 0.40 | $136.37 | $54.55 | 11/16/2006 | 41 | REVIEW PLEADING |
| HLL10A | 0.30 | $136.37 | $40.91 | 11/17/2006 | 47 | TRIAL PREPARATION |
| HLL10A | 0.20 | $136.37 | $27.27 | 11/20/2006 | 47 | TRIAL PREPARATION |
| HLL10A | 0.40 | $136.37 | $54.55 | 11/20/2006 | 35 | TELEPHONE CALLS |



2039

P.

16:19

2007

6

Nov

*** CONFIDENTIAL ***

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint  200567224

Report Date: 10/31/2007

Page 7 of 18

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL10A | 0.20 | $136.37 | $27.27 | 11/20/2006 | 47 | TRIAL PREPARATION |
| HLL10A | 0.40 | $136.37 | $54.55 | 11/20/2006 | 35 | TELEPHONE CALLS |
| HLL10A | 0.60 | $136.37 | $81.82 | 11/21/2006 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 0.20 | $136.37 | $27.27 | 11/21/2006 | 47 | TRIAL PREPARATION |
| HLL10A | 0.30 | $136.37 | $40.91 | 11/28/2006 | 35 | TELEPHONE CALLS |
| HLL10A | 1.20 | $136.37 | $163.64 | 11/28/2006 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 1.00 | $136.37 | $136.37 | 11/29/2006 | 39 | PREPARE/RESPOND TO DISCOVERY |
| HLL10A | 0.20 | $136.37 | $27.27 | 11/29/2006 | 47 | TRIAL PREPARATION |
| HLL10A | 0.20 | $136.37 | $27.27 | 12/05/2006 | 37 | REVIEW LETTER |
| HLL10A | 0.20 | $136.37 | $27.27 | 12/05/2006 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 0.40 | $136.37 | $54.55 | 12/06/2006 | 35 | TELEPHONE CALLS |
| HLL10A | 0.30 | $136.37 | $40.91 | 12/07/2006 | 47 | TRIAL PREPARATION |
| HLL10A | 0.30 | $136.37 | $40.91 | 12/08/2006 | 39 | PREPARE/RESPOND TO DISCOVERY |
| HLL10A | 0.30 | $136.37 | $40.91 | 12/11/2006 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.20 | $136.37 | $27.27 | 12/11/2006 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 0.30 | $136.37 | $40.91 | 12/12/2006 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.50 | $136.37 | $68.19 | 12/12/2006 | 47 | TRIAL PREPARATION |
| HLL10A | 0.30 | $136.37 | $40.91 | 12/12/2006 | 35 | TELEPHONE CALLS |
| HLL33B | 0.10 | $123.94 | $12.39 | 12/14/2006 | 88 | PROOFING AND SIGNING LETTERS |
| HLL20B | 0.10 | $128.63 | $12.86 | 12/14/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL20B | 0.10 | $128.63 | $12.86 | 12/14/2006 | 35 | TELEPHONE CALLS |
| HLL20B | 0.10 | $128.63 | $12.86 | 12/14/2006 | 70 | CONFERENCES WITH LAWYERS |
| HLL20B | 0.10 | $128.63 | $12.86 | 12/14/2006 | 67 | STAFF MEETINGS |
| HLL10A | 1.00 | $136.37 | $136.37 | 12/16/2006 | 47 | TRIAL PREPARATION |
| HLL10A | 0.20 | $136.37 | $27.27 | 12/16/2006 | 35 | TELEPHONE CALLS |
| HLL10A | 0.30 | $136.37 | $40.91 | 01/02/2007 | 6 | SUPPLEMENTAL INVESTIGATION |
| HLL10A | 0.20 | $136.37 | $27.27 | 01/02/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.40 | $136.37 | $54.55 | 01/03/2007 | 38 | REVIEW DISCOVERY REQUESTS/RESPONSES |
| HLL10A | 0.20 | $136.37 | $27.27 | 01/03/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.60 | $136.37 | $81.82 | 01/04/2007 | 99 | PREPARATION AND FOLLOW THROUGH OF CASES FOR EXPERT REVIEW |
| HLL10A | 0.40 | $136.37 | $54.55 | 01/04/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.40 | $136.37 | $54.55 | 01/05/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.30 | $136.37 | $40.91 | 01/05/2007 | 47 | TRIAL PREPARATION |



**2040** P.

16:20 2007 6 Nov

*** CONFIDENTIAL ***

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint  200567224

Report Date: 10/31/2007

Page 8 of 18

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL10A | 0.30 | $136.37 | $40.91 | 01/08/2007 | 37 | REVIEW LETTER |
| HLL10A | 0.30 | $136.37 | $40.91 | 01/08/2007 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 0.80 | $136.37 | $109.10 | 01/09/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.20 | $136.37 | $27.27 | 01/09/2007 | 41 | REVIEW PLEADING |
| HLL10A | 0.40 | $136.37 | $54.55 | 01/10/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.20 | $136.37 | $27.27 | 01/10/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.70 | $136.37 | $95.46 | 01/11/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.40 | $136.37 | $54.55 | 01/11/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.40 | $136.37 | $54.55 | 01/12/2007 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 0.70 | $136.37 | $95.46 | 01/12/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.30 | $136.37 | $40.91 | 01/16/2007 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 0.20 | $136.37 | $27.27 | 01/16/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.50 | $136.37 | $68.19 | 01/17/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.20 | $136.37 | $27.27 | 01/17/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.40 | $136.37 | $54.55 | 01/18/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.40 | $136.37 | $54.55 | 01/18/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 0.20 | $136.37 | $27.27 | 01/19/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.20 | $136.37 | $27.27 | 01/19/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.30 | $136.37 | $40.91 | 01/19/2007 | 102 | REVIEW EXPERT WITNESS REPORT |
| HLL10A | 0.40 | $136.37 | $54.55 | 01/19/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 1.20 | $136.37 | $163.64 | 01/22/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 0.20 | $136.37 | $27.27 | 01/22/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.80 | $136.37 | $109.10 | 01/23/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.30 | $136.37 | $40.91 | 01/23/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 0.40 | $136.37 | $54.55 | 01/25/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 0.20 | $136.37 | $27.27 | 01/25/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.50 | $136.37 | $68.19 | 01/26/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 0.50 | $136.37 | $68.19 | 01/26/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 1.50 | $136.37 | $204.56 | 01/29/2007 | 58 | TRAVEL TIME |
| HLL10A | 0.70 | $136.37 | $95.46 | 01/30/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 3.30 | $136.37 | $450.02 | 01/30/2007 | 44 | DEPOSITIONS |
| HLL10A | 3.20 | $136.37 | $436.38 | 01/31/2007 | 44 | DEPOSITIONS |
| HLL10A | 0.80 | $136.37 | $109.10 | 01/31/2007 | 43 | PREPARE FOR DEPOSITION |

2041 p.11   16:20   2007   6   Nov



the road to quality health care
# MQA
begins here

**\*\*\* C O N F I D E N T I A L \*\*\***

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint   200567224

Report Date: 10/31/2007

Page 9 of 18

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL10A | 1.50 | $136.37 | $204.56 | 02/01/2007 | 58 | TRAVEL TIME |
| HLL10A | 2.50 | $136.37 | $340.93 | 02/01/2007 | 44 | DEPOSITIONS |
| HLL10A | 2.00 | $136.37 | $272.74 | 02/02/2007 | 58 | TRAVEL TIME |
| HLL10A | 0.50 | $136.37 | $68.19 | 02/12/2007 | 58 | TRAVEL TIME |
| HLL10A | 3.50 | $136.37 | $477.30 | 02/12/2007 | 44 | DEPOSITIONS |
| HLL10A | 3.20 | $136.37 | $436.38 | 02/13/2007 | 58 | TRAVEL TIME |
| HLL10A | 0.30 | $136.37 | $40.91 | 02/14/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL10A | 0.20 | $136.37 | $27.27 | 02/14/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.40 | $136.37 | $54.55 | 02/16/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL10A | 0.20 | $136.37 | $27.27 | 02/16/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.30 | $136.37 | $40.91 | 02/20/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.20 | $136.37 | $27.27 | 02/20/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 0.60 | $136.37 | $81.82 | 02/21/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL10A | 0.30 | $136.37 | $40.91 | 02/21/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.70 | $136.37 | $95.46 | 02/23/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.20 | $136.37 | $27.27 | 02/23/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL10A | 0.20 | $136.37 | $27.27 | 02/26/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 1.10 | $136.37 | $150.01 | 02/27/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 2.00 | $136.37 | $272.74 | 02/28/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.20 | $136.37 | $27.27 | 02/28/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 1.10 | $136.37 | $150.01 | 03/01/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.20 | $136.37 | $27.27 | 03/01/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL10A | 0.40 | $136.37 | $54.55 | 03/02/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.30 | $136.37 | $40.91 | 03/06/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.20 | $136.37 | $27.27 | 03/13/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.80 | $136.37 | $109.10 | 03/13/2007 | 26 | PREPARE OR REVISE MEMORANDUM |
| HLL10A | 0.20 | $136.37 | $27.27 | 03/14/2007 | 26 | PREPARE OR REVISE MEMORANDUM |
| HLL10A | 1.10 | $136.37 | $150.01 | 03/14/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL10A | 0.30 | $136.37 | $40.91 | 03/15/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |
| HLL10A | 0.20 | $136.37 | $27.27 | 03/15/2007 | 47 | TRIAL PREPARATION |
| HL96A | 0.20 | $145.56 | $29.11 | 03/15/2007 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 0.40 | $136.37 | $54.55 | 03/16/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.30 | $136.37 | $40.91 | 03/16/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF |

