Deborah A. Ferguson  
Craig H. Durham  
**Ferguson Durham PLLC**  
223 S. 6th St., Suite 325  
Boise, Idaho 83702  
(208) 345-5183  
daf@fergusondurham.com  
chd@fergusondurham.com  

Richard Alan Eppink  
Molly Kafka  
**ACLU of Idaho Foundation**  
P.O. Box 1897  
Boise, Idaho 83701  
(208) 344-9750  
reppink@acluidaho.org  
mkafka@acluidaho.org  

Hannah Brass Greer  
**Planned Parenthood of the Great Northwest and the Hawaiian Islands**  
2001 East Madison Street  
Seattle, Washington 98122  
(206) 427-3208  
hannah.brassgreer@ppgnhi.org  

Carrie Flaxman  
**Planned Parenthood Federation of America**  
1110 Vermont Avenue, NW, Suite 300  
Washington, D.C. 20005  
(202) 973-4830  
carrie.flaxman@ppfa.org  

**Attorneys for Plaintiff**

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| PLANNED PARENTHOOD OF THE GREAT NORTHWEST AND THE HAWIIAN ISLANDS, a Washington Corporation,<br><br>Plaintiff,<br><br>v.<br><br>LAWRENCE G. WASDEN, et al.,<br>Defendants. | Case No. 1:18-cv-319-DCN<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION [DKT. 7]** |

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). This is especially so here, where the Act implicates professional licensure, to which there is a constitutionally protected right. *Gallo v. U.S. District Court*, 349 F.3d 1169, 1179 (9th Cir. 2003). The Act's provisions are so broad and nonsensical that medical providers must guess what is required of them to avoid penalties and professional sanctions. The Court should reject the State's attempt to rewrite the statute. The Act cannot survive this constitutional challenge.

### I. Because the statute is unconstitutionally vague, Planned Parenthood is likely to succeed on the merits of its claim.

#### A. Defendants misconstrue the statute.

The Court must follow the definition of complication established by the legislature. *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) (also cited by Defendants with approval). The Defendants may not rewrite the Act to avoid a vagueness challenge. Idaho agencies cannot erase distinctions that were legislatively created and mandated. *Holly Care Center v. State of Idaho*, 110 Idaho 76, 79, 714 P.2d 45, 48 (1986). Defendants contend that the statute allows medical providers to determine whether, according to their reasonable medical judgment, any of the 37 complications listed by the legislature are "an abnormal or deviant process or event arising from the performance or completion of an abortion." Defs.' Mem. in Opp'n to Prelim. Inj. ("Def. Memo") at 8–9. This conflicts with the Act's plain language. According to the definition provided by the legislature, these 37 conditions are legislatively mandated to be "abnormal or [] deviant process[es] or event[s] arising from the performance or completion of an abortion." I.C. § 39-9503(2). This Court may not rewrite the statute to save it. *Planned Parenthood of Idaho v. Wasden*, 376 F.3d 908, 925 (9th Cir. 2004).

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION – Page 1

### 1. The legislature's definition of complication defines what the term means.

It is self-evident that the words following "complication" define it, because the language appears in I.C. § 39-9503, the section of the Act titled "DEFINITIONS." It is also evident because the legislature tells us in the Act that the word complication "*means*" something. Namely, "'complication' *means* an abnormal or deviant process or event arising from the performance or completion of an abortion, *as follows*:" and then lists 37 specific conditions that the legislature has deemed complications (emphasis added). "When a statute includes an explicit definition," a court "must follow that definition, even if it varies from a term's ordinary meaning." *Digital Realty Trust, Inc. v. Somers*, 138 S. Ct. 767, 776–77 (2018) (internal quotation marks omitted). Moreover, "[a]s a rule, [a] definition which declares what a term 'means' . . . excludes any meaning that is not stated." *Burgess v. United States*, 553 U.S. 124, 130 (2008). The Idaho Supreme Court has made it even clearer: "Statutory interpretation that turns on [l]egislative definitions of terms included within a statute presents a straight-forward analysis, as those definitions control and dictate the meaning of those terms as used in the statute." *In Re Decision on Joint Mot. to Certify Question of Law to Idaho Sup. Ct.*, No. 45187, 2018 WL 472145, at *4 (Idaho Jan. 17, 2018) (internal quotation marks omitted). The statutory definition does not define the 37 listed things to be "complications" only if they are abnormal or deviant processes or events. Rather, by stating that the abnormal or deviant processes and events are "as follows," the legislature explicitly defined each of the 37 things it listed to be "complications" that providers must report pursuant to I.C. § 39-9504(1), the section that follows the definitions.

