# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PLANNED PARENTHOOD OF THE GREAT NORTHWEST AND THE HAWAIIAN ISLANDS, a Washington Corporation,<br><br>      Plaintiff,<br><br>      v.<br><br>LAWRENCE G. WASDEN, in his official capacity as Attorney General of Idaho; JAN M. BENNETTS, in her official capacity as Ada County Prosecuting Attorney; GRANT P. LOEBS, in his official capacity as Twin Falls County Prosecuting Attorney; THE INDIVIDUAL MEMBERS OF THE IDAHO STATE BOARDS OF MEDICINE AND NURSING, in their official capacities; and RUSSELL S. BARON, in his official capacity as Director of the Idaho Department of Health and Welfare,<br><br>      Defendants. | Case No. 1:18-cv-00319-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. OVERVIEW

Pending before the Court is Plaintiff Planned Parenthood of the Great Northwest and the Hawaiian Islands' ("Planned Parenthood") Motion for Preliminary Injunction. Dkt. 7. After holding oral argument, the Court took the motion under advisement. Upon review, the Court now issues the following decision DENYING the motion.

## II. BACKGROUND

On July 1, 2018, the Abortion Complications Reporting Act ("the Act") went into effect in Idaho. Codified as Idaho Code section 39-9501 et seq., the Act requires that all medical providers who perform abortions—including hospitals, licensed health care facilities, and medical practitioners—file a written report with the Idaho Department of Health and Welfare ("IDHW") concerning any direct or indirect complications stemming from an abortion.

Defendants ("the State") contend that the Act was implemented to collect valuable information about abnormal events that occur because of an abortion and that this information is necessary to protect public health and safety. Planned Parenthood, on the other hand, asserts that animus was the motivating factor behind the Act and that the reporting requirements are unconstitutional. Planned Parenthood now seeks a preliminary injunction enjoining the State from enforcing the Act during the pendency of this litigation.

## III. LEGAL STANDARD

Plaintiffs seeking a preliminary injunction must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (internal citations omitted). The basic function of a preliminary injunction is to "preserve the status quo ante litem pending a determination of the action on the merits." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). A

preliminary injunction should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The Court will address each of the necessary elements for a preliminary injunction in turn.

## IV. ANALYSIS

### A. Success on the merits

Planned Parenthood proposes that the Act's constitutional violations fall into four main categories: vagueness, equal protection, due process, and null and void privacy requirements. In support of each proposition, Planned Parenthood discusses at length the various complications outlined in the Act and whether they are truly medical complications. In response, the State likewise spends a great deal of time discussing the finer points and nuances within the Act. These are assuredly valid arguments, and the details have been insightful to the Court, but at this stage of the litigation, the Court seeks to determine—broadly—whether there is sufficient evidence to support a finding in Plaintiff's favor. The details will be dealt with later in the litigation.

#### 1. Vagueness

First, Planned Parenthood argues that the Act is unconstitutionally vague. In short, this is the crux of the case. Generally speaking, Planned Parenthood alleges that the Act is so confusing in what it requires, and so broad in its scope, that a reasonable person would have a difficult time understanding what they must do to adequately comply.

The Act requires that:

Every hospital, licensed health care facility or individual medical practitioner shall file a written report with the department regarding each woman who comes under the hospital's, health care facility's or medical practitioner's care and reports any complication, requires medical treatment or suffers death that the attending medical practitioner has reason to believe, in the practitioner's reasonable medical judgment, is a direct or an indirect result of an abortion.

Idaho Code § 39-9504(1). The Act further defines complication as "an abnormal or a deviant process or event arising from the performance or completion of an abortion, as follows:" and then lists 37 complications. Idaho Code § 39-9503(2) et seq.

Planned Parenthood contends that many of these so-called complications are not complications at all, but normal minor side effects,[1] not true medical conditions,[2] not specific to abortions,[3] not possible in an abortion,[4] not related to abortions,[5] or almost all encompassing.[6]

Along with its concerns that many of the listed items bear little connection to abortions, Planned Parenthood contends that by saying a provider must report any of these issues if they arise "directly or indirectly" from an abortion, there is no way to know an appropriate timeframe—e.g. does an infection that arises a week later need to be

---

[1] Such as complication (e): heavy or excessive bleeding.

[2] Such as complication (gg): Inability, refusal, or unwillingness to have a follow-up visit.