2042
P. 1

the road to quality health care
MQA
begins here

Report Date: 10/31/2007

***CONFIDENTIAL***

Time Tracking System
Itemized Cost by Complaint

Complaint  200567224

Page 10 of 18

Nov 6 2007 16:20

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL10A | 0.20 | $136.37 | $27.27 | 03/20/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.30 | $136.37 | $40.91 | 03/20/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HL96A | 0.20 | $145.56 | $29.11 | 03/20/2007 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 0.20 | $136.37 | $27.27 | 03/21/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.10 | $136.37 | $13.64 | 03/21/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 0.50 | $136.37 | $68.19 | 03/22/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 0.50 | $136.37 | $68.19 | 03/22/2007 | 47 | TRIAL PREPARATION |
| HL96A | 0.20 | $145.56 | $29.11 | 03/26/2007 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 0.40 | $136.37 | $54.55 | 03/26/2007 | 37 | REVIEW LETTER |
| HLL10A | 1.20 | $136.37 | $163.64 | 03/26/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 3.00 | $136.37 | $409.11 | 04/03/2007 | 58 | TRAVEL TIME |
| HLL10A | 1.50 | $136.37 | $204.56 | 04/04/2007 | 44 | DEPOSITIONS |
| HLL10A | 3.00 | $136.37 | $409.11 | 04/04/2007 | 58 | TRAVEL TIME |
| HLL10A | 0.50 | $136.37 | $68.19 | 04/09/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 1.80 | $136.37 | $245.47 | 04/09/2007 | 26 | PREPARE OR REVISE MEMORANDUM |
| HLL10A | 0.20 | $136.37 | $27.27 | 04/10/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.80 | $136.37 | $109.10 | 04/10/2007 | 26 | PREPARE OR REVISE MEMORANDUM |
| HL96A | 0.30 | $145.56 | $43.67 | 04/10/2007 | 70 | CONFERENCES WITH LAWYERS |
| HL58B | 0.50 | $141.12 | $70.56 | 04/11/2007 | 70 | CONFERENCES WITH LAWYERS |
| HL58B | 0.60 | $141.12 | $84.67 | 04/11/2007 | 37 | REVIEW LETTER |
| HLL10A | 1.30 | $136.37 | $177.28 | 04/11/2007 | 26 | PREPARE OR REVISE MEMORANDUM |
| HLL10A | 1.40 | $136.37 | $190.92 | 04/11/2007 | 46 | LEGAL RESEARCH |
| HL96A | 1.50 | $145.56 | $218.34 | 04/11/2007 | 25 | REVIEW CASE FILE |
| HL96A | 1.40 | $145.56 | $203.78 | 04/11/2007 | 25 | REVIEW CASE FILE |
| HL96A | 0.30 | $145.56 | $43.67 | 04/11/2007 | 70 | CONFERENCES WITH LAWYERS |
| HL96A | 0.70 | $145.56 | $101.89 | 04/11/2007 | 25 | REVIEW CASE FILE |
| HL58B | 0.20 | $141.12 | $28.22 | 04/12/2007 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 4.70 | $136.37 | $640.94 | 04/12/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 0.80 | $136.37 | $109.10 | 04/12/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HL96A | 1.10 | $145.56 | $160.12 | 04/12/2007 | 25 | REVIEW CASE FILE |
| HL96A | 1.20 | $145.56 | $174.67 | 04/12/2007 | 70 | CONFERENCES WITH LAWYERS |
| HL96A | 0.30 | $145.56 | $43.67 | 04/12/2007 | 70 | CONFERENCES WITH LAWYERS |
| HLL33B | 0.50 | $123.94 | $61.97 | 04/12/2007 | 70 | CONFERENCES WITH LAWYERS |

Florida Department of Health                    -- FOR INTERNAL USE ONLY --                    Itemizedcost



the road to quality health care
# MQA
*begins here*

Report Date: 10/31/2007

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL10A | 2.70 | $136.37 | $368.20 | 04/13/2007 | 46 | LEGAL RESEARCH |
| HL96A | 0.70 | $145.56 | $101.89 | 04/13/2007 | 46 | LEGAL RESEARCH |
| HL96A | 0.20 | $145.56 | $29.11 | 04/13/2007 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 1.10 | $136.37 | $150.01 | 04/16/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 1.10 | $136.37 | $150.01 | 04/16/2007 | 26 | PREPARE OR REVISE MEMORANDUM |
| HLL10A | 0.50 | $136.37 | $68.19 | 04/16/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.80 | $136.37 | $109.10 | 04/17/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 1.50 | $136.37 | $204.56 | 04/17/2007 | 26 | PREPARE OR REVISE MEMORANDUM |
| HLL10A | 0.30 | $136.37 | $40.91 | 04/17/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 1.00 | $136.37 | $136.37 | 04/17/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE, DEPT STAFF OR ATTY GEN OFF |
| HL96A | 1.00 | $145.56 | $145.56 | 04/17/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 1.50 | $136.37 | $204.56 | 04/18/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 1.00 | $136.37 | $136.37 | 04/18/2007 | 26 | PREPARE OR REVISE MEMORANDUM |
| HLL10A | 0.20 | $136.37 | $27.27 | 04/18/2007 | 35 | TELEPHONE CALLS |
| HL96A | 0.20 | $145.56 | $29.11 | 04/18/2007 | 70 | CONFERENCES WITH LAWYERS |
| HL96A | 1.40 | $145.56 | $203.78 | 04/19/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 1.50 | $136.37 | $204.56 | 04/19/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 0.70 | $136.37 | $95.46 | 04/19/2007 | 26 | PREPARE OR REVISE MEMORANDUM |
| HLL10A | 0.50 | $136.37 | $68.19 | 04/20/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 1.60 | $136.37 | $218.19 | 04/20/2007 | 47 | TRIAL PREPARATION |
| HL96A | 0.30 | $145.56 | $43.67 | 04/20/2007 | 46 | LEGAL RESEARCH |
| HL96A | 0.30 | $145.56 | $43.67 | 04/20/2007 | 25 | REVIEW CASE FILE |
| HL96A | 1.40 | $145.56 | $203.78 | 04/20/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 1.20 | $136.37 | $163.64 | 04/23/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 1.30 | $136.37 | $177.28 | 04/23/2007 | 46 | LEGAL RESEARCH |
| HL96A | 0.60 | $145.56 | $87.34 | 04/23/2007 | 70 | CONFERENCES WITH LAWYERS |
| HL96A | 1.30 | $145.56 | $189.23 | 04/23/2007 | 25 | REVIEW CASE FILE |
| HL96A | 1.30 | $145.56 | $189.23 | 04/24/2007 | 25 | REVIEW CASE FILE |
| HL96A | 0.50 | $145.56 | $72.78 | 04/24/2007 | 46 | LEGAL RESEARCH |
| HL96A | 0.20 | $145.56 | $29.11 | 04/24/2007 | 70 | CONFERENCES WITH LAWYERS |
| HL96A | 0.30 | $145.56 | $43.67 | 04/24/2007 | 70 | CONFERENCES WITH LAWYERS |
| HL96A | 0.90 | $145.56 | $131.00 | 04/24/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.30 | $136.37 | $40.91 | 04/24/2007 | 47 | TRIAL PREPARATION |

2043

P. 1

16:20

2007

6

Nov



**\*\*\*CONFIDENTIAL\*\*\***

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint 200567224

Report Date: 10/31/2007

Page 12 of 18

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL10A | 1.00 | $136.37 | $136.37 | 04/24/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.80 | $136.37 | $109.10 | 04/25/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 1.20 | $136.37 | $163.64 | 04/25/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.50 | $136.37 | $68.19 | 04/25/2007 | 47 | TRIAL PREPARATION |
| HL96A | 0.60 | $145.56 | $87.34 | 04/25/2007 | 70 | CONFERENCES WITH LAWYERS |
| HL96A | 1.00 | $145.56 | $145.56 | 04/25/2007 | 46 | LEGAL RESEARCH |
| HL96A | 0.20 | $145.56 | $29.11 | 04/30/2007 | 26 | PREPARE OR REVISE MEMORANDUM |
| HL96A | 0.20 | $145.56 | $29.11 | 04/30/2007 | 41 | REVIEW PLEADING |
| HLL10A | 2.80 | $136.37 | $381.84 | 05/01/2007 | 47 | TRIAL PREPARATION |
| HL96A | 0.40 | $145.56 | $58.22 | 05/01/2007 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 2.10 | $136.37 | $286.38 | 05/02/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 1.80 | $136.37 | $245.47 | 05/02/2007 | 35 | TELEPHONE CALLS |
| HL96A | 0.20 | $145.56 | $29.11 | 05/02/2007 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 0.80 | $136.37 | $109.10 | 05/03/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.30 | $136.37 | $40.91 | 05/03/2007 | 35 | TELEPHONE CALLS |
| HL96A | 1.40 | $145.56 | $203.78 | 05/03/2007 | 25 | REVIEW CASE FILE |
| HLL10A | 1.10 | $136.37 | $150.01 | 05/04/2007 | 81 | ESO/ERO |
| HLL10A | 1.70 | $136.37 | $231.83 | 05/04/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 1.40 | $136.37 | $190.92 | 05/04/2007 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 0.30 | $136.37 | $40.91 | 05/04/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HL96A | 0.80 | $145.56 | $116.45 | 05/04/2007 | 41 | REVIEW PLEADING |
| HLL10A | 0.70 | $136.37 | $95.46 | 05/07/2007 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 0.50 | $136.37 | $68.19 | 05/07/2007 | 47 | TRIAL PREPARATION |
| HL96A | 0.60 | $145.56 | $87.34 | 05/07/2007 | 41 | REVIEW PLEADING |
| HL96A | 0.50 | $145.56 | $72.78 | 05/07/2007 | 41 | REVIEW PLEADING |
| HL96A | 0.20 | $145.56 | $29.11 | 05/07/2007 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 0.50 | $136.37 | $68.19 | 05/08/2007 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 0.50 | $136.37 | $68.19 | 05/09/2007 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 0.50 | $136.37 | $68.19 | 05/09/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.20 | $136.37 | $27.27 | 05/09/2007 | 37 | REVIEW LETTER |
| HLL10A | 0.20 | $136.37 | $27.27 | 05/10/2007 | 37 | REVIEW LETTER |
| HLL10A | 0.20 | $136.37 | $27.27 | 05/10/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL33B | 1.30 | $123.94 | $161.12 | 05/14/2007 | 81 | ESO/ERO |

2045

the road to quality health care

# MQA

*begins here*

Report Date: 10/31/2007

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL10A | 2.30 | $136.37 | $313.65 | 05/15/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 4.50 | $136.37 | $613.67 | 05/16/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.50 | $136.37 | $68.19 | 05/16/2007 | 47 | TRIAL PREPARATION |
| HL96A | 0.40 | $145.56 | $58.22 | 05/16/2007 | 41 | REVIEW PLEADING |
| HLL10A | 0.20 | $136.37 | $27.27 | 05/17/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.40 | $136.37 | $54.55 | 05/17/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.30 | $136.37 | $40.91 | 05/18/2007 | 37 | REVIEW LETTER |
| HLL10A | 0.30 | $136.37 | $40.91 | 05/18/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.30 | $136.37 | $40.91 | 05/18/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.50 | $136.37 | $68.19 | 05/21/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 1.40 | $136.37 | $190.92 | 05/21/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 0.40 | $136.37 | $54.55 | 05/22/2007 | 37 | REVIEW LETTER |
| HLL10A | 0.40 | $136.37 | $54.55 | 05/22/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.20 | $136.37 | $27.27 | 05/22/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 0.40 | $136.37 | $54.55 | 05/22/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.30 | $136.37 | $40.91 | 05/23/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.20 | $136.37 | $27.27 | 05/23/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 3.80 | $136.37 | $518.21 | 05/23/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 1.20 | $136.37 | $163.64 | 05/24/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.50 | $136.37 | $68.19 | 05/24/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 2.30 | $136.37 | $313.65 | 05/25/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.70 | $136.37 | $95.46 | 05/25/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 1.50 | $136.37 | $204.56 | 05/25/2007 | 46 | LEGAL RESEARCH |
| HL96A | 1.10 | $145.56 | $160.12 | 05/25/2007 | 47 | TRIAL PREPARATION |
| HL96A | 0.60 | $145.56 | $87.34 | 05/25/2007 | 70 | CONFERENCES WITH LAWYERS |
| HLL10A | 1.50 | $136.37 | $204.56 | 05/27/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 5.00 | $136.37 | $681.85 | 05/28/2007 | 58 | TRAVEL TIME |
| HLL10A | 1.50 | $136.37 | $204.56 | 05/29/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 2.50 | $136.37 | $340.93 | 05/29/2007 | 44 | DEPOSITIONS |
| HLL10A | 6.00 | $136.37 | $818.22 | 05/29/2007 | 58 | TRAVEL TIME |
| HL96A | 0.70 | $145.56 | $101.89 | 05/29/2007 | 25 | REVIEW CASE FILE |
| HL12A | 2.00 | $100.00 | $200.00 | 05/30/2007 | 79 | STIPULATION |
| HLL10A | 1.20 | $136.37 | $163.64 | 05/30/2007 | 47 | TRIAL PREPARATION |

-- FOR INTERNAL USE ONLY --

itemizedcost

Nov  6 2007  19:21  P.