Defendants' construction, asserting that "abnormal or deviant process or event" is only a qualifying phrase, would have the strange result of leaving the term "complication" undefined,

even though the legislature has told us what it "means." But a definition in a statute does not provide an exception to it; instead, it gives meaning to a term. *Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1070 (2018); *cf. Estate of Reynolds v. Martin*, 985 F.2d 470, 473 (9th Cir. 1993) (considering a true qualifying clause—"[e]xcept as otherwise specifically provided").

### 2. The Act does not give providers discretion to disregard its definition.

Nowhere in the definitional section of the Act, or elsewhere, does the legislature give providers discretion to exercise their reasonable medical judgment to disregard what the legislature determined to be an abortion complication as a matter of law. The Act does not state that the 37 conditions listed *can be* complications if a provider believes they are an abnormal and deviant process or event arising from an abortion. Defendants try to augment a statute with limiting language that is not there. *See Holly Care Center*, 110 Idaho at 78, 714 P.2d at 47 (holding that agency interpretations invalid if they do not carry into effect the legislature's intent as set forth in the statute). The plain meaning of the definition of complication is that each of the listed 37 conditions (I.C. § 39-9503(2)(a)–(kk)) is, as a matter of statutory law, "abnormal or deviant" regardless of reasonable medical judgment.

The statute itself does not allow medical providers to rely on their medical understanding of "complication" and instead leaves them in a quandary about what they must report, and the risk to their licensure if they chose wrong. Indeed, the phrase "reasonable medical judgment" occurs in the Act only once:

> 39-9504. ABORTION COMPLICATION REPORTING. (1) Every hospital, licensed health care facility or individual medical practitioner shall file a written report with the department regarding each woman who comes under the hospital's, health care facility's or medical practitioner's care and reports **any complication**, requires medical treatment or suffers death that the attending medical practitioner has reason to believe, **in the practitioner's reasonable medical judgment**, **is a direct or an indirect result of an abortion**. (emphases added).

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION – Page 3

Though this provision allows a practitioner to exercise judgment in determining whether a "complication" is the result of an abortion, it does not grant the practitioner discretion to decide that one of the listed "complications" is not "abnormal or deviant."

If the legislature wanted to allow practitioners the ability to disregard any of the 37 listed complications whenever a provider believed they were not an abnormal or deviant process or event, it would have explicitly provided for that discretion. But it did not. The discretion for a practitioner to exercise "reasonable medical judgment" occurs but once in the statute. When a statute includes a provision in one part, but excludes that provision in another part of the same statute, the difference is intentional. *Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) ("We have often noted that when Congress includes particular language in one section of a statute but omits it in another—let alone in the very next provision—this Court presume[s] that Congress intended a difference in meaning." (internal quotation marks omitted)). That is exactly the situation here. "Reasonable medical judgment" appears only in I.C. § 39-9504, allowing practitioner discretion over the decision of whether a listed complication is the direct or indirect result of an abortion, not whether a process or event is "abnormal or deviant."

The State cryptically contends that its interpretation effectuates the use of reasonable medical judgment in I.C. § 39-9504, arguing: "That qualifying phrase is integrally related to the 37 items listed in that statute and effectuates the words 'reasonable medical judgment' under Idaho Code § 39-9504." Def. Memo at 15. But the legislature failed to extend "reasonable medical judgment" to modify the list of the things it has deemed "complications" in I.C. § 39-9503(2). To read "reasonable medical judgment" into the definition of a complication where it does not appear would, in fact, leave no reason to grant the more specific medical discretion over "direct or indirect" causation in I.C. § 39-9504. And as the State correctly points out, "The

elementary principle of statutory construction requires the Court 'to give effect, if possible, to every clause and word of a statute.'" Def. Memo at 8, *quoting King v. Burwell*, 135 S. Ct. 2480, 2498 (2015). The Plaintiff does not ask the Court to ignore the phrase "abnormal or deviant process or event" but instead to accept it as the legislature's chosen definition.