[3] Such as complication (u): cardiac arrest, (w): renal failure, (y): shock, and (aa): coma.

[4] Such as complication (t): missed ectopic pregnancy (this occurs before an abortion would even take place).

[5] Such as complication (p): hypoglycemia (AKA low blood sugar).

[6] Such as complication (jj): any psychological or emotion condition reported by the patient.

reported—or what even qualifies as "indirect." Planned Parenthood provides the affidavit of Dr. A[7] who states that the Act is so confusing, even as a medical professional, she has no idea what the Act actually requires [of her].

In response, the State asserts that Planned Parenthood has left out the crucial qualifying statement of the Act that requires that these complications only need be reported if "in the practitioner's reasonable medical judgment" they stemmed from an abortion. The State further points out that under the definition of complication, the incident must be "an abnormal or deviant process or event" and therefore the Act does not, as Planned Parenthood suggests, require that practitioners report anything and everything but only complications that are *abnormal* and *in their professional opinion* arose directly or indirectly from an abortion.

Planned Parenthood takes issue with this reading of the statute and asserts that a provider does not have discretion in determining whether a complication is a complication (as each is explicitly laid out in list form as a complication), but that the provider or practitioner only has discretion in determining if the complication arose as a result of an abortion. The State counters that there is inherent discretion in determining if a complication is a complication with the preceding language in the definition that the medical condition be "abnormal or deviant." Thus, according to the State, a practitioner would never need to report simple bleeding or a light fever, but only heavy or excessive

---

[7] Dr. A is a pseudonym for a Doctor who wishes to remain confidential and anonymous for privacy and safety reasons.

bleeding and a high fever that persist for more than 24 hours. The State adds that some

discretion is built into the individual complications themselves (for example "heavy" is

not defined, so a practitioner has discretion in determining if the bleeding is truly

heavy/excessive or not). Admittedly, Planned Parenthood uses this exact example as why

the Act is vague rather than discretionary.

It is somewhat difficult to accept the State's argument that there is discretion in

determining what is a complication when the wording of the Act specifically states that

"'Complication' *means* an abnormal or a deviant process or event arising from the

performance or completion of an abortion, *as follows*." Idaho Code § 39-9503(2)

(emphasis added). In other words, the statute does not appear to give a practitioner

discretion in determining if a complication is abnormal, but instead *explicitly tells them*

*what complications are considered abnormal* and must be reported. This, however,

slightly conflicts with the State's position in briefing,[8] at oral argument,[9] and most

interestingly, with the recently published directions for reporting under the Act.

The Abortion Complications Reporting Form Instructions outline that "[i]f a

woman reports one or more of the following items to you and, *based upon your*

---

[8] "The Act does not strip Plaintiff's physicians from using their medical judgment to determine what is, and is not, a complication under the Act. Rather, the Act requires medical practitioners to report such things as "heavy or excessive bleeding" and "blood clots" when—and *only* when—those conditions are "an abnormal or a deviant process or event arising from the performance of completion of an abortion." Dkt. 12, at 8-9.

[9] "If you apply the complication in context to the remainder of the act, that reasonable medical judgment will be exercised. When they [medical practitioners] have to determine whether something is a complication, whether something is abnormal or deviant, they'll be automatically exercising their reasonable medical judgment . . . . We don't have to write those words into the Statute."

*reasonable medical judgment, it is an abnormal or a deviant process or event arising*

*from the performance or completion of an abortion*, you must report it . . ." Dkt. 14-1, at

2 (emphasis added).

Thus, the instructions seem to indicate that if a woman reports one of the 37 listed

complications, the practitioner has the discretion to determine both 1) if it is abnormal or

deviant and 2) if it arose from an abortion. Said differently, under the first interpretation

of the Act, if a woman reports an injury to her uterus, the practitioner *must* report it;

however, under the second, the practitioner would have the initial discretion of

determining whether that injury was abnormal or deviant. The Court understands the

State's argument; however, it is still difficult to reconcile it with the actual words of the

statute that a "complication means . . . as follows" which appear to take away the initial

discretion and instead tell a practitioner what is considered abnormal or deviant.

As the State noted at oral argument, the parties are "diametrically opposed" on this

issue of whether there is discretion in the actual determination of a complication.

Undoubtedly this topic will play an integral role in the remainder or this case, but at this

juncture, the Court need not reach a determination on that point, but simply ascertain

whether Planned Parenthood has carried its burden of proving there are questions of

vagueness in the Act.