**2046**
P.   16:21   2007   6   Nov

the road to quality health care
**MQA**
begins here

*** CONFIDENTIAL ***

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint 200567224

Report Date: 10/31/2007

Page 14 of 18

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL10A | 1.20 | $136.37 | $163.64 | 05/30/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.30 | $136.37 | $40.91 | 05/30/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HL96A | 0.20 | $145.56 | $29.11 | 05/31/2007 | 70 | CONFERENCES WITH LAWYERS |
| HL96A | 0.40 | $145.56 | $58.22 | 05/31/2007 | 41 | REVIEW PLEADING |
| HL96A | 2.00 | $145.56 | $291.12 | 05/31/2007 | 70 | CONFERENCES WITH LAWYERS |
| HL96A | 2.20 | $145.56 | $320.23 | 05/31/2007 | 46 | LEGAL RESEARCH |
| HL96A | 2.00 | $145.56 | $291.12 | 06/01/2007 | 46 | LEGAL RESEARCH |
| HL96A | 1.10 | $145.56 | $160.12 | 06/01/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 3.50 | $136.37 | $477.30 | 06/04/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.80 | $136.37 | $109.10 | 06/04/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 1.40 | $136.37 | $190.92 | 06/04/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 3.30 | $136.37 | $450.02 | 06/05/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.70 | $136.37 | $95.46 | 06/05/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HL96A | 0.60 | $145.56 | $87.34 | 06/05/2007 | 41 | REVIEW PLEADING |
| HLL10A | 1.50 | $136.37 | $204.56 | 06/06/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 2.70 | $136.37 | $368.20 | 06/06/2007 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 1.20 | $136.37 | $163.64 | 06/06/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 1.70 | $136.37 | $231.83 | 06/06/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.40 | $136.37 | $54.55 | 06/06/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HL58B | 0.70 | $141.12 | $98.78 | 06/06/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HL96A | 0.30 | $145.56 | $43.67 | 06/06/2007 | 70 | CONFERENCES WITH LAWYERS |
| HL96A | 0.70 | $145.56 | $101.89 | 06/06/2007 | 41 | REVIEW PLEADING |
| HL96A | 1.80 | $145.56 | $262.01 | 06/06/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 3.50 | $136.37 | $477.30 | 06/07/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 1.40 | $136.37 | $190.92 | 06/07/2007 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HL96A | 0.30 | $145.56 | $43.67 | 06/07/2007 | 70 | CONFERENCES WITH LAWYERS |
| HL96A | 0.70 | $145.56 | $101.89 | 06/07/2007 | 41 | REVIEW PLEADING |
| HL96A | 1.50 | $145.56 | $218.34 | 06/07/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 0.50 | $136.37 | $68.19 | 06/08/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 2.50 | $136.37 | $340.93 | 06/08/2007 | 47 | TRIAL PREPARATION |
| HL96A | 1.70 | $145.56 | $247.45 | 06/08/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 1.00 | $136.37 | $136.37 | 06/11/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 1.30 | $136.37 | $177.28 | 06/11/2007 | 40 | PREPARATION OF OR REVISION OF A PLEADING |

2047

P.

16:21

2007

6

Nov



the road to quality health care

# MQA

*Begins here*

Report Date: 10/31/2007

\*\*\* C O N F I D E N T I A L \*\*\*

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint  200567224

Page 15 of 18

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL10A | 3.50 | $136.37 | $477.30 | 06/11/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.70 | $136.37 | $95.46 | 06/11/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 5.00 | $136.37 | $681.85 | 06/11/2007 | 58 | TRAVEL TIME |
| HLL10A | 2.00 | $136.37 | $272.74 | 06/11/2007 | 44 | DEPOSITIONS |
| HL96A | 0.20 | $145.56 | $29.11 | 06/11/2007 | 70 | CONFERENCES WITH LAWYERS |
| HL96A | 0.20 | $145.56 | $29.11 | 06/11/2007 | 41 | REVIEW PLEADING |
| HL96A | 0.40 | $145.56 | $58.22 | 06/11/2007 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HL96A | 0.70 | $145.56 | $101.89 | 06/11/2007 | 46 | LEGAL RESEARCH |
| HL96A | 0.60 | $145.56 | $87.34 | 06/11/2007 | 46 | LEGAL RESEARCH |
| HL96A | 1.00 | $145.56 | $145.56 | 06/11/2007 | 41 | REVIEW PLEADING |
| HLL10A | 3.20 | $136.37 | $436.38 | 06/12/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 4.50 | $136.37 | $613.67 | 06/12/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 1.70 | $136.37 | $231.83 | 06/12/2007 | 58 | TRAVEL TIME |
| HLL10A | 0.40 | $136.37 | $54.55 | 06/13/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.30 | $136.37 | $40.91 | 06/13/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 1.80 | $136.37 | $245.47 | 06/13/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 3.50 | $136.37 | $477.30 | 06/13/2007 | 58 | TRAVEL TIME |
| HL12A | 2.00 | $100.00 | $200.00 | 06/13/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 2.50 | $136.37 | $340.93 | 06/14/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 1.50 | $136.37 | $204.56 | 06/14/2007 | 57 | ORAL ARGUMENT |
| HLL10A | 2.50 | $136.37 | $340.93 | 06/15/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 1.50 | $136.37 | $204.56 | 06/15/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.30 | $136.37 | $40.91 | 06/15/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.40 | $136.37 | $54.55 | 06/15/2007 | 37 | REVIEW LETTER |
| HLL10A | 0.40 | $136.37 | $54.55 | 06/15/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 2.30 | $136.37 | $313.65 | 06/17/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.70 | $136.37 | $95.46 | 06/17/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 0.50 | $136.37 | $68.19 | 06/18/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 0.40 | $136.37 | $54.55 | 06/18/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 2.20 | $136.37 | $300.01 | 06/18/2007 | 44 | DEPOSITIONS |
| HLL10A | 1.20 | $136.37 | $163.64 | 06/18/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 1.40 | $136.37 | $190.92 | 06/18/2007 | 35 | TELEPHONE CALLS |
| HL96A | 0.50 | $145.56 | $72.78 | 06/18/2007 | 41 | REVIEW PLEADING |

2048
P.

Nov  6 2007  16:21

the road to quality health care
**MQA**
begins here

Report Date: 10/31/2007

\*\*\* C O N F I D E N T I A L \*\*\*

**Time Tracking System**
**Itemized Cost by Complaint**

Complaint   200567224

Page 16 of 18

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HL96A | 0.70 | $145.56 | $101.19 | 06/18/2007 | 41 | REVIEW PLEADING |
| HL12A | 5.50 | $100.00 | $550.00 | 06/19/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 3.00 | $136.37 | $409.11 | 06/19/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 6.00 | $136.37 | $818.22 | 06/19/2007 | 58 | TRAVEL TIME |
| HLL10A | 9.00 | $136.37 | $1,227.33 | 06/20/2007 | 48 | FORMAL HEARING |
| HL12A | 2.00 | $100.00 | $200.00 | 06/20/2007 | 46 | LEGAL RESEARCH |
| HLL10A | 2.50 | $136.37 | $340.93 | 06/21/2007 | 48 | FORMAL HEARING |
| HLL10A | 5.00 | $136.37 | $681.85 | 06/21/2007 | 58 | TRAVEL TIME |
| HLL10A | 0.30 | $136.37 | $40.91 | 06/22/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 0.40 | $136.37 | $54.55 | 06/22/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 2.40 | $136.37 | $327.29 | 06/22/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.40 | $136.37 | $54.55 | 06/22/2007 | 37 | REVIEW LETTER |
| HLL10A | 1.50 | $136.37 | $204.56 | 06/22/2007 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL10A | 2.50 | $136.37 | $340.93 | 06/26/2007 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL10A | 2.00 | $136.37 | $272.74 | 06/27/2007 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL10A | 1.60 | $136.37 | $218.19 | 07/02/2007 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL10A | 0.70 | $136.37 | $95.46 | 07/03/2007 | 43 | PREPARE FOR DEPOSITION |
| HLL10A | 0.30 | $136.37 | $40.91 | 07/03/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.30 | $136.37 | $40.91 | 07/16/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.50 | $136.37 | $68.19 | 07/16/2007 | 40 | PREPARATION OF OR REVISION OF A PLEADING |
| HLL10A | 0.20 | $136.37 | $27.27 | 07/16/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL24B | 1.00 | $127.93 | $127.93 | 07/17/2007 | 55 | REVIEW OF BRIEF |
| HLL24B | 0.50 | $127.93 | $63.97 | 07/17/2007 | 46 | LEGAL RESEARCH |
| HLL24B | 5.20 | $127.93 | $665.24 | 07/17/2007 | 54 | PREPARE OR REVISE BRIEF |
| HLL10A | 0.20 | $136.37 | $27.27 | 07/17/2007 | 53 | PREPARATION OF MOTION TO AVOID STAY/RESPONSE TO MOTION TO STAY |
| HLL10A | 0.20 | $136.37 | $27.27 | 07/17/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.20 | $136.37 | $27.27 | 07/17/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.40 | $136.37 | $54.55 | 07/17/2007 | 47 | TRIAL PREPARATION |
| HLL10A | 0.80 | $136.37 | $109.10 | 07/18/2007 | 53 | PREPARATION OF MOTION TO AVOID STAY/RESPONSE TO MOTION TO STAY |
| HLL24B | 0.30 | $127.93 | $38.38 | 07/18/2007 | 46 | LEGAL RESEARCH |
| HLL24B | 5.40 | $127.93 | $690.82 | 07/18/2007 | 54 | PREPARE OR REVISE BRIEF |
| HLL24B | 0.10 | $127.93 | $12.79 | 07/19/2007 | 41 | REVIEW PLEADING |
| HLL24B | 0.30 | $127.93 | $38.38 | 07/19/2007 | 74 | MEETINGS WITH DEPARTMENT STAFF |