In her declaration, Ms. Lawler, an employee of the Idaho Board of Medicine, states she is not confused by the Act, and her employer construes the Act as the State argues, namely as allowing it to determine as an initial matter, whether one of the 37 items listed in the Idaho Code is "an abnormal or deviant process or event . . . ." Lawler Decl. ¶¶ 5, 8, Dkt. 12-2.  Ms. D'Arcy-Evans, a nurse mid-wife, is also of the opinion that the list of 37 complications should be treated as suggestions or possible "qualifying conditions," believing the legislature has given her the discretion to decide if any of these conditions must be reported. D'Arcy-Evans Decl. ¶¶ 5, 6, Dkt. 12-4. Neither of these opinions, offered as conclusory assertions, addresses the detailed specifics of Plaintiff's declarations. Nor are they relevant to how the Court should apply the laws of statutory construction. Further, neither declarant possesses the legal authority to definitively interpret the Act for all of the named Defendants who can seek fines and professional and criminal sanctions under the Act. Because these interpretations are not "reasonable and readily apparent" from the statute's plain language, this Court cannot adopt them. *Planned Parenthood of Idaho,* 376 F.3d at 932.

### 3. Reporting of indirect complications increases the vagueness of the Act.

Likewise, Defendants misunderstand Planned Parenthood's vagueness challenge as to "indirect" complications.[1] It is not that the word indirect is, in and of itself, vague. But when

---

[1] Defendants misread the plain meaning of the Act in an additional respect as well, and allege that a provider would only have to report "when its practitioners are in fact the ones to treat a woman for such complication". Def. Memo at 9, 17. This is incorrect. Reporting under I.C. § 39-9504(1) is triggered by three, not one, scenarios. Reporting is mandatory for "each woman who comes under …care and [1] *reports any complication,*

linked to a result, it becomes so. As Dr. Holmquist states, "I also do not understand what might be considered an 'indirect result' of an abortion procedure, as complications are understood to arise as a direct result of a patient's primary condition." Holmquist Decl. ¶¶ 39, 55, Dkt. 7-5. The Act contains no direction, guidance, or parameters to inform a provider as to how "indirect" the result could be to trigger reporting. *Id.*; *see also* Dr. A Decl. ¶ 39, Dkt 8-2. This requirement to report "indirect results" of abortion exacerbates the Act's excessive vagueness even further.

### B. The Idaho Act has even greater vagueness problems than the Indiana Act does.

All of the 26 complications in the Indiana statute also appear in the Idaho statute. The Indiana federal court found all 26 conditions "so broad and vague that they do not remedy the uncertainty of the general definition of 'abortion complication.'" Dkt. 7-2, ¶ 23. The court chose the term "hemorrhaging" as but one example of the vagueness, holding that because "[t]he term is not defined in the challenged statute," it causes "ambiguity as to when expected bleeding becomes 'reportable bleeding.'" *Id*. ¶ 23. Accordingly, it "would be difficult for practitioners to know the threshold for reporting," and therefore the statute is likely unconstitutionally vague. *Id.* ¶¶ 23–25. The Indiana district court also found the statute vague because the list included normal side effects, and chose three as examples: "emotional complications," "adverse or allergic reaction to anesthesia or other drugs," and "physical injury associated with care received in the abortion facility." *Id*. ¶ 26. These same terms in the Idaho statute are vague for the same reason. The Indiana court found that "the State cannot avoid a vagueness challenge by adding limiting language which is not there." *Id*. The Idaho list contains 12 additional complications, beyond the 25 it shares in common with Indiana's statute.[2] Their inclusion makes the Idaho Act even

---

[2] requires medical treatment or [3] suffers death . . . ." The duty to report any complication a patient discloses to her provider significantly expands the reporting requirement. *See* Upadhyay Decl. ¶ 24, Dkt 7-7.

[2] The additional complications are: (b) Injury or damage to any organ inside the body; (e) Heavy or

more vague than the enjoined Indiana statute, as they are also amorphous complications, as Plaintiff's declarations establish, like "(e) heavy or excessive bleeding."

### C. The complications as defined by the Act are themselves impermissibly vague.

Even under Defendants' attempted rewrite of the statute, the Court must still review the complications to determine if they are impermissibly vague.[3] The State does not dispute the vagueness and internal inconsistencies highlighted by Plaintiff, and offers no evidence or argument to refute the specific vagueness challenges.[4] The myriad questions caused by the Act's vagueness go unanswered by the State.[5] *See, e.g.,* Holmquist Decl ¶¶ 38, 43, Dkt. 7-5 (explaining that she does not understand what "physical injuries" and "emotional complications" mean); Dr. A Decl. ¶¶ 31-33, 36 (same).