In support of its proposition that the Act is not vague, the State has submitted

numerous affidavits—including from a medical practitioner, a midwife, and a member of

the state board of medicine—in which each individual states that they do not find the Act

confusing at all, and that based upon their experience and judgment, they do not foresee any difficulties in the reporting requirements.

Finally, the State considers Planned Parenthood's argument that it cannot understand what constitutes an abnormal complication somewhat disingenuous as it [Planned Parenthood] lists many of the exact same conditions on its own website as complications.[10] The Court finds this argument somewhat compelling. Although Planned Parenthood might not agree that some of the 37 listed items are worthy of reporting, it is difficult to accept that the Act is vague or that Planned Parenthood does not understand—medically—what the complications are, as it addresses many of the same issues on its website. Additionally, if some of the complications—like stroke—rarely if ever occur following an abortion, that does not make them vague, but (for lack of a better word) superfluous.

Finally, the parties are divided on what weight, if any, the Court should give to the District Court of the Southern District of Indiana's recent decision[11] to issue a preliminary injunction on a similar statute.

Planned Parenthood contends that the statutes are extremely similar and that this Court should follow the Indiana Court, by finding that Planned Parenthood is likely to succeed on its constitutional vagueness challenge, and grant an injunction.

---

[10] Planned Parenthood's website discusses approximately 19 of the 37 complications listed in the Act.

[11] A copy of the Southern District of Indiana's decision can be found at Docket 7-2.

For its part, the State asserts that the two Acts differ slightly, but that this small distinction makes all the difference. The State alleges that Indiana defined "abortion complication" as "*any* adverse physical or psychological condition arising from the induction or performance of an abortion," and provided a non-exclusive list of 26 examples of the types of conditions that qualify. *See* Ind. Code § 16-34-2-4.7 (emphasis added). The Indiana Court enjoined this law because it found the phrase "any adverse physical or psychological condition" vague and noted that, because the term "includes" was inserted before the list of conditions, that list could not be construed as an exclusive list.

The State contrasts this to the Act in Idaho where it is not just *any* adverse condition, but only those that are listed, and argues that because the Act does not use the word "includes" before its list of conditions, the list itself is exclusive. The Court agrees. While the two Acts are indeed similar, the impetus for the Indiana Court's decision is not present here. While there may be other reasons the Act is vague—perhaps the nature of the complications themselves, or the aforementioned "discretion" disagreement—it cannot be said that the same vagueness exists here as to the exclusivity of the list. As will be discussed below, the Court finds that irreparable harm will not occur in this case in the absence of an injunction. Therefore, even though there are similarities in the two statutes, the Court must take a different approach here then that taken by the Court in Indiana.

In conclusion, it appears Planned Parenthood is being a little myopic in its position regarding vagueness. While a lay person may not understand exactly how much bleeding (for example) is considered "heavy," such a determination is not as difficult for a medical

professional—particularly someone who performs abortions—to understand. Thus, the requirements are not so much vague, as they are technical.

On the other hand, the State's assertion that all the listed complications are easy to understand is a stretch. Some of the complications appear to be only tangentially related to abortion procedures, and more refined language may have better informed practitioners of what exactly they must report.[12] Additionally, there is the polarizing issue of discretion. Disagreement between the parties alone does not rise to the level of vagueness, however there does appear to be a chance of success on the merits of Planned Parenthood's vagueness challenge. The Court finds that this prong of the inquiry is met.

That said, the Court will briefly address Planned Parenthoods other constitutional challenges to help narrow the scope of this case moving forward.

### 2. Equal Protection

Planned Parenthood asserts that the Act is a discriminatory law that singles out only one type of medical procedure (abortion)—and those who perform them—when there are numerous other procedures (some vastly more complicated or dangerous) that could result in the same "complications" but require no reporting. Under an equal protection analysis, Planned Parenthood relies on *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 589 (9th Cir. 2008), and asserts that the Act categorizes them and impermissibly imposes a different and unique burden on them without any legitimate reason. *See City of*

---

[12] At the same time, the Court is persuaded by the State's argument that if certain complications are so far attenuated (as Planned Parenthood suggests) they are not vague at all but are (practically by definition) abnormal or deviant.