the road to quality health care

# MQA

begins here

\*\*\* **C O N F I D E N T I A L** \*\*\*

**Time Tracking System**

**Itemized Cost by Complaint**

Complaint  200567224

Report Date: 10/31/2007

Page 17 of 18

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL24B | 0.20 | $127.93 | $25.59 | 07/19/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 1.30 | $136.37 | $177.28 | 07/20/2007 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL10A | 0.40 | $136.37 | $54.55 | 07/20/2007 | 41 | REVIEW PLEADING |
| HLL10A | 1.00 | $136.37 | $136.37 | 07/25/2007 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL10A | 0.30 | $136.37 | $40.91 | 07/26/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL26B | 0.10 | $124.73 | $12.47 | 08/02/2007 | 25 | REVIEW CASE FILE |
| HLL26B | 0.10 | $124.73 | $12.47 | 08/02/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.20 | $136.37 | $27.27 | 08/02/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.50 | $136.37 | $68.19 | 08/02/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.50 | $136.37 | $68.19 | 08/02/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.50 | $136.37 | $68.19 | 08/03/2007 | 37 | REVIEW LETTER |
| HLL10A | 0.60 | $136.37 | $81.82 | 08/03/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.50 | $136.37 | $68.19 | 08/07/2007 | 57 | ORAL ARGUMENT |
| HLL10A | 1.50 | $136.37 | $204.56 | 08/07/2007 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL10A | 0.20 | $136.37 | $27.27 | 08/08/2007 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL10A | 0.70 | $136.37 | $95.46 | 08/17/2007 | 41 | REVIEW PLEADING |
| HLL10A | 0.30 | $136.37 | $40.91 | 08/17/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 4.00 | $114.89 | $459.56 | 08/21/2007 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL10A | 0.20 | $114.89 | $22.98 | 08/21/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.60 | $136.37 | $81.82 | 08/22/2007 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL10A | 1.70 | $136.37 | $231.83 | 08/24/2007 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL10A | 0.40 | $136.37 | $54.55 | 08/29/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 1.10 | $136.37 | $150.01 | 08/29/2007 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HLL10A | 1.40 | $136.37 | $190.92 | 08/30/2007 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HL12A | 3.00 | $100.00 | $300.00 | 09/03/2007 | 54 | PREPARE OR REVISE BRIEF |
| HL12A | 3.00 | $100.00 | $300.00 | 09/04/2007 | 54 | PREPARE OR REVISE BRIEF |
| HLL10A | 0.50 | $114.89 | $57.45 | 09/04/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 1.40 | $114.89 | $160.85 | 09/04/2007 | 49 | REVIEW TRANSCRIPTS AND PREPARE RECOMMENDED ORDER |
| HL12A | 4.00 | $100.00 | $400.00 | 09/05/2007 | 54 | PREPARE OR REVISE BRIEF |
| HL12A | 1.50 | $100.00 | $150.00 | 09/06/2007 | 54 | PREPARE OR REVISE BRIEF |
| HL12A | 2.50 | $100.00 | $250.00 | 09/07/2007 | 54 | PREPARE OR REVISE BRIEF |
| HLL57B | 1.50 | $97.64 | $146.46 | 09/12/2007 | 26 | PREPARE OR REVISE MEMORANDUM |
| HLL10A | 1.50 | $114.89 | $172.34 | 09/16/2007 | 41 | REVIEW PLEADING |



**Time Tracking System**
**Itemized Cost by Complaint**

Complaint   200567224

Report Date: 10/31/2007

Page 18 of 18

| Staff Code | Activity Hours | Staff Rate | Cost | Activity Date | Activity Code | Activity Description |
|---|---|---|---|---|---|---|
| HLL10A | 0.60 | $114.89 | $68.93 | 09/17/2007 | 41 | REVIEW PLEADING |
| HLL10A | 0.70 | $91.00 | $63.70 | 10/19/2007 | 6 | SUPPLEMENTAL INVESTIGATION |
| HLL10A | 0.60 | $91.00 | $54.60 | 10/19/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.30 | $91.00 | $27.30 | 10/19/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| HLL10A | 0.50 | $91.00 | $45.50 | 10/26/2007 | 51 | REPARE FINAL AGENCY ACTION |
| HLL10A | 0.50 | $91.00 | $45.50 | 10/26/2007 | 51 | REPARE FINAL AGENCY ACTION |
| HLL10A | 1.50 | $91.00 | $136.50 | 10/29/2007 | 51 | REPARE FINAL AGENCY ACTION |
| HLL10A | 0.40 | $91.00 | $36.40 | 10/29/2007 | 36 | PREPARATION OR REVISION OF LETTER |
| HLL10A | 0.40 | $91.00 | $36.40 | 10/29/2007 | 35 | TELEPHONE CALLS |
| HLL10A | 0.70 | $91.00 | $63.70 | 10/29/2007 | 64 | LEGAL ADVICE/DISCUSSION - BOARD OFFICE,DEPT STAFF OR ATTY GEN OFF. |
| Sub Total | 486.55 | | $64,455.15 | | | |

| Total Cost | $67,857.45 |
|---|---|



**the road to quality health care**

# MQA

*begins here*

\*\*\* **C O N F I D E N T I A L** \*\*\*

**Time Tracking System**
**Itemized Expense by Complaint**
Complaint 200567224

Report Date: 10/31/2007

Page 1 of 1

| Staff Code | Expense Date | Expense Amount | Expense Code | Expense Code Description |
|---|---|---|---|---|
| **INVESTIGATIVE SERVICES UNIT** | | | | |
| OI69 | 04/25/2006 | $30.82 | 497010 | OTHER CURRENT CHARGES - INVESTIGATIVE EVIDENCE |
| OI64 | 05/08/2006 | $9.49 | 497020 | OTHER CURRENT CHARGES - INVESTIGATIVE INFORMATION |
| | SubTotal | $40.31 | | |
| **PROSECUTION SERVICES UNIT** | | | | |
| HLL10A | 02/20/2007 | $366.75 | 131400 | COURT REPORTING |
| HLL10A | 02/19/2007 | $552.40 | 131400 | COURT REPORTING |
| HLL10A | 04/04/2007 | $37.50 | 131400 | COURT REPORTING |
| HLL10A | 03/23/2007 | $383.55 | 131400 | COURT REPORTING |
| HLL10A | 03/23/2007 | $328.77 | 131400 | COURT REPORTING |
| HLL10A | 06/14/2007 | $37.50 | 131400 | COURT REPORTING |
| HLL10A | 05/29/2007 | $20.00 | 131400 | COURT REPORTING |
| HLL10A | 06/26/2007 | $76.13 | 131400 | COURT REPORTING |
| HLL10A | 06/15/2007 | $551.05 | 131400 | COURT REPORTING |
| HLL10A | 06/21/2007 | $140.00 | 131400 | COURT REPORTING |
| HLL10A | 10/30/2006 | $400.00 | 131630 | EXPERT WITNESS |
| HLL10A | 01/18/2007 | $400.00 | 131630 | EXPERT WITNESS |
| HL34B | 06/11/2007 | $1,000.00 | 131630 | EXPERT WITNESS |
| HL34B | 03/27/2007 | $300.00 | 131630 | EXPERT WITNESS |
| HL34B | 06/21/2007 | $6,000.00 | 131630 | EXPERT WITNESS |
| HLL10A | 02/13/2007 | $491.95 | 261010 | TRAVEL - EMOLOYEE - IN FLA |
| HLL10A | 06/26/2007 | $485.63 | 261010 | TRAVEL - EMOLOYEE - IN FLA |
| HLL10A | 06/13/2007 | $693.10 | 261010 | TRAVEL - EMOLOYEE - IN FLA |
| HL34B | 06/21/2007 | $789.32 | 261010 | TRAVEL - EMOLOYEE - IN FLA |
| HLL25B | 06/21/2007 | $172.00 | 261010 | TRAVEL - EMOLOYEE - IN FLA |
| | SubTotal | $13,225.65 | | |
| | Total Expenses | $13,265.96 | | |

**2051**   P. 2   19:22   2007   6   Nov

STATE OF FLORIDA
DEPARTMENT OF HEALTH
BOARD OF MEDICINE

FILED
DEPARTMENT OF HEALTH
DEPUTY CLERK
CLERK: Rachel Dober
DATE   11·13·07

DEPARTMENT OF HEALTH,
BOARD OF MEDICINE,

      Petitioner,

vs.                          DOAH  Case No. 06-4288PL

JAMES S. PENDERGRAFT, IV., M.D.,

      Respondent.

                              /

## RESPONDENT'S RESPONSE AND OBJECTIONS TO PETITIONER'S MOTION TO ASSESS COSTS IN ACCORDANCE WITH SECTION 456.072(4)

Respondent, James S. Pendergraft, IV, M.D. ("Respondent" or "Dr. Pendergraft"), by and through his undersigned counsel, pursuant to section 456.072(4), Florida Statutes, hereby files this Response and Objections to the Department's Motion to Assess Costs In Accordance With Section 456.072(4) herein, and in support states:

1.      On November 1, 2007, the Department served by U. S. Mail its Motion to Assess Costs In Accordance With Section 456.072 in this case.  Attached to its Motion, the Department included the affidavit of one James R. Cooksey, a "Complaint Cost Summary," a page that is entitled "HL Code Index," which lists ten (10) Department attorneys who purportedly worked on this case, and eighteen (18) pages entitled "Confidential Time Tracking System Itemized Cost by Complaint."  It appears that the information contained in these eighteen pages purports to be a day-by-day tracking of the time spent by Department of Health employees in investigating and prosecuting DOH case number 200567224.

1

Objection I:  Neither the Department nor the Board has initiated rulemaking proceedings regarding "costs" under section 456.072(4), Florida Statutes.

2.      Respondent's first objection to the Department's Motion to Assess Costs under section 456.072(4), Florida Statutes, is that neither the Department nor the Board has initiated rulemaking regarding these costs.  The Department of Health has been told previously that the process for determining costs pursuant to its authority under section 456.072(4), Florida Statutes, requires rulemaking.  *See Mohamed Ibrahim Abdel-Aziz, M.D. v. Department of Health, Board of Medicine,* DOAH Case No. 03-0295RU (Final Order filed on June 4, 2003).

3.      Further, this Board has been ordered to cease relying on any unpromulgated rules for determining the appropriate costs to be assessed in disciplinary cases.  *Id.*  In that Final Order, the Administrative Law Judge found, however, that the Board is not prohibited from assessing costs limited to traditionally recognized costs, such as court reporter fees, transcript costs, witness fees, and costs of service of process.  *See In re Hapner,* 737 So. 2d 1075 (Fla. 1999); *Winn-Dixie Stores, Inc. v. Vote,* 463 So. 2d 456 (Fla. 2d DCA 1985).