### II. Planned Parenthood is likely to succeed on the merits of its equal protection and due process claims because the Reporting Act is irrational.

Defendants fail to refute Plaintiff's persuasive showing that the Act is irrational because: "(1) the Idaho Legislature was motivated by 'animus' when it passed the Act . . . ; (2) the Act

---

excessive bleeding; (h) Blood transfusion; (k) The need for follow-up care, surgery or an aspiration procedure for incomplete abortion or retained tissue; (l) Weakness, nausea, vomiting or diarrhea that lasts more than twenty four (24) hours; (m) Pain or cramps that do not improve with medication; (n) A fever of one hundred and four-tenths (100.4) degrees or higher for more than twenty-four (24) hours; (s) Endometritis; (ee) Subsequent development of breast cancer; (ff) Inability, refusal or unwillingness to have follow-up care, surgery or an aspiration procedure following an incomplete abortion or retained tissue; (gg) Inability, refusal or unwillingness to have a follow-up visit; and (hh) Referral to or care provided by a hospital, emergency department or urgent care clinic or department.

[3] The State argues that if any conditions are found to be vague by the Court, they should be severed pursuant to Idaho Code § 39-9509. Def. Memo at 10 n.6. Severability is not warranted in this case. "Severability clauses, it is true, do express the enacting legislature's preference for a narrow judicial remedy. As a general matter, we attempt to honor that preference. But our cases have never required us to proceed application by conceivable application when confronted with a facially unconstitutional statutory provision." *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2319 (2016). Like the statute in *Whole Woman's Health*, the Act is facially unconstitutional. As the Supreme Court explained, severability clauses should not lead courts to "devise a judicial remedy that . . . entail[s] quintessentially legislative work." *Id.* So, too, here. The Court should not rewrite the Act. *Planned Parenthood of Idaho v. Wasden*, 376 F. Supp. 2d 1012, 1021 (D. Idaho 2005).

[4] In her declaration, like the State's other declarants, Dr. Thompson states she is not confused by the Act and believes the list of 37 complications are merely "qualifying conditions." Thompson Decl. ¶ 9, Dkt. 12-1. However, she completely fails to address the many vagueness questions raised by Plaintiff's declarants.

[5] Over a page and a half of these unanswered questions are found in Plaintiff's Memorandum for a Preliminary Injunction at 14–15, Dkt. 7-1, as well as the Declarations of Drs. A and Holmquist.

will collect inaccurate, useless, and unusable information . . . ; (3) the Act will not facilitate reliable scientific studies or research . . . ; and (4) the reports from the Act will confuse women about abortions." Def. Memo at 21.

For example, Defendants make no mention at all of the opinion of Dr. Upadhyay, a preeminent nationally recognized epidemiologist, and her grave concerns with the Act, or any attempt to refute this unopposed opinion. Dr. Upadhyay unequivocally stated the Act necessarily will collect inaccurate information on the abortion procedure and its "complications" as its classification system is irrational and cannot and will not facilitate reliable scientific studies or research. Upadhyay Decl. ¶ 14, Dkt. 7-7. She found the reports required under the Act (and the resulting data the Department must make publicly available) will be useless and unusable for evidence-based scientific research. *Id*. Specifically she opined that "because the reported data that will result from the Act do not and cannot conform to any rational classification system, any reports made from these data will only serve to confuse women seeking abortions by making abortion seem more dangerous than the very safe procedure it is." *Id*.

The State's complete lack of a response shows its blind spot when it comes to abortion, believing the rational basis test allows it to be as irrational as it wants because "abortion is different." Def. Memo at 2, 21, 24. But *Bellotti v. Baird*, 428 U.S. 132, 149 (1976), and *Harris v. McRae*, 448 U.S. 297, 325 (1980), which Defendants cite, are inapposite. In *Bellotti*, the Court made clear that the constitutionality of treating abortion differently depends on the degree of distinction "and the justification for it." *Bellotti*, 428 U.S. at 149. *Harris* involved Congress's election not to affirmatively fund abortions through Medicaid, not an imposed reporting requirement carrying professional and criminal sanctions.