*Cleburne v. Cleburne Living Center*, 473 U.S. 432, 447-50 (1985). Citing various debates that took place during the Idaho legislative sessions, Planned Parenthood asserts that the motivation behind the Act's passage was animus and that the State has no legitimate basis for collecting information about abortions.

The State acknowledges that abortion is a constitutionally protected right, but asserts that the Supreme Court has specifically held that an abortion can be treated differently than other medical procedures because it is fundamentally different. *See Harris v. McRae*, 448 U.S. 297, 325 (1980) ("[a]bortion is inherently different from other medical procedures, because no other procedure involves the purposeful termination of a potential life."); *see also Bellotti v. Baird*, 428 U.S. 132, 149 (1976) ("not all distinction between abortion and other procedures is forbidden.").

Additionally, the State asserts that equal protection analysis only applies to suspect classifications of people and because Planned Parenthood and/or its doctors do not fall into any suspect class, the Act is only subject to rational basis review. The Court agrees.

Suspect classifications include race, religion, alienage, and national origin. *Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898, 906 n.6 (1986); *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976). The Supreme Court has also recognized that quasi-suspect classifications based on sex and illegitimacy also receive some degree of heightened scrutiny. *Clark v. Jeter*, 486 U.S. 456, 461 (1988) (citations omitted). However, hospitals, licensed health care facilities, and medical practitioners have never been considered a

suspect class under the Equal Protection Clause of the Fourteenth Amendment.[13] *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 547 (9th Cir. 2004) ("For the same reasons that abortion providers are not a suspect class, we hold that those who provide larger numbers of abortions are not a suspect class."). Absent a suspect class, the Act is only subject to rational basis review.

"[R]ational-basis review in equal protection analysis is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) (internal quotation marks and citations omitted). "Nor does it authorize the judiciary to sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Id.* (internal citation and quotation marks omitted). Thus, if a rational basis for the Act exists, the Fourteenth Amendment's Equal Protection Clause has not been violated.

The State asserts that Idaho has a valid (rational) reason for collecting and tracking abortion complication data as it will protect public health and safety. The information required by the Act will—according to the State—allow the Board of Medicine to monitor common complications that surround abortions and this information can directly be used to protect the health and safety of women seeking abortions in Idaho. "[A] State might find or presume that women who obtain abortion services are less likely to report irresponsible practices or less likely to litigate medical malpractice claims, due to the fact

---

[13] It is also important to note that the provisions of the Act apply to all medical practitioners, not just abortion providers.

that obtaining an abortion is an exercise of a private choice." *Tucson Woman's Clinic*, 379 F.3d at 545. "A State might look to the history of illegal, unsafe abortions in this country and determine that women seeking abortions are particularly vulnerable to exploitation." *Id*. The State also notes the legislative history and that the data from the Act will "give public health officials additional information to consider in decision making regarding underserved populations, problematic providers, and problematic procedures." Senate State Affairs Committee Minutes, Dkt. 12-19, at 3.

Finally, the State notes that Planned Parenthood's facilities in Idaho—and other physicians' offices where abortions are performed—are not subject to State licensing or inspection requirements. The licensed professionals who work at facilities where abortions are performed are, however, subject to regulation and monitoring by licensing boards, such as the Idaho Board of Medicine and the reports filed under the Act must be made available to the Board of Medicine in case there are indications that a physician may not be following the standard of care or is potentially putting patient safety at risk.

Lastly, the Court notes that Planned Parenthood's animus argument stems from the comments of a single Idaho legislator who opined that the penalties associated with the Act were too harsh and were the Act related to a subject other than abortion, they [the state legislature] wouldn't approve of such measures. This single opinion about penalties does not rise to the level of animus as required under the law.

Upon review, the State's reasons for implementing the Act appear rationally related to a legitimate government interest. Additionally, there is no evidence that the State implemented that Act out of animus—to Planned Parenthood specifically, or

abortion providers generally—as the Act applies to all medical practitioners. Under an Equal Protection analysis, Planned Parenthood does not appear likely to succeed.

### 3. Due Process

Planned Parenthood relies on *Usery v. Turner Elkhorn Mining Co.*, and argues that under substantive due process, the Idaho legislature acted in an "arbitrary and irrational way," 428 U.S. 1, 15 (1976), because it enacted the Act without any "legitimate government objective." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

Planned Parenthood bases this argument on the idea that the Act will not collect reliable information, skew statistics, and ultimately not serve the purported "health and safety" purpose the State asserts it is pursuing. Because the categories are vague and discretionary, the reports will be ineffective and erratic in their results.