4.      In the *Abdel-Aziz* Final Order, the Administrative law Judge noted that there are ample examples which can be used as a guide to the Department and the Board in promulgating rules to put physicians on notice as to what types of expenses are included in the phrase "costs related to the investigation and prosecution of the case."  Yet, the Department and/or the Board have failed to initiate rulemaking so that physicians have sufficient notice as required by basic due process.

5.      No doubt the Department will assert that the statute provides such guidance by further stating, "Such costs related to the investigation and prosecution include, but are not limited to, salaries and benefits of personnel, costs related to the time spent by the attorney and other personnel working on the case, and any other expenses incurred by the department for the

case." §456.072(4), Fla. Stat. However, there has been no rulemaking regarding the definition of the terms utilized therein, or the methodology by which those costs are determined. Instead, the Department offers the affidavit of a Department employee to explain the purported way in which figures on an accompanying 18-page spreadsheet have been compiled.

6.    Because there is no rule that has gone through the appropriate rulemaking process to ensure its appropriateness and applicability, the *prima facie* authority and credibility of this employee to make the assertions in his affidavit and the accuracy and methodology of the generalized entries on the 18-page attachment has not been established. The Respondent objects to the assessment of costs under section 456.072(4), in the absence of the Department and/or the Board promulgating appropriate rules.

**Objection II: The Department's interpretation and use of Section 456.072(4), Florida Statutes, are unconstitutional, both facially and as-applied, and violate basic principles of due process, providing no *meaningful* notice or opportunity to be heard on the issue.**

7.    Without waiving any and all other objections, the Respondent next objects to the assessment of costs under section 456.072(4) in this case because that statute provides insufficient due process for the Department to prove and the Respondent to challenge the asserted costs by the Department. The process of affidavit and objections in the statute does not provide sufficient process for determining whether the costs are reasonable and whether the Department's asserted "evidence" is sufficient to support the claim of "costs."

> In the absence of a rule setting out a procedure for establishing the appropriate amount of such costs, fundamental fairness requires that the Board …require [the Department] to submit to the Board and to the Respondent an itemized listing of the costs for which payment is requested and that the Respondent be given an opportunity to contest the accuracy and reasonableness of the costs before the Board determines the amount of costs the Respondent will be required to pay.

3

*Department of Health, Board of Nursing v. Matus*, No. 97-1911, 1997 WL 1053326 (Fla.Div.Adm.Hrgs.)(Recommended Order), *cited in Department of Health, Board of Medicine v. Freshwater*, No. 02-2576PL, 2002 WL 31440747 (Fla.Div.Adm.Hrgs.).

8.     The Department's filing of its Motion to Assess Costs with its attachments, mailed on November 1, 2007, and not received by the Respondent until November 5, 2007, hardly provides the Respondent his "opportunity to be heard" on the issues of accuracy and reasonableness of the Department's costs before the Board meeting at which this case will be heard on November 30, 2007.  A recent appellate court commented on the Board's current practice of assessing costs by stating: "... [T]he Board [of Medicine] decided the issue of imposing a cost judgment against [the physician] without allowing [the physician] any opportunity to be heard." *Rupp v. Department of Health*, 936 So. 2d 790, 795 (Fla. 3d DCA 2007).

9.     Further, there is no adequate due process when there is no mechanism for discovery or fact-finding, no requirement that this evidence be put on before the Administrative Law Judge at hearing, and there is no statutorily authorized mechanism for the return of the matter to the Administrative Law Judge for such determinations.  The statute leaves this determination to the Board, following the mere filing of the Department employee's affidavit and spreadsheet of alleged itemized costs and the Respondent's written objections thereto.

10.     This lack of due process on the issue of costs is especially glaring where, as here, the "evidence" of such costs is an affidavit of a Department employee who neither investigated nor prosecuted this case, a computer generated printout of hours, codes, and generalized descriptions of the purported "activity" of the investigators and prosecutors, and an apparently "created" list of the names and staff codes of the attorneys who purportedly engaged in "activity"

4

on this case. Respondent objects to the Board's assessment of costs under section 456.072(4), Florida Statutes, because of the lack of due process in the statutory provision which would allow for meaningful notice and opportunity to challenge the adequacy, accuracy, and methodology of the Department's motion, affidavit and attached documentation.

**Objection III.  The Department failed to allege that imposition of costs was one of the penalties sought in this case and failed to put on any evidence during the administrative hearing or anywhere else in the official record of this case regarding its asserted "costs".**

11.    Without waiving all other objections, the Respondent next objects to the assessment of costs under section 456.072(4) in this case because the Department failed to include the imposition of costs as one of the penalties sought in this case and failed to present any evidence on costs in the administrative hearing before the Administrative Law Judge.

12.    In the Administrative Complaint in this case, the Department pled for the imposition of one or more of the following penalties:

> ...permanent revocation or suspension of Respondent's license, restriction of practice, imposition of an administrative fine, issuance of a reprimand, placement of the Respondent on probation, corrective action, refund of fees billed or collected, remedial education and/or any other relief that the Board deems appropriate.

Administrative Complaint, page 19.

13.    The Department did not place into evidence at the hearing before the Administrative Law Judge proof of the costs of the investigation and prosecution that it had incurred during the course of this matter. Although there was ample opportunity to do so, it was the Department's decision not to do so, despite the fact that the Department is on notice that there are numerous challenges to this practice ongoing in other disciplinary cases like this one.

14.    In her Recommended Order, because there was no evidence regarding costs

presented at hearing, the Administrative Law Judge did not recommend that any costs be assessed against the Respondent, nor did she reserve jurisdiction or leave the record open for a later determination on the issue of costs under section 456.072(4), Florida Statutes. Therefore, the Respondent objects to the assessment of costs under section 456.072(4) because costs were not pled as a penalty sought, there was no evidence presented at hearing, and the Administrative Law Judge did not include costs in her recommended penalty.

**Objection IV. The Department is inviting the Board to commit appellate error by asking it to consider matters with regard to penalty that are "new evidence."**

15.     Without waiving all other objections, the Respondent next objects to the imposition of costs under section 456.072(4) in this case because the Department's affidavit and attached spreadsheet are impermissible "new evidence" being presented to the Board in contravention of provisions of Chapter 120 governing these hearings. Section 120.57(1)(f), Florida Statutes (2005) defines the official "record" in administrative cases "involving disputed issues of material fact," such as this one[1]. The nine (9) articulated elements that may constitute the record "governed by this subsection" do not articulate any item that could be interpreted as

---

[1] (f) The record in a case governed by this subsection shall consist only of:
   1. All notices, pleadings, motions, and intermediate rulings.
   2. Evidence admitted.
   3. Those matters officially recognized.
   4. Proffers of proof and objections and rulings thereon.
   5. Proposed findings and exceptions.
   6. Any decision, opinion, order, or report by the presiding officer.
   7. All staff memoranda or data submitted to the presiding officer during the hearing or prior to its disposition, after notice of the submission to all parties, except communications by advisory staff as permitted under s. 120.66(1), if such communications are public records.
   8. All matters placed on the record after an ex parte communication.
   9. The official transcript.
§120.57(1)(f), Fla. Stat.

authorizing the additional evidence sought to be presented to the Board in this case in the form of the Department's affidavit and its attached itemization.

16.     Under section 120.57(1)(f), (k) and (l), Florida Statutes, the Board is restricted to considering only that evidence adduced at hearing and may not base any determination in its final order on any evidence that was not before the Administrative Law Judge at the formal administrative hearing. *See Lieberman v. Department of Professional Regulation*, 573 So. 2d 349 (Fla. 5th DCA 1991).

17.     Further, in its review of the decision of the Administrative Law Judge, the agency is not authorized to reopen the record to receive additional evidence, and make additional findings. *Lawnwood Medical Center, Inc. v. Agency for Health Care Administration*, 678 So. 2d 421, 425 (Fla. 1st DCA 1996), *citing Henderson Signs v. Florida Department of Transportation*, 397 So. 2d 769, 772 (Fla. 1st DCA 1981).

18.     An administrative agency, such as the Board of Medicine, may not use its power to take official recognition as a device to circumvent the Administrative Law Judge's findings of fact by building a new record on which to make new findings. *Lawnwood, supra, citing Florida Department of Transportation v. J.W.C. Co., Inc.* 396 So. 2d 778 (Fla. 1st DCA 1981). This is especially so, where, as herein, the evidence sought to be introduced could, in the exercise of due diligence, have been offered at the original hearing. *J.W.C., supra*, at 786.

19.     The assessment of costs under section 456.072(4) has been found to be a "penalty" by an Administrative Law Judge:

> The [Department] is specifically authorized to assess prosecutorial
> costs by Subsection 456.072(4), Florida Statutes (2005), which
> states that costs shall be assessed "[i]n addition to any other
> discipline imposed through final order," clearly indicating that
> costs are assessed as a form of disciplinary penalty, not simply to
> reimburse the governmental agency for expenses.

7

*Department of Health, Board of Pharmacy v. Bousquet*, 2007 WL 2300784 (Fla.Div.Admin.Hrgs.).

20. Evidence sought to be admitted before the Board on the issue of penalty is considered "new evidence" that should have been considered by the Administrative Law Judge, who is charged with formulating the recommended penalty. *See Ong v. Department of Professional Regulation*, 565 So. 2d 1384, 1387 (Fla. 5th DCA 1990) (mitigating facts must already be within the record before it can be relied upon by the Board in modifying a recommended penalty); *Libby Investigations v. Department of State, Division of Licensing*, 685 So. 2d 69 (Fla. 1st DCA 1996) (reversible error to increase penalty where no evidence in the record before the Division that the Administrative Law Judge found aggravating circumstances).

21. Thus, evidence in support of "facts" regarding aggravation or mitigation of the penalty, or in this case, an additional element of the penalty. must be of record before the Administrative Law Judge in order to be considered in her recommended penalty and in order to be considered by the Board in rejecting or modifying the penalty upward or downward. Because the "facts" in support of the assessment of costs under section 456.072(4) were not presented before the Administrative Law Judge, the "facts" as presented in the Department's Motion, affidavit and its attachments are outside the record created before the Administrative Law Judge and may not be considered by the Board in assessing costs as part of the penalty.[2]

---

[2] However, this does not prohibit the Board from being provided and considering its own decisions in observance of the legislatively dictated principle of administrative *stare decisis*. *Gessler v. Department of Business and Professional Regulation*, 627 So. 2d 501, 504 (Fla. 4th DCA 1993), *cause dismissed*, 634 So. 2d 624 (Fla. 1994) ("[W]hile ...agencies...may not be bound to follow prior decisions to the extent that the courts are bound by precedent, it is nevertheless apparent the legislature intends that there be a principle of administrative stare decisis in Florida.")