When statutes are enacted purportedly to further public health, as here, it is irrational to

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION – Page 8

apply them to only one medical procedure while ignoring all others, particularly when others are less safe. *See, e.g., Planned Parenthood v. Van Hollen*, 738 F.3d 786, 790 (7th Cir. 2013) ("An issue of equal protection of the laws" is "lurking" where a statute requires doctors performing abortions to have admitting privileges at a local hospital, "[f]or the state seems indifferent to complications from non-hospital procedures other than surgical abortion (especially other gynecological procedures), even when they are more likely to produce complications.").

The data is overwhelming, and unchallenged, that abortion is tremendously safe. In *Whole Woman's Health*, 136 S. Ct. at 2311, the Supreme Court relied on evidence that abortion was "extremely safe with particularly low rates of serious complications and virtually no deaths occurring on account of the procedure." *Id*. "Nationwide, childbirth is 14 times more likely than abortion to result in death," *id*. at 2315, and "[c]olonoscopy . . . has a mortality rate 10 times higher than an abortion," *id*. The State's failure to require reporting of complications from other medical procedures cannot be rational where the State is acting, it claims, to further women's health, and its insistence that abortion is different cannot cure the Act's irrationality.

### III. The Reporting Act's confidentiality provisions are null and void, and Plaintiff is also likely to succeed on its informational privacy claim.

The State makes the remarkable argument that the Act implicitly repealed the legislature's recent 2015 amendment to the Idaho Public Records Act, I.C. § 74-122. This law requires that after January 1, 2016:

> "[a]ny statute which is added to the Idaho Code and provides for the confidentiality or closure of any public record or class of public records shall be placed in the Public Records Act. Any statute which was added to the Idaho Code on and after January 1, 2016, and which provides for confidentiality or closure of a public record or class of public records and is located at a place other than this chapter"—as is the case here—"shall be null, void and of no force and effect regarding the confidentiality or closure of the public record and such public record shall be open and available to the public for inspection as provided in this chapter."

I.C. § 74-122. When a legislature amends a statute such as the Public Records Act, the Court

REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION – Page 9

must assume it intended to change or clarify existing law. "It is a well-established rule of this Court that 'where an amendment is made it carries with it the presumption that the legislature intended the statute thus amended to have a meaning different than theretofore accorded it.'" *In Treasure Valley Concrete, Inc. v. State*, 132 Idaho 673, 676 (1999) (citations omitted).  Further, "[i]n enacting amendments to existing statutes, the legislature must have intended to clarify, strengthen, or make some change in existing statutes." *Stonecipher v. Stonecipher*, 131 Idaho 731, 735 (1998). Here the 2015 amendment to the Public Records Act explicitly requires new disclosure exemptions be added to the Public Records Act itself, and invalidates any contrary provisions as "null, void and unenforceable."

Both statutes are less than four years old. It strains credulity that the legislature intended to implicitly repeal the "older" law it had also just passed.  The public disclosure of the reports required by I.C. § 74-122 imposes a grave danger to Idaho providers and patients and is yet another sound reason that compels the Court to enjoin the Act.

Plaintiff has met the requirements of a preliminary injunction. As set forth in Plaintiff's opening brief, the Plaintiff has demonstrated it will suffer irreparable harm unless the Act is enjoined. A balancing of the equities in light of that harm and the public's interest require that the Court enjoin the enforcement of the Act.

Dated September 7, 2018     Respectfully submitted,

/s/ Deborah A. Ferguson
Deborah A. Ferguson
Craig H. Durham
**Ferguson Durham PLLC**

Hannah Brass Greer
**Planned Parenthood of the Great Northwest and the Hawaiian Islands**

Carrie Flaxman

**Planned Parenthood Federation of America**
1110 Vermont Avenue, NW, Suite 300
Washington, D.C. 20005
(202) 973-4830
carrie.flaxman@ppfa.org

Ritchie Alan Eppink
Molly Kafka
**American Civil Liberties of Idaho Foundation**

**Attorneys for Plaintiff**

CERTIFICATE OF SERVICE

    I CERTIFY that on the 7th day of September, 2018, I filed Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for a Preliminary Injunction electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

cynthia.wallace@ag.idaho.gov
peter.wucetich@ag.idago.gov

Attorneys for Defendants

                                                                      /s/ Craig H. Durham