Furthermore, Planned Parenthood points out that there is already a statute— implemented in 1977—that requires the attending physician to file a report with the IDHW following each abortion performed in the State of Idaho. This statute—Idaho Code § 39-261—requires that the doctor document whether there were any complications under the following six categories: 1) hemorrhage, 2) infection, 3) uterine perforation, 4) cervical laceration, 5) retained products, and 6) "other"—essentially a "catch-all" category. The IDHW compiles this data annually and provides it (as a statistical report) to the Idaho legislature and the public at large.

The Court need not address this challenge in full as it has already determined that the State has met its burden in establishing that there is a legitimate, rational reason for the Act—public health and safety—and that it was not motivated by animus. The

motivations appear neither arbitrary nor irrational in violation of substantive due process principles. Furthermore, the fact that the statistics may not provide a perfect picture of abortions in Idaho does not render the statute unconstitutional. *See Heller*, 509 U.S. at 321 ("Courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends."). Like its Equal Protection challenge, it appears unlikely that Planned Parenthood can prevail on its Due Process challenge.

### 4. *Privacy Null and Void*

Finally, Planned Parenthood argues that the Act is unconstitutional because its privacy provisions are null and void.

Under the Act, "[t]he statistical report shall not lead to the disclosure of the identity of any medical practitioner or person filing a report under this section nor of a woman about whom a report is made." Idaho Code § 39-9504(4). The Act further outlines that reports filed pursuant to the Act shall not be deemed public records and shall remain confidential. Idaho Code § 39-9504(6).

Planned Parenthood, however, argues that the Act's promise of confidentiality is null, void, and has no force or effect under Idaho law. The Legislature amended the Idaho Public Records Act in 2015 to explicitly provide that after January 1, 2016:

> [a]ny statute which is added to the Idaho Code and provides for the confidentiality or closure of any public record or class of public records shall be placed in the Public Records Act. Any statute which was added to the Idaho Code on and after January 1, 2016, and which provides for confidentiality or closure of a public record or class of public records and is located at a place other than this chapter is null, void and of no force and effect regarding the confidentiality or closure of the public record and such

public record shall be open and available to the public for inspection as provided in this chapter.

Idaho Code § 74-122. Because the Act at issue here was created after January 1, 2016, Planned Parenthood contends its privacy provisions are null and void.

The State asserts that this is an incorrect reading of the Idaho Public Records Act. The Court agrees. The Public Records Act specifically provides some types of records that are exempt from disclosure including "[a]ny public record exempt from disclosure by federal or *state law* or federal regulations to the extent *specifically provided for* by such law or regulation." Idaho Code § 74-104(1) (emphasis added). Here, because the Act—a state law—specifically provides that the reports are not public records and are to remain confidential, they are exempt from disclosure under section 74-104(1) of the Public Records Act.

Second, the State explains that even if there was a conflict between the Act and the Public Records Act regarding whether the reports were exempt from public records act requests, two canons of statutory construction establish that the Act's directives govern. The first canon provides that, "[t]o the extent of a conflict between an earlier and later statute, the more recent expression of legislative intent prevails." *State of Idaho v. Betterton*, 903 P.2d 151, 153 (Idaho Ct. App. 1995) (citation omitted); *State of Idaho v. Gamino*, 230 P.3d 437, 439 (Idaho 2010). Since the Act is the more recent statute (enacted in 2018) as opposed to the Public Records Act (enacted in 2015), the Act's directive that the reports shall not be deemed public records and shall remain confidential governs. The second canon provides that "[w]here two statutes deal with the same subject

matter, the more specific will prevail." *Betterton*, 127 Idaho at 564, 903 P.2d at 153 (citation omitted). Here, with respect to the treatment of the reports, the Act is the more specific of the two statutes and thus must prevail.

The provisions of the Act are quite clear: "Reports filed pursuant to this section *shall not be deemed public records* and shall remain confidential." Idaho Code § 39-9504(6) (emphasis added). The Act "specifically provide[s] that the reports be exempt from disclosure, therefore, there is no conflict between the Act and the Idaho Public Records Act. Reports filed under the Act are not public records.