8

**Objection V. The Department is requesting an increase to the recommended penalty without record evidence for the Board to cite to under its review standard in section 120.5791)(l), Florida Statutes.**

22.     Without waiving all other objections, the Respondent next objects to the Department's Motion to Assess Costs under Section 456.072(4), Florida Statutes, because the Department is inviting the Board to consider an increase in penalty without the record evidence below to cite in accordance with the Board's statutory standard of review. Section 120.57(1)(l), Florida Statutes, limits the Board's consideration of the Administrative Law Judge's recommended penalty by stating:

> The [Board] may accept the recommended penalty in a recommended Order, but may not reduce or increase it without a review of the complete record and without stating with particularity its reasons therefor in the order, by citing to the record in justifying the action.

Thus, if there is nothing in the record before the Administrative Law Judge, no documentary or testimonial evidence regarding these costs, the Board may not increase or decrease the penalty herein by adding the section 456.072(4) costs pursuant to the Department's Motion to do so.

23.     Under section 120.57(1)(j) and relevant case law[3], costs must be established by clear and convincing evidence presented by the Department at hearing before the Administrative Law Judge in order to be considered and included in the Judge's recommended penalty. It is only on the record created in the hearing below that the Board may either accept, reject or modify the penalty recommended by the Administrative Law Judge. If there is no evidence put on the record at hearing regarding the costs, and if there is no assessment of costs in the penalty

---

[3] *Department of Banking and Finance v. Osborne Stern and Co.*, 670 So. 2d 932 (Fla. 1996); *Ferris v. Turlington*, 510 So. 2d 292 (Fla. 1987).

9

recommended by the Administrative Law Judge, the assessment of such costs by the Board is contrary to the process due under the Administrative Practice Act, Chapter 120, Florida Statutes.

**Objection VI. The Department's Motion to Assess Costs, Affidavit and Summary of Costs are insufficient to prove the amount of reasonable costs expended or necessary to prosecute this case.**

24.     Without waiving all other objections, the Respondent objects to the Department's Motion to Assess Costs under section 456.072(4), Florida Statutes because the attachments to the Motion, offered as evidence of the Department's costs in this case, are hearsay evidence. As out-of-court statements offered to prove the truth of the matters asserted therein, these hearsay documents have not been shown to be trustworthy and accurate representations of the information contained therein. "Hearsay evidence may be used for the purpose of supplementing or explaining other evidence, but it shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." §120.57(1)(c), Fla. Stat.

25.     Further, there has been no showing that these documents are exceptions to the hearsay rules of evidence such that the Board could rely upon them to make a finding, an act which has already been shown to be out of the Board's authority under the provisions of Chapter 120. There has been no demonstration that these attachments and the itemizations included therein represent the actual assessable costs of the investigation and prosecution incurred by the Department in this case. *See generally Juste v. Department of Health and Rehabilitative Services*, 520 So. 2d 69 (Fla. 5th DCA 1988); *Johnson v. Department of Health and Rehabilitative Services*, 546 So. 2d 741 (Fla. 1st DCA 1989).

26.     Specifically, the 18-page "Time Tracking System" spreadsheet attached in support of the Department's Motion is devoid of any information to verify the expenditures it is

10

alleged to represent. Items of alleged expenditures do not specify the work being done except in the most generalized language. The "codes" purporting to identify the employee who performed the work must be matched to a separate list that purports to accurately portray which code corresponds to what employee. These documents and their content do not give sufficient detail to know what work was performed, who performed the work, and whether that work was reasonable and necessary to the investigation and prosecution of this case. Nor do these hearsay documents explain why it took ten (10) Department attorneys to work on this case, and why the involvement of so many of the Department's legal employees was reasonable or necessary for this matter.

27.     Therefore, the Board should decline to rely upon the hearsay documents supplied by the Department as proof of the alleged assessable costs in this case. The Respondent objects to the Department's Motion and its attachments, and each and every item contained therein, as being hearsay insufficient to support any findings on the issue of assessable costs by the Board.


WHEREFORE, for the foregoing reasonS, Respondent, James S. Pendergraft, IV, M.D., respectfully requests that the Board of Medicine deny the Department's Motion to Assess Costs In Accordance With Section 456.072(4).

Respectfully submitted,

Kathryn L. Kasprzak
Florida Bar No. 0937819
Fowler White Boggs Banker P.A.
200 South Orange Ave., Suite 1950
Orlando, Florida 32801
(407) 406-5515
(407) 406-5555 (fax)

11

Kenneth J. Metzger
Florida Bar No. 0341215
Fowler White Boggs Banker, P.A.
101 North Monroe St., Suite 1090
Tallahassee, Florida 32301
(850) 681-4245
(850) 681-6036 (fax)

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was forwarded by electronic transmission for filing to R. Sam Power, Clerk, Department of Health. 4052 Bald Cypress Way, Bin C-01, Tallahassee, Florida 32399-3201 and to Irving Levine, Assistant General Counsel, Department of Health, Prosecution Services Unit, 4052 Bald Cypress Way, Bin C-65, Tallahassee, Florida 32399-3265, with a hard copy to follow by overnight mail delivery, this 12th day of November, 2007.

Kathryn L. Kasprzak, Esquire

12



FILED
DEPARTMENT OF HEALTH
DEPUTY CLERK
CLERK: Amy L. Cumary
DATE 11-26-07

**STATE OF FLORIDA**
**DEPARTMENT OF HEALTH**
**BOARD OF MEDICINE**

DEPARTMENT OF HEALTH
BOARD OF MEDICINE,

     Petitioner,

v.

JAMES S. PENDERGRAFT, IV., M.D.

     Respondent.

_____/

**DOH Case 2005-67224**
**DOAH Case No. 06-4288PL**

## PETITIONER'S RESPONSE TO RESPONDENT'S RESPONSE AND OBJECTIONS TO PETITIONER'S MOTION TO ASSESS COSTS IN ACCORDANCE WITH SECTION 456.072(4)

Petitioner, Department of Health ("Department"), by and through undersigned counsel, files this Response to Respondent's Response and Objections to the Department's Motion to Assess Costs in Accordance With Section 456.072(4), and in support states:

1.    On November 1, 2007, the Department served its Motion to Assess Costs in this case. The Department attached to its Motion a day-by-day tracking of the time spent by the Department in investigating and prosecuting Respondent. The Department attached in support of the Motion an affidavit regarding investigative costs, a Departmental

"Complaint Cost Summary", a list of attorneys who worked on the

prosecution of Respondent, and the Department's "Confidential Time

Tracking System and Itemized Cost" (see, Itemized Cost Report).

**Response to Objection I**: Neither the Department nor the Board is required to initiate rulemaking proceedings regarding "costs" under the current statutory provisions contained in Section 456.072(4), Florida Statutes (2004).

2.    The issue of costs is governed by Section 456.072(4), Florida

Statutes (2004), which provides:

> In addition to any other discipline imposed through final order, or citation, entered on or after July 1, 2001, under this section or discipline imposed through final order, or citation, entered on or after July 1, 2001, for a violation of any practice act, the board, or the department when there is no board, shall assess costs related to the investigation and prosecution of the case. The costs related to the investigation and prosecution include, but are not limited to, salaries and benefits of personnel, costs related to the time spent by the attorney and other personnel working on the case, and any other expenses incurred by the department for the case. The board, or the department when there is no board, shall determine the amount of costs to be assessed after its consideration of an affidavit of itemized costs and any written objections thereto. In any case where the board or the department imposes a fine or assessment and the fine or assessment is not paid within a reasonable time, the reasonable time to be prescribed in the rules of the board, or the department when there is no board, or in the order assessing the fines or costs, the department or the Department of Legal Affairs may contract for the collection of, or bring a civil action to recover, the fine or assess costs.

2

3.    This section obviates the need for the Department or the Board to engage in rulemaking as asserted by Respondent and supersedes the final order entered in *Department of Health v. Mohamed Ibrahim Abdel-Aziz, M.D. v. Department of Health, Board of Medicine, DOAH Case No. 03-0295RU* cited by Respondent in support of his objection. Section 456.072(4), Florida Statutes (2004), was amended, effective, September 15, 2003, to address the holding in the above-cited case.

4.    Further, Respondent has missed his opportunity to assert that the Department's Motion to Assess Costs is based on an unadopted rule. (See Section 120.57(1)(e)1, Florida Statutes (2007)). The Department's Notice of Assessment of Costs which was attached to both the Administrative Complaint and the Amended Administrative Complaint clearly placed Respondent on notice that the Department has incurred costs related to the investigation and prosecution of this matter and that the Board shall assess costs related to the investigation and prosecution of this case in addition to any other discipline imposed. Therefore, Respondent had a responsibility under Section 120.569(2), Florida Statutes, to initiate a proceeding before the Division of Administrative Hearings asserting that the Department's process for determining costs constitutes an unadopted rule. Had Respondent followed the appropriate

3

procedure, this issue would have been raised in the appropriate forum. Now, before the Board of Medicine, is not the time or place to raise the issue of an unadopted rule for the first time.

5.    Respondent relies on *In re Hapner*, 737 So. 2d 1075 (Fla. 1999) in support of his assertion that these costs may not be imposed because they are not "traditionally recognized costs, such as court reporter fees, transcript costs, witness fees and costs of service of process." However, Hapner is not applicable to the case at hand. In *Hapner* the Judicial Qualifications Commission (JQC) asked the Florida Supreme Court to assess costs in a disciplinary proceeding against a judge and asked that costs include attorney fees and travel costs. The Court noted that the Florida Constitution provided for the recovery of "costs of investigation and prosecution" – language similar to the language that existed prior to 2004 in Section 456.072(4), Florida Statutes. The Court held that because the constitution is silent as to which costs in particular may be assessed neither attorney fees nor travel costs may be awarded under the limited governing language contained in the constitution. In contrast, the language contained in Section 456.072(4), Florida Statutes, is much more expansive and provides, "including but not limited to, the salaries and benefits of personnel, costs related to the time spent by the attorney and other

4

personnel working on the case, and any other expenses incurred by the department for the case." For these reasons, the holding in *Hapner* is not applicable to the issues raised regarding costs in this case.

6. While not dispositive of Respondent's Objection, Respondent erroneously states that there has been no required rulemaking regarding the accuracy and methodology of the Itemized Cost Report to the cost affidavit. In fact, the Department's methodology and time-tracking report were deemed not to require rule-making in the above-cited case.

7. Neither the Department nor the Board is required to initiate rulemaking regarding costs. Therefore, Respondent's Objection I should be rejected.

**Response to Objection II**: Section 456.072(4), Florida Statutes, is constitutional.

8. In Objection II, Respondent asserts that the Board's interpretation and use of Section 456.072(4), Florida Statutes, in assessing costs fails to provide Respondent with adequate due process. It is well established that the Board of Medicine is without authority to declare a statute unconstitutional either facially or as applied. Therefore, Respondent's Objection II should be rejected.

**Response to Objection III**: Assessment of costs is not a penalty and therefore requires no evidence be adduced during the administrative hearing.