**B.  Irreparable harm**

Under this second prong of the preliminary injunction inquiry, Planned Parenthood broadly asserts that because the rights at issue are constitutional rights, if the Act is not enjoined, its practitioners will suffer irreparable harm. Planned Parenthood also specifically notes that if information from the reports becomes public, providers and/or patients could suffer physical harm and that its providers could be subjected to penalties for failing to comply with the Act.

A plaintiff may obtain an injunction only where he or she can "demonstrate immediate threatened injury." *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). A possibility of irreparable harm is insufficient. Instead, Plaintiffs must establish that irreparable harm is likely, not just possible, in the absence of an injunction. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008). Irreparable harm has been

described as "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." 11A Wright & Miller, Fed. Prac. & Proc. § 2948.

As to Planned Parenthood's first argument, while it is true that an "alleged constitutional infringement will *often* [] constitute irreparable harm" *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (internal quotation marks omitted, emphasis added), the Court is duty bound to analyze the actual injury that may result from that [possible] violation.[14]

Second, Planned Parenthood argues that the information on the forms, if published, could subject patients and providers to physical harm. This however, is extremely unlikely. As the Court has already noted, the confidentiality provisions of the Act are enforceable. There is no reason to assume that any information about a patient or provider will become public knowledge. And perchance it does, there are available remedies. The Act specifically instructs those who provide the reports to withhold identifying information about the patient, Idaho Code section 39-9504(3), and in fact criminalizes the improper dissemination of information found in the reports, Idaho Code section 9506(2). Here, there is only a limited chance—not the requisite "likelihood" standard—that this harm will occur.

Third, Planned Parenthood alleges that without an injunction, its providers may be subject to penalties and professional discipline for not complying with the Act. While

---

[14] In other words, simply because a constitutional challenge is present, does not mean the Court need not analyze the type, and immediacy, of the alleged harm as required.

understandable, this concern is only a possibility—again not rising to the level of "likelihood" as required—but must be addressed in more detail.

As a threshold matter, the Court notes that this is only a "harm" if Planned Parenthood or its providers willfully disobey the provisions of the Act. Planned Parenthood alleges that if its practitioners do not understand the Act or misconstrue a provision or complication, they could be subject to penalties. This interpretation, however, is not entirely correct. The only circumstance in which the Act imposes a penalty is when a practitioner willfully fails to file a report when a complication has occurred (Idaho Code § 39-9506(3)), or files a false report (Idaho Code § 39-9506(1)). Thus, Planned Parenthood will not be fined for its disagreements about what exactly constitutes any particular complication so long as they still file the report and do not falsify information.[15]

Most important to the Court's decision today is the fact that this possible harm may never arise during this litigation due to the time requirements built into the statute

---

[15] Planned Parenthood seems to be concerned that if a provider fails to report a symptom he or she does not believe is a true complication (such as bleeding that they do not consider heavy) but another practitioner *may have* considered heavy and therefore reported, then the first provider will be penalized for their failure to report. Under the Act, however, if a provider determines that the particular situation was not abnormal it need not be reported. Thus, reasonable medical minds could differ on exactly what needs to be reported.
When the Court inquired of the State how it would treat different (honest and professional) interpretations as to whether something was or was not abnormal—or a direct or indirect result of an abortion—it admitted that it would rely on the practitioner's judgment. Presumably because the discretionary aspects of the Act would be difficult, if not impossible, to monitor or fine, the State recognizes that there might be slight discrepancies in reporting. The State noted that it would only "come after" someone who failed to report or falsely reported. By all accounts, it appears the State's interest is in collecting data, not fining or sanctioning practitioners.

itself. The Act outlines that no provision therein "shall be applicable until ten (10) days after the requisite forms are first created or until the effective date of this chapter, whichever is later." Idaho Code § 39-9505. In this case, the Act went into effect on July 1, 2018, but the forms were not published until August 30, 2018. Dkt. 14. The "later" date of August 30, 2018, is therefore the date with which calculations begin. Second, the Act requires that that the reports be filed "within ninety (90) days from the last date of treatment or other care or consultation for the complication." Idaho Code § 39-9504(1).

Therefore, even assuming, *arguendo*, that one of Planned Parenthood's providers performed an abortion on exactly September 9, 2018,[16] and a complication arose and was dealt with the same day,[17] that practitioner or provider would not be required to file a report under the Act until December 8, 2018.[18] Thus, the absolute earliest that anyone would be "forced" to file a report—outlining a complication that arose from an abortion—or face penalties, is still almost seven weeks from entry of this order.