9.    The Florida Legislature has clearly defined the penalties for violation of any applicable practice act. Section 456.072(2), Florida Statutes, provides:

> When the board, or the department when there is no board, finds any person guilty of the grounds set forth in subsection (1) or of any grounds set forth in the applicable practice act, including conduct constituting a substantial violation of subsection (1) or a violation of the applicable practice act which occurred prior to obtaining a license, it may enter an order imposing one or more of the following penalties:
>
> (a) Refusal to certify, or to certify with restrictions, an application for a license.
>
> (b) Suspension or permanent revocation of a license.
>
> (c) Restriction of practice or license, including, but not limited to, restricting the licensee from practicing in certain settings, restricting the licensee to work only under designated conditions or in certain settings, restricting the licensee from performing or providing designated clinical and administrative services, restricting the licensee from practicing more than a designated number of hours, or any other restriction found to be necessary for the protection of the public health, safety, and welfare.
>
> (d) Imposition of an administrative fine not to exceed $10,000 for each count or separate offense. If the violation is for fraud or making a false or fraudulent representation, the board, or the department if there is no board, must impose a fine of $10,000 per count or offense.

(e) Issuance of a reprimand or letter of concern.

(f) Placement of the licensee on probation for a period of time and subject to such conditions as the board, or the department when there is no board, may specify. Those conditions may include, but are not limited to, requiring the licensee to undergo treatment, attend continuing education courses, submit to be reexamined, work under the supervision of another licensee, or satisfy any terms which are reasonably tailored to the violations found.

(g) Corrective action.

(h) Imposition of an administrative fine in accordance with s. 381.0261 for violations regarding patient rights.

(i) Refund of fees billed and collected from the patient or a third party on behalf of the patient.

(j) Requirement that the practitioner undergoes remedial education.

10.    As is clear from a comparison of this language to that found in Section 456.072(4), Florida Statutes, as quoted in paragraph 3 above, the legislature drew a clear distinction between what constitutes penalties to be imposed following a finding of guilt and what constitutes costs to be assessed subsequently.

11.    Because costs are not a potential penalty to be considered by the Administrative Law Judge (ALJ), and because costs are solely within the discretion of the Board, evidence regarding costs is improper in the administrative hearing before the ALJ. Therefore, contrary to Respondent's

claim, the Department had no obligation to offer evidence regarding costs at that stage of the proceedings and Respondent's Objection III should be rejected.

**Response to Objection IV**: The Department is not offering "new evidence" in regard to the Recommended Order.

12.    Respondent mistakenly asserts that the Department's affidavit and attached spreadsheet filed in support of its Motion to Assess Costs constitutes impermissible "new evidence" under Chapter 120. Once again, Respondent is confusing the Board's consideration of the Recommended Order, which is controlled exclusively by the record as defined in Section 120.57(1)(f), Florida Statutes, with the Board's subsequent consideration of the Department's Motion to Assess Costs, which is controlled exclusively by Section 456.072(4), Florida Statutes.

13.    The cases cited by Respondent in support of his argument that the Department's Motion to Assess Costs constitutes new evidence, have no relevance to this matter. The cases cited by Respondent, *Lieberman v. Department of Professional Regulation*, 573 So. 2d 349 (Fla. 5th DCA 1991) and *Lawnwood Medical Center, Inc. v. Agency for Health Care Administration*, 678 So. 2d 421 (Fla. 1st DCA 1996), address attempts to offer evidence that under Chapter 120 clearly should have been presented

to and considered by the administrative law judge hearing the cases at issue. As stated above, the consideration and determination of costs in this case are not governed by Chapter 120 but are governed by Section 456.072(4), Florida Statutes, and are solely within the purview of the authority of the Board of Medicine.

14. The Department is mindful of the existence of *Board of Pharmacy v. Bousquet, 2007 WL 2300784 (Fla.Div.Admin.Hrgs.)*. However, the Department's position is that the decision is contrary to the plain language of Section 456.072, Florida Statutes. Therefore, the Department asserts that this cited DOAH case has no precedential value.

15. The Department is not offering "new evidence" that should have been offered before the ALJ as part of the record of that proceeding. Therefore, Respondent's Objection IV should be rejected.

**Response to Objection V**. The Department is not requesting an increase in the recommended penalty.

16. For the same reasons discussed in the Department's Response to Objection 4 above, the Department asserts that assessment of costs does not constitute a penalty. Therefore, the issue of the assessment of costs is not an issue before the ALJ, is not part of the Recommended

Order, and, as stated above, is solely within the discretion of the Board of Medicine.

17. The Florida Legislature has established a procedure by which the costs of investigation and prosecution of a disciplinary case are to be assessed. That procedure requires the Board to "determine the amount of costs to be assessed after its consideration of an affidavit of itemized costs and any written objections thereto." The Department has followed that procedure in this case.

**Response to Objection VI**. The Department's Motion to Assess Costs, Affidavit and Summary of Costs are sufficient for the Board to determine costs.

18. First, Respondent asserts that the Department offers only hearsay evidence in support of its Motion to Assess Costs. Respondent is incorrect. The affidavit and Itemized Cost Report is genuine and reliable and therefore is self-authenticating pursuant to Section 90.902(4), Florida Statutes, as copy of an official public record, report or entry, including date compilations, certified as correct by the custodian or other person authorized to make the certification. Because the document is authentic it is also admissible as a business record exception to the hearsay rule pursuant to Section 90.803(6) and (8), Florida Statutes. The document is

10

unquestionably a record of regularly conducted business activity by the Department.

19.   Second, Respondent asserts that the Department's "documents and their content do not give sufficient detail to know what work was performed, who performed the work, and whether that work was reasonable and necessary to the investigation and prosecution of this case." However, the issue is not whether the work was reasonable or necessary to the investigation and prosecution of the case. Section 456.072(4), Florida Statutes, requires that the Board assess the costs related to the investigation and prosecution of the case and provides:

> . . . the costs related to the investigation and prosecution include, but are not limited to, salaries and benefits of personnel, costs related to the time spent by the attorney, and other personnel working on the case, and any other expenses incurred by the department for the case. . . .

20.   While the Board shall assess costs, the Board also has the discretion to determine the amount of costs to be assessed after its consideration of the affidavit of itemized costs and written objections thereto. Therefore, the reasonableness and necessity of the costs are properly raised before the Board makes its determination of the amount of costs to be assessed.

WHEREFORE, for the foregoing reasons, Respondent's Objections to Petitioner's Motion to Assess should be rejected and Petitioner's Motion to Assess Costs in Accordance with Section 456.072(4) should be granted.

Respectfully submitted,

Irving Levine
Assistant General Counsel
Florida Bar # 0822957
DOH-Prosecution Services Unit
4052 Bald Cypress Way-Bin C-65
Tallahassee, Florida 32399-3265

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via: ☐ postage-paid U.S. Mail, ☐ Hand-Delivery, ☐ E-mail and/or ☒ Facsimile Transmission to Kenneth J. Metzger, Esq., Fowler, White, Boggs, Banker, P.A., P.O. Box 11240, Tallahassee, Florida 32302, and Kathryn Kasprzak, Esq. Fowler White Boggs Banker, P.A., 200 S. Orange Avenue, Suite 1950, Orlando, Florida 32801 this 26th day of November, 2007.

Irving Levine
Assistant General Counsel

VIRGINIA:

## BEFORE THE BOARD OF MEDICINE

IN RE:      **MI YONG KIM, M.D.**
            License No.: 0101-023297

## ORDER

In accordance with Sections 54.1-2400(10), 2.2-4019 and 2.2-4021 of the Code of Virginia (1950), as amended ("Code"), an informal conference was held with Mi Yong Kim, M.D., on March 29, 2005, in Richmond, Virginia.  Members of the Virginia Board of Medicine ("Board") serving on the Special Conference Committee ("Committee") were: Jane E. Piness, M.D., Chair; Gopinath R. Jadhav, M.D.; and Stephen E. Heretick, J.D.  Dr. Kim appeared personally and was represented by legal counsel, Susan L. Mitchell, Esquire.  The purpose of the informal conference was to inquire into allegations that Dr. Kim may have violated certain laws governing the practice of medicine in the Commonwealth of Virginia, as set forth in a Notice of Informal Conference dated January 11, 2005.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Now, having properly considered the evidence and statements presented, the Committee makes the following Findings of Fact and Conclusions of Law:

1.      Mi Yong Kim, M.D., was issued license number 0101-023297 by the Board to practice medicine and surgery in the Commonwealth of Virginia on June 11, 1973.  Said license is currently active, and will expire on September 30, 2006.

2.      Dr. Kim violated Section 54.1-2915(3) [*formerly Section 54.1-2915.A(3)*], as further defined in Sections 54.1-2914.A(8) and (11), in the care and treatment of Patient A, a 26 year-old female with a history of anemia and sickle cell disease.  Specifically:

a.     On or about November 16, 2002, Dr. Kim failed to order appropriate laboratory studies and to document an appropriate history or physical examination before terminating the patient's pregnancy.

b.     On or about November 16, 2002, at or after 1000 hours, Dr. Kim failed to properly administer Versed (midazolam, C-IV), a short-acting benzodiazepine central nervous system depressant indicated for sedation, as part of the intravenous conscious sedation protocol for Patient A.  Dr. Kim administered a total of 25 mg Versed to Patient A over approximately ten (10) minutes, in response to Patient A's complaints of pain, without allowing time to evaluate the sedative effect fully.  Dr. Kim stated to the Committee that she did not administer an analgesic to Patient A for pain because she depends only on Versed for conscious sedation, explaining that under Versed, a patient goes so deep that they do not remember the pain.  Further, she stated that the use of Versed alone is less dangerous than in combination with pain medication, since in the event of an unanticipated reaction, she would only have to use one reversal agent.  Dr. Kim's judgment and knowledge of intravenous conscious sedation is inadequate and insufficient to allow her to supervise a Certified Registered Nurse Anesthetist ("CRNA").

c.     Once Dr. Kim completed the procedure, Patient A's pulse oximetry reading was 70% and she erroneously concluded that the patient had a pulse.  Without confirming that Patient A was breathing, Dr. Kim instructed her staff to administer oxygen to Patient A by mask and telephone 911, at or before 1029 hours.  Dr. Kim

administered Romazicon to reverse the effects of Versed, but failed to determine whether Patient A was in cardiac arrest, to initiate cardiopulmonary resuscitation or to defibrillate Patient A.   Emergency medical personnel transported Patient A from Dr. Kim's practice to Inova Alexandria Hospital, Alexandria, Virginia, where Patient A expired at or about 1111 hours.  A Report of Autopsy indicated the cause of death as probable air embolism; and noted a blood midazolam level of 0.61 mg/L, and a liver midazolam level of 3.0 mg/Kg.

      d.     On or about November 16, 2002, Dr. Kim was not certified in Advanced Cardiopulmonary Life Support ("ACLS"), nor was she competent to perform an intubation.  No one else at her office was qualified to perform an intubation or use the equipment on the crash cart.

      e.     Dr. Kim failed to document an operative report for the procedure performed on or about November 16, 2002.  Dr. Kim explained to the Committee that the police instructed her not to make any further notations in her file.