Furthermore, if no complications arise, there is no need to report. Although the Court recognizes the limits of statistics, it is interesting to review the Bureau of Vital Records and Health Statistics July 2018 report concerning abortion complications. This report compiles the number of complications that arise from abortions under the six areas

---

[16] The first day the reporting requirements were in effect (i.e. 10 days after the forms became available).

[17] Because again, if there was follow up treatment for a condition, the clock would not begin until that "treatment or other care of consultation for the complication" was complete.

[18] The Court is not implying that practitioners should always wait until the last possible moment to file the report, but simply notes that under the circumstances present here, there is a large window of time before a report even needs to be filed.

identified in the 1977 Statute. The report notes that of all the abortions performed in Idaho in the last five years less than one half of one percent (approximately .4%) reported complications. Obviously, the Act at issue here includes many more categories of complications, but as Planned Parenthood frequently notes, abortions are an overall safe procedure for the women who seek them.[19]

In conclusion, personal information will not be released to the public and will not result in any harm. There is also no harm that will ensue from penalties under the Act (such as fines, professional sanctions, or license suspensions) as these will only occur if a practitioner fails to report a clear complication or files a false report. Even then, the earliest that a report need be filed is December 8, 2018.[20]

There is, as always, the possibility that harm *may* occur; however, the mere possibility is not enough. For a preliminary injunction to issue, the harm must be likely. *Cottrell*, 632 F.3d at 1131; *Winter*, 555 U.S. at 23. On the present record, the Court is not persuaded that Planned Parenthood has clearly shown a likelihood of irreparable harm absent a preliminary injunction.

## C. Balancing of equities and D. Public interest

---

[19] Thus, even if Planned Parenthood disagrees with some of the complications as outlined in the Act, because by all accounts complications seem infrequent, it will not be overly burdensome to err on the side of caution and simply report what is required by the Act during the pendency of this suit. Compliance with the Act will not result in any adverse consequences and is not irreparable harm; any "harm" will be self-inflicted (i.e. penalties from actively not complying with the Act through failure to file or the filing of a knowingly false report).

[20] The Court is not implying that this case will be fully resolved before that point, simply that the harm is more remote and frankly may not even happen during the pendency of this case.

Planned Parenthood argues these final two elements together and simply asserts that under Ninth Circuit law, a preliminary injunction is appropriate if a Plaintiff raises serious questions going to the merits of the claims and the balance tips in his or her favor. *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012). Planned Parenthood asserts that the balance tips in its favor here because without an injunction there is confusion in reporting and possible ramifications for failure to comply. The Court need not reach the merits of these arguments as it has already determined that Planned Parenthood has failed to demonstrate that it will suffer irreparable harm absent an injunction. *See All. for the Wild Rockies v. United States Forest Serv.*, No. 1:15-CV-00193-EJL, 2016 WL 3349221, at *3 (D. Idaho June 14, 2016) ("Where a plaintiff fails to demonstrate a likelihood of irreparable harm in the absence of preliminary relief, the court need not address the remaining elements of the preliminary injunction standard.").

## V. CONCLUSION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In order to succeed, Planned Parenthood must meet each of the four required elements. *See Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 997 (9th Cir. 2011) ("A plaintiff must satisfy the four-factor test in order to obtain equitable injunctive relief, even if that

relief is preliminary."). There is no presumption of irreparable harm even if the Plaintiff makes a showing of a reasonable likelihood of success on the merits. *Id.* at 994.

The Ninth Circuit weighs the various factors of this test "on a sliding scale" and even if the plaintiffs have only raised "'serious questions going to the merits'—that is, less than a 'likelihood of success' on the merits—a preliminary injunction may still issue so long as 'the balance of hardships tips *sharply* in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (italics in original, underlining added).

Here, while it does appear there are questions going to the merits of the claims—namely Planned Parenthood's constitutional vagueness challenge—it has not met its burden in demonstrating that irreparable harm will result if the Court does not issue an injunction at this time. Absent that critical prong of the test, the Court will not issue a preliminary injunction in this matter.

## VI. ORDER

1.  Planned Parenthood's Motion for Preliminary Injunction (Dkt. 7) is DENIED.

DATED: October 22, 2018

David C. Nye
U.S. District Court Judge