3.     Since in or about September 2004, a CRNA has been used to administer intravenous conscious sedation in Dr. Kim's office.

4.     Since sometime after November 2002, a standard pre-operative complete blood count is performed on all patients prior to initiating the termination of a pregnancy.

5.     Dr. Kim stated to the Committee that she now employs three (3) medical assistants in her office who are certified to perform cardiopulmonary resuscitation.

6.      Dr. Kim stated to the Committee that she is now ACLS certified and knowledgeable about the use of the equipment on a crash cart.

### ORDER

WHEREFORE, based on the above Findings of Fact and Conclusions of Law, it is hereby ORDERED that Mi Yong Kim, M.D., must comply with the following terms and conditions imposed upon her license to practice medicine and surgery in the Commonwealth of Virginia:

1.      Within forty-five (45) days of entry of this Order, Dr. Kim must submit written certification to the Board that she has read and understands the Board's General Regulations for Office-Based Anesthesia (18 VAC 85-20-310 et seq.), and that her practice conforms with these Regulations.

2.      Dr. Kim is prohibited from administering conscious sedation, deep sedation, or general anesthesia, or serving as the supervising physician for a CRNA providing such services.  For surgical procedures performed by Dr. Kim, she must utilize another physician, or a CRNA, to provide such sedation or anesthesia.  In such instances, a CRNA must be supervised by a licensed physician who meets the qualifications of the Board's General Regulations for Office-Based Anesthesia (18 VAC 85-20-310 et seq.).

3.      Dr. Kim shall maintain a log of all surgical procedures performed under conscious sedation, deep sedation, or general anesthesia in her office.  The log shall include the name and signature of the CRNA or physician administering the sedation or anesthesia, and the name of the physician providing supervision to the CRNA.

4.     Dr. Kim shall document complete history and physical examinations in each patient's medical record prior to initiating a surgical procedure in her office.

5.     The terms and conditions of this Order shall remain in full force and effect until Dr. Kim requests modification of this Order and appears before an administrative proceeding of the Board.

6.     Dr. Kim shall maintain a course of conduct in her practice of medicine commensurate with the requirements of Title 54.1, Chapter 29 of the Code and all laws of the Commonwealth.

7.     Dr. Kim shall cooperate with the Virginia Board of Medicine and the Department of Health Professions in the investigation or inspection of her practice to verify that she is in compliance with this Order.

8.     Dr. Kim shall notify the Executive Director of the Board, by certified mail, of any change of address within ten (10) days of such occurrence.

9.     Dr. Kim shall notify the Executive Director of the Board immediately, in writing, should she intend to change the location of her practice.

Violation of this Order may constitute grounds for suspension or revocation of Dr. Kim's license. In the event that Dr. Kim violates this Order, an administrative proceeding may be convened to determine whether her license shall be suspended or revoked.

Pursuant to Section 54.1-2400.2(F) of the Code, the signed original of this Order shall remain in the custody of the Department of Health Professions as a public record, and shall be made available for public inspection and copying upon request.

Order – Mi Yong Kim, M.D.
Page 6 of 6

Pursuant to Section 54.1-2400(10) of the Code, Dr. Kim may, not later than 5:00 p.m., on May 8, 2005, notify William L. Harp, M.D., Executive Director, Virginia Board of Medicine, 6603 West Broad Street, Fifth Floor, Richmond, Virginia 23230-1712, in writing that she desires a formal administrative hearing before the Board. Upon the filing with the Executive Director of a request for the hearing, this Order shall be vacated.

Therefore, this Order shall become final on May 8, 2005; unless a request for a formal administrative hearing is received as described above.

FOR THE BOARD

William L. Harp, M.D.
Executive Director
Virginia Board of Medicine

ENTERED: 4/5/05

VIRGINIA:

## BEFORE THE BOARD OF MEDICINE

IN RE:     **MI YONG KIM, M.D.**
           **License No.: 0101-023297**

### ORDER

In accordance with Sections 54.1-2919 and 9-6.14:11 of the Code of Virginia (1950), as amended ("Code"), an informal conference was held with Mi Yong Kim, M.D., on March 4, 1999, in Fredericksburg, Virginia. Members of the Virginia Board of Medicine ("Board") serving on the Informal Conference Committee ("Committee") were Cheryl Jordan, M.D., Chairman; Harry C. Beaver, M.D.; and Connell J. Trimber, M.D. Dr. Kim appeared personally and was represented by legal counsel, Bernard J. DiMuro, Esquire, and Nina J. Ginsberg, Esquire. The purpose of the informal conference was to inquire into allegations that Dr. Kim may have violated certain laws governing the practice of medicine in the Commonwealth of Virginia, as set forth in a Notice of Informal Conference dated December 18, 1998.

### FINDINGS OF FACT

Now, having properly considered the statements and information presented, the Committee makes the following Findings of Fact:

1. At approximately 11:00 a.m. on May 17, 1997, Patient A presented to Dr. Kim at her office for the purpose of terminating her pregnancy. The patient stated to Dr. Kim that her last menstrual period had been at the end of March. Dr. Kim stated that she performed a pelvic examination and believed the patient to be eight weeks pregnant. Dr. Kim proceeded to dilate the cervix and introduced a size 8 cannula. The amniotic sac ruptured, and Dr. Kim determined that the volume of amniotic fluid was too profuse for an eight-week pregnancy. Dr. Kim reexamined the patient and estimated her pregnancy at 24-26 weeks. Dr. Kim advised the patient to go to the hospital. The patient left Dr. Kim's office to return home to arrange for child care, and did not admit herself to Fairfax Hospital in Falls Church, Virginia, until approximately 4:00 p.m. on that day.

2. After the patient was admitted to Fairfax Hospital, Dr. Kim continued the termination of Patient A's pregnancy by the administration of I.V. pitocin and prostaglandin gel. Nursing staff suggested that Dr. Kim have a sonogram performed to determine gestational age. Dr. Kim instructed a resident to perform a sonogram to determine the biparietal diameter (BPD) measurement only, and not to perform a full scan. The resident performed the BPD

Dr. Kim

sonogram and recorded the gestational age at 26 4/7 weeks. Further, the resident found the fetal heart beat to be low, and informed Dr. Kim of her finding. By her statements, Dr. Kim made no further effort to determine the gestational age, and declined to apply a fetal heart rate monitor. Dr. Kim failed to reassess the management of the patient, and continued efforts to terminate the pregnancy. Further, Dr. Kim failed to involve the patient in any decision as to continuation of care.

3. On or about May 18, 1997, at approximately 8:00 p.m., Patient A had not yet aborted the fetus. Dr. Kim performed a hysterotomy and delivered a stillborn fetus weighing 990 grams with features consistent with a gestational age of 26 4/7 weeks.

4. On or about May 23, 1997, Fairfax Hospital summarily suspended Dr. Kim's clinical privileges. The summary suspension was based on Dr. Kim's failure to assess adequately the stage of Patient A's pregnancy before beginning an abortion procedure, and Dr. Kim's subsequent failure to date the pregnancy accurately in a timely fashion once the patient was in the hospital. After hearing and appellate review, the Board of Trustees of Inova Health Care Services, the governing body of Fairfax Hospital, affirmed the suspension of Dr. Kim's clinical privileges.

5. Dr. Kim stated that in March 1998, following an investigation and in lieu of proceedings, she resigned her privileges at Fair Oaks Hospital.

6. Dr. Kim stated that, subsequent to Patient A's discharge from the hospital, she did not provide specific information to Patient A about the medical procedures followed in the hospital, the condition or gestational age of the fetus, or the future impact of the pregnancy termination procedure used.

7. Dr. Kim failed to provide the Committee with any evidence of appropriate interview, history or physical examination prior to beginning the termination of Patient A's pregnancy.

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact, the Committee concludes that Dr. Kim is in violation of Section 54.1-2915.A(3), as further defined in Section 54.1-2914.A(9) and (10) of the Code.

Dr. Kim

## ORDER

WHEREFORE, based on the foregoing Findings of Fact and Conclusions of Law, it is hereby ORDERED that the license of Mi Yong Kim, M.D., be, and hereby is, placed on INDEFINITE PROBATION upon the following terms and conditions:

1. Within six (6) months of entry of this Order, and pursuant to Section 54.1-2923 of the Code, a Medical Practices Audit Committee ("MPAC") shall be impaneled to conduct an inquiry into Dr. Kim's medical practice, with a report to be submitted to the Executive Director of the Board. The report of the MPAC shall include an evaluation of Dr. Kim's patient histories, physical examinations and follow up care. The report of the MPAC shall be presented to the informal conference committee to make a final determination regarding any issue which may arise during the MPAC inquiry.

2. Dr. Kim shall report to the Executive Director of the Board, within seven (7) days of occurrence and on a form provided by the Board, any case that she refers for further care outside of her own practice. The Executive Director shall review the cases submitted pursuant to this term, and identify any cases for follow up by an inspector of the Department of Health Professions.

3. Within thirty (30) days of entry of this Order, Dr. Kim shall provide to the Executive Director of the Board a listing of all of her office staff and their licensure status and qualifications, a copy of all of her office protocols, and a copy of all of her informed consent forms. Further, within the period of probation, should Dr. Kim make any changes in her office staff, office protocol, or informed consent forms, she shall, within thirty (30) days of such change, provide a copy to the Executive Director of the Board.

4. In approximately six (6) months, and following receipt by the Board of the report of the MPAC, Dr. Kim shall be noticed to appear before an informal conference of the Board. Said committee shall provide the ongoing monitoring of Dr. Kim's Order, determine the frequency of further appearance by Dr. Kim before it, and shall serve as the instrument of the Board responsible for reviewing and approving all information relative to the terms and conditions of this Order.

Dr. Kim


5. Dr. Kim shall maintain a course of conduct in her practice of medicine commensurate with the requirements of Title 54.1, Chapter 29 of the Code and all laws of the Commonwealth.

6. Violation of this Order constitutes grounds for the revocation of the license of Dr. Kim. In the event Dr. Kim violates the terms of this Order, an administrative proceeding will be convened to determine whether the license of Dr. Kim should be revoked.

Pursuant to Section 9-6.14:14 of the Code, the signed original of this Order shall remain in the custody of the Department of Health Professions as a public record, and shall be made available for public inspection and copying upon request.

Dr. Kim may, not later than 5:00 p.m., on April 11, 1999, notify Warren W. Koontz, M.D., Executive Director, Board of Medicine, 6606 West Broad Street, Richmond, Virginia 23230, in writing that she desires a hearing before the Board. Upon the filing with the Executive Director of a request for the hearing, this Order shall be vacated.

Therefore, this Order shall become final on April 11, 1999, unless a request for a hearing is received as described above.


                                        FOR THE BOARD


                                        Warren W. Koontz, M.D.
                                        Executive Director
                                        Virginia Board of Medicine


                                        Entered: _March 5, 1999_

VAS/KIMORD.DOC

4